# EXHIBIT 3

# PREA Audit: Subpart B
# DHS Immigration Detention Facilities
# Audit Report



| AUDIT DATES | | | |
|---|---|---|---|
| **From:** | 7/11/2023 | **To:** | 7/12/2023 |
| **AUDITOR INFORMATION** | | | |
| **Name of auditor:** | Sharon Shaver | **Organization:** | Creative Corrections, LLC |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone #:** | (409) 866- |
| **PROGRAM MANAGER INFORMATION** | | | |
| **Name of PM:** | (b) (6), (b) (7)(C) | **Organization:** | Creative Corrections, LLC |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone #:** | (772) 579- |
| **AGENCY INFORMATION** | | | |
| **Name of agency:** | U.S. Immigration and Customs Enforcement (ICE) | | |
| **FIELD OFFICE INFORMATION** | | | |
| **Name of Field Office:** | Chicago | | |
| **Field Office Director:** | Ladeon Francis | | |
| **ERO PREA Field Coordinator:** | (b) (6), (b) (7)(C) | | |
| **Field Office HQ physical address:** | 101 W. Ida B Wells Drive, Suite 4000 Chicago, IL 60605 | | |
| **INFORMATION ABOUT THE FACILITY BEING AUDITED** | | | |
| **Basic Information About the Facility** | | | |
| **Name of facility:** | Broadview Service Staging | | |
| **Physical address:** | 1930 Beach Street Broadview Illinois 60155 | | |
| **Telephone number:** | 312-347-2400 | | |
| **Facility type:** | Staging Facility | | |
| **PREA Incorporation Date:** | Click or tap to enter a date. | | |
| **Facility Leadership** | | | |
| **Name of Officer in Charge:** | (b) (6), (b) (7)(C) | **Title:** | Assistant Field Office Director (AFOD) |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone #:** | 312-296- |
| **Name of PSA Compliance Manager:** | (b) (6), (b) (7)(C) | **Title:** | PSA Compliance Manager |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone #:** | 773-655- |

**NARRATIVE OF AUDIT PROCESS AND DESCRIPTION OF FACILITY CHARACTERISTICS**

**Directions:** Discuss the audit process to include the date of the audit, names of all individuals in attendance, audit methodology, description of the sampling of staff and detainees interviewed, description of the areas of the facility toured, and a summary of facility characteristics.

The U.S. Department of Homeland Security (DHS) Prison Rape Elimination Act (PREA) audit of the Broadview Service Staging (BSS) was conducted on July 11, 2023, by U.S. Department of Justice (DOJ) and DHS certified PREA Auditor Sharon Shaver, employed by Creative Corrections, LLC. The Auditor was provided guidance and review during the audit report writing and review process by ICE Program Manager (PM), (b) (6), (b) (7)(C), also a DOJ and DHS certified PREA Auditor. The PM's role is to provide oversight to the ICE PREA audit process and liaison with the ICE, Office of Professional Responsibility (OPR), External Reviews and Analysis Unit (ERAU) during the audit report review process. The purpose of the audit was to determine compliance with the DHS PREA Standards for the audit period of September 12, 2018, through July 11, 2023. This was the facility's second DHS PREA audit. The BSS is an ICE Hold Room operated by ICE providing custody for ICE adult male and female detainees, while pending immigration review or deportation. The design capacity for this facility is 236 detainees; 1932 detainees were booked into the BSS in the last 12 months. The facility is located in Broadview, IL.

On July 11, 2023, an entrance briefing was held in the BSS Conference Room. The ICE ERAU Team Lead, (b) (6), (b) (7)(C), opened the briefing and then turned it over to the Auditor. In attendance were:

ICE Staff
(b) (6), (b) (7)(C), Assistant Field Office Director (AFOD), ERO
(b) (6), (b) (7)(C), Supervisory Detention and Deportation Officer (SDDO) and Prevention of Sexual Abuse Compliance Manager (PSACM), ERO
(b) (6), (b) (7)(C), SDDO, ERO
(b) (6), (b) (7)(C), Building Manager
(b) (6), (b) (7)(C), Inspections and Compliance Specialist (ICS)/ERAU

Creative Corrections, LLC
Sharon Shaver, Certified PREA Auditor
The Auditor introduced herself and then provided an overview of the audit process and the methodology to be used to demonstrate compliance with the DHS PREA standards with those present. The Auditor explained the audit process is designed to not only assess compliance through written policies and procedures but also to determine whether such policies and procedures are reflected in the knowledge of staff at all levels and in daily practice. Approximately four weeks prior to the audit, ERAU Team Lead, (b) (6), (b) (7)(C), provided the Auditor with the facility's Pre-Audit Questionnaire (PAQ), agency policies, allegations spreadsheet and other pertinent documents through ERAU's SharePoint site. The main policies that provide facility direction for PREA at the BSS are Policy 11087.1, Operations of ERO Holding Facilities, and Policy 11062.2, Sexual Abuse and Assault Prevention and Intervention (SAAPI). All documentation, policies, and the PAQ were reviewed by the Auditor prior to the site visit. The Auditor requested additional information before the site visit and this documentation was promptly provided. A tentative daily schedule was provided by the Team Lead for the interviews with staff and detainees, if available, on site. The Auditor received no correspondence from any detainees or staff or other interested parties prior to the audit or prior to the submission of the report. Immediately upon conclusion of the in-briefing the Auditor was provided a full-facility tour which

included the administrative office area, intake/booking area, holding rooms, attorney/detainee visiting rooms, and the conference room/break room located upstairs. The two-story building is owned and occupied by ICE.

The detainee in-processing/booking area is located on the main floor and can be accessed from the front administrative areas and through two back entryways. Detainees are brought into the BSS through the side entry, generally by ICE personnel field agents from various task force teams. Part of the detainee processing is completed by the arresting officer and then turned over to the BSS ICE staff. The processing/booking area contains a large interview room with multiple stations, four multiple occupancies holding cells, two single person cells and an interview room. Each of these multiple occupancy holding cells has a toilet, and a place to sit while awaiting processing and is equipped (b) (7)(E). Detainees arriving at the BSS remain at the facility for approximately five hours and are then either released from custody, remanded to an ICE detention facility, or transported for deportation. Detainees remain in this area until they are individually classified and assessed by the DO. Detainees placed in any of the holding cells are supervised in accordance with the 11087.1 requirement by the assigned ICE staff with rounds occurring (b) (7)(E). The BSS has no medical unit or medical staff nor any food facilities or food staff. The BSS is staffed Monday through Friday, from 7:00 a.m. to 8:00 p.m. Primary shifts are 7:00 a.m. to 3:00 p.m., 8:00 a.m. to 4:00 p.m., and 12:00 p.m. to 8:00 p.m. Interviews conducted during the site visit included 6-ERO Detention Officers (DO), 1-SDDO/PSACM; 1-SDDO, 1-SDDO/PREA Field Coordinator (virtually), 1-AFOD, 1-Building Manager, and 1-Paragon Systems Manager (contractor). The Auditor interviewed the only detainee who was processed at the facility during the site visit. According to interviews with the AFOD and SDDO/PSACM, only law enforcement staff have contact with detainees. There are no volunteers at the BSS and the facility contracts with Paragon Systems to provide building/premises security. All staff interviews were conducted in a private office. No staff refused to be interviewed. All staff interviewed were aware of the agency's zero-tolerance policy, their responsibilities to protect detainees from sexual abuse, and their duties as first responders as part of a coordinated response.

On July 11, 2023, an exit briefing was held in the AFOD's office. The ICE ERAU Team Lead, (b) (6), (b) (7)(C) opened the briefing and then turned it over to the Auditor. In attendance were:

ICE Staff
(b) (6), (b) (7)(C), AFOD, ERO
(b) (6), (b) (7)(C), SDDO/PSACM, ERO
(b) (6), (b) (7)(C), SDDO, ERO
(b) (6), (b) (7)(C), (A) SDDO, ERO
(b) (6), (b) (7)(C) ICS, ERAU

Creative Corrections, LLC
Sharon Shaver, Certified PREA Auditor

The Auditor informed those present that she was impressed with the staff and overall operation of the BSS, but it was too early in the process to formalize an outcome of the audit and that she would need to triangulate his findings and results of the interviews conducted prior to making a final determination on compliance for the standards. The Auditor asked if the staff present had any questions and there were none. She thanked the BSS staff for their hard work and cooperation in preparation for the audit and during the site visit. The Team Lead

then explained the next steps in the audit process and the 180-day corrective action period, should one be necessary, prior to the briefing conclusion.

## SUMMARY OF AUDIT FINDINGS

**Directions:** Discuss audit findings to include a summary statement of overall findings and the number of provisions which the facility has achieved compliance at each level: Exceeds Standard, Meets Standard, and Does Not Meet Standard.

**Number of Standards Exceeded: 0**
**Number of Standards Met: 28**

- §115.111 - Zero tolerance of sexual abuse; Prevention of Sexual Assault Coordinator
- §115.113 - Detainee supervision and monitoring
- §115.115 - Limits to cross-gender viewing and searches
- §115.116 - Accommodating detainees with disabilities and detainees who are limited English proficient
- §115.117 - Hiring and promotion decisions
- §115.121 - Evidence protocol and forensic medical examinations
- §115.122 - Policies to ensure investigation of allegations and appropriate agency oversight
- §115.131 - Employee, contractor, and volunteer training
- §115.132 - Notification to detainees of the agency's zero-tolerance policy
- §115.134 - Specialized training: Investigations
- §115.141 - Assessment for risk of victimization and abusiveness
- §115.151 - Detainee reporting
- §115.154 - Third-party reporting
- §115.161 - Staff reporting duties
- §115.162 - Agency protection duties
- §115.163 - Reporting to other confinement facilities
- §115.164 - Responder duties
- §115.165 - Coordinated response
- §115.166 - Protection of detainees from contact with alleged abusers
- §115.167 - Agency protection against retaliation
- §115.171 - Criminal and administrative investigations
- §115.172 - Evidentiary standards for administrative investigations
- §115.176 - Disciplinary sanctions for staff
- §115.177 - Corrective action for contractors and volunteers
- §115.182 - Access to emergency medical services
- §115.186 - Sexual abuse incident reviews
- §115.187 - Data collection
- §115.201 - Scope of Audits

**Number of Standards Not Met: 0**

**Number of Standards Not Applicable: 2**

- §115.114 - Juvenile and family detainees
- §115.118 - Upgrades to facilities and technologies

**Hold Room Risk Rating**
- §115.193 – Audit of standards – Low Risk

**PROVISIONS**

**Directions:** In the notes, the auditor shall include the evidence relied upon in making the compliance or non-compliance determination for each provision of the standard, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Corrective Action Plan Final Determination, accompanied by information on specific corrective actions taken by the facility. Failure to comply with any part of a standard provision shall result in a finding of "Does not meet Standard" for that entire provision, unless that part is specifically designated as Not Applicable. For any provision identified as Not Applicable, provide an explanation for the reasoning.

## §115.111 - Zero tolerance of sexual abuse; Prevention of Sexual Assault Coordinator

**Outcome:** Meets Standard

**Notes:**

(a) The facility provided for compliance review Policy 11062.2 that requires," ICE has a zero-tolerance policy for all forms of sexual abuse or assault. It is ICE policy to provide effective safeguards against sexual abuse and assault of all individuals in ICE custody, including with respect to screening, staff training, detainee education, response and intervention, medical and mental health care, reporting, investigation, and monitoring and oversight, as outlined in this Directive, in the requirements of PBNDS2011 Standard 2.11, and in other related detention standards and ICE policies." The Auditor conducted formal interviews with ERO staff (two SDDOs and six DOs) assigned to BSS. Each was aware of the agency policy against sexual abuse. The interviews conducted with one detainee present during the site visit confirmed his awareness of the agency's zero-tolerance policy as well. The Auditor observed the agency's zero-tolerance information posted in each of the six holding rooms and in various other public and private areas during the tour and determined that the zero-tolerance policy for sexual abuse has been implemented at the facility.

**Corrective Action:**

No corrective action needed.

## §115.113 - Detainee supervision and monitoring

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review Policy 11087.1 that requires, "The FOD shall ensure that each holding facility maintains sufficient supervision of detainees, including through appropriate staffing levels and, where applicable, video monitoring, to protect detainees against sexual abuse and assault. In so doing, the FOD shall take into consideration: the physical layout of each holding facility; the composition of the detainee population; the prevalence of substantiated and unsubstantiated incidents of sexual abuse and assault; the findings and recommendations of sexual abuse and assault incident review reports; and any other relevant factors, including but not limited to, the length of time detainees spend in custody at the holding facility. FODs shall ensure that detainees placed into holding facilities are: Accounted for and continuously monitored and that holding facilities are emptied upon the conclusion of daily operations in those field office locations operating on a daily schedule. Absent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours and should be monitored for any apparent indications of a mental or physical condition or signs of

hostility that may require closer supervision or emergency medical care.  Subject to direct supervision, which shall include ██(b) (7)(E)████████████████  All physical hold room checks shall be logged, including the time of each check and any important observations.  When detainees in a holding facility are placed in rooms not originally designed for holding detainees (e.g., interview rooms or offices), the FOD shall ensure that the detainees remain under constant direct supervision."  The facility maintains office hours from 7:00 a.m. to 8:00 p.m.  The Auditor was provided the staffing levels for two shifts, 7:00 a.m. to 2:00 p.m. and 12:00 p.m. to 8:00 p.m. at the BSS.  The Auditor was also provided and reviewed the facility Holding Facility Self-Assessment Tool (HFSAT) dated January 2023 and the prior year, 2022, indicating that the assessment is conducted at least annually.  This self-assessment tool is used annually to determine if hold rooms conform to the 11087.1 policy and standard requirements and assigned staff supervision guidelines.  The staffing levels, ██(b) (7)(E)████████████ appear to provide adequate detainee supervision at the BSS.  ██(b) (7)(E)██████████ however, detainees are restricted to the processing area, holding cells, and visitation/interview room.  Each of these areas are ██(b) (7)(E)████████.  The Auditor observed that the toilets were ██(b) (7)(E)██████████████ in the four multi-occupancy cells and use of ██(b) (7)(E)████████ where needed.  The Auditor confirmed that ██(b) (7)(E)████████████████ were visually blurred out over the toilet area preventing viewing while detainees use the restroom.  ██(b) (7)(E)████████ ██████.  ██(b) (7)(E)████████████  ██(b) (7)(E)████████████ ██████.  ██(b) (7)(E)████  ██████████████████  The Auditor's review of the HFSAT and interview with the AFOD confirmed that the facility took into consideration the physical layout of the facility, the composition of the detainee population, the prevalence of incidents of sexual abuse (none), the findings and recommendations of sexual abuse incident review reports (none), and the length of time detainee spend in agency custody (average five hours), when determining staffing and the need for video monitoring equipment upgrades and expansion.

**Corrective Action:**

No corrective action needed.

## §115.114 - Juvenile and family detainees

**Outcome:** Not Applicable

**Notes:**

(a)(b) The BSS provided a written directive, Policy 11087.1, Operations of ERO Holding Facilities, which states in part that; "The FOD shall ensure that unaccompanied minors, elderly detainees, or family units are not placed in hold rooms, unless they have demonstrated or threatened violent behavior, have a history of criminal activity, or pose an escape risk.  The FOD shall ensure minors are detained in the least restrictive setting appropriate to his or her age and special needs, provide that such settings are consistent with the need to protect the minor's well-being and that of others, as well as with any laws, regulations, or legal requirements.  Unaccompanied minors will generally be held separate from adults.  The unaccompanied minor may temporarily remain with a non-parental adult family member where a) The family relationship has been vetted to the extent feasible, b) The agency determines that remaining with the non-parental adult family member is appropriate, under the totality of the circumstances."  The BSS presented a memorandum from the AFOD, who further confirmed during an interviewed, that the BSS does not hold juveniles or family units.  When interviewing the six DOs and two SDDOs the Auditor confirmed that this facility has held no juveniles or family units.

**Corrective Action:**

| No corrective action needed. |
| --- |

## §115.115 - Limits to cross-gender viewing and searches

**Outcome:** Meets Standard

**Notes:**

(b)(c)(d)(e)(f) The facility provided for compliance review Policy 11087.1, Operations of ERO Holding Facilities, that governs limits to cross gender viewing and searches. This policy requires "the FOD ensure that all pat-down searches are conducted in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs and ICE policy, including consideration of officer safety. Where operationally feasible, an officer of the same gender as the detainee will perform the pat down search. Every detainee shall undergo a pat down search for weapons and contraband before being placed in a hold room. A pat down search shall be performed even if another agency or other ERO personnel report completing one prior to the detainee's arrival at the ERO facility or transfer of custody." This policy further requires "the FOD ensure when the pat down search indicates the need for a more thorough search, an extended search (i.e., strip search) is conducted in accordance with ICE policies and procedures, including that all strip searches and visual body cavity searches are documented; cross-gender strip searches or cross-gender visual body cavity searches are not conducted except in exigent circumstances, including consideration of officer safety, or when performed by medical practitioners; and visual body cavity searches of minors are conducted by a medical practitioner and not by law enforcement personnel." Policy 11087.1 also requires "the FOD ensure that detainees are permitted to shower (where showers are available), perform bodily functions, and change clothing without being viewed by staff of the opposite gender, except in exigent circumstances or when such viewing is incidental to routine hold room checks, or is otherwise appropriate in connection with a medical exam or monitored bowel movement under medical supervision. The FOD will also ensure that ERO personnel of the opposite gender announce their presence when entering an area where detainees are likely to be showering, performing bodily functions, or changing clothing. The FOD shall also ensure that ERO personnel do not search or physically examine a detainee for the sole purpose of determining the detainee's gender. If the detainee's gender is unknown, it may be determined during conversations with the detainee, by reviewing medical records (if available), or, if necessary, learning that information as part of a broader medical examination conducted in private, by a medical practitioner." During the interviews with the AFOD and SDDO/PSACM, they stated that cross-gender strip searches are only permitted to be performed by medical staff, if needed. However, it should be noted that there are no medical staff working at the BSS. Therefore, if the need for such a search was deemed necessary the detainee would have to be transported to a facility or medical center with medical staff for the search. They also stated that searches are not conducted for the sole purpose of identifying a detainee's gender and that the detainee would be asked what gender they identify with. When interviewing random staff, all six DOs stated that they were taught how to conduct pat searches during their initial training and that generally they rely on utilizing sworn staff of the same gender when confronted with the need to conduct a search of a detainee of the opposite gender. Also, all six DOs stated that they had not conducted or witnessed any strip searches or visual body searches of any detainees of the same gender or opposite gender or juveniles. The Auditor viewed randomly selected video footage of the last large intake processing day and found that pat searches were conducted professionally and respectfully and in a manner that provided safety for the officers. During his interview, the SDDO/PSACM explained that a detainee

can use the bathroom, and change clothes without being viewed by others, [b) (7)(E)]           While the two large holding rooms are equipped with a single shower; these showers are inoperable, and the space is currently used for storage. The SDDO/PSACM and AFOD confirmed that detainees do not shower while at this facility. The Auditor observed the privacy half walls and [b) (7)(E)]     located in the holding cells equipped with a toilet and found them such that the detainee can perform bodily functions without being viewed by opposite gender staff; A combination of [b) (7)(E)]     was used to accomplish this. The six DOs interviewed explained that they are assigned responsibility of making rounds in the hold room on a rotating basis and each confirmed they make opposite gender announcements of their presence when entering the area. Due to the mission and short-term temporary presence of detainees at the hold room, no detainees change clothes at the hold room. They are either brought in upon the initial arrest and then transferred to a long-term facility, or they arrive from a long-term facility for release, or are transported for deportation. In either situation there is no need for the detainee to change clothes. There was one detainee present being processed during the onsite audit and he confirmed to the Auditor that he was able to use the restroom privately, that he had not been strip searched; he further confirmed that the arresting officer had conducted a pat search and the search was done respectfully and professionally. The BSS presented a memorandum dated May 1, 2023, authored by the AFOD stating that the BSS has not conducted any strip searches or visual body cavity searches of non-citizens in the 12 months preceding the audit. The Auditor was provided 10 training certificates indicating that staff has completed and acknowledged their understanding of the proper procedures for pat down searches, cross-gender pat down searches and searches of transgender and intersex detainees. The six DOs and the two SDDOs interviewed confirmed they have received this training and were able to demonstrate to the Auditor how to conduct a proper search. The curriculum for this training is available on the ERAU SharePoint and was reviewed by the Auditor; it is found to meet all requirements of this standard.

**Corrective Action:**

No corrective action needed.

## §115.116 - Accommodating detainees with disabilities and detainees who are limited English proficient

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review policy 11087.1 which requires that "the FOD shall take appropriate steps to ensure that detainees with disabilities have an equal opportunity to participate in and benefit from processes and procedures in connection with placement in an ERO holding facility, consistent with established statutory, regulatory, DHS and ICE policy requirements. The FOD shall take reasonable steps to ensure meaningful access to detainees who are limited English proficient, consistent with established regulatory and DHS and ICE policy requirements. In matters relating to allegations of sexual abuse or assault, ensure the provision of in-person or telephonic interpretation services that enable effective, accurate, and impartial interpretation, by someone other than another detainee, unless the detainee expresses a preference for another detainee to provide interpretation and ICE determines that such interpretation is appropriate and consistent with DHS policy. The provision of interpreter services by minors, alleged abusers, detainees who witnessed the alleged abuse or assault, and detainees who have a significant relationship with the alleged abuser, is not appropriate in matters relating to allegations of sexual abuse or assault." During the site visit at BSS the Auditor observed one detainee being processed. Additionally, interviews with the processing DO and the SDDO/PSACM provided the Auditor with an in-depth over-view of the full process. They indicated that most of

detainees encountered at BSS are English proficient or speak Spanish. The male and female detainees are separated and placed in one of the six hold rooms. In each of the hold rooms the Auditor observed the ICE Sexual Abuse Awareness Information (SAA) pamphlet in both English and Spanish. These interviews further explained that this SAA document is available in 15 languages (Arabic, Bengali, Chinese, English, French, Haitian Creole, Hindi, Portuguese, Punjabi, Romanian, Russian, Spanish, Turkish, Ukrainian, and Vietnamese) and is provided to all detainees upon arrival. During interviews with the BSS, they explained that the facility maintains and provides detainees with the ICE National Detainee Handbook available in 14 of the most prevalent languages encountered by ICE (English, Spanish, French, Haitian Creole, Punjabi, Hindi, Arabic, Simplified Chinese, Russian, Turkish, Bengali, Romanian, Portuguese, and Vietnamese) and the Auditor observed all languages available onsite for distribution. The Auditor observed all these Handbooks available in the stated languages at the facility. If the DO performing the intake is not fluent in the language spoken and understood by the detainee being processed, they would utilize the DHS "I speak…" Language Identification Guide to have the detainee point out which language they speak and then utilize the ERO Language Service, that provides interpretive and translation services, to provide interpreter assistance. If the detainee speaks a language not covered by either of these documents, they utilize this same services provider to access an interpreter to provide sexual safety and reporting information found in the SAA pamphlet. These interviews also detailed to the Auditor the handling of any detainee arriving at the BSS with a disability. They indicated that any detainee arriving at BSS who may have limited sight or who are blind would have the information presented to them verbally by the DO. A detainee arriving with limited hearing or who is deaf would be provided information in writing utilizing the ERO Language Service, that provides translation services. A detainee arriving with intellectual, or psychiatric disabilities would be referred to the SDDO/PSACM who would obtain the necessary communication resources, determined on a case-by-case basis, if the DO was unable to effectively communicate with the detainee. The Auditor was also advised during these interviews that the use of other detainees as interpreters is covered in policy 11062.2 and is allowed if requested by the detainee victim and approved by the agency. They also confirmed that the use of minors, those witnessing the alleged assault or those detainees with a relationship with the alleged abuser is not appropriate.

**Corrective Action:**

No corrective action needed.


## §115.117 - Hiring and promotion decisions

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c)(d)(e)(f) The facility provided for compliance review Federal Statute 731.202 (b), Executive Order 10450, ICE Personnel Security and Suitability Program Directive 6-7.0, and ICE Suitability Screening Requirements for Contractor Personnel Directive 6-8.0, which require, "the facility and agency, to the extent permitted by law, to refuse to hire or promote anyone who may have contact with detainees, and decline to enlist the services of any contractor or volunteer who may have contact with detainees, who has been found to have engaged, been convicted of engaging, or civilly or administratively adjudicated to have engaged in sexual abuse as defined in the standard." These documents collectively require anyone entering into or remaining in government service undergo a thorough background examination for suitability and reinvestigations every five-years. The background investigation, depending on the type of work, is thorough to include education checks, criminal records check, neighbor, and residence checks, financial checks, and prior employment

checks. The policy documents outline misconduct and criminal misconduct being grounds for unsuitability, including material omissions or making false or misleading statements in the application. The Unit Chief of OPR Personnel Security Operations (PSO) informed Auditors, who attended virtual training in November 2021, that detailed candidate suitability for all applicants includes their obligation to disclose any misconduct where he/she engaged in sexual abuse in a prison, jail, holding facility, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997); any conviction of engaging or attempting to engage in sexual activity facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or any instance where he or she has been civilly or administratively adjudicated to have engaged in such activity. Based on information provided in an email by the OPR PSO (A) Division Chief, information on substantiated allegations of sexual abuse involving a former employee would be provided to prospective employers upon request, unless prohibited by law. An interview conducted with the AFOD confirmed the hiring processes are conducted in accordance with the directives issued from PSO. The SDDO was recently promoted and confirmed during his interview that he was asked the misconduct questions by completion of a form that he signed as part of the employment packet. The Auditor did not review records since the facility retains no personnel files on site. Based on the memorandum dated November 8, 2021, issued by the ICE Acting Deputy Director, Employee Obligation to Report Corruption and Misconduct, ICE employees are obligated to report criminal and other allegations of employee and contractor misconduct, specifically including "sexual assaults, sexual harassment, or non-sexual harassment of […] detainees." Interviews with the BSS staff confirmed their awareness of the agency's requirement to disclose any misconduct outlined in subpart (a) of this standard. The Auditor selected from the staff roster four ICE ERO employees and requested verification of background investigations through the ICE PSO Unit. This Unit provided confirmation that the background investigations were performed prior to these employees being hired or having contact with detainees and confirmed the due dates for the updated five-year background checks were compliant with the standard requirements. Interviews with the AFOD and the Paragon Systems Manager confirmed that the Paragon employees do not have detainee contact and their contracted scope of service is for building and premises security only.

**Corrective Action:**

No corrective action needed.

## §115.118 - Upgrades to facilities and technologies

**Outcome:** Not Applicable

**Notes:**

This standard is not applicable as an interview with the AFOD and Building Manager, and review of the information provided on the PAQ confirmed that BSS did not expand the facility or add additional video equipment during the audit period.

**Corrective Action:**

No corrective action needed.

<u>**§115.121 - Evidence protocol and forensic medical examinations**</u>

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c)(d)(e) The facility provided for compliance review policies 11087.1 and 11062.2, that require "The FOD ensures that the facility complies with the investigation mandates established by PBNDS 2011 Standard 2.11, as well as other relevant detention standards and contractual requirements, including by, when feasible, securing and preserving the crime scene and safeguarding information and evidence consistent with established evidence protocols; conducting a prompt, thorough, and objective investigation by qualified investigators; arranging for the victim to undergo a forensic medical examination, where appropriate; and ensuring that the presence of the victim's outside or internal victim advocate, as requested by the victim, is allowed for support during forensic exams and investigatory interviews.  Where evidentiarily or medically appropriate, at no cost to the detainee, and only with the detainee's consent, the FOD shall arrange for or refer an alleged victim detainee to a medical facility to undergo a forensic medical examination by a Sexual Assault Forensic Examiner (SAFE) or Sexual Assault Nurse Examiner (SANE) where practicable.  If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified health care personnel.  If, in connection with an allegation of sexual abuse or assault, the detainee is transported for a forensic examination to an outside hospital that offers victim advocacy services, the detainee shall be permitted to use such services to the extent available, consistent with security needs.  If the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, the facility requests the alleged victim not to take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and if the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, the facility ensures that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating."  BSS is a 12-hour hold facility with the typical stay of approximately five hours.  The detainee is either released from custody, transported for deportation, or remanded to an ICE detention facility.  During interviews, the AFOD and SDDO/PSACM explained that the facility would also report any sexual abuse to the Broadview Police Department (BPD) with a significant incident report completed by the ICE staff and submitted to the PREA Field Coordinator, FOD, OPR, and DHS Office of Inspector General (OIG).  The interviews further explained that based on current state legislation, specifically, the Illinois Trust Act, local law enforcement officials were required to end partnerships with ICE.  As a result, the local law enforcement entity would most likely not respond to an incident nor are they at liberty to enter into any type of agreement with BSS.  However, BSS continues to attempt maintaining a cordial working relationship with the local law enforcement but accordingly, OPR OIG would handle any criminal investigations for BSS.  As noted earlier in the report there are no medical services provided at BSS and the detainee would be sent to the Loyola University Medical Center (LUMC) where a forensic examination, if required, would be performed by a SANE, SAFE, or other qualified health care personnel.  The Auditor verified through conversation with a representative of LUMC that victim advocacy services would be provided by an onsite advocate at the medical center.  The AFOD indicated the facility would coordinate with community services or the closest ICE detention facility to ensure that the alleged detainee victim would be provided appropriate follow-up services or referrals, as needed if detained after returning from the offsite local hospital.  The AFOD interview confirmed that if OPR elects not to investigate the allegation and the BPD does not conduct a criminal investigation, BSS would ensure an administrative investigation is completed by a trained investigator.  If the detainee is released from ICE custody the investigation would continue.  BSS provided the Auditor with documentation indicating they requested, in

writing, that the BPD follow the requirements of paragraphs (a) through (d) of this standard section, although after two attempts, they have received no response. The facility had no allegations reported during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.122 - Policies to ensure investigation of allegations and appropriate agency oversight

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c)(d) The facility provided for compliance review Policy 11062.2, that requires, "the FOD shall ensure that the appropriate law enforcement agency having jurisdiction for the investigation has been notified by the facility administrator of the alleged sexual abuse or assault. The FOD shall notify the appropriate law enforcement agency directly if necessary; Notify ERO's Assistant Director for Field Operations telephonically within two hours of the alleged sexual abuse or assault or as soon as practical thereafter, according to procedures outlined in the June 8, 2006 Memorandum from John P. Torres, Acting Director, Office of Detention and Removal Operations, regarding "Protocol on Reporting and Tracking of Assaults" (Torres Memorandum); Notify the ICE Joint Intake Center (JIC) telephonically within two hours of the alleged sexual abuse or assault, and in writing within 24 hours via the ICE [Significant Event Notification] SEN Notification Database, according to procedures outlined in the Torres Memorandum. The JIC shall notify the DHS Office of Inspector General (OIG). All sexual abuse and assault data collected pursuant to this Directive shall be maintained for at least 10 years after the date of initial collection, unless Federal, State, or local law requires otherwise." As noted in standard 115.121 the notification process was explained by the AFOD, SDDO/PSACM, and PREA Field Coordinator. It was explained that the initial reports would be to the BPD with a SEN notification completed by the BSS ERO staff to the DHS OIG, JIC, Assistant Director for Field Operations, and PSA Coordinator all within the time frames required and outlined in the 11062.2 policy. A review of the ICE website (http://www.ice.gov/PREA) confirms the investigation protocols are available to the public. There were no sexual abuse allegations during the audit period.

(e) The facility provided for compliance review Policy 11062.2 which states, "The OPR shall coordinate with appropriate ICE entities and federal, state, or local law enforcement to facilitate necessary immigration processes that ensure availability of victims, witnesses, and alleged abusers for investigative interviews and administrative or criminal procedures, and provide federal, state, or local law enforcement with information about U nonimmigrant visa certification." On July 1, 2022, the ICE PREA PM interviewed the Acting Section Chief of the OPR Directorate Oversight, and he confirmed that OPR Special Agents would provide the detainee victim of sexual abuse, that is criminal in nature, with timely access to U nonimmigrant status information. The OPR Acting Section Chief further stated that if an OPR investigation determined that a detainee was a victim of sexual abuse while in ICE custody, the assigned Special Agent would provide an affidavit documenting such in support of the detainees U nonimmigration visa application.

**Corrective Action:**

No corrective action needed.

## §115.131 - Employee, contractor, and volunteer training

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review Policy 11062.2, that requires, "ICE personnel who may have contact with individuals in ICE custody, including all ERO officers and HSI special agents, shall receive training on, among other items ICE's zero-tolerance policy for all forms of sexual abuse and assault; The right of detainees and staff to be free from sexual abuse or assault; Definitions and examples of prohibited and illegal behavior; Dynamics of sexual abuse and assault in confinement; Prohibitions on retaliation against individuals who report sexual abuse or assault; Recognition of physical, behavioral, and emotional signs of sexual abuse or assault, situations in which sexual abuse or assault may occur, and ways of preventing and responding to such occurrences, including: Common reactions of sexual abuse and assault victims; How to detect and respond to signs of threatened and actual sexual abuse or assault; Prevention, recognition, and appropriate response to allegations or suspicions of sexual abuse and assault involving detainees with mental or physical disabilities; How to communicate effectively and professionally with victims and individuals reporting sexual abuse or assault; How to avoid inappropriate relationships with detainees; Accommodating LEP individuals and individuals with mental or physical disabilities; Communicating effectively and professionally with lesbian, gay, bisexual, transgender, intersex, or gender nonconforming individuals, and members of other vulnerable populations; Procedures for fulfilling notification and reporting requirements under this Directive; The investigation process and the requirement to limit reporting of sexual abuse or assault to personnel with a need-to-know in order to make decisions concerning the victim's welfare and for law enforcement or investigative purposes." During interviews with the AFOD and SDDO/PSACM, all BSS staff received PREA training during their initial employment training and annually. The Auditor was provided current documentation from the ICE Training System (ITS) indicating that all 22 BSS staff were current on their PREA training. Additionally, the Auditor requested training records for the arresting ERO DO who was assigned to a different field office but regularly processes detainees at this facility. These training records were promptly provided upon request indicating the DO is current with the required PREA training. The interviews conducted with the AFOD and SDDO/PSACM confirmed that training records, noted in the (a)(b) discussion above, are maintained by the agency for at least five years. During the interviews with the six DOs, two SDDOs and the AFOD, each confirmed the subject matter of the training as required by the standard and displayed a competency of the topics. The Auditor also reviewed the ICE PREA Employee Training provided on the ERAU SharePoint and confirmed that all required topics are included. The BBS contracts with Paragon Systems, a private security company, to provide building and premises security; however, these contract staff do not have contact with detainees. The AFOD and SDDO/PSACM confirmed there are no volunteers who enter the BBS. Other contractors are escorted by the security personnel when onsite and have no detainee contact.

**Corrective Action:**

No corrective action needed.

## §115.132 - Notification to detainees of the agency's zero-tolerance policy

**Outcome:** Meets Standard

**Notes:**

The facility provided for compliance review Policy 11087.1 that requires, "The FOD shall ensure that key information regarding ICE's zero-tolerance policy for sexual abuse and assault is visible or continuously and readily available to detainees (e.g., through posters, detainee handbooks, or other written formats)." The agency makes its zero-tolerance policy available publicly on its public website at http://www.ice.gov/PREA. During the site visit at BSS the Auditor observed one detainee being processed through the intake. Additionally, the processing DO and the SDDO/PSACM provided the Auditor with detailed overview of the intake process during their interviews. These interviews further explained that the ICE SAA pamphlet is available in 15 languages (Arabic, Bengali, Chinese, English, French, Haitian Creole, Hindi, Portuguese, Punjabi, Romanian, Russian, Spanish, Turkish, Ukrainian, and Vietnamese) and is provided to all detainee upon arrival during processing. Additionally, the BSS maintains and provides detainees with the ICE National Handbook available in 14 of the most prevalent languages encountered by ICE (English, Spanish, French, Haitian Creole, Punjabi, Hindi, Arabic, Simplified Chinese, Russian, Turkish, Bengali, Romanian, Portuguese, and Vietnamese). The Auditor observed both the SAA pamphlet and the ICE National Detainee Handbook in all available languages available for distribution as needed. In each of the six hold rooms the Auditor observed the ICE SAA pamphlet in both English and Spanish, the consulate contact list, and the DHS prescribed zero-tolerance posters. The Auditor interviewed the one detainee who had just been processed who confirmed that he was provided the SAA pamphlet during his initial intake interview by the DO and was told about the zero-tolerance for sexual abuse. Interviews with the SDDOs and DOs confirmed that detainees are provided an SAA pamphlet during their intake processing and that the posters are continuously displayed on the walls in locations where the detainees have access to include the six holding cells.

**Corrective Action:**

No corrective action needed.

## §115.134 - Specialized training: Investigations

**Outcome:** Meets Standard

**Notes:**

(a)(b) The facility provided for compliance review Policy 11062.2 that requires, "OPR provide specialized training to OPR investigators who conduct investigations into allegations of sexual abuse and assault, as well as Office of Detention Oversight staff, and other OPR staff, as appropriate. The training should cover, at a minimum, interviewing sexual abuse and assault victims, sexual abuse and assault evidence collection in confinement settings, the criteria and evidence required for administrative action or prosecutorial referral, and information about effective cross-agency coordination in the investigation process." The lesson plan for this specialized training is the ICE OPR Investigating Incidents of Sexual Abuse and Assault, which covers in depth investigative techniques, evidence collections, and covers all aspects to conducting an investigation of sexual abuse in a confinement setting. The agency also offers another level of training, the PREA Fact Finders Training, which provides information needed to conduct the initial investigation at the facility to determine if an incident has taken place or to complete the administrative investigation. This training includes topics related to interacting with traumatized victims; best practices for interacting with LEP detainees; best practices for interacting with

Lesbian, Gay, Bi-sexual, Transgender, Intersex (LGBTI), and disabled detainees; and an overall view of the investigative process. Both trainings and documented evidence of training for ICE staff were available on the ERAU SharePoint for review by the Auditor. The AFOD advised the designated facility administrative investigator is the PREA Field Coordinator and that any investigation conducted at the facility would be performed by him or another trained investigator. During an interview with the PREA Field Coordinator he confirmed that he has received the required training and provided the Auditor with a copy of his training certificate. There were no allegations of sexual abuse at the BSS for the audit period.

**Corrective Action:**

No corrective action needed.

## §115.141 - Assessment for risk of victimization and abusiveness

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c)(d)(e) The facility provided for compliance review Policy 11087.1 that requires, "The FOD, ensure that before placing detainees together in a hold room, there shall be consideration of whether a detainee may be at a high risk of being sexually abused or assaulted, and, when appropriate, shall take necessary steps to mitigate any such danger to the detainee. The FOD shall ensure that detainees who may be held overnight with other detainees are assessed to determine their risk of being either sexually abused or assaulted or sexually abusive, to include being asked about their concerns for their physical safety. The FOD shall ensure that the following criteria are considered in assessing detainees for risk of sexual victimization, to the extent that the information is available: Whether the detainee has a mental, physical, or developmental disability; The age of the detainee; The physical build and appearance of the detainee; Whether the detainee has previously been incarcerated or detained; The nature of the detainee's criminal history; Whether the detainee has any convictions for sex offenses; Whether the detainee has self-identified as Lesbian, Gay, Bisexual, Transgender, or intersex (LGBTI) or gender nonconforming; Whether the detainee has self-identified as previously experiencing sexual victimization; and the detainee's own concerns about his or her physical safety. The FOD shall implement appropriate controls on the dissemination of any sensitive information regarding a detainee provided pursuant to screening procedures. For detainees identified as being at high risk for victimization, the FOD shall provide heightened protection, including continuous direct sight and sound supervision, single-housing, or placement in a hold room actively monitored on video by a staff member sufficiently proximate to intervene, unless no such option is feasible." As noted earlier, BSS detainees are held for five hours or less and never overnight. The SDDO/PSACM and DO interviews about the intake process indicated all detainees arriving at BSS are screened utilizing the Risk Classification Assessment (RCA) form. The assessment is a computerized program that addresses specific vulnerabilities including whether the detainee has any concerns for their safety, concerns based on their sexual orientation, any instances of prior persecution or torture, a victim of sexual abuse or a violent crime. The processing DO uses information received through this document and any other information they may have available, including interviewing the detainee about their own safety concerns, to determine their potential for victimization or abusiveness. If the processing DO believes the individual may be at high risk of being victimized or has an abuse history, they are placed on direct supervision in a separate hold room. As previously noted, each of the hold rooms (b) (7)(E) which can also be monitored. Interviews conducted with the ICE ERO staff confirmed information obtained during the intake process is not shared with anyone except on a need-to-know basis. Paper

copies of the RCA form are kept secured under lock and key and the computer files are password protected and accessible by only those individuals with a need for this information.

**Corrective Action:**

No corrective action needed.

## §115.151 - Detainee reporting

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review Policy 11087.1, that requires "the FOD ensure that detainees are provided instructions on how they can privately report incidents of sexual abuse or assault, retaliation for reporting sexual abuse or assault, or staff neglect or violations of responsibilities that may have contributed to such incidents to ERO personnel. The FOD shall implement procedures for personnel to accept reports made verbally, in writing, anonymously, and from third parties and promptly document any verbal reports. The FOD shall ensure that detainees are provided with instructions on how they can contact the DHS Office of the Inspector General (OIG) or, as appropriate, another public or private entity which is able to receive and immediately forward detainee reports of sexual abuse or assault to agency officials to confidentially and, if desired, anonymously, report these incidents." Detainees processed at the BSS are informed through the SAA pamphlet specifically about reporting allegations of sexual assault during intake. During the onsite tour of the intake area and six hold rooms, the Auditor observed telephones and postings in English and Spanish providing telephone numbers for the DHS OIG, Detention Reporting and Information Line (DRIL), and consulate offices. The Auditor tested the DHS OIG telephone line on a randomly selected hold room telephone and was able to complete the call. The instructions for detainees include a method for making a call without inputting their PIN. The interviews with the BSS staff confirmed that each would accept any allegation of sexual assault and report them immediately no matter how it was received and that all verbal allegations would be put in writing by the end of their shift. There were no allegations reported at the BSS during the audit period. The detainee interviewed confirmed he was aware of how to report allegations of sexual abuse and was aware of how to access the hotline, if needed.

**Corrective Action:**

No corrective action needed.

## §115.154 - Third-party reporting

**Outcome:** Meets Standard

**Notes:**

The facility provided for compliance review Policy 11087.1, that requires, "the FOD implement procedures for personnel to accept reports made verbally, in writing, anonymously, and from third parties and promptly document any verbal reports." Interviews conducted with the ICE ERO staff confirmed they are aware to accept all third-party reports of sexual abuse and document those received verbally in writing. The agency has established a method to receive third party reports of sexual abuse and it can be found on the ICE website at http://www.ice.gov/PREA. The DHS OIG poster was observed by the Auditor posted in the Attorney/Detainee Visitation Area. There were no allegations of sexual abuse reported during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.161 - Staff reporting duties

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review Policy 11062.2, that requires," All ICE employees immediately report to a supervisor or a designated official any knowledge, suspicion, or information regarding an incident of sexual abuse or assault of an individual in ICE custody, retaliation against detainees or staff who reported or participated, about such an incident, and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.  ICE employees shall not reveal any information related to a sexual abuse or assault allegation to anyone other than to the extent necessary to help protect the safety of the victim or prevent further victimization of other detainees or staff, or to make medical treatment, investigation, law enforcement, or other security and management decisions."  The interviews conducted with the ICE ERO staff at BSS confirmed awareness of their responsibility to immediately report all incidents of sexual assault, sexual abuse, retaliation, and staff neglect of duties that may have contributed to any sexual abuse or sexual assault.  These staff also informed the Auditor about their responsibility to immediately report all allegations of sexual abuse to their supervisor and document the known facts to them in writing as soon as possible but prior to the end of their shift, as well as their obligation to not disclose any information that they become aware of except on a need-to-know basis.  The BSS staff were also knowledgeable of their ability to report outside their chain of command, as provided in their training if necessary.  If needed, staff may report directly to the PREA Field Coordinator or utilize the DRIL or DHS OIG reporting lines.  There were no allegations reported at the facility during the audit period.

(d) The facility provided for compliance review Policy 11062.2, that requires, "If the alleged victim is under the age of 18 or determined, after consultation with the relevant OPLA Office of the Chief Counsel (OCC), to be a vulnerable adult under a State or local vulnerable persons statute, report the allegation to the designated State or local services agency as necessary under applicable mandatory reporting laws; and document his or her efforts taken under this section."  As noted earlier in this report BSS does not accept juvenile detainees.  The interview with the AFOD acknowledged her reporting obligations under this subpart.  She indicated if a vulnerable adult was ever the victim of sexual abuse at the BSS, she would contact the relevant ICE OPLA OCC office and report the allegation.  She also confirmed her requirement to report the allegations to the designated State or local services agency as required by mandatory reporting laws and policy of the State of Illinois. BSS had no incidents involving a vulnerable adult, as there were no allegations reported at the facility during the audit period.

**Corrective Action:**

No corrective action needed.

### §115.162 - Agency protection duties

**Outcome:** Meets Standard

**Notes:**

The facility provided for compliance review Policy 11062.2 that requires, "If an ICE employee has a reasonable belief that a detainee is subject to a substantial risk of imminent sexual abuse or assault, he or she shall take immediate action to protect the detainee." The interviews conducted with the BSS staff confirmed that where it was believed a detainee may be subject to substantial risk of sexual abuse their first response would be to secure the detainee in a safe location and notify their supervisor. The AFOD and SDDO/PSACM confirmed BSS had no instances where a detainee was at substantial risk of sexual abuse during the audit period.

**Corrective Action:**

No corrective action needed.

### §115.163 - Reporting to other confinement facilities

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c)(d) The facility provided for compliance review Policy 11062.2, that requires, "If the alleged assault occurred at a different facility from the one where it was reported, ensure that the administrator at the facility where the assault is alleged to have occurred is notified as soon as possible, but no later than 72 hours after receiving the allegation, and document such notification." The interviews with the AFOD and SDDO/PSACM confirmed that when the facility receives information on any allegation occurring at another facility, the SDDO would be notified and would make notification to the appropriate agency office or facility administrator, within 72 hours by phone call and email, of the alleged incident. These interviews also confirmed that BSS had no such reported incidents during the audit period, but the facility would follow the policy to make the required notifications if they were ever notified of any such incident. The AFOD explained that if the BSS received an allegation from another facility of sexual abuse that was alleged to have occurred at BSS, the incident would be referred for investigation under the procedural guidelines outlined in policy 11062.2. The BSS received no reports from another facility of an allegation occurring at this facility during the audit period.

**Corrective Action:**

No corrective action needed.

### §115.164 - Responder duties

**Outcome:** Meets Standard

**Notes:**

(a) The facility provided for compliance review Policy 11087.1, that requires, "The FOD shall ensure that upon learning of an allegation that a detainee was sexually abused or assaulted, the responder, or his or her supervisor: separates the alleged victim and abuser; preserves and protects, to the greatest extent possible, any crime scene until appropriate steps can be taken to collect any evidence; if the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, requests the alleged victim not to take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and if the sexual abuse or assault occurred within a time

period that still allows for the collection of physical evidence, ensures that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating." The Auditor interviewed six DOs who were proficient in explaining their responsibilities and the steps they would take as a first responder. Their responses coincided with the subpart (a) requirements of separating the alleged victim and abuser; preserving and protecting, to the greatest extent possible, any crime scene until appropriate steps can be taken to collect any evidence; if the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, requesting the alleged victim not to take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and if the sexual abuse or assault occurred within a time period that still allows for the collection of physical evidence, ensuring that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating. Staff interviewed were well trained and informed on ensuring the safety and well-being of detainee victims of sexual assault.

(b) BSS has one non-law enforcement staff working at the facility. During her interview she explained her first responder responsibilities which are to request the alleged victim not take any actions that could destroy physical evidence and then notify law enforcement staff.

**Corrective Action:**

No corrective action needed.


## §115.165 - Coordinated response

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review Policy 11062.2, that requires, "The FOD ensure a coordinated, multidisciplinary team approach to respond to allegations of sexual abuse and assault occurring in holding facilities, or in the course of transit to or from holding facilities, as well as to allegations made by a detainee at a holding facility of sexual abuse or assault that occurred elsewhere in ICE custody. If a victim is transferred between detention facilities or holding facilities, or to any non-ICE facility, ensure that, as permitted by law, the receiving facility is informed of the incident and the victim's potential need for medical or mental health care or victim services." The Auditor was provided and reviewed an ERO Assistant Director's broadcast notifying ERO Field Offices that when sexual abuse victims are transferred to a facility not covered by DHS PREA Standards Subpart A or B from a DHS holding facility, the agency shall, as permitted by law, inform the receiving facility of the incident and the victim's potential need for medical or social services, unless the victim requests otherwise. The AFOD confirmed that her notification of all sexual abuse allegations would be through the SEN procedures to include notifications to the OIG, JIC, Assistant Director for Field Operations, PSA Coordinator, PREA Field Coordinator, and the BPD about a possible criminal investigation. She also stated that any transfer of a detainee sexual assault victim would be handled in accordance with policy and the ERO Assistant Director's broadcast. The facility had no allegations of sexual abuse during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.166 - Protection of detainees from contact with alleged abusers

**Outcome:** Meets Standard

**Notes:**

The facility provided for compliance review Policy 11062.2 that requires, "that an ICE employee, facility employee, contractor, or volunteer suspected of perpetrating sexual abuse or assault is removed from all duties requiring detainee contact pending the outcome of an investigation."  The AFOD confirmed that currently there are no contractors who have contact with detainees or volunteers at the BSS.  She also stated that any ERO staff member alleged to have committed sexual abuse would be removed from all detainee contact until the conclusion of the investigation.  The BSS had no allegations of sexual abuse during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.167 - Agency protection against retaliation

**Outcome:** Meets Standard

**Notes:**

The facility provided for compliance review Policy 11062.2 that requires, "employees not retaliate against any person, including a detainee, who reports, complains about, or participates in an investigation into an allegation of sexual abuse or assault, or for participating in sexual activity as a result of force, coercion, threats, or fear of force."  The AFOD informed the Auditor that any form of retaliation against staff or detainee who reports, complains about, or participates in an investigation into an allegation of sexual abuse, or for participating in sexual activity as a result of force, coercion, threats, or fear of force would not be tolerated.  The six DO and two SDDO interviews confirmed their knowledge and understanding of this policy prohibition of retaliation against any person, including a detainee.  There were no allegations of sexual abuse or retaliation reported during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.171 - Criminal and administrative investigations

**Outcome:** Meets Standard

**Notes:**

(a)(b)(c) The facility provided for compliance review Policy 11062.2, that requires, the "FOD shall conduct a prompt, thorough, and objective investigation by qualified investigators.  The FOD is also required to ensure that the facility complies with the investigation mandates established by the PBNDS 2.11, as well as other relevant detention standards.  Upon conclusion of a criminal investigation where the allegation was substantiated, or in instances where no criminal investigation has been completed, an administrative investigation shall be conducted.  Upon conclusion of a criminal investigation where the allegation was unsubstantiated, the facility shall review any available completed criminal investigation reports to determine whether an administrative investigation is necessary or appropriate.  Substantiated allegation means an allegation that was investigated and determined to have occurred.  Unsubstantiated allegation means an allegation that was investigated, and the investigation produced insufficient evidence to make a final determination as to whether the event

occurred. Administrative investigations shall be conducted after consultation with the appropriate investigative office within DHS, and the assigned criminal investigative entity. The ICE OPR will typically be the appropriate investigative office within DHS, as well as the DHS OIG in cases where the DHS OIG is investigating. The facility shall develop written procedures for administrative investigations, including provisions requiring; preservation of direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data, interviewing alleged victims, suspected perpetrators, and witnesses, reviewing prior complaints and reports of sexual abuse involving the suspected perpetrator, assessment of the credibility of an alleged victim, suspect, or witness, without regard to the individual's status as detainee, staff, or employee, and without requiring any detainee who alleges sexual abuse to submit to a polygraph, an effort to determine whether actions or failures to act at the facility contributed to the abuse, documentation of each investigation by written report, which shall include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings, and retention of such reports for as long as the alleged abuser is detained or employed by the agency or facility, plus five years." The policy also requires that the OPR coordinate with the FOD or SAC and facility staff to, "…ensure evidence is appropriately secured and preserved pending an investigation by federal, state, or local law enforcement, DHS, OIG, and/or OPR." The AFOD detailed the investigative process at the BSS for the Auditor. She stated that upon the facility receiving any allegation of sexual abuse the detainee would be separated and secured pending movement to the LUMC. Notifications would be made to the PREA Field Coordinator, BPD, FOD, OPR, and DHS OIG of the significant incident at the facility. As noted earlier in the report detainees remain at BSS in ICE custody for about five hours and are either released, deported, or transferred to an ICE detention facility. The AFOD further stated that ICE OPR would have first refusal for conducting the sexual abuse investigation. If OPR elects not to investigate the allegation and refers it back to the facility, the facility would ensure that an administrative investigation would be completed by a specially trained SDDO. The Auditor also interviewed the PREA Field Coordinator who is the designated facility administrative investigator who explained these investigative procedures aligning with Policy 11062.2. As noted in 115.134, the PREA Field Coordinator has completed the required investigations training. There were no allegations of sexual abuse during the audit period.

(d) The facility provided for compliance review Policy 11062.2, that requires, "An investigation may not be terminated solely due to the departure of the alleged abuser or victim from the employment or control of ICE." The AFOD and PREA Field Coordinator informed the Auditor that an investigation of sexual abuse is completed regardless of whether the detainee or staff member has left the control of the agency. The facility had no allegations of sexual abuse during the audit period.

(e) The facility provided for compliance review Policy 11062.2, that requires, "When outside agencies investigate sexual abuse or assault, cooperate with law enforcement agencies, OPR, and other outside investigators and endeavor to remain informed about the progress of the investigation, and ensure that detention facilities do the same." The AFOD and PREA Field Coordinator confirmed that BSS would cooperate with all investigative agencies and remain informed and cooperate, to the extent possible, with all investigative entities. The facility had no allegations of sexual abuse during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.172 - Evidentiary standards for administrative investigations

**Outcome:** Meets Standard

**Notes:**

The facility provided for compliance review Policy 11062.2, that requires, "Administrative Investigations impose no standard higher than a preponderance of the evidence to substantiate an allegation of sexual abuse or assault, and may not be terminated solely due to the departure of the alleged abuser or victim from the employment or control of ICE." Interviews with the AFOD and PREA Field Coordinator confirmed that the trained investigators base administrative case findings on a preponderance of evidence. The facility had no allegations of sexual abuse during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.176 - Disciplinary sanctions for staff

**Outcome:** Meets Standard

**Notes:**

(a)(c)(d) The facility provided for compliance review Policy 11062.2, that requires, "Upon receiving notification from a FOD or SAC of the removal or resignation in lieu of removal of staff, for violating agency or facility sexual abuse and assault policies, the OPR will report that information to appropriate law enforcement agencies, unless the activity was clearly not criminal; and make reasonable efforts to report that information to any relevant licensing bodies, to the extent known." Based on an interview with the AFOD, any staff member would be subject to disciplinary or adverse action up to and including removal from their position and the Federal service for substantiated allegations of sexual abuse or violating agency sexual abuse policies. She also stated that no staff member at the BSS has been disciplined for any violation of the zero-tolerance policy and that there were no allegations of sexual abuse reported during the audit period. The AFOD further confirmed that all substantiated sexual abuse allegations would be reported to the BPD, and every effort would be made to notify any licensing agencies in all cases of substantiated allegations as required by policy.

**Corrective Action:**

No corrective action needed.

## §115.177 - Corrective action for contractors and volunteers

**Outcome:** Meets Standard

**Notes:**

(a)(b) The facility provided for compliance review Policy 11062.2 that requires, "an ICE employee, facility employee, contractor, or volunteer suspected of perpetrating sexual abuse or assault is removed from all duties requiring detainee contact pending the outcome of an investigation." The AFOD confirmed BSS currently has no volunteers or contract staff who have contact with detainees. She further explained if that status were to change, any contractor or volunteer who is the subject of an allegation of sexual abuse would be removed from all duties involving detainee contact until the outcome of the investigation. She also stated that all sexual abuse allegations are reported to the BPD, and every effort would be made to notify any licensing agencies of substantiated sexual abuse.

**Corrective Action:**

| |
|---|
| No corrective action needed. |

## §115.182 - Access to emergency medical services

**Outcome:** Meets Standard

**Notes:**

| |
|---|
| (a)(b) The facility provided for compliance review Policy 11087.1, that requires," The FOD shall ensure that detainee victims of sexual abuse or assault have timely, unimpeded access to emergency medical and mental health treatment and crisis intervention services, including emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care." Policy 11062.2 requires, "that such treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation." BSS has no medical or mental health staff assigned to the facility. Detainees requiring any such services would be sent to LUMC. The interview with a medical center representative confirmed detainee victims of sexual assault would be accepted at their facility. The AFOD and PREA Field Coordinator confirmed during interviews that all medical or mental health treatment would be at no cost to the detainee. Further, they explained that a detainee victim of sexual abuse would be provided a medical plan coordinated through (ICE Health Service Corps (IHSC) either virtually or by phone before release. There were no allegations at the facility during the audit period. |

**Corrective Action:**

| |
|---|
| No corrective action needed. |

## §115.186 - Sexual abuse incident reviews

**Outcome:** Meets Standard

**Notes:**

| |
|---|
| (a) The facility provided for compliance review Policy 11087.1, that requires, "The FOD shall conduct a sexual abuse and assault incident review at the conclusion of every investigation of sexual abuse or assault occurring at a holding facility and, unless the allegation was determined to be unfounded, prepare a written report recommending whether the allegation or investigation indicates that a change in policy or practice could better prevent, detect, or respond to sexual abuse and assault. Such review shall ordinarily occur within 30 days of ERO's receipt of the investigation results from the investigating authority. The FOD shall implement the recommendations for improvement, or shall document its reasons for not doing so, in a written justification. Both the report and justification shall be forwarded to the ICE PSA Coordinator." The AFOD, SDDO/PSACM, and PREA Field Coordinator confirmed that at the conclusion of every allegation of sexual abuse an incident review would be completed in accordance with the agency 11087.1 policy. There were no allegations at the facility during the audit period. |

**Corrective Action:**

| |
|---|
| No corrective action needed. |

## §115.187 - Data collection

**Outcome:** Meets Standard

**Notes:**

(a) The facility provided for compliance review Policy 11062.2, that requires, "Data collected pursuant to this Directive shall be securely retained in accordance with agency record retention policies and the agency protocol regarding investigation of allegations.  All sexual abuse and assault data collected pursuant to this Directive shall be maintained for at least 10 years after the date of initial collection, unless Federal, State, or local law requires otherwise."  The AFOD, PREA Field Coordinator, and the SDDO/PSACM confirmed that all case records, supporting documentation and confidential information collected is maintained securely either in a locked filing cabinet with restricted access or electronically with limited user access.  The Auditor was shown the area where these records and documents are maintained.  The facility had no allegations of sexual abuse during the audit period.

**Corrective Action:**

No corrective action needed.

## §115.193 - Audits of standards

**Outcome:**

**Notes:**

This is the second audit for the BSS.  The physical layout of the facility and the staff supervision, (b) (7)(E) provide a safe environment for detainees and staff.  The length of stay for detainees at this facility is approximately five hours, and detainees are rarely held at the facility overnight.  The facility had no allegations of sexual abuse reported within the audit period.  The Auditor determined this facility qualifies for low risk.

**Corrective Action:**

## §115.201 - Scope of Audits

**Outcome:** Meets Standard

**Notes:**

(d)(e)(i)(j) The Auditor was provided full access to the BSS without restriction.  Necessary documentation, including those collected onsite, was provided in a timely manner.  The Auditor was able to conduct all interviews in a private setting, without interruption.  Space for interviews was provided allowing for private interviews and access to a phone for interpretive services.  Audit notices in English, Spanish, Punjabi, Hindi, Simplified Chinese, Portuguese, French, Haitian Creole, Bengali, Arabic, Russian, and Vietnamese were observed by the Auditor posted in each holding room and in various public and private areas of the facility advising detainees and other interested parties they were permitted to send confidential information or correspondence to the Auditor; however, the Auditor received no correspondence from any detainee, staff, or other party.

**Corrective Action:**

No corrective action needed.

**AUDITOR CERTIFICATION:**

I certify that the contents of the report are accurate to the best of my knowledge and no conflict of interest exists with respect to my ability to conduct an audit of the agency under review. I have not included any personally identified information (PII) about any detainee or staff member, except where the names of administrative personnel are specifically requested in the report template.

*Sharon Shaver*                                        8/29/2023
**Auditor's Signature & Date**

(b) (6), (b) (7)(C)                                     8/29/2023
**Program Manager's Signature & Date**

(b) (6), (b) (7)(C)                                     8/29/2023
**Assistant Program Manager's Signature & Date**