# EXHIBIT 4

# PREA Audit: Subpart B
# DHS Immigration Detention Facilities
# PREA Audit Report



| AUDITOR INFORMATION | | | |
|---|---|---|---|
| **Name of auditor:** | Joseph W. Ehrhardt | **Organization:** | Creative Corrections, LLC |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone number:** | (b) (6), (b) (7)(C) |
| **AGENCY INFORMATION** | | | |
| **Name of agency:** | U.S. Immigration and Customs Enforcement | | |
| **FIELD OFFICE INFORMATION** | | | |
| **Name of Field Office:** | Chicago Field Office | | |
| **ICE Field Office Director:** | Ricardo A. Wong | | |
| **PREA Field Coordinator:** | SDDO Keith Taylor | | |
| **Field Office HQ physical address:** | 101 West Congress Parkway, Chicago, IL 60605 | | |
| **Mailing address:** (if different from above) | Same as above | | |
| **INFORMATION ABOUT THE FACILITY BEING AUDITED** | | | |
| **Basic Information About the Facility** | | | |
| **Name of facility:** | Broadview Service Staging Area | | |
| **Physical address:** | 1930 Beach Street, Broadview, IL 60155 | | |
| **Mailing address:** (if different from above) | Same as above | | |
| **Telephone number:** | 708-449-6722 | | |
| **Facility type:** | ICE Staging Facility | | |
| **Facility Leadership** | | | |
| **Name of Officer in Charge:** | (b) (6), (b) (7)(C) | **Title:** | Supervisory Detention and Deportation Officer |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone number** | (b) (6), (b) (7)(C) |
| **Facility PSA Compliance Manager** | | | |
| **Name of PSA Compliance Manager:** | Keith T. Taylor | **Title:** | Supervisory Detention and Deportation Officer |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone number** | (b) (6), (b) (7)(C) |

**AUDIT FINDINGS**

**NARRATIVE OF AUDIT PROCESS AND DESCRIPTION OF FACILITY CHARACTERISTICS:**

**Directions:** Discuss the audit process to include the date of the audit, names of all individuals in attendance, audit methodology, description of the sampling of staff and detainees interviewed, description of the areas of the facility toured, and a summary of facility characteristics.

A Prison Rape Elimination Act (PREA) on-site audit of the U.S. Immigration and Enforcement (ICE) operated Broadview Service Staging Area (BSSA) was conducted on September 10-11, 2018 by Joseph W. Ehrhardt, certified PREA Auditor contracted through Creative Corrections, LLC of Beaumont, Texas. This was the first PREA audit for BSSA. BSSA is a very short-term staging facility (Subpart B) operated by the ICE – Chicago Field Office in Broadview, Illinois. The facility has a designed capacity of 236 detainees and accepts both male and female adults. No juveniles are held at the facility. The purpose of the facility is to receive, process, and prepare detainees for transport to other detention facilities, release, or re-patriotization. The purpose of the audit was to determine compliance with the Department of Homeland Security (DHS) PREA standards.

The point of contact established for BSSA was through the External Reviews and Analysis Unit (ERAU) Team Lead (b) (6), (b) (7)(C). (b) (6), (b) (7)(C) provided the completed Pre-Audit Questionnaire (PAQ), along with supporting documents on the secure ERAU SharePoint website approximately two-weeks prior to the on-site portion of the audit. Pre-audit preparation included a thorough review of all documentation and supportive materials provided by the Team Lead along with the data included in the PAQ. Telephonic interviews were conducted with available OPR staff. In addition, an on-line search was conducted of public records pertaining to the operation of BSSA. The documentation received included agency Directive ICE 11062.2: Sexual Abuse and Assault Prevention and Intervention (May 22, 2014), ICE Policy 11087.1: Operations of Enforcement and Removal Operations (ERO) Holding facilities, training curricula, investigative protocols, and procedures and the ICE National Detainee Handbook.

An entry briefing, led by the ERAU Team Lead (b) (6), (b) (7)(C), who was present in substitution fo (b) (6), (b) (7)(C), was conducted shortly after arrival at the facility on day one of the on-site review. Those present at the entry-brief were:

    ERAU Team Lead (b) (6), (b) (7)(C)
    ICE Assistant Field Office Director (AFOD) (b) (6), (b) (7)(C)
    ICE Supervisory Deportation and Detention Officer (SDDO) (b) (6), (b) (7)(C)
    Creative Corrections Certified PREA Auditor Joseph Ehrhardt

Introductions were given and the Auditor provided a tentative schedule and overview of the audit process.

Immediately following the entry-briefing, the AFOD and SDDO led the Auditor and the ERAU Team lead on a tour of the facility. At the request of the Auditor, the tour followed the path of a detainee's admission to the facility; from the sally port, to the frisk search, to temporary holding, to processing, to holding pending transport.

BSSA is operated in a suburban industrial park about 15 miles west of Lake Michigan and downtown Chicago. The facility is a rectangular masonry warehouse, which has been retrofitted with both internal and external correctional fixtures (b) (7)(E)

The facility has a mezzanine which accommodates the staff break/conference/muster room. There is no access to this area by detainees. The secure stairway is behind a locked door and adjacent to a locked vault and staff office.

There is a receiving/processing/detention area that is adjacent to the sally port which encompasses one-half of the building. Only sworn ICE Deportation and Detention Officers (DDO) work in this area. In this area are three male holding areas (two large and one medium-sized) and a medium-sized female holding cell. The medium cells have one toilet and sink, several institutional cushion chairs and a telephone. The one large male cell has three toilets and the other has two toilets and two showers. Currently, no detainees are held beyond 12 hours and showering is not occurring at BSSA. Both large cells have the large cushion chairs and telephones. At the Auditor's request, the telephone in the male medium holding cell was operated by the SDDO and DHS OIG was contacted anonymously and without need for payment. There are also two isolation cells, each with a sink and toilet. Only one is currently in use. The other is being used for storage as it is currently not needed. Outside the detention cells which ring the exterior half of the building is an open frisk search area and 21 partitioned booths where ICE processing staff can interview detainees. These interviews follow a quick intake performed adjacent to the processing area and the frisk search. No detainee is placed in a holding cell without being pat frisked. The intake (R & D) area is adjacent to a locked property room. There is also a medical office and a private interview room with windows where private interviews and mental health examinations may take place as ordered by the Immigration Judge and are performed by clinicians who travel to BSSA. This is where detainee interviews took place. Next to the medical office is the command center (b) (7)(E) The command center contains (b)(7) video monitors (b) (7)(E)

There are normally (b)(7)(e) contractor security officers on each shift. (b) (7)(E) They have no professional contact with the detainees.

On the opposite side of the building is a large office area containing twenty-five cubicles and four offices, where fugitive teams, detention officers, and supervisory staff can access detainee data and prepare reports as necessary.

Finally, adjacent to the secure entry lobby is a visiting room with booths to accommodate legal/public visitation.

BSSA processed nine detainees on September 10, 2018 and 26 on September 11, 2018. In the preceding 12 months, BSSA processed 3,635 detainees with an average daily population of 9.9 detainees. The average time in custody is 12 hours.

All required PREA postings and Audit Notices were posted in both holding cells, processing areas, and corridors in both English and Spanish. The Auditor has received no correspondence from detainees, detainee family members or the public regarding concerns at BSSA to date.

**SUMMARY OF OVERALL FINDINGS:**

**Directions:** Discuss audit findings to include a summary statement of overall findings and the number of provisions which the facility has achieved compliance at each level: Exceeds Standard, Meets Standard, and Does Not Meet Standard.

On Tuesday, September 11, 2018, an exit briefing was conducted following the onsite audit at Broadview Service Staging area (BSSA). The exit brief was opened by ERAU Team Lead (b) (6), (b) (7)(C) and turned over to the Auditor for an overview of the on-site findings recommendations and close-out summary. Those in attendance at the briefing were:

> ERAU Team Lead (b) (6), (b) (7)(C)
> ICE Assistant Field Office Director (AFOD) (b) (6), (b) (7)(C)
> ICE Supervisory Deportation and Detention Officer (b) (6), (b) (7)(C)
> Creative Corrections Certified PREA Auditor Joseph Ehrhardt

During the Exit Briefing, the Auditor discussed the observations regarding the operation of BSSA in accordance with the DHS PREA regulations. The Auditor observed a positive atmosphere where detainees were treated with appropriate care and respect and where the safety of all persons in the facility was paramount. Administrative and management staff work side-by side with the DDOs and detainees and often engaged in conversation with detainees. Detainees are physically escorted at all times by at least (b)(7)(E) DDO and within eyesight of at least (b)(7)(E) other DDO. There was no instance when the Auditor witnessed unescorted detainees.

All pat frisk searches are performed outside the detainees clothing and in full sight of all officers in the processing area. Cross-gender pat-frisk searches are conducted only in exigent circumstances and always with (b)(7)(E) staff member present. All of ten detainees interviewed reported that the pat frisk search that they received upon admission to the facility was appropriately performed. This Auditor observed more than a dozen pat frisk searches performed by multiple personnel during the two-day period and had no concerns with what was witnessed.

The Auditor had two opportunities to witness operations in the Control Room and to review log entries. (b) (7)(E) _____. BSSA has installed "pull-across" partitions in front of all detainee toilets which provide privacy to detainees when toileting. (b) (7)(E) previously allowed partial viewing was occluded with dark tape. * See recommendations. Detainees never shower at BSSA because the facility closes for the day before evening showers would take place. It should be noted that there is normally (b)(7)(E) contractor security officer and (b)(7)(E) DDO in the Control Room monitoring both detainee safety and the physical security of the facility.

Because of the very short tenure of a detainee's stay at BSSA and most detainees arriving at BSSA are arriving as pre-processed detainees, intake processing is brief and often involves a quick review of the detainee record. The Auditor witnessed this process and was able to review the interview process of a new detainee coming in from the street.

During the complete audit process, the Auditor had the opportunity to interview 10 detainees (27%), (b)(6) DDOs (62%), (b)(7)(E) SDDOs (66%), the local AFOD, the Field PREA Coordinator, staff from the Headquarters (HQ) PREA Coordinator and OPR. All relevant HQ documents were reviewed pre-audit and the facility's operating procedure binder was carefully reviewed on day two of the on-site audit.

The Auditor completed the audit process using a triangular approach to analyzing the documents reviewed, interviews conducted and operational observations made. The review of 30 PREA standards resulted in one standard having been exceeded (115.131); 27 standards being met (115.111; 115.115; 115.116; 115.117; 115.118; 115.121; 115.122; 115.132; 115.134; 115.141; 115.151; 115.154; 115.161; 115.162; 115.163; 115.164; 115.165; 115.166; 115.167; 115.171; 115.172; 115.176; 115.177; 115.182; 115.186; 115.187 and 115.201; one standard being non-applicable (115.114); and one standard not being met (115.113), requiring corrective action. No written annual review of staffing needs was performed by BSSA. Such a review is required for compliance with 115.113 (b) and corrective action shall be required.

In addition to the Corrective Action Plan required for 115.113, the Auditor made two recommendations to the facility:
1) BSSA should consider removing the tape which currently blocks the viewing of detainees using the toilet in the male holding cell and have the cameral digitally pixelated to permanently resolve a potential violation if the tape were to fall off or be removed.
2) BSSA should consider the re-training of all detention staff servicing the Chicago Field Office on First Responder duties. While all supervisory staff and the preponderance of DDOs were immediately aware of their duties, there were a few DDO staff interviewed who were unsure and required significant prompting.

The Auditor recognizes the cooperation and openness of the staff and administration at BSSA, from the staff of the Chicago Field Office and from the ICE Headquarters staff.

| SUMMARY OF AUDIT FINDINGS | |
|---|---|
| Number of standards exceeded: | 1 |
| Number of standards met: | 27 |
| Number of standards not met: | 1 |
| Number of standards N/A: | 1 |

**PROVISIONS**

**Directions:** In the notes, the auditor shall include the evidence relied upon in making the compliance or non-compliance determination for each provision of the standard, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Corrective Action Plan Final Determination, accompanied by information on specific corrective actions taken by the facility. Failure to comply with any part of a standard provision shall result in a finding of "Does not meet Standard" for that entire provision, unless that part is specifically designated as Not Applicable. For any provision identified as Not Applicable, provide an explanation for the reasoning. If additional space for notes is needed, please utilize space provided on the last page.

### §115.111 – Zero tolerance of sexual abuse; Prevention of Sexual Assault Coordinator.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) BSSA meets the standard provision. ICE Directive 11062.2 No. 2 details the agency's mandate of zero tolerance for all forms of sexual abuse and outlines the agency's approach to preventing, detecting and responding to allegations of sexual abuse. Interviews with all DDOs and SDDOs, plus all detainees but two, and (b) (7)(E) contract staff verified a strong understanding of the agency's zero tolerance policy.

### §115.113 – Detainee supervision and monitoring.
**Outcome:** Does not Meet Standard (requires corrective action)
**Notes:**

(a) The facility meets the standard provision. The agency has reduced the flow of detainees into BSSA in the past 12 months. ICE Policy 11087.1-4.1 1-4) sets clear guidelines for detainee supervision and these guidelines were observed to be in practice. While there is no minimum staffing requirement, the policy requires that the FOD ensure that there are adequate staff to provide "sufficient" supervision of detainees. The current average daily population is 9.9 detainees with a current sworn officer roster of (b)(7)(E) The Field PREA Coordinator confirmed that staffing levels can be maintained through the reassignment of Field Office staff. No records were available for daily BSSA staff attendance during the audit period. The facility has the flexibility to bring other officers from the Fugitive Team into the facility to assist when special circumstances exist. Observations by the Auditor illustrated that no DDO handled detainees are out of the eyesight of at least (b)(7)(E) other DDO and in the majority of detainee movements, there were an average of (b)(7)(E) DDOs in sight/sound proximity with continuous video coverage and monitoring.

(b) The facility does not meet the standard provision. While BSSA has developed comprehensive detainee supervision guidelines, the annual review has not taken place since 2016. Interviews with the AFOD, the SDDO, and the PREA Field Coordinator indicate that the facility has been advised by ICE HQ that the yearly review is not required and ICE HQ will not entertain it. Corrective Action is required. Unless the standards are amended to relieve this requirement, BSSA shall complete the required annual review of the detainee supervision guidelines.

(c) The facility meets the standard provision. Interviews with the AFOD, the SDDO and the PREA Field Coordinator reinforce that BSSA follows ICE Policy 11087.1 – 4.1 1)-4). The AFOD reported that a deliberate reconfiguration of detainee holding practices was enacted in 2017 to reduce the detainee hold load at BSSA from a detainee hold load that previously exceeded 100 detainees regularly at least one day per week, to a maximum hold load of 40 detainees at one time. Daily hold records were not available for review by the Auditor when requested, but the PAQ completed by the SDDO indicated a total of 3,635 detainees in the prior 12 months, which provides an average daily hold of 9.9 detainees. Interviews with both the SDDO and the PREA Field Coordinator placed the highest supervision ration at (b) (7)(E) .

### §115.114 – Juvenile and family detainees.
**Outcome:** Not Applicable (provide explanation in notes)
**Notes:**

BSSA does not hold juvenile or family detainees. ICE Policy 11087.1 prohibits the detention of juveniles in Adult Service Staging Areas. This was confirmed by interviews with both the SDDOs and all DDOs. Juveniles who falsely represent their identity as adults are moved to a facility which exclusively serves juveniles immediately after the false representation is discovered.

### §115.115 – Limits to cross-gender viewing and searches.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(b) The facility meets the standard provision. ICE Policy 11087.1 – 4.5 1) requires pat-down searches to be performed by same gender officers where operationally feasible. In an interview with the SDDO, they advised that pat-down searches at BSSA are performed by same gender officers, unless there is no same gender officer in the facility. BSSA currently has (b) (7)(E) sworn female officer, who reported that she had never performed a pat-down frisk of a male detainee at BSSA. All interviewed male detainees were searched by a male DDO. Cross-gender strip and body cavity searches are prohibited by policy except in exigent circumstances. Interview with the Field PREA Coordinator confirmed that cross-gender strip searches are not performed at BSSA and if an exigent circumstance arose, a SDDO would be advised and an incident report would be generated. All interviewed staff at BSSA reported having never performed a cross-gender strip search or body cavity search.

(c) The facility meets the standard provision. During the on-site audit, the Auditor was able to confirm via staff interviews, that (b) (7)(E) male DDO had performed a pat frisk of a female detainee when no female staff were in the building. A (b) (7)(E) DDO was present and the cross-gender search was recorded on the detainee's intake form. The Auditor was unable to identify this detainee or retrieve their intake form as the search had taken place several months before and the DDO could no longer identify the detainee. All interviewed female detainees were searched by the female DDO. Cross-gender pat frisk searches are recorded on the detainee's intake form and the exigent circumstance is noted.

(d) The facility meets the standard provision. All toilets have pull across partitions to exclude cross-gender viewing of detainee toileting. The Auditor witnessed the partitions in use and they are adequate to provide privacy to detainees who are using the (b) (7)(E) . All cameras were viewed by the Auditor. Cross-gender announcements were both reported by interviewed DDOs and witnessed by the Auditor during the two day onsite audit.

(e) The facility meets the standard provision. Cross-gender strip and body cavity searches are regulated by ICE Policy 11087.1 – 4.5 2) and are limited only to those performed in exigent circumstances or by a licensed medical practitioner. No interviewed security staff at BSSA has performed a cross-gender strip or body cavity search. All interviewed custody and supervisory staff indicated that they would ask a detainee to voluntarily identify their gender if such information were needed and the majority of staff recited the procedural prohibition from performing strip searches to determine a detainee's gender.

(f) The facility meets the standard provision. All strip searches and body cavity searches are required to be documented under ICE policy 11087.1 – 4.5 2). Interviewed BSSA staff indicated that any strip search or visual body cavity search would be the result of a special incident and would involve the notification of a SDDO and the generation of an incident report. Pat Frisk training records of all current DDO staff were reviewed by the Auditor.

### §115.116 – Accommodating detainees with disabilities and detainees who are limited English proficient.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The facility meets the standard provision. ICE Directive 11062.2 – 5.6 1) requires the Field Office Director (FOD) to ensure that BSSA staff provide all opportunities to detainees with disabilities to benefit from all aspects of agency and facility efforts to prevent, detect, and respond to sexual abuse and assault. Facility postings in all holding cells and processing areas in English and Spanish provide prevention and response information. Interviewed BSSA staff reported reading PREA materials to visually impaired detainees and were aware of how to access services for detainees with auditory impairment. These services included sign language interpreters and Teletypewriter (TTY) machines. Mental health issues are handled through acute psychiatric services and by referrals for long term psychological and psychiatric services to receiving detention facilities. If the detainee is not in acute crisis, the DDOs shall explain their PREA rights to them. If they are in acute crisis, all processing stops and the detainee is transported to the local Acute Mental Health Center at Loyola Hospital and shall remain out of population until cleared to return. This procedure was confirmed by the Field PREA Coordinator.

(b) The facility meets the standard provision. ICE Directive 11062.2 -5.6 2) requires the FOD to ensure that BSSA staff provide all opportunities to detainees, who are limited English proficient to benefit from all aspects of agency and facility efforts to prevent, detect, and respond to sexual abuse and assault. BSSA provides all PREA materials in English and Spanish in all holding cells and processing areas. There are several bilingual (Spanish/English) staff on duty at BSSA and the agency provides language line services at BSSA. The Auditor reviewed the facility procedures binder which mirrors ICE Directive 11062.2-5.6.2. ICE reporting posters containing Spanish/English and five other common languages were clearly viewed by the Auditor throughout the facility. Interviews with the AFOD, SDDO and DDOs all produced affirmative responses that they utilize the language line during processing to explain detainee PREA rights. The ICE Detainee Handbooks were reviewed by the Auditor and were to be found in sufficient supply in Spanish and English at BSSA. A language line is provided via an ICE contract, which was verified via interview with the agency PREA Coordinator's Office. All interviewed DDOs and SDDOs reported using the language line to communicate with detainees. The Auditor reviewed the ICE PREA posters, which provide reporting procedures to the DHS OIG in English, Spanish, and five other languages. The Auditor reviewed the detainee handbooks. All detainees interviewed but one reported receiving the ICE Detainee Handbook and understanding PREA reporting procedures. All interviewed DDOs and SDDOs reported using the language line to process detainees which includes the requirement to inform them regarding sexual abuse reporting procedures.

(c) The facility meets the standard provision. ICE Directive 11062.2 – 5.6 3) requires that the FOD ensure that BSSA provides in-person or telephonic interpretation for the reporting of sexual abuse allegations. BSSA has these services and all interviewed DDOs were well-versed in how and when to access these services for detainees. Telephones in the detainee hold rooms have untraced access for detainees to make reports to the DHS OIG regarding sexual abuse. Interviewed DDOs indicated that any detainee wishing to make a private report could indicate their desire to do so through their processing using the language line. They would then be allowed a private call in the office adjacent to the medical room, which the DDO would dial and then observe through the glass outside the office.

### §115.117 – Hiring and promotion decisions.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The facility meets the standard provision. Prior to any employee being hired or promoted by the agency, the employee is vetted via a stringent background check by the Office of Professional Responsibility-Personnel Security Unit (OPR-PSU). Contractors are also vetted by OPR-PSU to ensure that the contractor has met each of the three elements of the standard provision. Contract security clauses for both the security and janitorial contracts were confirmed by the Contract Administrator at BSSA. Adherence to the three required elements of the standard provision (that the employee/contractor had not engaged in sexual abuse in a prison, jail, holding, facility, juvenile facility, confinement facility or other institution; that they had not been convicted of engaging or attempting to engage in sexual activity facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to refuse; and had been civilly or administratively adjudicated in the aforementioned activity(ies) was confirmed in writing on 9/18/2018 by the Unit Chief (UC) of the OPR-PSU. There are currently no volunteers working at BSSA.

(b) The facility meets the standard provision. During the application and interview process using the Electronic Questionnaires for Investigations Processing (E-QIP) application, all potential employees are asked to provide details of any misconduct detailed in standard provision (a) in writing. These answers are then scrutinized a second time during the background interview. ICE employees eligible for promotion at BSSA complete an application process which requires an affirmative declaration of any misconduct since the initial hireing process. These processes were confirmed via interview by the UC of OPR-PSU.

(c) The facility meets the standard provision. The Auditor did not have access to employee files, but did review those of contractors. A list of all employees working at BSSA was forwarded to OPR-PSU on 9/18/2018 and documentation containing the dates of all record checks and a summary of findings was sent electronically to the Auditor the same day. All initial checks and re-checks had been performed within the past five years as required by the standard provision. The time periods reported by OPR-PSU were within the Policy Guidelines established under ICE Directives 6-7.0 for employees and 6-8.0 for contractors.

(d) The facility meets the standard provision. Contractor background investigations were reviewed by the Auditor and were confirmed by the AFOD.

(e) The facility meets the standard provision. Material omissions relevant to sexual abuse misconduct or the provision of materially false information are grounds for termination of employment. This requirement was confirmed via interview with the Unit Chief of OPR-PSU.

(f) The facility meets the standard provision. Unless prohibited by law, the agency shall provide information on substantiated allegations of sexual abuse involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work as required in ICE Directive 11062.2.- 5.7. This practice was confirmed by the Unit Chief of OPR-PSU.

### §115.118 – Upgrades to facilities and technologies.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The facility meets the standard provision. Although the facility was acquired and designed prior to 5/6/2014, the AFOD reported that the facility was designed for maximum supervision, detainee viewing and minimizing blind spots. (b) (7)(E)

(b) The facility meets the standard provision. There have been upgrades to the video monitoring system since (b) (7)(E) and the AFOD reported that PREA concerns were weighed in by the FOD in accordance with ICE Policy 11087.1 – 4.1. These upgrades included the addition of (b)(7)(E) new cameras (b) (7)(E)

### §115.121 – Evidence protocols and forensic medical examinations.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency meets the standard. While there were no allegations of sexual abuse at BSSA in the past 36 months, interview with the Deputy Director of OPR Investigations confirmed the use of a uniform evidence protocol which maximizes the potential for collecting usable evidence. The protocol was developed in coordination with DHS and is based on the U.S. Department of Justice's publication "A National Protocol for Sexual Assault Forensic Examinations, Adults/Adolescents."

(b) The facility meets the standard provision. ICE Policy 11081.1 – 4 b) requires the FOD to coordinate with ERO HQ and the ICE PSA Coordinator to ensure that community support services are available and appropriate. The SDDO reported that BSSA has a very good working relationship with Loyola Hospital and they operate rape crisis services in addition to offering Sexual Assault Forensic Examiner (SAFE) or Sexual Assault Nurse Examiner (SANE) examinations.

(c) The agency meets the standard provision. ICE Policy 11081.1 – 5 provides for forensic examinations to be performed on willing detainee sexual abuse victims including the use of a SAFE or SANE at no cost to the detainee. This practice was confirmed by the Field PREA Coordinator.

(d) The agency meets the standard provision. ICE Policy 11081.1-4 allows for the detainee sexual abuse victim to be accompanied by a victim advocate to their forensic examination, if there are no security concerns in doing so. This practice was confirmed by the Field PREA Coordinator.

(e) The agency meets the standard provision. The SDDO reported that they have a good relationship with the Broadview Police Department and the P.D. is cooperative in following PREA mandates and ICE's evidence protocols. Broadview P.D. works in conjunction with Loyola Hospital in following Uniform Evidence Collection protocols. Inquiry to the ombudsman at Loyola Hospital reveals that all police departments in the metro Laredo area utilize their Rape Crisis Center and the hospital follows the Department of Justice Uniform evidence protocol. The Auditor recommends that BSSA develop a Memorandum of Understanding with the Broadview P.D. using language that mimics the standard provision regarding the DHS evidence protocol.

### §115.122 – Policies to ensure investigation of allegations and appropriate agency oversight.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency meets the standard provision. ICE Directive 11062.2 5.7 -1 (a-e, g) specifically outlines the reporting requirements for a facility after there has been an allegation of sexual abuse received. The reporting requirements include the immediate notification of the FOD. The FOD shall notify local law enforcement (Broadview P.D.). The FOD shall notify the ERO Assistant Director of Field Operations within two hours of the allegation. ICE Joint Intake Center (JIC) shall be notified telephonically within two hours of the allegation and again in writing within 24 hours. The JIC shall notify the DHS OIG. If a contractor is involved, the corporation supplying the contractor must be notified by the FOD of the allegation and if the alleged abuse occurred at a different facility than BSSA, the administrator of that facility must be notified by the FOD of the allegation within 72 hours. The practice of following this procedure was verified via interview with the UC of OPR Investigations.

(b) The agency meets the standard provision. The practices required by the standard provision are outlined with detailed description in 11062.2 – 5.9, 5.10, and 5.11. This information is provided to the public in less detail on the ICE website PREA, but the link also directs the public to the complete protocol as described above in ICE Directive 11062.2. Provisions in 5.11 of the Directive require all sexual abuse data to be maintained for 10 years by the ICE HQ PREA Coordinator. These practices were verified via interview on 9/6/18 with the OPR-UC.

(c) The agency meets the standard provision. The protocols for proper agency investigation and oversight as outlined in ICE Policy 11062.1 -5.9 & 5.10 are published on the ICE agency website. This posting was verified during the interview with the OPR-UC and subsequently reviewed by the Auditor. The policy is specific about reporting to the JIC and DHS OIG. The Field PREA Coordinator confirmed that administrative investigations are conducted of all allegations unless unfounded. They are conducted upon conclusion of criminal investigations conducted by local law enforcement or OPR.

(d) The facility meets the standard provision. Reporting directives published in ICE Directive 11062.2-5.9, 5.10, 5.11 require that all allegations of sexual abuse are promptly reported to the ICE HQ PREA Coordinator by the FOD. This practice was verified by telephonic interview with the Field PREA Coordinator.

(e) The agency meets the standard provision. The Field PREA Coordinator confirmed that alleged incidents of sexual abuse are immediately reported to the FOD who contacts local law enforcement but also the JIC, OPR, and DHS OIG. These notifications also ensure that a detainee victim of sexual abuse has been afforded timely access to U immigrant status information as BSSA is such a short-term holding facility.

### §115.131 – Employee, contractor and volunteer training.
**Outcome:** Exceeds Standard (substantially exceeds requirement of standard)
**Notes:**

(a) The facility meets the standard. In accordance with ICE Directive 11062.2 – 5.2, all BSSA employees are trained in all eight elements outlined in the standard provision to ensure the prevention, detection, and response by staff to sexual abuse/assault. This training was verified through interviews with the Field PREA Coordinator, the SDDO and all interviewed sworn ICE staff who work at BSSA. These interviews included both holding staff and fugitive squad staff who may assist in the supervision and processing of detainees. BSSA contractor staff are trained regarding the agency's zero tolerance policy and their duty to report all suspected concerns regarding sexual abuse. All contractors working in BSSA during the on-site audit were interviewed by the Auditor and found to have been trained in accordance with this standard provision. BSSA does not utilize volunteers. Contractor training records were available on-site and were reviewed by the Auditor. The Auditor also reviewed the training curricula for sworn personnel electronically, verified the training and training content via staff interviews and reviewed staff training records in the uploaded documents received prior to the onsite audit.

(b) The facility exceeds the standard provision. All staff are trained prior to assuming duties with detainees and are retrained every year. This exceeds the every two year requirements of the standard provision and was verified by the SDDO and DDO interviews. The Scope of Work (SOW) in force with the security contractor was amended to include yearly re-training of the contractor security staff. There is only ▓ janitorial contractor working at the facility and it was confirmed by the SDDO that they are retrained annually by their facility administrative supervisor.

(c) The facility meets the standard provision. Staff training and retraining requirements are monitored and flagged by the automated DHS PALMS system. The training monitoring was confirmed by the ICE PREA Coordinator's Office. Contractor training is monitored by DHS contracting staff and monitored at BSSA by administrative staff.

### §115.132 – Notification to detainees of the agency's zero-tolerance policy.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

Both the agency and the facility meet this standard. The Auditor was able to easily access the agency website. The website has a PREA link which leads directly to the agency's sexual abuse prevention directives and the agency's zero tolerance policy, consistent with ICE Directive 11062.2 -2. BSSA prominently display's the agency's zero tolerance and sexual abuse reporting instructions throughout the facility including all holding cells, detainee processing areas, and public lobby and corridors. The posters are in Spanish and English and also include reporting instructions in several other languages common to ICE detainees.

All interviewed detainees but one, (10 were interviewed), indicated that they had received the ICE National Detainee Handbook which is available in both Spanish and English and contains an explanation of ICE's zero tolerance policy and an explanation of detainee's PREA rights.

### §115.134 – Specialized training: Investigations.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency meets the standard provision. Interview with the Deputy Director of OPR Investigations confirmed that all agency OPR investigators who actively investigate sexual abuse allegations made by detainees in custody receive specialized training on sexual abuse and effective cross-agency coordination as mandated by ICE Directive 11062.1. – 5.2 3).

(b) The agency meets the standard provision. All specialized investigative training is documented in the training files of agency investigators as verified by interview with the Deputy Director of OPR Investigations.

Note: No specific training records for sexual abuse investigators were reviewed because there were no sexual abuse investigations conducted during the audit period reviewed (36 months) at BSSA and therefore no investigators were identified.

### §115.141 – Assessment for risk of victimization and abusiveness.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The facility meets the standard provision. The SDDO took the Auditor through the admission process which mirrored ICE Policy 11087.1 -4.10.2). The processing DDO will pull up the detainee's initial screening file, if they are arriving from another holding/detention facility and shall have access to their initial screening for sexual abuse victimization/perpetration. If the detainee is brought in directly from the streets, the Fugitive Unit DDO shall perform the initial screening. Staff interviews confirmed this practice. A detainee processing intake was witnessed by the Auditor and a sample form was reviewed with the SDDO.

(b) The facility meets the standard provision. Because the majority of the detainees brought into BSSA are coming from other ICE facilities, the initial ICE screening tool was often completed prior to arrival. That screening is reviewed by the processing DDO and updated or expanded to ensure that all screening information is verified during the current processing. Those detainees coming in from the street shall be fully screened upon admission, barring exigent circumstances, because their stay at BSSA shall be less than 12 hours. The Auditor had the opportunity to witness a detainee processed from the street and the full screening was administered.

(c) The facility meets the standard provision. ICE Policy 11087.1-4.10.2) requires the screening DDO to use the criteria specified in the standard provision to screen new detainees before cell placement. The Auditor reviewed the Screening Instrument. Both the SDDO and the majority of those DDO's interviewed by the Auditor recited the criteria from memory during the staff interviews. The Auditor witnessed a detainee being processed after coming in from the street and the screening process was performed prior to cell placement.

(d) The facility meets the standard provision. BSSA staff affirmatively asks new detainees about prior sexual abuse victimization, violent offense histories and detainee histories of institutional violence or abuse. BSSA staff reported follow-up calls to detainees' former facilities if information is not readily available in the detainee's incoming ICE records. If a detainee identifies as a sexual abuse victim or abuser, they are placed in a holding cell by themselves. If a single cell is not available for a prior sexual abuse victim, they shall be placed in the holding cell apart from any identified abusers and a DDO shall be assigned to closely monitor that holding cell. Identified past or potential abusers shall be placed by themselves in a holding cell. Unless a single cell cannot be made available, this will always be the practice. In the rare exception that they must be housed with other detainees, they shall be housed apart from identified or potential victims and a DDO shall be assigned to provide close supervision.

(e) The facility meets the standard provision. ICE Policy 11087.1-4.10 d) requires all holding facilities to place strict controls on the dissemination of sensitive information regarding detainees provided during the screening process. All interviewed BSSA SDDOs and DDOs affirmed this policy and the facility's practice of strict confidentiality on a "Need to Know" basis. Staff consistently reported the practice of removing a detainee to a private but visible office or holding area to discuss sensitive information with detainees.

### §115.151 – Detainee reporting.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The facility meets the standard provision. ICE Policy 11087.1-4.10.-3) requires the FOD to provide multiple ways for detainees to report alleged sexual abuse, retaliation, or staff neglect or violations of policies. Reports to ERO personnel may be oral, written, or from third parties. Detainees are advised that they can report anonymously both by posted notices and in the detainee handbook. The Auditor requested and witnessed a mock anonymous call to the DHS OIG. The call was successful. Staff interviews reinforced detainee's rights to report sexual abuse and staff's duty to report any allegations made to them as per policy. All detainees interviewed except for one who was newly admitted from the street had been advised of PREA by the admitting DDO or they had read the poster or handbook. Only one detainee interviewed required additional questions to solicit this information.

(b) The facility meets the standard provision. ICE posters in seven common languages direct detainees how to report sexual abuse to the DHS OIG without reporting to BSSA staff. Staff interviews revealed that detainees who need to be processed using the language line are advised how to report sexual abuse to the DHS OIG at the same time using interpretive services.

(c) The facility meets the standard. ICE Policy 11087.1-4.10 3)b requires the FOD to implement procedures for detention staff to accept oral, written, anonymous and/or third party reports of sexual abuse on behalf of detainees. All interviewed SDDOs and DDOs confirmed their obligation to accept verbal, written, and anonymous and/or third party reports regarding sexual abuse on behalf of a detainee and all interviewed staff indicated that they would immediately alert their supervisor of such reports.

### §115.154 – Third-party reporting.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

The agency meets the standard. ICE's sexual abuse zero tolerance and reporting posters enable detainees to have information to make direct reports of sexual abuse to a party outside the operation of the agency, that being the DHS OIG. ICE publications (i.e. ICE PREA Pamphlet, Detainee Handbook and DHS PREA posters) and the agency website, also extend this capability to the general public including detainee family, friends, and advocates by contacting the DHS OIG Hotline as detailed on ICE posters and the website. These practices are in accordance with ICE Policy 11087.1-4.10.3) and all media listed above was eye-witnessed by the Auditor.

### §115.161 – Staff reporting duties.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency and the facility meet the standard provision. ICE Directive 11062.2-5.7 requires all facility staff to immediately and appropriately by procedure, report any knowledge, suspicion or information of sexual abuse that occurred in a facility; retaliation against any detainees or staff who reported or participated in an investigation of an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation. BSSA staff reported access to the DHS OIG hotline as well as access to the Field PREA Coordinator for such reporting. This practice at BSSA was confirmed by the Field PREA Coordinator, the SDDO, and all interviews with sworn DDO's.

(b) The facility meets the standard provision. Of the ▓ custody staff (▓ SDDOs, ▓ DDOs) interviewed at BSSA, all ▓ staff correctly and completely declared an affirmative duty to report as per the procedure described in standard provision (a). All ▓ staff affirmed their training in this regard and all ▓ staff spoke freely of their attention to this duty as sworn personnel even at the proposed wrongdoing of fellow staff members.

(c) The facility meets the standard provision. Both HQ staff (the Deputy Director of OPR Investigations) and BSSA managerial and line staff interviews clearly affirmed that information regarding sexual abuse incidents is only shared with other parties on the strictest "Need to Know" basis as specified in ICE policy 11062.2-5.2 2).

(d) The facility would meet this standard in an exigent circumstance. In normal operations, this standard provision is N/A as juveniles are not staged here. In exigent circumstances or in the case of a vulnerable adult, OPR-DDC has advised that all cases involving juveniles or vulnerable adults are reported, as per ICE Directive 110062.2-5.7), to mandated State child/human services protection agencies.

### §115.162 – Agency protection duties.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

The facility meets the standard. ICE Directive 11062.2-5.2 2) iii requires trained staff to respond affirmatively to perceived or reported threats of sexual abuse to detainees. All interviewed BSSA custody staff advised that they would immediately separate and protect any detainee who verbalized fear of sexual abuse or who they perceived to be at risk of imminent sexual abuse.

### §115.163 – Report to other confinement facilities.

**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a-b)The agency and the facility meet the standard provision. ICE Directive 11062.2-5.7 1) e requires that the administrator of the facility where the alleged assault took place is notified within 72 hours of the allegation. All other reporting, as required by procedure, shall take place immediately. This practice was confirmed by the Field PREA Coordinator. There were no reports of either an allegation made of alleged sexual abuse at BSSA by a detainee or a sexual abuse allegation made at BSSA by a detainee who experienced or knew of sexual abuse at another facility. This information was confirmed by all interviewed BSSA and headquarters staff. During the detainee interviews, a detainee reported knowledge of detainee on detainee sexual abuse at another holding facility in confidence to the Auditor. After advising the detainee that this information was reportable, the Auditor shared this information with the SDDO, the Team Lead, and the AFOD. There was confirmation that this was a pre-reported and pre- investigated incident. The reporting detainee acknowledged that the alleged perpetrator had been removed from the facility due to the incident.

(c)The agency and the facility meet the standard provision. The Field PREA Coordinator confirmed that all notifications regarding an allegation of sexual abuse are noted in the case record.

(d) The agency meets the standard provision. The OPR-DDC confirmed that the facility that held the detainee where the abuse occurred must make all mandatory notifications as well upon receiving notification of the allegation. Both facilities are required by ICE Directive 110062.2-5.7 1)e to report the allegation to the FOD who will follow the policy requirements specified in 115.122(a).

### §115.164 – Responder duties.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a)The facility meets the standard provision. ICE Policy 11087.1-4.11. 2) Requires sworn officers to follow a four-step protocol for first response to an allegation of sexual abuse. There are also protocols for non-officers and for medical personnel. Interviews with ▒▒▒ sworn DDOs and ▒ SDDOs revealed that all interviewees were clear on separating the detainees and informing their supervisors immediately. ▒▒▒▒▒▒▒▒▒▒ DDOs were unsure of the other requirements. Both supervisors were completely aware of their first responder responsibilities. This said, the facility is compliant with this standard provision since all DDOs know to inform the supervisor immediately. It is recommended that all sworn staff receive refresher training on these first responder duties or be issued these duties on a carry-card.

(b)The facility meets the standard provision. All contractor staff and non-officer staff were interviewed and are aware of their first responder responsibilities to ask detainees not to destroy any evidence and then contact a DDO.

### §115.165 – Coordinated response.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency and facility meets the standard provision. ICE Policy 11087.1-4.11 requires the facility to have a multi-disciplinary team to respond to sexual abuse allegations. The policy outlines reporting duties, first responder duties, and provision of medical and mental health services to detainee victims, and sexual abuse and assault incident reviews. Interviews with the Field PREA Coordinator, the SDDOs and DDOs verified practice of these procedures in the event of a sexual abuse allegation at BSSA.

(b) The facility and the agency meet the standard provision. ICE Policy 11087.1-4.11 4) c requires the FOD to inform a receiving ICE or non-ICE facility where a detainee victim may be transferred of the incident and the detainee's need for on-going medical/mental health treatment services. This practice was confirmed by interviews with the AFOD and the Field PREA Coordinator.

(c)The facility meets the standard provision. Interviews with the Field PREA Coordinator and both SDDOs verified that a detainee victim who is transferred from BSSA to a non-ICE Subpart A or Subpart B facility shall have their continued medical and/or mental health treatment needs conveyed to the receiving facility. This notification takes place by both electronic recording on the detainee's file and follow-up conversations with the receiving facility's medical department.

### §115.166 – Protection of detainees from contact with alleged abusers.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

The agency and the facility meet the standard. Interviews with both the OPR-UC and the Field PREA Coordinator verify that ICE Directive 11062.2-5.8 4)c which guarantees that an ICE employee or contractor suspected of perpetrating sexual abuse shall be removed from all duties requiring detainee contact pending the outcome of an investigation. There were no instances of sexual abuse, perpetrated by employees or contract staff, reported at BSSA in the past 36 months. BSSA does not utilize volunteers.

### §115.167 – Agency protection against retaliation.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

The agency and the facility meet the standard. ICE Directive 11062.2-5.3 4) directly and clearly addresses retaliation by ICE employees or contract staff against anyone including detainees who reports, complains about, or participates in an investigation into an allegation of sexual abuse or assault, or for participating in sexual behavior as a result of force, coercion, threats, or fear of force. There were no allegations of retaliation made at BSSA in the past 36 months and therefore the Auditor relied solely on agency policy and the interviews described as follows. Interviews with HQ OPR- Deputy Director of OPR Investigations, the Field PREA Coordinator, and BSSA staff reinforce the zero tolerance for staff and detainee retaliation as an agency and facility.

### §115.171 – Criminal and administrative investigations.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

Note: There were no allegations of sexual abuse/assault made at BSSA in the past 36 months. For each standard provision of this standard, the Auditor is relying on HQ interviews around agency experience at other facilities which mimic a hypothetical situation at BSSA.

(a) The agency meets the standard provision. Interview with the HQ OPR-DDC verified that for each agency investigation of an allegation of sexual abuse, the investigation would be prompt, thorough, objective, and conducted by a specially trained, qualified investigator.

(b) The agency meets the standard provision. Interview with the HQ OPR-DDC revealed that for each criminal investigation into a sexual abuse allegation, an administrative investigation would be completed as well as specified by ICE Directive 11062.2-5.9. The scope of the administrative investigation is based on the findings of the criminal investigation and the investigations are driven by consultations with both the appropriate DHS investigative entity and the assigned criminal investigative body.
(c) The agency meets the standard provision. Interview with the HQ OPR-DOC and OPR-UC verifies that for all sexual abuse investigations, the FOD is responsible to ensure that the procedural requirements of the standard provision are satisfied in accordance with ICE Directive 11062.2.-5.9 -2).

(d) The agency meets the standard provision. ICE Directive 11062.2-5.9 and interviews with the HQ OPR-DOC and OPR-UC verify the agency's prohibition against terminating an investigation into sexual abuse because of the departure of the alleged abuse or victim from the employment or control of the agency.

(e) The facility meets the standard provision. The Field PREA Coordinator reports that BSSA and the Chicago Field Office maintain a good working relationship with the Broadview Police Department and there is an open line of communication for all investigations. The Field PREA Coordinator is the liaison with the Broadview Police Department and advised that when there is an open investigation, they set up interval reviews. These consist of pre-scheduled telephonic conferences where case status and evidentiary requirements are discussed.

### §115.172 – Evidentiary standard for administrative investigations.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

The agency and the facility meet the standard. ICE Directive 11062.2-5.9 1) e sets the evidentiary standard as preponderance of evidence. Interviews with the HQ OPR-DOC and OPR-UC verified that the evidentiary standard for all ICE administrative investigations is preponderance of evidence and never exceeds this level.

### §115.176 – Disciplinary sanctions for staff.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency and the facility meet the standard provision. While there were no instances of reported sexual abuse at BSSA in the past 36 months, ICE Directive 11062.2-5.9 2) mandates that in all cases where sexual abuse or related misconduct are substantiated against a staff member, apart from criminal proceedings, that staff member is subject to disciplinary or adverse action up to and including removal from their position and the Federal service. This practice was confirmed by interview with the Field PREA Coordinator.

(c) The facility meets the standard provision. ICE Directive 11062.2-5, 9 2) also mandates that the facility where the substantiated abuse took place shall cooperate with local law enforcement and shall notify that agency of any administrative staff removals or resignations in lieu of removal. This practice was confirmed by interview with the Field PREA Coordinator.

(d) The agency and the facility meet the standard provision. In response to ICE Directive 11062.2-5.9 2), the facility or OPR shall attempt to inform all relevant licensing agencies of staff removal or resignation in lieu of removal occurring as a result of a substantiated allegation of sexual abuse. This practice was confirmed in an interview with the OPR-UC.

### §115.177 – Corrective action for contractors and volunteers.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a-b) The facility meets the standard provision. ICE Directive 11062.2-5.7 mandates that when a contractor has engaged in sexual abuse, the facility shall notify any relevant licensing body, to the extent known, of any substantiated abuse. The facility has had no reported incidents of sexual abuse in the past 36 months. This report was verified through interviews with the Field PREA Coordinator and the OPR-UC. Any incident of alleged sexual abuse shall also be reported to the JIC, the DHS OIG, and the appropriate local law enforcement authority. The FOD or AFOD shall make these reports. Contractors shall also be removed from all duties requiring detainee contact pending the outcome of the investigation. These practices were confirmed during the interview with the OPR-UC. BSSA does not utilize volunteers.

### §115.182 – Access to emergency medical services.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

(a) The agency and the facility meet the standard provision. ICE Policy 11087.1-4.11.4) mandates that the FOD ensure that detainee victims of sexual abuse or assault have timely, unimpeded access to medical and mental health treatment and crisis intervention services, including emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care. This practice was confirmed during the interview with the Field PREA Coordinator.

(b) The agency and the facility meet the standard provision. That the above referenced services are provided to detainee victims of sexual abuse/assault without cost was also verified during the interview with the Field PREA Coordinator

### §115.186 – Sexual abuse incident reviews.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

> (a)The agency and the facility meet the standard provision. ICE Policy 11087.1-4.11.6) mandates that the FOD shall conduct a sexual abuse and assault incident review at the conclusion of every investigation of sexual abuse and assault occurring at a holding facility and, unless the allegation was determined to be unfounded, prepare a written report recommending whether the allegation or investigation indicates that a change in policy or practice could better prevent, detect, or respond to sexual abuse and assault. Such review shall ordinarily occur within 30 days of ERO's receipt of the investigation results from the investigating authority. This practice was verified by the Field PREA Coordinator.

### §115.187 – Data collection.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)

**Notes:**

> (a)The agency and the facility meets the standard provision. ICE Directive 11062.2-5.12. requires that the facility shall securely retain data collected pursuant to the Directive in accordance with agency retention policies and the agency protocol regarding investigation of allegations of sexual abuse and assault. Hard copy data is forwarded to the Chicago Field Office (FO) and is securely stored in the office of the FOD. Electronic report date collected as part of a sexual abuse investigation is stored on encrypted files by OPR. These practices were verified by the AFOD and the Field PREA Coordinator.

### §115.193 – Audits of standards.
**Outcome:** Not low risk

**Notes:**

> The facility met all standards except for 115.113, due to a HQ determination in conflict with standard provision (b). This issue is currently under review at HQ for resolution and may pre-empt the need for Corrective Action.

### §115.201 – Scope of audits.
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)

**Notes:**

> d. The facility meets the standard provision. The Auditor had access to and was able to observe all areas of BSSA.
>
> e. The facility meets the standard provision. BSSA and ICE ERAU provided all relevant documentation required to perform a thorough PREA compliance audit of BSSA.
>
> i. The facility meets the standard provision. The Auditor was permitted to conduct private interviews with all selected detainees.
>
> j. The facility meets the standard provision. Detainees were informed of the pending audit by notices posted throughout the holding cells and processing areas that were written in both English and Spanish and provided detainees with an address to correspond privately with the Auditor. To date, the Auditor has received no correspondence from or on behalf of any detainee.

**AUDITOR CERTIFICATION:**

I certify that the contents of the report are accurate to the best of my knowledge and no conflict of interest exists with respect to my ability to conduct an audit of the agency under review. I have not included any personally identified information (PII) about any detainee or staff member, except where the names of administrative personnel are specifically requested in the report template.

*Joseph W. Ehrhardt*        December 10, 2018
**Auditor's Signature & Date**

# PREA Audit: Subpart B
# DHS Holding Facilities
# Corrective Action Plan Final Determination



| AUDITOR INFORMATION | | | |
|---|---|---|---|
| **Name of auditor:** | Joseph W. Ehrhardt | **Organization:** | Creative Corrections, LLC |
| **Email address:** | ■■■■■■■■■■■■ | **Telephone number:** | (b) (6), (b) (7)(C) |
| **AGENCY INFORMATION** | | | |
| **Name of agency:** | U.S. Immigration and Customs Enforcement (ICE) | | |
| **FIELD OFFICE INFORMATION** | | | |
| **Name of Field Office:** | Chicago Field Office | | |
| **ICE Field Office Director:** | Richard A. Wong | | |
| **PREA Field Coordinator:** | SDDO Keith T. Taylor | | |
| **Field Office HQ physical address:** | 101 West Congress Parkway, Chicago, Illinois 60605 | | |
| **Mailing address:** *(if different from above)* | | | |
| **INFORMATION ABOUT FACILITY BEING AUDITED** | | | |
| **Basic Information About the Facility** | | | |
| **Name of facility:** | Broadview Service Staging Area | | |
| **Physical address:** | 1930 Beach Street, Broadview, Illinois 60155 | | |
| **Mailing address:** *(if different from above)* | | | |
| **Telephone number:** | 708-449-6722 | | |
| **Facility type:** | ICE Staging Facility | | |
| **Facility Leadership** | | | |
| **Name of Officer in Charge:** | (b) (6), (b) (7)(C) | **Title:** | Supervisory Detention and Deportation Officer |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone number:** | (b) (6), (b) (7)(C) |
| **Facility PSA Compliance Manager** | | | |
| **Name of PSA Compliance Manager:** | Keith T. Taylor | **Title:** | Supervisory Detention and Deportation Officer |
| **Email address:** | (b) (6), (b) (7)(C) | **Telephone number:** | (b) (6), (b) (7)(C) |

**FINAL DETERMINATION**

**SUMMARY OF AUDIT FINDINGS:**

**Directions:** Please provide summary of audit findings to include the number of provisions with which the facility has achieved compliance at each level after implementation of corrective actions: Exceeds Standard, Meets Standard, and Does Not Meet Standard.

On Friday, February 8, 2019, a Corrective Action Plan (CAP) was received from ICE External Reviews and Analysis Unit (ERAU) Team Lead by Creative Corrections, LLC contracted PREA Auditor Joseph W. Ehrhardt. This Corrective Action Plan was in response to the on-site compliance audit conducted at Broadview Service Staging Area (BSSA) on September 10-11, 2018. At that time, the Auditor found BSSA to not be in compliance with PREA Standard Provision 115.113 (b).

Also received was a Custody Programs (CP) Holding Facility Self-Assessment Tool (HFSAT): HQ Compliance Analysis FY18-19. The HFSAT Compliance Analysis determined BSSA to be in compliance with ICE ERO Policy 1108.1: Operations of ERO Holding Facilities. (September 22, 2014) and was attested to by the Unit Chief, Special Populations and Programs Unit-SPPU.

Review of the Corrective Action Plan included the HFSAT completed for BSSA by the assigned Supervisory Detention and Deportation Officer on 12/20/2018. The HFSAT review was determined to be complete and comprehensive, satisfying each component of PREA standard provision 115.113(b). The HFSAT review was also consistent with the levels of supervision, video supervision, and security contractor supervision witnessed by the Auditor during the on-site audit. These practices were also affirmed by the Auditor's interviews of local Subject Matter Experts (SME's), supervisory and line staff and procedural reviews.

Given that the HFSAT review covers nine of the 12 months that the Auditor reviewed on-site and is consistent with the findings of compliance that the Auditor determined in the original findings, the Auditor accepts the CAP developed and submitted by the facility and ERO Headquarters.

In lieu of this determination, the summary findings of the PREA compliance audit performed at BSSA are as follows: the review of 30 PREA standards resulted in one standard having been exceeded (115.131); 28 standards being met (115.111; 115.113; 115.115; 115.116; 115.117; 115.118; 115.121; 115.122; 115.132; 115.134; 115.141; 115.151; 115.154; 115.161; 115.162; 115.163; 115.164; 115.165; 115.166; 115.167; 115.171; 115.172; 115.176; 115.177; 115.182; 115.186; 115.187 and 115.201); and one standard being non-applicable (115.114).

The Auditor again recognizes the cooperation of the staff and administration of BSSA, from the staff of the Chicago Field Office and from the ICE Headquarters staff.

## PROVISIONS

**Directions:** After the corrective action period, or sooner if compliance is achieved before the corrective action period expires, the auditor shall complete the Corrective Action Plan Final Determination. The auditor shall select the provision that required corrective action and state if the facility's implementation of the provision now "Exceeds Standard," "Meets Standard," or "Does not meet Standard." The auditor shall include the evidence replied upon in making the compliance or non-compliance determination for each provision that was found non-compliant during the audit.

**§115. 113 - Detainee supervision and monitoring**
**Outcome:** Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period)
**Notes:**

> On February 8, 2019, the Auditor received a copy of the Holding Facility Self-Assessment Tool (HFSAT) for BSSA. This report was completed by the assigned BSSA Supervisory Deportation and Detention Officer on December 20, 2018 after facility staff performed the annual review required by this standard. The HFSAT was reviewed and approved by the Assistant Field Office Director (AFOD) and BSSA was found to be in compliance with ICE ERO Policy 11081.1: Operations of ERO Holding Facilities (September 22, 2014) after HQ Compliance Analysis by the Unit Chief of the Special Populations and Programs Unit-SPPU.
>
> Review of the HFSAT by the Auditor found that the HFSAT satisfied all components of the annual review as specified by standard provision 115.113, element (b). The findings of the HFSAT are also consistent with the on-site findings of the Auditor with regard to supervision and monitoring; as well as the interviews and procedural review for BSSA. The Auditor determines that BSSA is now in substantial compliance of this standard.

**§115.** Choose an item.
**Outcome:** Choose an item.
**Notes:**

|  |
|---|
|  |

**§115.** Choose an item.
**Outcome:** Choose an item.
**Notes:**

|  |
|---|
|  |

**§115.** Choose an item.
**Outcome:** Choose an item.
**Notes:**

|  |
|---|
|  |

**§115.** Choose an item.
**Outcome:** Choose an item.
**Notes:**

|  |
|---|
|  |

**§115.** Choose an item.
**Outcome:** Choose an item.
**Notes:**

|  |
|---|
|  |

**§115.193**
**Outcome: Low Risk**
**Notes:**

> Upon completion of the Corrective Action Plan, BSSA is now determined to be Low Risk.

**AUDITOR CERTIFICATION:**
I certify that the contents of the report are accurate to the best of my knowledge and no conflict of interest exists with respect to my ability to conduct an audit of the agency under review. I have not included any personally identified information (PII) about any detainee or staff member, except where the names of administrative personnel are specifically requested in the report template.

*Joseph W. Ehrhardt*     February 10, 2019
**Auditor's Signature & Date**