# EXHIBIT 8

# DECLARATION OF LAURA SMITH

I, LAURA SMITH, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am an immigration attorney and the Executive Director at the Children's Legal Center, 1100 W. Cermak Road, Suite 422, Chicago, Illinois 60608. I have 15 years of experience representing noncitizens, 8 of which as the Executive Director of Children's Legal Center.

2. I have represented multiple clients who have been detained at the ICE Broadview Staging Service Area ("Broadview") at 1930 Beach St. in Broadview, Illinois.

3. When I enter my client's information into the ICE online detainee locator system (https://locator.ice.gov/odls/#/search), which is supposed to list the facility where an individual is detained, it does not list my clients as being detained at Broadview. Instead, the ICE online detainee locator system states: "Call ICE for Details". I often only learn that my client is at Broadview through their family members. Otherwise, I only find out that they were at Broadview after they are transferred to another facility.

4. When my clients are detained at Broadview, I am unable to contact them. When my staff call the numbers provided by Google for Broadview at (708) 343-7841, no one ever answers the phone. There is no option to leave a voicemail. The ICE website does not list Broadview as a Detention Center under the Chicago Field Office jurisdiction so no information about Broadview is on their website.

5. ICE does not allow me to visit any of my clients when they are detained at Broadview.

6. In June 2025, one of my clients was arrested and taken to Broadview. I went to Broadview in person and requested to speak with my client and obtain her signature on several documents. The ICE officers refused to let me speak with her, and instead, took the documents, had her sign them while I waited outside of the entrance doors (in the vestibule), then returned the documents to me. I was unable to communicate with this client at any point during the five days she was detained at Broadview. After she was transferred out of Broadview, she told me that she slept on the floor for five days without a pillow or blanket.

7. Another client was arrested in July 2025 and brought to Broadview. A supervising attorney at Children's Legal Center went to Broadview to speak with him and obtain his signature on a G-28 and a retainer agreement. ICE refused to let our attorney see or talk to our client, refused to take the documents to obtain our client's signature, and told her she had to leave. This client was held at Broadview for about five days and we were not able to communicate with him at all during those five days.

8. Another client was arrested in September 2025. He was at Broadview for about five days before being transferred. I was unable to speak to him the entire time he was there.

9. I have a client who was at Broadview from September 17, 2025 until October 8, 2025. He told me that he only received food once a day, and it is usually just a piece of bread. He is given one bottle of water a day. He reports that the detainees are sleeping on the floor with no blankets, pillows, or mattresses, in just the clothes they arrived in.

10. On occasion, I am able to pass messages to my clients at Broadview through their family members if and when they are able to make short calls to their loved ones. These calls are short, infrequent, monitored and non-confidential. There is no way to confidentially communicate with my clients while they are detained at Broadview, where they are now typically held for four to five days.

11. ICE's refusal to allow me to communicate with my clients while they are detained at Broadview has severe consequences on my ability to zealously advocate for them. The denial of legal access prevents me from obtaining critical information, including information about their histories and eligibility for immigration relief. This information is crucial in removal proceedings, bond hearings, and habeas petitions. ICE's refusal to even allow me to obtain my clients' signatures prevents me from obtaining their immigration records and impacts by ability to file on their behalf. My clients are unduly prejudiced in court and face serious consequences from ICE's denial of legal access.

12. For example, because I was unable to access my client while he was still in Illinois at Broadview, he was transferred to a detention facility in Texas. I filed my G28 electronically with ICE but was still not provided access to him. In Texas, he was told he would be deported in one hour and was given one phone call to call me. However, the ICE officer was on the line during our entire call, so the call was not confidential. This was the first time I spoke with him. I tried to inform him of his eligibility, and that the federal court in Illinois had issued a rule to show cause against the government, but the ICE officer cut me off from advising my client. He was deported after this phone call. In total, I had no more than eight minutes of access to my client before he was removed. Upon his return to Mexico, he was immediately kidnapped and disappeared. He is currently missing in no small part because ICE denied him access to counsel.

13. ICE's refusal to allow me to access my clients at Broadview also limits my ability to access them when they are transferred to other facilities. In turn, this limits my ability to effectively represent them and hinders my clients' ability to access the courts. In my experience, despite my attempts, out-of-state detention facilities make it difficult to facilitate legal access. The many different detention centers have a different process to schedule appointments so we are unaware of how to schedule an appointment until the

2

client is transferred. At least one detention center required my social security number before allowing me to access my client for a legal visit.

14. For example, I was unable to get a signature for my teenage client while he was held in Broadview. He was then transferred to a detention facility in Indiana where, after much difficulty, I was able to schedule an appointment with him. However, before our appointment, he was transferred to a detention facility in Texas. The Texas facility initially would not allow me to make an appointment and refused to transmit any legal paperwork. They told me to travel to Texas to get his signature.

Executed on 14 of October 2025, in Chicago, IL

_____

Laura Smith
Executive Director and Attorney
Children's Legal Center