# EXHIBIT 30

**DANNY DAVIS**
7TH DISTRICT, ILLINOIS

☐ WASHINGTON OFFICE:
2159 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5006
(202) 225-5641 (FAX)

☐ CHICAGO OFFICE:
2813-15 W 5TH AVENUE
CHICAGO, IL 60612
(773) 533-7520
(844) 274-0426 (FAX)



**Congress of the United States**
**House of Representatives**

COMMITTEE ON
WAYS AND MEANS

RANKING MEMBER:
WORKER AND FAMILY SUPPORT SUBCOMMITTEE

MEMBER:
HEALTH SUBCOMMITTEE

## DECLARATION OF REPRESENTATIVE DANNY K. DAVIS

I, Representative Danny K. Davis, Representative of the 7th District of Illinois in the United States Congress, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. On June 18, 2025, I attempted to visit the Broadview Immigration and Customs Enforcement (ICE) Processing Facility in Illinois (1930 Beach St., Broadview, IL). I did so along with Representatives Delia C. Ramirez, Jesus "Chuy" Garcia, and Jonathan L. Jackson, pursuant to our congressional oversight authority under Section 527(a) of the Department of Homeland Security Appropriations Act, 2024 (Pub. L. 118-47). The purpose of the visit was to investigate credible reports that the facility was being used to unlawfully detain immigrants, contrary to law. These reports suggested that immigrants were being held without access to medication, legal counsel, or basic necessities.

2. However, we were denied access to the Broadview facility by federal law enforcement agents. Their refusal to let us enter the facility was in violation of Congressional authority allowing members to oversee and monitor DHS detention facilities.

3. After being refused access, Representatives Ramirez, Garcia, Jackson, and I sent a public letter to DHS Secretary Kristi Noem and Acting ICE Director Todd Lyons. The June 18 letter provided details about our denial of access and demanded that we be permitted to exercise our right of oversight over ICE facilities and detention centers, in order to ensure that the people being held there were being treated humanely, with dignity and respect, and in accordance with the law. We did not receive a response to our letter.

4. On September 16, 2025, Senator Durbin and Representative Ramirez communicated to ICE that an Illinois Delegation of Congressional Representatives (the "Delegation") intended to conduct oversight at Broadview on September 23, 2025. I am a member of that Delegation. In an effort to work collaboratively with ICE, Senator Durbin and Representative Ramirez gave notice of the visit seven days in advance. However, ICE responded that ICE's Enforcement & Removal Operations (ERO) Chicago Office would be unable to support a visit. Representative Ramirez, a member of the House Committee on Homeland Security, and Senator Durbin, Ranking Member of the Senate Judiciary Committee, reiterated the importance of the visit. But ICE refused to alter its position and permit a visit.

5. ICE did agree to a subsequent meeting with the Delegation in lieu of a visit to the facility. That meeting was supposed to take place on September 26, 2025. ICE then postponed that meeting to an unconfirmed date in October.

6. On September 26, 2025, I joined the Delegation in issuing a letter to Russell Hott, ICE Chicago Field Office Director, and requesting a meeting to discuss the implementation of "Operation Midway Blitz" and oversight of the Broadview Processing Facility. Delegation signatories to that letter included the following members of Congress: Tammy Duckworth, Dick Durbin, Delia Ramirez, Jonathan L. Jackson, Robin Kelly, Jesús Chuy Garcia, Mike Quigley, Sean Casten, Raja Krishnamoorthi, Jan Schakowsky, Bradley Scott Schneider, Bill Foster, Nikki Budzinski, Lauren Underwood, and Eric Sorenson.

7. In the September 26 letter, the Delegation stated that a meeting to discuss conditions at Broadview was "imperative" as members of Congress had been barred from accessing the facility despite repeated attempts to schedule a visit, and because legal service providers and our constituents had raised serious concerns about the poor conditions at Broadview. Those conditions included unsanitary bathroom facilities, spreading illness, overcrowding, detainees sleeping on the floor or in chairs, lack of access to food and water, lack of access to hygiene products, restricted communications to family and attorneys, and an inability to access medication.

8. The Delegation was further concerned about its inability to gain access to Broadview because Operation Midway Blitz had been shrouded in secrecy, with little notice to state or local officials about the nature of the operations, the types of people targeted, where DHS was detaining people, and which agencies were detailing officers to conduct immigration enforcement. The Delegation noted that DHS had used military style tactics and equipment to conduct enforcement in local communities, with no transparency into the basis for the raids.

9. In its September 26 letter, the Delegation affirmed that it was critical for ICE and the congressional representatives to discuss the urgent issues concerning the treatment of people in Broadview. The letter included a list of questions about the facility's conditions and asked that ICE officials be prepared to answer them at the October meeting. Those questions are attached here as **Exhibit A**.

10. As of the date of this declaration, there has been no response to the Delegation's September 26 letter. ICE continues to bar the Delegation's—and my own—access to the Broadview facility, despite Congress' inherent authority to conduct oversight of ICE facilities and despite our grave concerns about the conditions in the facility and the treatment of the people being detained there.

Executed on 15th of October 2025, in Chicago, Illinois

*Danny K Davis*

Representative Danny K. Davis

2

Exhibit A

1. How many people have been processed at Broadview Processing Center since the start of "Operation Midway Blitz"?
2. What is the peak number of people who have been held overnight at Broadview since the start of "Operation Midway Blitz"?
3. As of September 20, 2025, what was the average length of stay for people detained at Broadview before release or transfer?
4. Since the start of "Operation Midway Blitz" how many individuals have been held at Broadview longer than 72 hours?
5. How many people were being held at Broadview on September 20, 2025? How many of those people were being held at Broadview on September 21, 2025?
6. Of the individuals detained at the facility on September 20, 2025, please indicate, if known, how many fell into each of the following categories: 1) pregnant women, 2) individuals who identify as LGBTQ, 3) individuals with serious medical and/or mental health issues, 4) elderly (over 60), 5) youth (under 21), and/or 6) indigenous language speakers?
    a. What steps are being taken to ensure these individuals' safety and well-being?
    b. Please indicate the nationality of each individual.
7. Have embassies and consulates been notified if their foreign nationals are detained at Broadview?
8. What are the current protocols for attorney access at the Broadview facility? How does that differ from the protocols in place prior to "Operation Midway Blitz"?
9. How do detainees access phones to communicate with their attorneys? Can they receive inbound calls from their attorneys? Are there costs associated with accessing phones for legal calls?
10. How are complaints or grievances processed? How can individuals file a complaint or grievances against Broadview? How do you address complaints from individuals who do not speak English or Spanish?
11. Per the ICE Congressional Speaker Series – Detention Facilities and Medical Care briefing on July 22, 2025, Rear Admiral Jennifer Moon, ICE Health Service Corps (IHSC) Deputy Assistant Director for Health Care Compliance, explained that processing centers are non-medical facilities; therefore, they are not equipped with medical staff. Based on DHS standards, a comprehensive health intake is conducted during the first 12 hours after the person has been detained. During the screening, if any acute or chronic disease is identified, then the person in custody would be seen by a medical provider within 2-3 days.
    a. How long on average do detainees at Broadview wait before receiving screening and subsequent medical attention?
    b. Who provides medical screening services at the facility? Is there a contractor for health services? Please provide copies of agreements between the facility and any medical contractors.
    c. What happens when an individual needs services from an outside medical specialist?
    d. If you cannot provide medical care at Broadview when detainees have medical conditions such as diabetes, asthma, cancer, or are part of a vulnerable population like a breastfeeding mother,

  what steps are taken to ensure that detainees get access to necessary medication and medical equipment (especially when phones are not working)?
- e. Since the start of "Operation Midway Blitz" have there been any outbreaks of illness at Broadview? What steps have been taken to address these outbreaks and reduce the chances that these will continue?
- f. How are contagious illnesses limited or addressed prior to transferring individuals to other facilities?
- g. What is the protocol for transferring an individual to a hospital from Broadview for acute trauma, ongoing treatment or injury? How are family members updated?

12. We understand that DHS has additional temporary holding locations throughout Illinois. Congressional offices have constituent cases for individuals held in DHS custody at a facility in Lombard or hotels near O'Hare Airport.
    - a. What detention standards are applied to temporary or non-traditional ICE facilities such as these?
    - b. Given capacity constraints at Broadview, how is ICE using other facilities across Illinois to hold our constituents? Please provide the names and addresses of any other facilities where individuals are in ICE custody.
    - c. Does ICE plan to transfer detainees as part of their Chicago operations to the Miami Correctional Facility in Indiana? If so, what ICE detention standards will apply to individuals in ICE custody at the Miami Correctional Facility? What protocol will be followed in terms of attorney access and notification by ICE regarding such transfers?
    - d. Does ICE plan to transfer people arrested in Chicago to Camp Atterbury, a National Guard facility in Indiana? If so, what ICE detention standards will apply to Camp Atterbury? What protocol will be followed in terms of attorney access?
    - e. How many individuals have been detained at hotel rooms in Illinois by ICE contractors? Please provide the names and addresses of the hotels, as well as any Memorandums of Understanding (MOUs) or contracts pertaining to those hotels.
    - f. Where were detainees relocated upon leaving Broadview on September 22, 2025?

13. In recent weeks, at least two U.S. citizens in Illinois have reportedly been mistakenly arrested during ICE operations, including in Elgin (CBS, 2025; Chicago Sun Times, 2025). In addition, reports suggest ICE operations have ensnared individuals who possess valid work permits, undermining both fairness and workforce stability (Houston Chronicle, 2025; The Guardian, 2025).
    - a. What new safeguards will DHS implement to prevent U.S. citizens from being wrongfully detained?
    - b. Since January 2025, how many individuals with valid work permits have been arrested by ICE in Illinois?
    - c. We are aware of at least two incidents in which ICE pulled over vehicles and arrested adult drivers and other adults, leaving minor children behind. What is ICE's policy regarding minors who are passengers in vehicles involved in stops in which ICE arrests adults in the car?

14. ICE has responded to protests at Broadview with tear gas, pepper balls, and other tactics that have caused injuries to the protesters. ICE agents have reportedly told residents filming agents' activities that they would face federal charges for doing so.

    a. What is the federal agent complement at Broadview and what agency employees or military personnel are currently stationed there under DHS authority?
    b. What plans are ICE making to change tactics or adopt tactics that would de-escalate tensions and avoid potential injury to nonviolent protestors?
    c. What training do ICE agents and agents at Broadview receive on de-escalation and First Amendment protected activities?
    d. What is the legal basis for threats of federal charges against residents for filing law enforcement activities? If those threats lack a legal basis, will you direct your agents to stop the practice? Will you hold agents accountable if they continue to threaten and mislead people about their rights to record ICE activity?

15. The Online Detainee Locator System is generally the only means by which our constituents can locate their loved ones. Although ICE policy states that individuals will be recorded in the system after 48 hours, we have heard reports that those detained at Broadview for prolonged periods are not recorded in the system.
    a. Does ICE include individuals detained at the Broadview facility for more than 48 hours in their detainee locator system?
    b. If so, how will ICE ensure the Detainee Locator System is up to date within 48 hours?
    c. How can congressional offices and constituent services locate individuals not recorded in the Detainee Locator system?

16. In addition, constituents and attorneys have struggled to meet with detainees at the facility and obtain privacy waivers that would allow for congressional inquiries.
    a. What process must individuals undertake to gain access to a privacy waiver at Broadview? Will you consider making them available at the facility for detainees?
    b. In what languages are waivers made available at Broadview?
    c. If the phones at Broadview are not working, how are detained individuals able to communicate with family and Congressional offices to receive instructions on the waiver and how to properly sign and return it?
    d. How will ICE facilitate waiver execution and transmission to Congressional offices from Broadview?