## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| PABLO MORENO GONZALEZ, FELIPE AGUSTIN ZAMACONA, and a class of similarly situated people, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 25-cv-13323 |
| KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; MARCOS CHARLES, Acting Executive Associate Director, U.S. Immigration and Customs Enforcement and Removal Operations, in his official capacity; SAMUEL OLSON, Interim Chicago Field Office Director, U.S. Immigration and Customs Enforcement, in his official capacity; GREGORY BOVINO, Commander-at-Large, U.S. Customs and Border Protection, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. CUSTOMS AND BORDER PROTECTION; and the DEPARTMENT OF HOMELAND SECURITY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Class Action |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 5

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT .................................................................................................................. 6

    I.      The Proposed Class Satisfies Each Requirement of Rule 23(a) ................................... 7

        A.     The Proposed Class is So Numerous That Joinder is Impracticable. ..................... 7

        B.     The Proposed Class Members' Claims Present Common Questions of Law and Fact ................................................................................................................. 10

        C.     Plaintiffs' Claims are Typical of the Proposed Class ........................................ 13

        D.     Plaintiffs and Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Class ........................................................................................ 14

            1.   Plaintiffs Moreno Gonzalez and Agustin Zamacona Will Fairly and Adequately Protect the Interest of the Class ................................................... 14

            2.   Proposed Class Counsel Will Fairly and Adequately Protect the Interest of the Class ...................................................................................................... 16

    II.     The Proposed Class Meets the Requirements of Rule 23(b)(2) .................................. 23

    III.   The Proposed Class Meets the Requirements of Rule 23(b)(1)(a) ............................. 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Alves et al. v. Main*,
   No. 01-cv-789 (D.N.J.) .................................................................................21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................4, 24

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).....................................................................................6

*Armstrong v. Brown*,
   No. 94-cv-2307 (N.D. Cal) .........................................................................19

*Arnold Chapman & Pado Sign & Display Co. v. Wagener Equities Inc.*,
   747 F.3d 489 (7th Cir. 2014) .......................................................................8

*Ashker v. Governor of State of California*,
   No. 09-cv-5796, 2014 WL 2465191 (N.D. Cal June 2, 2014)........................25

*Barco Mercado v. Noem*,
   --- F.Supp.3d ----, 2025 WL 2658779 (S.D.N.Y. Sept. 17, 2025)................5, 12

*Beaton v. Speedy PC Software*,
   907 F.3d 1018 (7th Cir. 2018) ................................................................5, 13

*Bell v. PNC Bank, Nat. Ass'n*,
   800 F.3d 360 (7th Cir. 2015) ................................................................10, 13

*Bivens v. Six Unknown Fed. Agents*,
   403 U.S. 388 (1971)....................................................................................18

*Brown v. Cook Cnty.*,
   332 F.R.D. 229 (N.D. Ill. 2019)..................................................................13

*Campbell v. City of Chicago*,
   No. 17-cv-4467 (N.D. Ill) ...........................................................................20

*Castañon Nava v. Dep't of Homeland Sec.*,
   435 F. Supp. 3d 880 (N.D. Ill. 2020) .....................................................17, 23

*Cavin v. Home Loan Ctr., Inc.*,
   236 F.R.D. 387 (N.D. Ill. 2006) ..................................................................16

*Chicago Tchrs. Union Loc. No. 1 v. Bd. Of Educ. of City of Chicago,*
    797 F.3d 426 (7th Cir. 2015) ...................................................................4, 13

*Coleman v. Brown,*
    No. 90-520 (E.D. Cal.)......................................................................................19

*County of Riverside v. McLaughlin,*
    500 U.S. 44 (1991)............................................................................................15

*De'Lonta v. Angelone,*
    530 F.3d 630 (4th Cir. 2003) ...........................................................................17

*De'Lonta v. Johnson,*
    708 F.3d 520 (4th Cir. 2013) ...........................................................................17

*Emad v. Dodge County et al.,*
    No. 19-cv-00598 (E.D. Wis.)............................................................................22

*Franco-Gonzalez v. Holder,*
    No. 10-cv-2211 (C.D. Cal. 2010) ...............................................................19, 23

*Garner-Jones v. Carter et al.,*
    No. 210-cv-002928 (S.D. Ind.) .........................................................................21

*Gaspar v. Linavatec,*
    167 F.R.D. 51, 56-57 (N.D. Ill. 1996) ................................................................9

*Gayle v. Napolitano,*
    No. 12-cv-2806, 2013 WL 1090993, (D.N.J. Mar. 15, 2013) .....................21, 23

*Hampton v. Meyer et al.,*
    No. 18-cv-00860 (S.D. Ill.)...............................................................................21

*Hampton v. Baldwin,*
    No. 18-cv-00550 (S.D. Ill.)...............................................................................21

*Harris v. Rainey,*
    299 F.R.D. 486 (W.D. Va. 2014) ......................................................................17

*Hart, et al. v. Clendenin, et al.,*
    No. 20-cv-1559 (C.D. Cal.) ..............................................................................19

*Healey v. Int'l Bhd. of Elec. Workers, Loc. Union No 134,*
    296 F.R.D. 587 (N.D. Ill. 2013)..........................................................................9

*Hedrick v. Grant*,
  No. 76-cv-162 (E.D. Cal.) ................................................................19

*Hernandez v. Lynch*,
  No. 16-cv-0062, 2016 WL 7116611 (C.D. Cal. Nov. 10, 2016),
  *aff'd sub nom.*, 872 F.3d ..............................................................7

*Hill v. Wells Fargo Bank, N.A.*,
  No 12-cv-7420, 2015 WL 232127 (N.D. Ill. Jan. 16, 2015)..............................14

*Hohmann v. Packard Instrument Co.*,
  399 F.2d 711 (7th Cir. 1968) ...........................................................7

*Holmes v. Godinez*,
  311 F.R.D. 177 (N.D. Ill. 2015)................................................... passim

*J.B.H. v. Knox Cnty.*,
  No. 240-cv-004096 (C.D. Ill.), Dkt. 105 (Sept. 30, 2025)......................4, 16, 19

*King v. Walker.*,
  No. 06-cv-204 (N.D. Ill) ...............................................................20

*Lacy v. Cook Cnty., Illinois*,
  897 F.3d 847 (7th Cir. 2018) ....................................................4, 10, 12

*Lacy v. Dart*,
  No. 14-cv-6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015), *aff'd sub nom.*,
  897 F3d. 847 ...........................................................................12

*Lippert v. Baldwin*,
  No. 10-cv-4603, 2017 WL 1545672 (N.D. Ill 2017) ..............................4, 12, 13

*M.H. v. Monreal et al.*,
  No. 12-cv-8523 (N.D. Ill.) .............................................................20

*Magtoles v. United Staffing Registry, Inc.*,
  No. 21-cv-1850, 2022 WL 1667005 (E.D.N.Y. May 25, 2022).................................9

*Maurer v. Franklin Cnty., et al.*,
  No. 23-cv-2303 (S.D. Ill.) ............................................................16

*Mays v. Dart*,
  No. 20-cv-2134 (N.D. Ill.) ............................................................20

*Melendez v. Inch et al*,
  No. 20-cv-01023 (M.D. Fla) ............................................................21

*Monroe v. Conway,*
　　No. 18-cv-00156 (S.D. Ill.) ...........................................................................17

*Monroe v. Hughes,*
　　No. 19-cv-01060 (C.D. Ill.) ...........................................................................21

*Monroe v. Meeks,*
　　335 F.R.D. 201, 208 (S.D. Ill. 2020) ....................................................4, 12, 13

*Morales v. Monreal,*
　　No. 13-cv-7572 (N.D. Ill.) .............................................................................20

*Moreno v. Napolitano,*
　　No. 11-cv-5452, 2014 WL 4911938 (N.D. Sept. 30, 2014) ..............................25

*Morrison v. Garraghty,*
　　239 F.3d 648 (4th Cir. 2001) ..........................................................................17

*Ms. J.P. v. Garland, et al.,*
　　No. 18-cv-6081 (C.D. Cal.) ............................................................................16

*Mullins v. Direct Digital, LLC,*
　　795 F.3d 654 (7th Cir. 2015) ............................................................................6

*Olson v. Brown,*
　　594 F.3d 577 (7th Cir. 2010) ..........................................................................15

*Palmer v. Combined Ins. Co. of Am.,,*
　　217 F.R.D. 430 (N.D. Ill. 2003).......................................................................15

*Parsons v. Ryan,*
　　754 F.3d 657 (9th Cir. 2014) ....................................................................12, 14

*Patrykus v. Gomilla,*
　　121 F.R.D. 356 (N.D. Ill. 1988)......................................................................4, 9

*Patten v. Nichols,*
　　274 F.3d 829 (4th Cir. 2001) ..........................................................................17

*Pushing Envelopes Chicago v. Jeffreys,*
　　No. 18-cv-06986 (N.D. Ill.) ............................................................................21

*R.J. v. Jones,*
　　No. 12-cv-07289 (N.D. Ill.) ......................................................................16, 19

*Ramirez v. U.S. Immigr. & Customs Enf't,*
    388 F. Supp. 3d 12 (D.D.C. 2018) ................................................................6, 9

*Richardson v. Monroe Cnty. Sheriff,*
    No. 08-cv-0174, 2008 WL 3084766 (S.D. Ind. Aug. 4, 2008) .........................15

*Robinson v. Martin,*
    16-CH-13587 (Cir. Ct. Ck. Cty.) ....................................................................20

*Rodríguez v. Marin,*
    No. 07-cv-3239 (C.D. Cal.) ...........................................................................19

*Rogers v. Dart,*
    No. 240-cv-093739, 2025 WL 1359120 (N.D. Ill. May 9, 2025).......................4

*Rosario v. Livaditis,*
    963 F.2d 1013 (7th Cir. 1992) ..................................................................13, 14

*Ross et al v. Gossett et al.,*
    No. 15-cv-00309 (S.D. Ill.)..............................................................................22

*Sec'y of Labor v. Fitzsimmons,*
    805 F.2d 682 (7th Cir. 1986) .........................................................................16

*Simpson v. Dart,*
    23 F.4th 706 (7th Cir. 2022) .........................................................................5, 6

*Streeter v. Sheriff of Cook Cnty.,*
    256 F.D.R. 609 (N.D. Ill. 2019).....................................................................4, 8

*Toney v. Quality Res. Inc.,*
    323 F.R.D. 567 (N.D. Ill. 2018).................................................................14, 23

*Torres v. Dep't of Homeland Sec.,*
    No. 18-cv-2604 (C.D. Cal. Dec. 14, 2018) .................................................19, 23

*Tyson v. Amerigroup,*
    No. 02-cv-6074 (N.D. Ill.) ...............................................................................18

*United States v. Advocate Law Groups of Florida, P.A.,*
    No. 18-cv-01836 (M.D. F.L.) ..........................................................................17

*United States v. Albert C. Kobayashi, Inc.,*
    No. 19-cv-00531 (D. Haw.) .............................................................................17

*United States v. Fairfax Manor Group, LLC,*
    No. 17-cv-02751 (W.D. Tenn.)...................................................................17

*United States v. William Beavers,*
    No. 12-cr-124 (N.D. Ill.)........................................................................18

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)...................................................................... passim

*Walsh v. Kelley,*
    No. 17-cv-05405, 2021 WL4459531 (N.D. Ill. Sept. 29, 2021)....................15

*Walters v. Reno,*
    145 F.3d 1032, 1046 (9th Cir. 1998) .......................................................14

*Whitney v. Kahn,*
    330 F.R.D. 172, 180 (N.D. Ill. 2019).........................................................4

*Williams et al v. City of Chicago,*
    No. 22-cv-3773 (N.D. Ill.) ................................................................20, 21

*Xirum v. U.S. Immigr. & Customs Enf't,*
    No. 22-cv-00801, 2024 WL 4348245 (S.D. Ind. Sept. 30, 2024)....................9

**Statutes and Rules**

Fed R. Civ. P. 23(a) .......................................................................... passim

Fed. R. Civ. P. 23(a)(1).........................................................................2, 7

Fed. R. Civ. P.23(a)(2)........................................................................2, 10

Fed. R. Civ. P. 23(a)(3)........................................................................3, 13

Fed. R. Civ. P. 23(a)(4)........................................................................3, 14

Fed. R. Civ. P. 23(b) ...............................................................................6

Fed. R. Civ. P. 23(b)(1)(A) ................................................................ passim

Fed. R. Civ. P. 23(b)(2) .................................................................... passim

8 C.F.R. § 287.8(c)(2)(vii) ...................................................................3, 11

**Other Authorities**

Hamed Aleaziz & Tyler Pager, *Trump Administration Plans a Shake-Up at ICE to Speed Deportations*, New York Times (Oct. 24, 2025), https://www.nytimes.com/2025/10/24/us/politics/trump-deportations-ice.html [https://perma.cc/TA2W-5N3T] ............................................................................8

Robert Chiarito & Julie Boseman, *Protesters and Federal Agents Clash Outside an ICE Detention Facility Near Chicago*, New York Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/ice-protests-chicago.html [https://perma.cc/62ZC-Z4YW].........................................................................8

*Deportation Data Project*, Detentions Dataset (Sept. 2023 – July 2025), https://deportationdata.org/data/ice.htm#latest-data-release [https://perma.cc/CBG4-JS4H].........7

Jaclyn Diaz, *DHS Launches Immigration Crackdowns in Chicago, Boston,* NPR (Sept. 8, 2025), https://www.npr.org/2025/09/08/nx-s1-5534338/ice-chicago-boston-immigration-raids [https://perma.cc/DTY8-9PL9] ...........................................................................7

Camilo Montoya-Galvez, *Border Patrol Takes Lead Role in Trump Administration's Chicago Crackdown, Carrying Out More Arrests Than ICE*, CBS News (Oct. 30, 2025), https://www.cbsnews.com/news/border-patrol-trump-administrations-chicago-crackdown-more-arrests-than-ice/# [https://perma.cc/CZ87-74Y3] .................................................8

PBS News, *More Than 400 Arrests Made so Far in Chicago Area Enforcement Operation, Top ICE Official Says*, (Sept. 19, 2025), https://www.pbs.org.newshour/nation/more-than-400-arrests-made-so-far-in-chicago-area-enforcement-operation-top-ice-official-says/ [https://perma.cc/84TM-TBSR]........................................................................8

## INTRODUCTION

Plaintiffs Pablo Moreno Gonzalez and Felipe Agustin Zamacona bring this Motion for Class Certification on behalf of themselves and all others similarly situated on the grounds that this lawsuit should be maintained as a class action under Rules 23(a), 23(b)(2), and 23(b)(1)(A) of the Federal Rules of Civil Procedure. Plaintiffs seeks class certification to challenge Defendants' common policies and practices of subjecting immigration detainees held at the Broadview Service Staging Area ("Broadview") to inhumane conditions, including by depriving immigration detainees of basic necessities such as sufficient food and potable water, relative privacy while using a restroom, beds, an opportunity to shower, access to counsel, and an opportunity to review immigration-related paperwork free from coercion and harassment. Plaintiffs respectfully move this Court to certify the following class:

> All immigration detainees who are detained and those who will be detained in the future at the Broadview ICE facility at 1930 Beach Street, Broadview, Illinois (the "Class").

Plaintiffs and the proposed Class do not seek damages. Given the opacity of Defendants' practices inside Broadview, Plaintiffs intend to supplement this Motion with additional facts after receiving expedited discovery.

Broadview is an ICE "holding" facility, a short-term federal immigration facility that is designed to hold detainees for less than 12 hours, "[a]bsent exceptional circumstances." Ex. 3 (2023 Audit of Broadview by DHS ("2023 Audit")) at 2, 6.[1] Broadview is neither designed nor equipped to safely and humanely house immigration detainees for anything more than a short period of time.

---

[1] All citations to exhibits and declarations herein refer to those filed in support of Plaintiffs' contemporaneously filed Complaint.

As Defendants wage a mass arrest campaign in Chicago known as "Operation Midway Blitz," however, Defendants have effectively transformed Broadview into a *de facto* long-term detention center. Defendants now house increasing numbers of immigration detainees in this building for multiple days or even weeks and systematically and unlawfully deprive them of basic necessities, such as adequate food, water, privacy while using restrooms, beds, and access to counsel.

The proposed Class of current and future immigration detainees held at Broadview and subjected to Defendants' unlawful policies and practices clearly satisfies the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a)(1)-(4).

*First*, the proposed Class satisfies Rule 23(a)(1) because it is so numerous that joinder of all members is impracticable. Defendants detain thousands of individuals at Broadview each year, most of whom are dispersed within days or weeks to detention facilities across the country or out of the country. Because of "Operation Midway Blitz," the number of people Defendants currently detain and plan to detain imminently is skyrocketing. Beyond the sheer numbers, joinder is impracticable because the putative Class is inherently transitory and changing. Putative Class members also face language barriers, limited financial resources, and impediments to legal representation, all of which create significant barriers to vindicating their constitutional and statutory rights.

*Second*, the proposed Class satisfies Rule 23(a)(2) because their claims involve several common questions of fact and law that are capable of classwide resolution. At Broadview, Defendants systematically deny immigration detainees sufficient food and potable water, clean clothes, basic hygiene products, and access to showers. Defendants deprive immigration detainees of beds, instead forcing them to sleep on concrete floors, on plastic chairs, and/or while sitting

2

upright in rooms that are cold and brightly lit. Defendants subject immigration detainees to filthy cells with poor sanitation, clogged toilets, blood, human fluids, and insects. Defendants deny detained immigrants access to adequate medical care and mental health care. Defendants have instituted a near-total ban on attorney access, prohibiting any form of confidential communication with counsel and preventing many detainees from speaking with attorneys at all. Whether these common policies and practices violate the United States Constitution's guarantees under the Fifth and First Amendment are the types of questions that can be answered on a classwide basis. Likewise, this case presents questions capable of classwide resolution regarding whether Defendants' practice of threatening and/or coercing immigration detainees into signing immigration-related paperwork they do not understand runs afoul of the Fifth Amendment, 8 C.F.R. § 287.8(c)(2)(vii), and the Administrative Procedure Act.

*Third*, because Plaintiffs are detained at Broadview and subject to the same abusive and unconstitutional conditions to which all detainees have been subjected, their claims are typical of the proposed Class, as required by Rule 23(a)(3).

*Fourth*, the proposed Class meets the requirements of Rule 23(a)(4). Plaintiffs Moreno Gonzalez and Agustin Zamacona have the requisite personal interest in the outcome of this action and have no interests adverse to the interests of the Class. They will fairly and adequately represent the interests of all proposed Class members. In addition, the proposed Class is represented by counsel from the Roger Baldwin Foundation of ACLU, Inc., the MacArthur Justice Center, and Eimer Stahl LLP. Counsel collectively has extensive experience litigating class action lawsuits and other complex cases in federal court, including on behalf of detained immigrants.

*Finally*, the proposed Class—which seeks to vindicate immigration detainees' civil and constitutional rights—also qualifies for certification under Rule 23(b)(2). Defendants have acted

on grounds generally applicable to the proposed Class through their practice of detaining immigrants at Broadview in punitive conditions and without access to counsel in violation of their constitutional and civil rights. Therefore, declaratory and injunctive relief are appropriate with respect to the proposed Class as a whole. *See Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015) ("civil rights cases" are "prime examples" of Rule 23(b)(2) class actions) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)); *see also Patrykus v. Gomilla*, 121 F.R.D. 357, 363 (N.D. Ill. 1988) ("Certification under Rule 23(b)(2) is particularly appropriate in class actions brought to vindicate civil or constitutional rights."). The Court may also certify this Class under Rule 23(b)(1)(A), because separate actions by individual detained immigrants would create a risk of incompatible standards of conduct by different judges.

Courts in this Circuit and beyond routinely certify classes in lawsuits challenging unlawful conditions at detention facilities. *See, e.g.*, *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 863, 869 (7th Cir. 2018) (affirming certification of class of jail detainees challenging inaccessible conditions in courthouse holding cells); *Monroe v. Meeks*, 335 F.R.D. 201, 208 (S.D. Ill. 2020) (certifying class of incarcerated individuals challenging unconstitutional conditions); *Whitney v. Khan*, 330 F.R.D. 172, 180 (N.D. Ill. 2019) (certifying class of jail detainees challenging conditions); *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 615 (N.D. Ill. 2009) (certifying class of pretrial detainees challenging jail unconstitutional conditions); *Rogers v. Dart*, No. 24-cv-03739, 2025 WL 1359120, at *8 (N.D. Ill. May 9, 2025) (certifying class of jail detainees challenging conditions); *Lippert v. Baldwin*, No. 10-cv-4603, 2017 WL 1545672, at *9 (N.D. Ill. 2017) (certifying class of prisoners challenging unconstitutional conditions); *J.B.H. v. Knox Cnty.*, No. 24-cv-04096 (C.D. Ill.), Dkt. 105 (Sept. 30, 2025) (certifying class of juvenile pretrial detainees). Last month, a

district court in New York granted provisional class certification of a nearly identical class of immigration detainees challenging conditions and the denial of access to counsel at an ICE holding facility in New York. *See Barco Mercado v. Noem*, --- F.Supp.3d ----, 2025 WL 2658779, at *20 (S.D.N.Y. Sept. 17, 2025).

Class certification is the appropriate mechanism for achieving a just and efficient resolution of this litigation, and Plaintiffs respectfully request that the Court certify the proposed Class.

## FACTUAL BACKGROUND

Plaintiffs incorporate by reference the Factual Background as described in Plaintiffs' Memorandum in support of their Emergency Motion for a Temporary Restraining Order filed contemporaneously with this Memorandum.

## LEGAL STANDARD

To certify the proposed Class, the Court must first find that it meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). Under Rule 23(a), class certification is proper when:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In evaluating these factors, federal district courts have "broad discretion." *Holmes v. Godinez*, 311 F.R.D. 177, 212 (N.D. Ill. 2015).

Since *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), district courts engage in a more searching analysis of the Rule 23 factors at the certification stage, one that "go[es] beyond the pleadings." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). However, "at

this early stage of the litigation, the merits are not on the table." *Id.*; *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

At class certification, plaintiffs need not "prove the element[s]" of their claims, just that the elements are "capable of proof at trial through evidence that is common to the class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012) (citations omitted). Accordingly, "if a class plaintiff satisfies all the requirements of Rule 23(a) and Rule 23(b), the class *must* be certified[.]" *Simpson*, 23 F.4th at 711 (emphasis in original).

## ARGUMENT

The Court should certify the following Class: "All immigration detainees who are detained and those who will be detained in the future at the Broadview ICE facility at 1930 Beach Street, Broadview, Illinois" (the "Class"). The proposed Class satisfies the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Defendants have also "acted or refused to act on grounds that apply generally to the class" such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" under Rule 23(b)(2). Further, the proposed Class satisfies Rule 23(b)(1)(a) because prosecuting separate actions by individual members "would create a risk of [] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for Defendants. Fed. R. Civ. P. 23(b)(1).[2]

---

[2] While the Seventh Circuit has rejected a heightened ascertainability requirement for class certification, *see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015), the proposed Class definition is also sufficiently definite that its members are ascertainable. Defendants assign each noncitizen in the immigration system an Alien Registration Number (A-Number) and maintain records of the individuals they hold at Broadview, so the proposed Class definition involving immigration detainees held at Broadview can be ascertained through "objective criteria." *Mullins*, 795 F.3d at 657; *see also Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 12, 49 (D.D.C. 2018) (a class of people who "are detained

## I. The Proposed Class Satisfies Each Requirement of Rule 23(a)

### A. The Proposed Class is So Numerous That Joinder is Impracticable

Rule 23(a) first requires that the Court determine whether the proposed Class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class suit is appropriate in circumstances "where several persons jointly act" to cause injury to such a numerous amount of people "that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable." *Hohmann v. Packard Instrument Co.*, 399 F.2d 711, 715 (7th Cir. 1968).

Here, Plaintiffs and the Class easily satisfy the numerosity requirement. Broadview detains thousands of individuals every year. According to ICE data, ICE detained 5,202 individuals at Broadview between January 1, 2025, and July 28, 2025.[3] Notably, this number predates Defendants' September 8, 2025, announcement of "Operation Midway Blitz," which caused a dramatic increase in immigration enforcement in the Chicago area.[4] Only eleven days into the Operation, Defendants reported they already made 550 arrests.[5] By October 30, 2025, DHS

---

or will be detained" under certain circumstances "identifie[s] clear and objective criteria on which to show membership in the proposed class."). Class members can also be easily identified by searching Defendants' Broadview custody records—"a reliable and administratively feasible mechanism." *Holmes*, 311 F.R.D. at 213; *see also Hernandez v. Lynch*, No. 16-cv-00620, 2016 WL 7116611, at *14 (C.D. Cal. Nov. 10, 2016) (class of immigration detainees could "be ascertained using objective criteria and identified through a search of Defendants' records concerning individuals in ICE custody"), *aff'd sub nom.* 872 F.3d 976 (9th Cir. 2017) (citation omitted).

[3] *See Deportation Data Project*, Detentions Dataset (Sept. 2023 – July 2025), https://deportationdata.org/data/ice.html#latest-data-release [https://perma.cc/CBG4-JS4H] (government data provided by ICE in response to a FOIA request to the Deportation Data Project and analyzed by counsel for Plaintiffs).

[4] *See* Jaclyn Diaz, *DHS Launches Immigration Crackdowns in Chicago, Boston*, NPR (Sept. 8, 2025), https://www.npr.org/2025/09/08/nx-s1-5534338/ice-chicago-boston-immigration-raids [https://perma.cc/DTY8-9PL9].

[5] Robert Chiarito & Julie Bosman, *Protesters and Federal Agents Clash Outside an ICE Detention Facility Near Chicago*, New York Times (Sept. 19, 2025), https://www.nytimes.com/2025/09/19/us/politics/ice-protests-chicago.html [https://perma.cc/62ZC-Z4YW].

claimed that over 3,000 people had been arrested in the Operation.[6]   Recent detainees report Broadview packing dozens—and even up to 200—people into a single room just in the days those individuals were detained.  *See* Ex. 38, Jack Doe Decl. ¶¶ 3, 5, 7, 8; Ex. 11, Gaspar-Nochebuena Decl. ¶¶ 1, 9, 11; Ex. 10, Osuna Decl. ¶ 10; Ex. 14, Temich Polito Decl. ¶ 13; Ex. 5, S. Held Decl. ¶¶ 21-23; Ex. 23, R. Held Decl. ¶ 7; Ex. 13, Giménez-González Decl. ¶¶ 17-19.  The number of immigration detainees that Defendants currently or will in the future detain at Broadview far exceeds forty people, the number at which courts often find joinder impracticable.  *See Streeter*, 256 F.R.D. at 612.

Defendant Charles has also publicly stated that there is "not an end date in sight" to the Chicago arrest operation,[7] so it is likely that the Broadview population will continue to rise.[8]  *See Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014*)* ("[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable").  And although Defendants do not disclose the identities of current immigration detainees, Defendants certainly track those currently in the Broadview facility, all of whom are easily identifiable.

Beyond the sheer numbers, "the inherently transitory nature of detained noncitizens" makes "[j]oinder in a single, non-class suit [] impossible, because only a portion of the Class at

---

[6] Camilo Montoya-Galvez, *Border Patrol Takes Lead Role in Trump Administration's Chicago Crackdown, Carrying Out More Arrests Than ICE*, CBS News (Oct. 30, 2025), https://www.cbsnews.com/news/border-patrol-trump-administrations-chicago-crackdown-more-arrests-than-ice/# [https://perma.cc/CZ87-74Y3].

[7] PBS News, *More Than 400 Arrests Made so Far in Chicago Area Enforcement Operation, Top ICE Official Says,* (Sept. 19. 2025), https://www.pbs.org/newshour/nation/more-than-400-arrests-made-so-far-in-chicago-area-enforcement-operation-top-ice-official-says/  [https://perma.cc/84TM-TBSR].

[8] *See, e.g.*, Hamed Aleaziz & Typer Pager, *Trump Administration Plans a Shake-Up at ICE to Speed Deportations*, New York Times (Oct. 24, 2025), https://www.nytimes.com/2025/10/24/us/politics/trump-deportations-ice.html [https://perma.cc/TA2W-5N3T].

any one time will have standing to bring their claims." *Xirum v. U.S. Immigr. & Customs Enf't*, No. 22-cv-00801, 2024 WL 4348245, at *5 (S.D. Ind. Sept. 30, 2024) (class of immigrant detainees satisfied numerosity requirement); *see also Ramirez*, 338 F. Supp. 3d at 44–45. The fact that people detained at Broadview will eventually be transferred to detention centers across the country or sent out of the country, *see, e.g.*, Ex. 37, Peyton Decl. ¶ 8; Ex. 14, Temich Polico Decl. ¶¶ 5-6, 10; Ex. 8, Smith Decl. ¶ 12; Ex. 15, Toto Polito Decl. ¶¶ 23-23, also "weighs against the practicability of joinder and in favor of a class action." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56-57 (N.D. Ill. 1996) ("the more geographically separated the proposed members are, the more joinder becomes impracticable").

Many immigrant detainees also do not speak or read English, and both "foreign citizenship [] and potential language barriers[] also militate against separate lawsuits and instead weigh in favor of a finding of numerosity." *Magtoles v. United Staffing Registry, Inc.*, No. 21-CV-1850, 2022 WL 1667005, at *4 (E.D.N.Y. May 25, 2022); *see, e.g.*, Ex. 14, Temich Polito Decl. ¶ 4 ("I only speak Spanish"); Ex. 6, Guevara Decl. ¶ 8 ("I am not able to read English"); Ex. 13, Giménez-González Decl. ¶ 49 (same). Likewise, a fear of retaliation by Defendants "may deter class members from suing in their own names," and there is no "reason to burden the judicial system [] with 50 'John Doe' lawsuits arising out of the same" issue. *Patrykus*, 121 F.R.D. at 361; *see also* Ex. 12, Jane Doe Decl. ¶ 27; Ex. 17, John Doe Decl. ¶ 19; Ex. 38, Jack Doe Decl. ¶ 33.

All of these factors make it "highly impracticable" and "an ineffective use of judicial resources" to "determine liability for [this many] individuals on a person-by-person basis when the underlying facts and issues are essentially the same." *Healey v. Int'l Bhd. of Elec. Workers, Loc. Union No. 134*, 296 F.R.D. 587, 593 (N.D. Ill. 2013) (along with size, courts also consider factors like "judicial economy, the ability of class members to initiate individual suits, geographic

dispersion of the putative class, and the practicability of relitigating a common core of issues.").

**B.  The Proposed Class Members' Claims Present Common Questions of Law and Fact**

The proposed Class satisfies the commonality requirement because there are numerous "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), that relate to "common contention[s]" and are "capable of classwide resolution." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "[T]he key to commonality is 'not the raising of common 'questions' ... but, rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Lacy*, 897 F.3d at 865 (quoting *Wal-Mart*, 564 U.S. at 350 (emphasis in original)). Courts "need only find a single common question of law or fact" if the answer "will resolve an issue that is central to the validity of each claim." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

Here, Plaintiffs present numerous factual questions common to all Class members including:

1. Whether Defendants have a policy or practice of placing immigration detainees into overcrowded hold rooms at Broadview?

2. Whether Defendants have a policy or practice of detaining immigrants at Broadview in hold rooms in excess of 12 hours?

3. Whether Defendants have a policy or practice of depriving immigration detainees of sufficient nutritional food and potable water?

4. Whether Defendants have a policy or practice of denying appropriate privacy to immigration detainees when using toilets?

5. Whether Defendants have a policy or practice of denying beds or adequate bedding to immigration detainees when holding them overnight?

6. Whether Defendants have a policy or practice of denying immigration detainees adequate access to hygiene products and showers?

7.   Whether Defendants have a policy or practice of subjecting immigration detainees to unhygienic cells, including cells that are littered with trash, infested with insects, and splattered with blood and human fluids?

8.   Whether Defendants have a policy or practice of denying immigration detainees adequate access to medical or mental health care?

9.   Whether Defendants have a policy and practice of denying immigration detainees access to confidential legal telephone calls?

10.   Whether Defendants have a policy or practice of denying immigration detainees and access to confidential attorney-client visitation rooms?

11.   Whether Defendants have a policy or practice of using threats and coercion in order to procure signatures on immigration documents, including documents that waive rights and allow Defendants to take people out of the country without process?

12.   Whether Defendants have a policy and practice of procuring signatures on immigration documents that are written in a language that the signer does not understand and which have not been translated?

Plaintiffs and the proposed Class also present "common legal questions" including:

13.   Whether Defendants' policy and practice of denying immigration detainees access to humane physical conditions--including adequate food, potable water, bedding, sanitation, and medication--violates the Fifth Amendment to the United States Constitution?

14.   Whether Defendants' policy and practice of denying immigration detainees at Broadview access to counsel violates the First and Fifth Amendments to the United States Constitution?

15.   Whether Defendants have acted knowingly, purposefully, or recklessly in imposing the conditions described above?

16.   Whether Defendants' practice of threatening and/or coercing immigration detainees into signing immigration-related paperwork—especially paperwork that has not been translated for people with limited English proficiency—runs afoul of the Fifth Amendment of the United States Constitution, 8 C.F.R. § 287.8(c)(2)(vii), and the Administrative Procedure Act?

The answers to these questions are "capable of classwide resolution" and will "drive the resolution

of the litigation." *Wal-Mart*, 564 U.S. at 350.

Putative Class members' common questions of law and fact related to the legality of their

conditions of confinement fit squarely within the types of questions that courts in this Circuit and beyond regularly find to satisfy the commonality requirement. *See, e.g.*, *Holmes*, 311 F.R.D. at 217 (a "single system-wide illegal practice or policy can satisfy the commonality requirement"); *see also, e.g.*, *Monroe*, 335 F.R.D. at 205–06 (the "common question applicable to all Plaintiffs and the proposed class is whether [prison] policies and practices resulted in inadequate medical treatment in violation of the Eighth Amendment"); *Lippert*, 2017 WL 1545672, at *4 (collecting cases for the proposition that, "by identifying specific [prison] policies and practices that allegedly put inmates with serious medical needs at substantial risk for harm, plaintiffs have met Rule 23's commonality requirement"); *Lacy v. Dart*, No. 14-cv-6259, 2015 WL 1995576, at *4 (N.D. Ill. Apr. 30, 2015) (proposed class of jail detainees satisfied commonality requirement by "alleg[ing] a common discriminatory practice by defendants"), *aff'd sub nom. Lacy*, 897 F.3d 847; *see also Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014) ("[T]he class members are as one in their exposure to a particular and sufficiently well-defined set of allegedly illegal policies and practices").

In *Barco Mercado*, for example, the trial court held that a proposed class of detainees at a New York ICE holding facility satisfied commonality by presenting similar common questions of law and fact, such as "whether ICE provides, both as a matter of policy and, more importantly, as a matter of fact on a classwide basis, adequate bedding, meals, hygiene products, access to medical care, medication, and confidential communication with attorneys" and "ICE's standards and practices regarding the provision of food, hygiene products, medication, and medical care violate detainees' constitutional rights."  2025 WL 2658779, at *20.

As in *Barco Mercado*, Rule 23(a)'s commonality requirement is satisfied here because Defendants' common practices and policies at Broadview subject Plaintiffs Moreno Gonzalez and

12

Agustin Zamacona and all proposed Class members to the same inhumane conditions of confinement. The legal and factual questions posed by Plaintiffs and the Class should therefore "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* (quoting *Wal-Mart*, 564 U.S. at 350); *see also Brown v. Cook Cnty.*, 332 F.R.D. 229, 240–41 (N.D. Ill. 2019) (a common policy applied across a worksite may "serve as 'the glue that binds the claims together' for purposes of class certification") (quoting *Chicago Tchrs. Union, Loc. No. 1*, 797 F.3d at 434); *see also Bell*, 800 F.3d at 374 (questions about existence of "broader company policy" satisfied commonality).

### C. Plaintiffs' Claims Are Typical of the Proposed Class

Rule 23(a)(3) requires that the "the claims or defenses of the representative parties are typical of the claims and defenses of the class." Plaintiffs Moreno Gonzalez and Agustin Zamacona satisfy this requirement because their "claim[s] 'arise[] from the same event[s] or practice[s] or course of conduct that gives rise to the claims of the other class members and [their] claims are based on the same legal theory." *Lacy*, 897 F.3d at 866 (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)).

Defendants' common policies and practices subject Plaintiffs Moreno Gonzalez and Agustin Zamacona and the other Class members to the same inhumane conditions at Broadview. *See Monroe*, 335 F.R.D. at 206 ("Plaintiffs' claim that they and the class members have been exposed to Defendants' same treatment policies and practices [while incarcerated] meets the typicality requirement"). Plaintiffs' experiences at Broadview therefore "share the same essential characteristics" as the other Class members. *Brown*, 332 F.R.D. at 241–42 (typicality satisfied despite "some factual variation" because "typicality does not require perfect identity of claims") (quoting *Beaton*, 907 F.3d at 1026); *see also Lippert*, 2017 WL 1545672 at *8 ("Rule 23(a)(3) requires only that their claims be typical of the class, not that they be identically positioned to each

13

other or to every class member") (quoting *Parsons*, 754 F.3d at 686); *Holmes*, 311 F.R.D. at 221 (finding typicality satisfied "despite factual differences, [when] the named Plaintiff[']s claims are typical of the other class members in that they focus on the same conduct and are based on the same legal theories"). Because Plaintiffs Moreno Gonzalez and Agustin Zamacona have been exposed to Defendants' policies that apply to all Class members and suffer the same legal injuries, their claims are typical of the Class.

### D. Plaintiffs and Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs Moreno Gonzalez and Agustin Zamacona and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation inquiry consists of two parts: (1) the adequacy of named plaintiffs as representatives of the class, and (2) the adequacy of proposed class counsel. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 585 (N.D. Ill. 2018); *Holmes*, 311 F.R.D. at 222. Plaintiffs Moreno Gonzalez and Agustin Zamacona and Class Counsel will vigorously pursue relief from Defendants' unconstitutional and unlawful detention policies and practices that impact numerous detainees, including Plaintiffs.

#### 1. Plaintiffs Moreno Gonzalez and Agustin Zamacona Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs Moreno Gonzalez and Agustin Zamacona have interests and experiences entirely aligned with all others who have suffered from the unlawful conditions to which Defendants subject immigration detainees at Broadview. *See Hill v. Wells Fargo Bank, N.A*, No. 12-cv-7240, 2015 WL 232127 at *9 (N.D. Ill. Jan. 16, 2015) (a named plaintiff is an adequate representative when he does not have "interests [that] are antagonistic or conflicting" with other class members) (quoting *Rosario*, 963 F.2d at 1018). Like typicality, the adequacy requirement focuses on the similarity of the legal claims of a named plaintiff and the Class, rather than any factual differences. *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("[T]he government erroneously

14

emphasizes factual differences in [its adequacy arguments]");  *Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 437 (N.D. Ill. 2003) (adequacy satisfied where named plaintiff "assert[s] the same injuries as the members of the class she seeks to represent" and "has the same interest in pursuing this case as the rest of the class members").  Plaintiffs Moreno Gonzalez and Agustin Zamacona are harmed by Defendants' unlawful practices as Broadview, just as the other Class members.  Plaintiffs Moreno Gonzalez and Agustin Zamacona are concerned about the other detainees at Broadview, both now and in the future, and are willing to serve as Class representatives.

Plaintiffs Moreno Gonzalez and Agustin Zamacona can also continue to represent the Class even after they are released or transferred.  When a class representative's "claim is so 'inherently transitory' that it is uncertain that any member of the class would maintain a live controversy long enough for a judge to certify a class," the "case is not moot for the purpose of class certification." *Olson v. Brown*, 594 F.3d 577, 580 (7th Cir. 2010); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991) (where a claim is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires . . . the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution").  Accordingly, courts in this circuit regularly apply this principle to find that individuals may represent a class of persons detained in temporary detention facilities even after they have been released or transferred.  *See, e.g.*, *Walsh v. Kelley*, No. 17-cv-05405, 2021 WL 4459531, at *4–5 (N.D. Ill. Sept. 29, 2021) (granting class certification where only one of three plaintiffs named in class certification motion were still imprisoned at county detention facility at time of certification hearing); *Richardson v. Monroe Cnty. Sheriff*, No. 08-cv-0174, 2008 WL 3084766, at *5 (S.D. Ind. Aug. 4, 2008) (finding plaintiff still adequate to

represent class of persons challenging living conditions at county jail despite his release from that facility); *Austin v. Smith*, No. 15-cv-525, 2017 WL 945105, at *3 (W.D. Wis. Mar. 9, 2017) (same).

### 2. Proposed Class Counsel Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs' Counsel at the Roger Baldwin Foundation of ACLU, Inc., the MacArthur Justice Center, and Eimer Stahl LLP are "experienced, competent, qualified and able to conduct" litigation of class actions, including in detention and prison settings. *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 393 (N.D. Ill. 2006) (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)).

**Kevin M. Fee**, a 2002 graduate of Harvard Law School, is the Legal Director at the Roger Baldwin Foundation of ACLU, Inc. Mr. Fee was formerly a Partner at Sidley Austin LLP, where his practice included litigating and resolving complex class actions. Since 2012 he has served as counsel on *R.J. v. Jones*, No. 12-cv-07289 (N.D. Ill.), through which he represents a class of juveniles who now are, and/or in the future will be, confined by the Illinois Department of Juvenile Justice facilities. Mr. Fee is also currently lead counsel in *J.B.H. v. Knox County*, No. 24-cv-04096 (C.D. Ill.), where the court recently certified a class of pretrial juveniles at the Mary Davis Home Juvenile Detention Center in Galesburg, Illinois. Mr. Fee was also counsel for the certified class in, for example, *Ms. J.P. v. Garland, et al.*, Case No. 18-cv-6081 (C.D. Cal.), which successfully secured mental health treatment for detained victims of family separation. Mr. Fee was lead counsel in *Maurer v. Franklin County, et al.*, No. 23-cv-2303 (S.D. Ill.), where he represented a putative class of pretrial juveniles at the Franklin County Juvenile Detention Center in Benton, Illinois before that center was closed during the pendency of the litigation.

**Michelle T. García**, a 2002 graduate of Northeastern University School of Law, has been the Deputy Legal Director of the Roger Baldwin Foundation of ACLU, Inc. since 2022. She has

16

practiced civil rights and constitutional law her entire career. She is class counsel in *Castañon Nava v. Department of Homeland Security*, 435 F. Supp. 3d 880 (N.D. Ill. 2020), which secured a consent order requiring DHS to abide by statutory requirements for warrantless searches and *Monroe v. Conway,* No. 18-cv-00156 (S.D. Ill.), where she represents a class of prisoners in the Illinois Department of Corrections seeking evaluation and treatment for gender dysphoria. Before joining RBF, Ms. Garcia was a Trial Attorney at the U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, where she lead civil rights litigation, including pattern or practice cases involving hundreds and thousands of victims, such as *United States v. Advocate Law Groups of Florida, P.A.*, No. 18-cv-01836 (M.D. FL), *United States v. Albert C. Kobayashi, Inc.*, No. 19-cv-00531 (D. Haw.), and *United States v. Fairfax Manor Group, LLC*, No. 17-cv-02751 (W. D. Tenn.).

**Rebecca K. Glenberg**, a 1997 graduate of the University of Chicago Law School, has practiced civil rights and constitutional law for twenty-six years. Since 2015, she has been a senior supervising attorney at the Roger Baldwin Foundation of ACLU, Inc., and was previously the Legal Director of American Civil Liberties Union of Virginia. She is experienced in litigating the rights of detained people in cases including *De'Lonta v. Johnson*, 708 F.3d 520 (4th Cir. 2013); *De'Lonta v. Angelone*, 530 F.3d 630 (4th Cir. 2003); *Morrison v. Garraghty*, 239 F.3d 648 (4th Cir. 2001); and *Patten v. Nichols*, 274 F.3d 829 (4th Cir. 2001). She currently serves as class counsel in, *Castañon Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880 (N.D. Ill. 2020), which secured a consent order requiring DHS to abide by statutory requirements for warrantless searches, and was previously class counsel in *Harris v. Rainey*, 299 F.R.D. 486 (W.D. Va. 2014), challenging Virginia's ban on same-sex marriage.

**Samuel B. Cole**, a 1998 graduate of Harvard Law School, is a Senior Supervising Attorney

and Chief Immigration Litigation Counsel at the Roger Baldwin Foundation of ACLU, Inc. Before joining the ACLU, Mr. Cole served for nine years as an immigration judge in Chicago, where he presided over thousands of cases involving detention and removal proceedings for detained noncitizens. He also held national leadership positions within the National Association of Immigration Judges. Prior to his judicial service, Mr. Cole was an Assistant United States Attorney in both the Civil and Criminal Divisions of the U.S. Attorney's Office for the Northern District of Illinois from 2003 until 2016. His work in the criminal division included healthcare and other complex fraud, national security, and public corruption. Among numerous other cases, Mr. Cole tried *United States v. William Beavers*, 12-cr-124 (N.D. Ill.), a public corruption and tax fraud case against then-Cook County Commissioner William Beavers. In the civil division, Mr. Cole defended the United States in suits involving the Federal Tort Claims Act and various employment discrimination statutes and brought suits on behalf of the United States under the False Claims Act (FCA). He also defended civil rights suits brought against individual federal employees pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Among numerous other cases, in the civil division he was the lead trial counsel for the government in *U.S. ex rel. Tyson v. Amerigroup*, No. 02-cv-6074 (N.D. Ill.), which resulted in the largest jury verdict in the history of the FCA. He began his legal career as a law clerk to the Honorable Charles P. Kocoras of the United States District Court for the Northern District of Illinois and later practiced in the Trial group at McDermott, Will & Emery. Mr. Cole has taught and lectured on immigration law and trial practice, and he is a member of the adjunct faculty at Loyola Law School where he teaches trial advocacy.

**Jennifer Stark,** a 2009 graduate of Columbia Law School, is a Senior Supervising Attorney at the Roger Baldwin Foundation of ACLU, Inc. She has practiced complex

18

constitutional and civil rights law over the course of her entire career with a particular emphasis on the rights of immigration detainees, incarcerated individuals, and people living with mental health disabilities. She has significant prior experience litigating class action lawsuits on behalf of immigration detainees. *See, e.g.*, *Torres v. Department of Homeland Security*, No. 18-2604 (C.D. Cal.) (involving barriers to legal communication for immigration detainees); *Franco-Gonzalez v. Holder*, No. 10-cv-2211 (C.D. Cal.) (establishing the right to legal representation in immigration proceedings for non-citizens with serious mental disabilities); *Rodriguez v. Marin*, No. 07-3239 (C.D. Cal.) (seeking timely custody hearings for noncitizens subject to prolonged detention); *Hedrick v. Grant*, No. 76-162 (E.D. Cal.) (enforcing the provisions of consent decree to remedy unconstitutional and discriminatory conditions of confinement at county jail for immigration detainees, pretrial detainees, and convicted prisoners). Additionally, Jennifer has significant experience litigating and monitoring class action lawsuits involving unlawful conditions of confinement for civil detainees, pre-trial detainees, and convicted prisoners. *See, e.g.*, *Hart, et al., v. Clendenin, et al.*, No. 20-1559 (C.D. Cal.) (class action lawsuit to protect highly vulnerable state hospital patients from unconstitutional and discriminatory conditions during COVID-19 pandemic); *Coleman v. Brown,* No. 90-520 (E.D. Cal.) (class action lawsuit consisting of more than 30,000 men and women in California's prison system with serious mental illnesses); and *Armstrong v. Brown*, No. 94-2307 (N.D. Cal.) (class action lawsuit challenging discrimination against incarcerated individuals and parolees with mobility, sight, hearing, learning, mental and kidney disabilities).

**Kathleen Hickey**, a 2021 graduate of Harvard Law School, is a Staff Attorney at Roger Baldwin Foundation of ACLU, Inc. She focuses on cases involving detention conditions, including *R.J. v. Jones*, No. 12-cv-07289 (N.D. Ill.) and *J.B.H. v. Knox County*, No. 24-cv-04096

(C.D. Ill.).  Ms. Hickey was formerly an associate at Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., where her practice included litigating in cases involving class plaintiffs.

**Alexa Van Brunt**, a 2009 graduate of Stanford Law School, is the Director of the Illinois office of the MacArthur Justice Center, as well as the Director of the Civil Rights Litigation Clinic at Northwestern Pritzker School of Law, where she is also a Clinical Professor of Law.  She has practiced complex constitutional and civil rights law over the course of her entire career, and has particular experience representing classes of people negatively impacted by the criminal legal system.  Her experience includes litigating class actions challenging Illinois' parole revocation and detention procedures, all of which resulted in settlements with the State of Illinois providing significant procedural protections for people on parole, including the appointment of counsel in revocation proceedings: *Morales v. Monreal*, No. 13-cv-7572, (N.D. Ill); *King v. Walker*, No. 06-cv-204 (N.D. Ill); and *M.H. v. Monreal et al.*, No. 12-cv-8523 (N.D. Ill).  It also includes class litigation challenging conditions in detention facilities, such as *Mays v. Dart*, No. 20-cv-2134 (N.D. Ill.), which resulted in a preliminary injunction order mandating protections for detainees in the Cook County Jail during COVID-19, an order largely upheld by the Seventh Circuit, and *Robinson v. Martin*, 16-CH-13587 (Cir. Ct. Ck. Cty), brought on behalf of a class of pretrial detainees who could not afford to pay their cash bail bond.  It also includes police misconduct class actions, such as *Campbell v. City of Chicago*, 17-cv-4467 (N.D. Ill.), challenging the Chicago Police Department's pattern and practice of using excessive force, which resulted in the named plaintiffs winning the right to monitor and enforce a court-ordered consent decree entered in the companion case brought by the Illinois Attorney General, and *Williams, et al. v. City of Chicago*, 22-cv-3773 (N.D. Ill.) a class action challenging the City of Chicago's use of ShotSpotter gunshot technology, which led to a successful settlement.

20

**Jonathan Manes,** a 2008 graduate of Yale Law School, is Senior Counsel in the Illinois office of the MacArthur Justice Center, as well as Clinical Associate Professor at Northwestern Pritzker School of Law, where he teaches in the Civil Rights Litigation Clinic and Media Law & Government Transparency Practicum. He has practiced complex constitutional and civil rights litigation his entire career and has previously worked at the ACLU National Security Project, Gibbons Fellowship in Public Interest & Constitutional Law, Yale Media Freedom & Information Access Clinic, and as founder of the Buffalo Civil Liberties & Transparency Clinic. He has significant prior experience litigating class actions, including litigation on behalf of a class of detained immigrants deprived of due process rights, *Gayle v. Napolitano,* No. 12-cv-2806 (D.N.J), and settling a class action on behalf of individuals denied adequate mental health treatment in a civil commitment facility in New Jersey, *Alves et al. v. Main*, No. 01-cv-789 (D.N.J.). More recently, he was lead counsel in a class action challenging the Chicago Police Department's pattern and practice or illegal stops and other harms arising from its use of ShotSpotter, *Williams, et al. v. City of Chicago*, No. 22-cv-3773 (N.D. Ill), which was concluded with a favorable settlement. He has previously represented immigrants in federal court proceedings challenging indefinite detention and as co-counsel in a complex removal matter in immigration court.

**Danielle Berkowsky**, a 2020 graduate of Northwestern Pritzker School of Law, is an attorney in the Illinois office of the MacArthur Justice Center. She has practiced complex constitutional and civil rights law for five years. She has specific experience litigating prison conditions and advocating for the rights of incarcerated people in cases including *Melendez v. Inch et al.*, No. 20-cv-01023 (M.D. Fla.), *Garner-Jones v. Carter et al.*, No. 21-cv-02928 (S.D. Ind.), *Monroe v. Hughes*, 19-cv-01060 (C.D. Ill.), *Hampton v. Baldwin et al.*, No. 18-cv-00550 (S.D. Ill.), *Hampton v. Meyer et al.*, No. 18-cv-00860 (S.D. Ill.), and *Pushing Envelopes Chicago v.*

*Jeffreys*, No. 18-cv-06986 (N.D. Ill.). She also represented a civil immigration detainee in *Emad v. Dodge County et al.*, No. 19-cv-00598 (E.D. Wis.). Prior to MJC, she worked as an attorney at Uptown People's Law Center, where she was class counsel on *Ross et al. v. Gossett et al.*, No. 15-cv-00309 (S.D. Ill.), a class action representing prisoners in a maximum-security prison in Illinois.

**Nathan P. Eimer**, a 1973 graduate of Northwestern University School of Law, is a founding partner at Eimer Stahl LLP. Prior to co-founding Eimer Stahl LLP in July 2000, Mr. Eimer was a partner at Sidley Austin LLP, where he was a member of the firm's Executive Committee, General Counsel to the firm, and co-head of the Commercial and Regulatory Litigation Practice Group in Chicago. His practice includes litigating and resolving complex class actions. He is a past President of the Board of Directors of the Chicago Lawyers' Committee for Civil Rights.

**Scott C. Solberg**, a 1990 graduate of Vanderbilt University School of Law, is a partner at Eimer Stahl LLP. Prior to co-founding Eimer Stahl LLP, Mr. Solberg was a partner at Sidley Austin LLP. His practice includes litigating and resolving complex class actions.

**Michael L. McCluggage**, a 1972 graduate of the University of Chicago, is a partner at Eimer Stahl LLP. Prior to joining Eimer Stahl LLP, Mr. McCluggage was a partner at Edwards Wildman. His practice includes litigating and resolving dozens of class action lawsuits.

**James B. Speta**, a 1991 graduate of the University of Michigan, is of counsel at Eimer Stahl LLP and the Elizabeth Froehling Horner Professor at the Northwestern University Pritzker School of Law, where he has been on the faculty since 1999 and served as interim dean in 2020 – 2021. Mr. Speta teaches and writes in administrative law, among other areas, and has authored amicus briefs to the Supreme Court and Courts of Appeals in administrative law cases. His practice also includes complex commercial and appellate litigation, with experience in class actions across

22

industries.

**Lisa S. Meyer,** a 1994 graduate of Valparaiso University School of Law, is a partner at Eimer Stahl LLP. Ms. Meyer was formerly an attorney at Sidley Austin LLP. Her practice includes complex class actions, and she has represented clients in hate crime and international human rights cases. Ms. Meyer previously served as President of the Board of Directors for the Chicago Lawyers' Committee for Civil Rights Under Law, Inc.

Collectively, Class Counsel has extensive and diverse experience in immigration and class action litigation and has litigated similar matters before this Court and others. *See., e.g, Castañon Nava v. Dep't of Homeland Sec.*, 435 F. Supp. 3d 880 (N.D. Ill. 2020); *Gayle v. Napolitano,* No. 12-cv-2806, 2013 WL 1090993, (D.N.J. Mar. 15, 2013); *Torres v. Dep't of Homeland Sec.*, No. 18-2604, 411 F. Supp. 3d 1036 (C.D. Cal. 2018); *Franco-Gonzalez v. Holder*, No. 10-cv-2211, 2010 WL 11436953 (C.D. Cal. 2010).

Counsel have committed and will continue to commit substantial resources to the case's prosecution, including by developing the factual record and legal issues underlying this case; performing legal research about potential claims and relief available to the Class; identifying and communicating with individuals with information about the challenged policies and conditions at Broadview; and drafting a detailed complaint as well as the present Motion for Class Certification and Emergency Motion for a Temporary Restraining Order. Proposed Class Counsel also do not seek any financial gain at the expense of absent class members' rights.

Accordingly, Plaintiffs and Proposed Class Counsel have no conflicts of interest with other Class members and are well-equipped to protect the shared interests of the Class. *See generally Toney*, 323 F.R.D. at 585; *Holmes*, 311 F.R.D. at 222.

## II.     The Proposed Class Meets the Requirements of Rule 23(b)(2)

The proposed Class also satisfies the requirements of Rule 23(b)(2), which requires that "the

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." A civil rights class seeking relief for conditions that affect all class members is a "prime" candidate for class certification. *Amchem*, 521 U.S. at 614. As noted above, courts routinely certify such classes under Rule 23(b)(2). *See supra* pp. 4-5.

As detailed in the Complaint, Defendants have created and maintained uniform inhumane conditions of confinement that "apply generally" to every detainee at Broadview and violate each of their constitutional rights. Fed. R. Civ. P. 23(b)(2); *see supra* I.B. Thus, the conduct here "is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them," and "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. The final injunctive and declaratory relief Plaintiffs seek—including access to counsel and basic necessities like sufficient food, water, and sanitation while detained at Broadview—would benefit the Class a whole. *See* Fed. R. Civ. P. 23(b)(2); *see also Holmes*, 311 F.R.D. at 223 (plaintiff's "request for relief is sufficient to certify the class under Rule 23(b)(2)" when plaintiff sought "declaration that [prison] policies and practices . . . violate federal law, and any other declaratory or injunctive relief appropriate to remedy past violations and prevent future violations"). As such, certification of the proposed Class under Rule 23(b)(2) is appropriate.

## III. The Proposed Class Meets the Requirements of Rule 23(b)(1)(a)

The proposed Class also meets the requirements of Rule 23(b)(1)(a) because individual adjudications "would create a risk of [] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Plaintiffs seek injunctive relief addressing Defendants' systemic practice of subjecting *all* detainees at Broadview to inhumane conditions and a denial of access to counsel in

24

violation of the First and Fifth Amendments. Plaintiffs seek declaratory relief addressing Defendants' systemic practice of using threats and coercion in order to procure signatures on immigration documents, including documents that waive rights and allow Defendants to take people out of the country without process.

If immigration detainees are forced to bring suits individually to challenge these uniform practices, different judges might impose different and conflicting requirements on Defendants. If one court "finds any portion of Defendants' challenged policies and procedures to be unconstitutional, Defendants would be required to modify the infringing policy or procedure. If another court, however, rules otherwise, Defendants would not be required to modify the same policies and procedures." *Moreno v. Napolitano*, No. 11-cv-5452, 2014 WL 4911938, at *11 (N.D. Ill. Sept. 30, 2014) (certifying class of individuals under Rule 23(b)(1)(a) when "[p]laintiffs contend that ICE's standard policies and procedures used to issue detainers violate their [] due process rights"); *see also Ashker v. Governor of State of California*, No. 09-cv-5796, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014) (certifying class of prisoners in conditions-of-confinement case under Rule 23(b)(1)(a) because "[i]f each of the hundreds of proposed members . . . were forced to adjudicate his claims individually, there would be a significant risk of inconsistent judgments."). Allowing individual adjudications could lead to hundreds of lawsuits by Class members challenging the same practices at Broadview and create the possibility of "inconsistent or varying results" requiring "incompatible standards of conduct" of Defendants. Fed. R. Civ. P. 23(b)(2).

## CONCLUSION

Every detainee is at risk of serious harm from the gross deprivations that occur at Broadview, and every detainee will benefit from having those conditions addressed. For these

reasons, Plaintiff Moreno Gonzalez and Agustin Zamacona respectfully move this Court to grant their Motion for Class Certification and certify a class of "All immigration detainees who are detained and those who will be detained in the future at the Broadview ICE facility at 1930 Beach Street, Broadview, Illinois" and designate the Roger Baldwin Foundation of ACLU, Inc., the MacArthur Justice Center, and Eimer Stahl LLP attorneys as Class counsel.

DATED: October 30, 2025          Respectfully submitted,

/s/ Kevin M. Fee

Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
Phone: (312) 201-9740
Fax: (312) 288-5225
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

Alexa Van Brunt
Jonathan Manes
Danielle Berkowsky
Chisato Kimura (license pending)
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th Floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org

danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org


Nathan P. Eimer
Scott C. Solberg
Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
Madeline F. Freyberg
**EIMER STAHL LLP**
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone:  312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
mfreyberg@eimerstahl.com