UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 25 C 13323 |
| v. ) | |
| ) | Judge Gettleman |
| KRISTI NOEM, Secretary U.S. Department ) | Magistrate Judge McNally |
| of Homeland Security, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**JOINT WRITTEN STATUS REPORT ON DISCOVERY**

The parties, by their undersigned attorneys, hereby submit the following joint status report pursuant to the court's directives on November 7, 2025, and order (Dkt. 57) to apprise the court about the status of expedited discovery.

Following discussions between the parties about the scope and timing of discovery, the Plaintiffs served Defendants with revised expedited discovery requests on November 6, 2025 (attached as Exhibit A). Defendants served Plaintiffs with expedited discovery requests on November 9, 2025 (attached as Exhibit B). The parties held a Rule 37 Conference on November 10, 2025, to attempt to resolve their discovery disputes. The parties now set out below the major unresolved discovery issues.

**Preliminary Injunction Hearing Timing**

In order to further develop the factual record including through expedited discovery, the Plaintiffs have agreed to ask the court to continue the preliminary injunction hearing while maintaining the TRO in place until approximately December 17.

**Protective Order**

The parties have not yet agreed on a protective order. The primary obstacle involves a modification of the Form LR 26.2 Model Confidentiality Order requested by Defendants to paragraph 5(a), related to Protection of Confidential Material. The Model Order provides that "Confidential Information shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof." Defendants are seeking a modification of the Model Order to allow Defendants to use protected information "to enforce federal law." Specifically, Defendants seek to include the following sentence: "However, subject to all existing limitations on disclosure of information by United States (such as but not limited to the Privacy Act, 5 U.S.C. § 552a, etc.), nothing in this Order restricts in any way the use or retention of disclosed information by the United States, its agencies, or agents to enforce federal law."

*Plaintiffs' Position*

Plaintiffs believe that this modification will allow Defendants to use protected information they obtain about members of the class through discovery for purposes of separate immigration and criminal enforcement activities, which is unacceptable to Plaintiffs. Plaintiffs are particularly concerned that such an open-ended and unlimited use of protected information by the Defendant agencies will expose Plaintiffs' witnesses to immigration enforcement activities and retaliation. For example, members of the putative class have been targeted for arrest and detention despite having permission to work and live in the country. Many class members have family members who are—or who legitimately fear—being targeted. The Defendants' proposed addition to the protective order means, in effect, that DHS, ICE, and CBP reserve the right to take advantage of the tools of discovery afforded to them as Defendants in this conditions case to investigate and enforce immigration laws or other laws against Plaintiffs and class members (or anyone else) in

2

separate proceedings unrelated to their defense of this action. Plaintiffs do not believe it is appropriate to grant Defendants a special exemption from the ordinary rules governing confidential discovery so that they can use discovery from this case against Plaintiffs and class members in other matters.

Defendants' proposed modification of the standard protective order also threatens to deprive the Court and putative class counsel of important evidence. Even the specter of immigration or criminal enforcement against witnesses or their families will discourage potential witnesses from speaking with putative class counsel or providing evidence relevant to Plaintiffs' claims. Plaintiffs believe that such language will severely inhibit Plaintiffs' ability to gather and present evidence in support of their case and, as a result, it will inhibit the core fact-finding function of the Court. Instead of Defendants' modification to the Model Order, Plaintiffs seek to add language that would clarify that protected information *cannot* be used in any way to support immigration or criminal enforcement activities.

Defendants argue that this court has no authority to issue the protective order because such an order would be contrary to 18 U.S.C. § 6003. This is incorrect. This protective order is a civil discovery order, and the court has the power and authority to enter such a protective order under FRCP 26(c), which has been promulgated by the Supreme Court pursuant to its grant of authority under 28 U.S.C. § 2072. It is not and does not purport to be an order issued under 18 U.S.C. § 6003.

The government's argument that the use immunity statute 18 U.S.C. § 6003 bars such an order is without basis. Plaintiffs have only just seen Defendants' legal argument for the first time this morning, but they offer two immediate responses: First, Defendants' argument about use immunity applies only to criminal proceedings, not civil immigration enforcement. The Seventh

3

Circuit case Defendants cite has to do only with criminal prosecution. Thus, even if the Court were to accept Defendants' arguments it should still issue a protective order barring use of the information for civil enforcement including immigration enforcement. Second, even with respect to criminal proceedings, what the government is really saying is the protective order might not protect the disclosures as much as the order might indicate on its face because a future court might find that, through criminal process such as a Grand Jury subpoena, information subject to a protective order issued under the authority of Rule 26(c) might be available to the government. That is an open question of law and unlikely to come up. (The sole case the government cites says nothing about Rule 26(c) and how it may interact with the use immunity statute.) If this issue were to arise in a future criminal prosecution, the defense attorney will make an argument in that proceeding that the information is protected, and that district court (and likely the Seventh Circuit) will decide this novel question. But as for now, it is clearly within this court's authority under FRCP 26(c) to enter a civil protective order. The alternative to this protective order is that the government is simply allowed to just use this material for civil immigration and criminal enforcement, and that will have all of the negative effects Plaintiffs have set out above.

Plaintiffs also seek modifications to provisions of Defendants' proposed protective order that concern "Attorney's Eyes Only" disclosure and the definitions of certain categories of confidential information. The Defendants' provisions are unnecessarily restrictive.

*Defendants' Position*

The addition of the language in paragraph 5(a) is presented with good cause as we routinely include such language in protective orders to the effect that the use of documents disclosed to the United States in discovery is already comprehensively regulated by federal statutes such as the Privacy Act and the Right to Financial Privacy Act as well as by exemptions to the Freedom of

Information Act. Retention and eventual destruction of documents by federal agencies, including the Department of Justice, is governed by federal statute and regulation of the National Archives and Records Administration (NARA). Any time *ad hoc* procedures are introduced into an existing, comprehensive scheme, there is a risk that one will interfere with the other (in this case, either with how the documents can be used, how long they should be retained, or when they should be destroyed). Better to expect that a comprehensive approach will work best when special (and unnecessary) steps are not added to the thoughtfully designed mix.

Another reason for the additional language in paragraph 5(a) is to avoid an inadvertent grant by the court of use immunity to a private party, something that courts are not permitted to do. Our recollection of the discussion when the LR 26.2 Model Confidentiality Order was first promulgated more than a decade ago was that it was designed to reduce many parties' anxiety about disclosing documents in one case only to have them used against the disclosing party in another case or being used to bring another case. That is a perfectly sensible approach to litigation between *private* parties, but that same approach is not appropriate when it comes to the United States. An order that tells a party that it can disclose evidence to the United States in one case and that the disclosures cannot be used against him in another case is granting use immunity for the disclosure. But use immunity is a statutory creation, 18 U.S.C. § 6003, and "Congress has delegated the authority to grant use immunity solely to the executive branch of government," which "foreclose[s] the federal courts from taking more than a ministerial role in prosecutorial immunity decisions." *United States v. Taylor*, 728 F.2d 930, 934 (7th Cir. 1984). It is concededly rare in actual practice for a civil litigant to produce, for example, a criminally or civilly incriminating document. But the fact is that we don't know what is going to be produced before it is produced, and we cannot agree to an order in one case, much less in all cases routinely, that

5

in effect grants a litigant against the government use immunity for the disclosure. It is for this additional reason that by including the proposed proviso in every case (that the use and retention of documents by the United States is governed by existing federal statutes), we avoid any inadvertent grant of use immunity by the court. This approach has been used by this office without controversy at least since the LR 26.2 Model Confidentiality Order was promulgated years and years ago.

**Plaintiffs' Discovery**

1. **Surveillance Video from Inside Broadview.** In their Expedited Discovery Request No. 9, Plaintiffs request surveillance video from inside the Broadview facility captured by Defendants' equipment for a limited set of days, starting in mid-September 2025. Plaintiffs also request current video on a weekly basis. Defendants have agreed to produce video from September 28, 2025, to October 19, 2025, and also from October 31, 2025, to November 7, 2025. Plaintiffs are providing Defendants with hard drives for this production, and the parties expect that this initial production will be made shortly. The parties are discussing ways to ease the burden of production of video going forward, including by having Plaintiffs select random days for production rather than the production of all video on an on-going basis.

Defendants have indicated that some video between October 19, 2025, and October 31, 2025, has been irretrievably destroyed and therefore cannot be produced on an expedited basis or at all. Plaintiffs are in the process of hiring an IT contractor. Plaintiffs' contractor will meet with the government's ESI Liaison (with attorneys on the phone) to attempt to work through issues concerning the missing video, including whether any content is able to be retrieved. While Plaintiffs intend to explore the issue of missing footage, Plaintiffs have communicated to

Defendants that they are most concerned with obtaining the available surveillance videos as quickly as possible.

2. **Emails from Attorneys to Broadview Seeking Client Access.** In Request No. 3, Plaintiffs request that Defendants produce certain emails that attorneys for detainees may have sent to three specified Chicago ERO email addresses in an attempt to contact ICE officials at Broadview and reach their clients at the facility. Plaintiffs provided a Boolean search to identify these documents. Defendants informed Plaintiffs that the search returned 1447 content hits and 3114 content hits with family. Defendants raised concerns that producing these emails, including identifying emails that may have been forwarded to other DHS officials for their response, would take close to a month to review and produce.

*Plaintiffs' Position*

This email discovery is essential to Plaintiffs' access to counsel claims. Plaintiffs are willing to work with Defendants to potentially narrow the search terms or omit emails on a categorical basis if many of the hits are not relevant or redundant. (Plaintiffs have found that email reviews can usually be narrowed by consent when the producing party acts quickly to review the results and flag plainly irrelevant or duplicative messages captured by the search terms.) Nevertheless, Plaintiffs believe that even the current quantity of results is small enough for Defendants to produce electronically on an expedited basis.

*Defendants' Position*

Defense counsel suggests that the parties' ESI Liaisons discuss this to see if the production may be narrowed or otherwise expedited.

3. **Other issues.** In Requests 4 and 5, Plaintiffs seek detention logs of detainees housed at Broadview for the relevant time period and Excel files of detainees housed there, similar

7

to those available on the DHS website and as noted in Request No. 5. Defendants have agreed to produce detention logs electronically but state that they do not have the Excel spreadsheets requested in Plaintiffs' Request No. 5 because that information has not, to date, been compiled into spreadsheet form. Defendants agreed to explore why some data fields appear in the Excel files but are not present in the detention log data. Defendants have agreed to produce daily detention logs in both pdf and their native Excel format. To the extent that plaintiffs are seeking to have the defense generate a report that does not already exist, the defense objects because such is a burden that Rule 34 does not require.

In Request 6, Plaintiffs seek documents related to supplies and amenities purchased for use at Broadview. Defendants informed Plaintiffs that they would be able to produce records relating to food purchases and janitorial services, along with records of detainees admitted to the hospital. They are verifying whether they can produce the other records requested such as medication, clothing, hygiene supplies, bedding, and blankets.

In Request No. 7, Plaintiffs seek information to identify individuals who received voluntary departure. Plaintiffs' position is that this information is essential to their due process claim concerning the Defendants' coercive practices. Defendants said that this information is not readily accessible, but that they are exploring ways to provide it.

Plaintiffs and Defendants continue to discuss other issues related to their discovery requests that the parties anticipate can be resolved without further involvement of the court.

**Defendants' Discovery**

At the Rule 37 conference, Defendants stated that their objective in their expedited discovery requests was to obtain in advance of the preliminary injunction hearing any evidence that Plaintiffs intend to introduce at the hearing. The parties are still discussing the timing of such

Case: 1:25-cv-13323 Document #: 66 Filed: 11/12/25 Page 9 of 10 PageID #:1288

disclosures. To the extent that Defendants seek documents and information beyond disclosure of hearing evidence and witnesses, Plaintiffs will likely object to the scope and expedited timing of some of the requests.

Defendants also requested 3-hour depositions of all of Plaintiffs' intended witnesses at the preliminary injunction hearing. Plaintiffs raised objections to the need for pre-hearing depositions specifically as it relates to current or former ICE detainees. Defendants have indicated a willingness to instead accept signed declarations that preview what such witnesses will say at the evidentiary hearing.

Plaintiffs acknowledge that their expert witness is in a different category than are former detainees and do not object to the expert's deposition in advance of the hearing.

**Rule 45 Subpoenas**

Defendants did not raise an objection to Plaintiffs' limited use of Rule 45 subpoenas during expedited discovery. Plaintiffs intend to serve the subpoenas as soon as Defendants provide information as to their food vendors.

Respectfully submitted,

*Counsel for Plaintiffs*

/s/ Samuel B. Cole
Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
Fax: (312) 288-5225
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

/s/ Alexa Van Brunt
Alexa Van Brunt
Jonathan Manes
Danielle Berkowsky
Chisato Kimura (license pending)
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org

/s/ Nathan P. Eimer
Nathan P. Eimer
Scott C. Solberg
Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com

*Counsel for Defendants*

ANDREW S. BOUTROS
United States Attorney

By: s/ Jana L. Brady
    JANA L. BRADY
    PATRICK JOHNSON
    JONATHAN HAILE
    Assistant United States Attorneys
    327 S. Church St., Suite 3300
    Rockford, Illinois 61101
    jana.brady@usdoj.gov
    patrick.johnson@usdoj.gov
    jonathan.haile@usdoj.go