## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **COALITION FOR SPIRITUAL FOR AND PUBLIC LEADERSHIP, FR. LARRY DOWLING, SR. JEREMY MIDURA, FR. DENNIS BERRY, FR. DAN HARTNETT, and MICHAEL N. OKIŃCZYC-CRUZ,** | |
| Plaintiffs, | Civil Action No. |
| -against- | |
| **KRISTI NOEM, TODD LYONS, MARCOS CHARLES, RUSSELL HOTT, RODNEY S. SCOTT, GREGORY BOVINO, PAMELA BONDI, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, and DONALD J. TRUMP** | **PLAINTIFFS' COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| Defendants. | **JURY TRIAL DEMANDED** |

Coalition for Spiritual and Public Leadership ("CSPL"), Fr. Larry Dowling, Sr. Jeremy Midura, Fr. Dennis Berry, Fr. Dan Hartnett, and Michael N. Okińczyc-Cruz (collectively "Plaintiffs"), individually and on behalf of all other persons similarly situated, by and through their undersigned attorneys, allege upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters:

### NATURE OF THE ACTION AND OVERVIEW

1.      This action involves the violation of Plaintiffs' rights under the Free Exercise Clause of the First Amendment to the United States Constitution, Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, *et seq*., and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. The action arises from

Defendants' complete denial of Plaintiffs' rights to practice their religion at a detention facility in Broadview, Illinois, without such denial serving any compelling governmental interest and without allowing such practice under the least restrictive means for serving any governmental interest in safety and security at the detention facility.

2.      On October 11, 2025, the Plaintiffs gathered with 1,000 Catholics and faith community members at St. Eulalia Parish in Maywood, Illinois, before the start of their Eucharistic Procession to the U.S. Immigration and Customs Enforcement ("ICE") facility in neighboring Broadview, Illinois. The participants continued their Eucharistic celebration with a procession to the U.S. Immigration and Customs Enforcement ("ICE") facility in neighboring Broadview, Illinois. The culmination of Plaintiffs' and other participants' religious service would be praying with and providing Holy Communion to detainees housed at the ICE facility.

3.      After the ICE Broadview facility was established in 2006, one of the members of CSPL, Sr. JoAnn Persch, for ten years, came every week to Broadview, usually at 4:00 a.m., and by permission of ICE entered and prayed with the detainees. Beginning in 2010, ICE permitted these regular visits, and there were never any safety or security concerns; ICE actually invited Sister JoAnn to carry out her ministry in Kenosha, Wisconsin, Dodge County, Wisconsin, and Kankakee, Illinois. During the so-called Operation Midway Blitz, however, and at present, without specifying any safety or security concern, or giving any specific reason, the Defendants have denied access to Sr. JoAnn Persch and the other Plaintiffs.

4.      On October 11, 2025, when the Plaintiffs reached the facility's gates, they asked the Illinois State Police ("ISP") officers stationed outside the facility to relay the request to ICE personnel at the facility, but upon returning, the officers informed the Plaintiffs that access to the facility to pray and give Holy Communion was denied.

2

5. After being denied access to the facility to give detainees Holy Communion, Plaintiffs prayed outside, administered Holy Communion among themselves and other celebrants in the procession, and dispersed.

6. The only explanation given to Plaintiffs by ICE to justify its denial of the Catholic priests' and sisters' religious service, which they heretofore had been permitted, was a generic reference to "safety and security concerns and the transitory nature" of the Broadview facility.

7. On November 1, 2025, Plaintiffs held a Mass down the block from the ICE facility and requested permission to administer Holy Communion to detainees housed in the facility. ICE again denied the Plaintiffs' request. By email, ICE stated that the denial was based on "safety and security concerns," without further explanation.

8. Denying the Plaintiffs' rights to practice their religion also worked to deny detainees' rights under the Free Exercise Clause, as well. The Free Exercise Clause of the First Amendment regulates the challenged conduct by Defendants. Because the Plaintiffs and the Broadview detainees are equally prohibited from the exercise of their religion by participation in Plaintiffs' ministry and distribution of Communion, and because the detainees are not in a position even to communicate with Plaintiffs and assert their own rights in this Court, the Plaintiffs have standing to assert the First Amendment rights of the detainees who would join in the religious services at Broadview.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, § 2201, and 5 U.S.C. § 702, because this case presents a substantial question of federal law.

10. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 & 2202 and 5

U.S.C. §§ 705, 706(2).

11.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, a substantial part of the property subject to this action is situated in this district, and Plaintiffs reside in this district.

## PARTIES

### Plaintiffs

12.     The Coalition for Spiritual and Public Leadership ("CSPL") is a religious advocacy group that brings together congregations, universities, parishes, and other grassroots organizations in Chicago and the western suburbs, particularly Maywood, Melrose Park, Broadview, and Proviso Township, to help improve those communities. It equips people of faith with skills to build systems that advance racial, economic, social, and environmental justice. The CSPL organized the procession from St. Eulalia Church to the ICE facility in Broadview on October 11, 2025, and the Mass held near the facility on November 1, 2025, at which its small delegation of clergy was denied access to pray and administer Holy Communion to detainees. CSPL members also drafted letters and emails seeking permission for a small delegation of clergy to pray and administer Holy Communion to detainees. CSPL members also travelled to the Chicago U.S. Department of Homeland Security ("DHS")/ICE field office at 101 Ida B. Wells Drive in Chicago in attempts to meet with DHS/ICE officials who had the authority to discuss and implement a process for a small contingent of clergy to pray and administer Holy Communion. CSPL members also went to the field office to seek clarification on the process, criteria, documentation, and timeline for its small delegation of clergy to receive approval for regular pastoral access (including, but not limited to, administering Holy Communion) at the Broadview ICE facility.

13.     Fr. Larry Dowling is a priest in the Archdiocese of Chicago, now 34 years ordained. He served as a parish priest and pastor throughout his ministry. In addition to ministering to

4

parishioners and the surrounding community, he has also ministered to and supported people incarcerated in Cook County Jail and various Illinois state prisons, as well as their relatives suffering from their absence. Although not a part of the formal ministry at Kolbe House in Chicago, he has visited specific individuals in Cook County Jail, Juvenile Detention, and Illinois State Prisons in Danville, Stateville, and Kewanee. His years of ministering to the incarcerated and their families have informed his understanding of how vital praying, administering the sacraments, and personal interaction with a member of their faith community have been to those imprisoned as well as to their families, who have been reassured and comforted by his presence with them and to their loved ones in jail/prison. Fr. Dowling attended the October 11, 2025, Eucharistic Procession from St. Eulalia Church to the Broadview ICE facility and was a member of the delegation denied access to pray and to administer Holy Communion to detainees.

14.     Sr. Jeremy Midura, CSSF, is a member of the Congregation of Sisters of St. Felix of Cantalice Third Order Regular of St. Francis of Assisi ("CSSF"), with extensive work ministering to people detained in prisons. She has volunteered at the Attica Correctional Facility, a maximum-security prison campus in the Town of Attica, New York, operated by the New York State Department of Corrections and Community Supervision. Sister Mary Rosalind Rosolowski, another Felician Sister, has been the chaplain there for over 30 years. Sr. Jeremy and other Felician Sisters provided music for the monthly Catholic masses that were held for the inmates. The masses were held in a large auditorium, and she directly interacted with several inmates, setting up the altar and other items for the mass. She was also part of a group of 20 Sisters who would sit and talk one-on-one with maximum-security inmates, after which they would provide a luncheon in a visitation room. In 2019, at the height of the separation of children and adults at the Southern border, the Buffalo Federal Detention Facility, located in Batavia, NY, an ICE processing facility,

like the Broadview ICE facility, became overcrowded with detainees. Having become aware of this through an immigration judge in the Buffalo area, members of her church purchased Spanish books, Bibles, and game books. They were permitted to deliver them to detainees at the facility. Detainees' families told them their appreciation. Without any notice, ICE told them to stop their simple acts of charity, even forbidding them to mail the items directly to the facility. Sr. Jeremy attended the October 11, 2025, Eucharistic Procession from St. Eulalia Church to the Broadview ICE facility and was a member of the delegation that was denied access to pray and administer Holy Communion to detainees.

15.     Fr. Dennis Berry, S.T., is a member of the Missionary Servants of the Most Holy Trinity (Trinity Missions). For 55 years, since his days in the seminary, he has been working with the immigrant community, principally in California, New Jersey/New York, Alabama, Puerto Rico, the Washington, D.C., area, and now Chicago. From 1984 to 1990, he served as a Catholic Chaplain in Orange County, CA, at the main jail complex, the youth facility, and various Southern California prisons, celebrating Masses, hearing confessions, and providing pastoral counseling and support to prisoners.

16.     Fr. Berry was a Catholic Chaplain at the Stewart Detention Center in Lumpkin, GA, from its inception as an immigration detention center in 2004 until he was reassigned in 2016. He ministered at the 1,750-bed Stewart Detention Center in 2011, when it was the largest and busiest ICE facility in the United States. Stewart housed detainees who ICE apprehended off the street in the U.S., detainees who had been released from prison before deportation, and detainees who were considered more dangerous, awaiting deportation. Fr. Berry celebrated Mass in the dining room for 100+ detainees. He prayed, heard confessions, and administered Holy Communion to detainees individually, from door to door in their cells, and frequently ministered to detainees held in solitary

6

confinement. As such, he is well-aware of safety and security concerns in federal detention facilities. Fr. Berry attended the November 1, 2025, Mass and was a member of the delegation denied access to pray and to administer Holy Communion to detainees.

17.     Fr. Dan Hartnett, S.J., is a member of the Society of Jesus with decades of ministry experience in Peru, Cincinnati, and Chicago. He has worked with Kolbe House jail ministry and, for the past several years, has celebrated the sacraments (reconciliation, Eucharist, healing, etc.) every Sunday in the Cook County Jail. He also offers a ten-week program, loosely based on the Spiritual Exercises of St. Ignatius, called "Learning to Become Free on the Inside." Fr. Hartnett attended both the Eucharistic Procession from St. Eulalia in Maywood, Illinois, to the ICE facility in Broadview on October 11, 2025, and the Mass held near the ICE facility in Broadview on November 1, 2025. He was a member of the delegation that was denied access to pray and to administer Holy Communion to detainees during each religious service. After being denied access during the Mass, he stated, "I'm sure they heard us singing . . . . I'm sure they heard us talking, so hopefully they get strength from our presence."

18.     Michael N. Okińczyc-Cruz, D.Min., is the Executive Director of CSPL and an adjunct professor of theology at the Loyola University Institute of Pastoral Studies. He directed the organizing of the Eucharistic Procession from St. Eulalia in Maywood, Illinois, to the ICE facility in Broadview on October 11, 2025, and the Mass held near the Broadview ICE facility on November 1, 2025. Mr. Okińczyc-Cruz was a member of the delegation denied access to pray and administer Holy Communion at each religious service. Mr. Okińczyc-Cruz led the effort in writing emails and letters to the ICE Chicago Field Office Director requesting permission for a small contingent of clergy to pray and distribute Holy Communion to detainees at the ICE facility in Broadview before the October 11, 2025, Procession and the November 1, 2025, Mass. He also wrote emails

and letters requesting the process, protocol, or procedures required by ICE to obtain permission to enter the Broadview facility for clergy to pray and distribute Holy Communion to detainees. He travelled with other members of CPSL to the ICE Field Office at 101 Ida B. Wells Drive in Chicago to request permission, the requirements, or, simply, a meeting to discuss obtaining permission for clergy to pray and administer Catholic sacraments to detainees. Mr. Okińczyc-Cruz was instrumental in all aspects of Plaintiffs' attempts to communicate with Defendants to obtain permission to pray and distribute Holy Communion to detainees.

19. Plaintiffs Fr. Dowling, Sr. Midura, Fr. Berry, Fr. Hartnett, Okińczyc-Cruz, and CSPL, each sought to exercise, but were denied by ICE, their right to free exercise of religion under the First Amendment to the Constitution and the RFRA by being denied the right to pray and administer Holy Communion to detainees housed at the ICE facility in Broadview.

### Defendants

20. Defendant Kristi Noem, at all times relevant hereto, was the Secretary of the U.S. Department of Homeland Security ("DHS").

21. Defendant Todd Lyons, at all times relevant hereto, was Acting Director of ICE.

22. Defendant Marcos Charles, at all times relevant hereto, was Acting Executive Associate Director of Enforcement and Removal Operations at ICE.

23. Defendant Russell Hott, at all times relevant hereto, was the Chicago Field Office Director of ICE.

24. Defendant Rodney S. Scott, at all times relevant hereto, was Commissioner of U.S. Customs and Border Protection ("CBP").

25. Defendant Gregory Bovino, at all times relevant hereto, was Chief Border Patrol Agent.

26.     Defendant Pamela Bondi, at all times relevant hereto, was the Attorney General of the United States.

27.     Defendant U.S. Department of Homeland Security and Defendant U.S. Department of Justice administer the detention of individuals by ICE and CBP.

28.     Defendant Donald J. Trump, at all times relevant hereto, was President of the United States.

## BACKGROUND

29.     Catholics have been praying outside of the ICE facility at Broadview for well over twenty years. In 2006, two members of the Sisters of Mercy, Sr. JoAnn Persch and Sr. Pat Murphy, heard from an attorney about Catholics praying the Rosary outside the facility, and went to Broadview to pray on January 5, 2007. Sr. JoAnn and Sr. Pat returned each week in person until the COVID-19 lockdown halted in-person contact. In praying and talking with families, they were made aware of the trauma the detainees were enduring and requested permission from ICE for access to the facility to pray and speak to detainees. Initially, the ICE personnel at the Broadview facility denied their request, and calls to the Midwest ICE Field Office Director were not returned, but after the two sisters wrote a letter of request and mailed it certified to the Director, they received a telephone call instructing them to go to the McHenry County Jail to provide pastoral Care.

30.     Thus, in early 2008, the two sisters went to the McHenry County Jail but were denied entry. In 2008, the Access to Religious Ministry Act was proposed, requiring county jails used for ICE detainees to provide religious workers with reasonable access. The Act was passed unanimously in the Illinois House and Senate and became law in June 2009. The sisters contacted ICE and were asked to add three more jails to their ministry: Kenosha, WI; Dodge County, WI; and Kankakee, IL.

31.     The sisters kept communicating with the ICE Chicago Field Office Director about access to Broadview. In 2009, they were allowed to pray with detainees on buses prior to ICE transporting them to deportation flights. Meetings with detainees were allowed during family visitation hours, from 4 a.m. to 6 a.m. The length of the meetings varied, as ICE monitored when the planes were leaving, sometimes from Gary, IN, airport, and the detainees had to go depending on when the flights were ready to depart. When the deportations were temporarily moved to a jail in Kankakee, IL, Sr. JoAnn and Sr. Pat continued their meetings with detainees there at 4 a.m.

32.     The stories the sisters heard from families in 2009 about the trauma detainees endured led them to request permission from ICE to gain access to the facility to pray and provide pastoral care to detainees. Initially, the ICE personnel at the Broadview facility denied the request, and calls to the ICE Field Office Director went unanswered. Sr. JoAnn and Sr. Pat reached out directly to the field office director for ICE's Enforcement and Removal Operations (ERO) Chicago, Richard Wong, who approved their request and personally escorted them into the Broadview facility in March 2010 to provide pastoral care.

33.     As part of their work, Sr. JoAnn and Sr. Pat started the Interfaith Committee for Detained Immigrants. Now, in addition to the ministry in Broadview and four jails, there was a court watch program, two houses for detainees released from jail, and a ministry in their children's home for unaccompanied minors. For the next ten years, from 2010 to 2020, the sisters met detainees and their families at 4 a.m. every Friday. The only thing that stopped their visits inside the Broadview ICE facility was the nationwide lockdown due to the COVID-19 pandemic. For the next couple of years, they conducted their visits and prayers at Broadview and the jails via Zoom to continue their ministry to detainees.

34.     The sisters were on two committees for persons coming up from the border, *i.e.*, the

Archdiocese/Catholic Charities and the Sanctuary Working Group. During the lockdown, the director of the Broadview ICE facility called the sisters and asked them to help find housing for a woman who was released and had nowhere to go. The sisters found housing for her and went to the Broadview ICE facility, picked her up, and took her to meet a volunteer who would take her to the housing. This led the sisters to start Catherine's Caring Cause, which they incorporated and currently has 16 apartments. Up to 30 families have completed a year's residence and are now living independently.

35.    As the lockdown was ending in 2022, the sisters resumed praying at the Broadview ICE facility. Together with clergy and laypersons, they maintained cordial relations with ICE personnel at the facility and at the Chicago field office. Their group, praying the Rosary, positioned themselves at the base of the steps leading into the facility. They greeted ICE officers as they came and went, and the ICE officers did not raise any problems with any of them. For example, in January 2025, a reporter and photographer from the *Chicago Tribune*, and later a photographer and videographer from the *Associated Press*, attended the prayer service, and no one from ICE did anything to interrupt or bother them.

36.    But it ended abruptly when ICE's "Chicago Midway Blitz" began in September 2025. While praying the Rosary at the base of the steps, ICE agents in camouflage uniforms and masks rushed down the steps towards the sisters and the others who were in prayer to disperse them. There was no longer any contact with ICE personnel or anyone else in the facility. Shortly thereafter, fencing was installed around the facility, and prayer on the site ceased.

## SUBSTANTIVE ALLEGATIONS

### Background

37.    The Eucharistic Procession from St. Eulalia Church to the ICE facility in

11

Broadview is what "Catholics have been doing for centuries…which is to bring the presence of Jesus to those who are at the margins." As one celebrant noted, "[T]he entire event would have been 'rendered unpolitical,' . . . if ICE officials had allowed ministers in to share Communion with detainees since 'we were simply doing what the Catholic Church always does.'" *See* Edward Desciak, *Catholics around the nation take a stand against Trump mass deportation policy*, AMERICA MAGAZINE (Oct. 30, 2025); https://www.americamagazine.org/politics-society/dispatches/2025/10/30/catholic-eucharistic-trump-immigration-deportation/.

38.    This ministry to those at the margins is what the Catholic Church has always done, and as the leader of the Church in Chicago, Cardinal Blaise Cupich, has made clear, it continues today, stating, "I speak to you as your shepherd, but also as a fellow pilgrim who shares the pain of many of our immigrant communities. Families are being torn apart. Children are left in fear, and communities are shaken by immigration raids and detentions. These actions wound the soul of our city. Let me be clear. The Church stands with migrants." Statement of Cardinal Blase J. Cupich, archbishop of Chicago, on Standing with Immigrants (October 21, 2025); https://www.archchicago.org/statement/-/article/2025/10/21/statement-of-cardinal-blase-j-cupich-archbishop-of-chicago-on-standing-with-immigrants. The United States Conference of Catholic Bishops recently affirmed support of immigrants and stated, "We are concerned about the conditions in detention centers and the lack of access to pastoral care. We lament that some immigrants in the United States have arbitrarily lost their legal status." U.S. Bishops Issue a "Special Message" on Immigration from Plenary Assembly in Baltimore (Nov. 12, 2025); https://www.usccb.org/news/2025/us-bishops-issue-special-message-immigration-plenary-assembly-baltimore.

39.    The Catholic Church recognizes service to people on the margins as corporal works

12

of mercy that are cornerstones of Christianity. For example, "[A]mong the corporal works of mercy[,] the Church has always listed the visit to prisoners." Pope Benedict XVI, *Pastoral Visit to the Rebibbia Prison District, Rome* (Dec. 18, 2011); https://www.vatican.va/content/benedict-xvi/en/speeches/2011/december/documents/hf_ben-xvi_spe_20111218_rebibbia.html. Pope Benedict explained the scriptural foundation that compels Catholics to minister to the prisoner and foreigner. While he himself was ministering to detainees, Pope Benedict stated, "'I was in prison[,] and you came to me' (Mt 25:36). These are the words of the Last Judgement, recounted by Matthew the Evangelist in chapter 25, and the Lord's words, by which he identified with inmates, that express to the full the meaning of my visit to you today. Wherever there is someone hungry, a foreigner, a sick person, a prisoner, there is Christ himself, who is waiting for our visit and our help. This is the main reason why I am glad to be here, to pray, to converse and to listen." *Id.*

40.     Indeed, Catholic and Protestant clergy alike had previously ministered to detainees at the Broadview ICE facility. Since 2006, Catholic priests, sisters, and laypersons have prayed the Rosary outside the ICE facility in Broadview, including being allowed to pray with detainees at the facility. Sr. JoAnn Persch provided pastoral care to detainees on buses as they awaited removal to another facility, as well as going ***inside*** the Broadview facility, for over a decade, to conduct her ministry. But ICE's attitude has changed, and the clergy and laypersons attending weekly Catholic religious services were told to refrain from praying as they had for all those years. As one priest stated, "his religious freedom, along with others, has been met with intimidation and 'untoward harm' at the hands of federal officials." *See* Jack Jenkins, *Pushing back: As ICE rocks Chicago, Catholics respond with prayer – and protest*, SIGHT MAGAZINE (Oct. 15, 2025), https://sightmag-azine.com.au/features/pushing-back-as-ice-rocks-chicago-catholics-respond-with-prayer-and-protest/.

41.     Faced with such intimidation, Plaintiffs attempted to reach out to DHS and ICE for permission to meet with detainees as part of the Eucharistic procession scheduled for October 11, 2025. Plaintiff Okińczyc-Cruz, however, was having difficulty getting in touch with someone from DHS/ICE who could permit priests and sisters at the Mass and procession to minister with detainees inside the Broadview facility, as they were allowed to do earlier. He reached out to Sr. Persch, who contacted one of the community liaisons from ICE whom she had previously worked with. Sr. Persch spoke to the liaison and provided them with Mr. Okińczyc-Cruz's contact information in advance of the procession. Despite the efforts on Sr. Persch's behalf, Mr. Okińczyc-Cruz never heard back from anyone at ICE.

42.     Plaintiff Okińczyc-Cruz reached out to the ISP, who patrol outside the Broadview facility, for some assistance. He spoke to an ISP director and asked if he could reach out to ICE on the Catholic clergy's behalf to convey their intention and request to bring Communion to the detainees on October 11. It appears that the ISP director never heard back from ICE after submitting the request on behalf of the Catholic clergy.

43.     After multiple attempts to contact DHS or ICE, Plaintiff Okińczyc-Cruz sent an email to the ICE interim Chicago Field Officer, Defendant Hott, and asked if a small group of priests and nuns could administer Holy Communion to detainees at the facility as part of their Eucharistic procession. In response, Defendant Hott declined to accommodate any religious service "due to safety and security concerns and the transitory nature of the BSSA."

44.     As Catholic clergy had earlier been allowed to minister to detainees at the Broadview ICE facility, and as Plaintiffs and other Catholic and Protestant clergy believed they had a right to practice their faith at the facility, they planned to hold a Catholic Mass down the block from the ICE facility in Broadview on November 1, 2025, a sacred feast day in the Catholic

tradition called All Saints Day. During the service, Plaintiffs and other clergy planned to pray with and administer Holy Communion to detainees in the facility, while other celebrants peacefully remained outside and prayed.

45.     On October 23, 2025, Broadview Mayor Katrina Thompson emailed a letter, which was also sent by certified mail the day before, to the Chicago ICE Field Office requesting permission to hold the planned religious service in front of the ICE facility on November 1, 2025, and to allow entry into the facility to offer Communion to any detainees who want to participate.

46.     An article in the *Chicago Tribune* reported, quoting a statement from DHS, that DHS/ICE required a week's notice for the type of request that Plaintiffs had made to pray and administer Holy Communion at the ICE facility in Broadview. Angie Leventis Lourgos, *Local clergy, faith leaders decry Trump's immigration crackdown: 'Antithetical to the Gospel*,' CHICAGO TRIBUNE (October 25, 2025); https://www.chicagotribune.com/2025/10/25/local-clergy-faith-leaders-decry-trumps-immigration-crackdown/. Accordingly, Plaintiffs officially requested permission by email a week in advance of the All Saints Day Mass, including a formal letter on October 24, 2025, requesting permission to pray and administer Holy Communion to detainees at the Broadview ICE facility. The Plaintiffs' formal letter requesting permission advised DHS/ICE that Catholic clergy would hold an outdoor Catholic Mass at approximately 11 a.m., during which they would seek to administer Holy Communion to the Detainee Plaintiffs. The Plaintiffs requested permission for a small group of eight religious ministers to distribute Holy Communion during the Mass. At the same time, all other celebrants would remain outside the ICE facility in peaceful prayer.

47.     Not having received a response by October 28, 2025, from DHS or ICE, Plaintiff Okińczyc-Cruz emailed ICE requesting confirmation that it had received their formal request and

any additional information regarding the request for a small group of ministers to administer Holy Communion to detainees. In response, the Chicago Enforcement and Removal Operations Chief of Staff sent Plaintiff Okińczyc-Cruz a virtually identical email denying permission, as it had done in the email denying permission for the procession held on October 11. Once again, the only explanation was "safety and security concerns," with no description of what those terms meant, no reference to any rule or regulation, no finding of specific safety concerns, and no other information about protocols for religious worship.

48.     Plaintiff Okińczyc-Cruz replied to the email from ICE Enforcement and Removal Operations ("ERO") Chief of Staff with a formal letter and email from CSPL requesting reconsideration and a meeting to discuss matters addressed therein. Among the items discussed in the letter was the fact that members of the "religious delegation have served in a pastoral and ministerial capacity in jails, prisons, and detention centers for many years and are more than willing to provide Communion and pastoral care for those who desire it inside of the ICE facility in Broadview." Indeed, the letter stated that members of the delegation were eager to meet with ICE staff to discuss providing Communion, and that Catholic and other religious ministers of various faiths "are also willing to provide Communion and pastoral care" at the ICE facility "on a regular basis as well."

49.     The letter explicitly stated that CSPL was "seeking to understand what the process and protocols are for being granted access to the ICE BSSA facility in Broadview," as "in past years, religious ministers were granted access to the ICE facility in Broadview to provide pastoral care." Additionally, the letter cited from the *Chicago Tribune*, in response to a question about "specific protocols for clergy to bring Communion or other pastoral care," reported that DHS said requests "must be approved by the Secretary of Homeland Security." DHS added that "Requests should be made with sufficient time to prevent interference with the President's Article II authority

16

to oversee executive department functions – a week is sufficient to ensure no intrusion on the President's constitutional authority." Angie Leventis Lourgos, *Local clergy, faith leaders decry Trump's immigration crackdown: 'Antithetical to the Gospel,'* CHICAGO TRIBUNE (October 25, 2025); https://www.chicagotribune.com/2025/10/25/local-clergy-faith-leaders-decry-trumps-immigration-crackdown/. Moreover, the letter noted that a *WBEZ* story said that "Homeland Security officials say that the Broadview facility abides strictly by the national detention standards, which guarantee people the right to worship, access to a chaplain and other religious sources."

50. With no response from DHS or ICE to their latest email and letter, on the morning of October 30, 2025, at 9 a.m., Plaintiffs went to the DHS Field Office located at 101 Ida B. Wells Drive in Chicago in the hope of meeting with an ICE representative. An ICE agent advised them that the director of the ICE field office was not in and that no one was available to speak with them about their requests regarding the Broadview facility. When Plaintiff Sr. Midura had explained that the request was to bring Communion to detainees, the agent said, "I don't think that's going to happen." Before departing, the Plaintiffs were told they should expect a response to their letter by telephone or email later in the day, but they never received one.

51. Plaintiff Okińczyc-Cruz sent another email on October 31, 2025, asking if there had been any reconsideration of the request to have a small group of clergy administer Holy Communion to detainees and offering that the Plaintiffs were more than willing to meet with a member of the Chief of Staff's office to explore all options to provide Communion and pastoral care to detainees.

52. At 7:34 a.m. on the morning of November 1, 2025, Plaintiff Okińczyc-Cruz sent an email to the Chief of Staff stating that he hoped that a representative of ICE and DHS could speak with a member of one of the small delegation of priests and nuns who wished to provide

Communion inside the ICE facility later in the morning and asked to discuss the matter further. Later in the morning, Plaintiffs and other Catholic clergy and laypersons celebrated Mass down the block from the ICE facility. Two thousand people attended the service, including ministers and people of different faiths. Broadview police worked seamlessly with the volunteer CSPL staff to keep sidewalks and streets clear for pedestrians and vehicles. The ISP assisted the Plaintiffs when asked to convey a message to ICE officials requesting permission for a small group of clergy to administer Holy Communion and pray with the Detainee Plaintiffs, as they had done a little over two weeks earlier on the day of the procession from St. Eulalia. ICE's response was the same—a reference to safety and a no, and nothing more. Sr. Persch responded to a reporter's question, "Now, I want to know whose safety? Are we going to attack the immigrants? Are they going to attack me? I don't think so. Do they think coming with the Blessed Sacrament of the Catholic Church that we were going to attack them?" Michael Daly, *Opinion: How This 91-Year-Old Nun's Battle With ICE Shamed 'Catholic' JD Vance,* THE DAILY BEAST (November 6, 2025); https://www.thedailybeast.com/how-this-91-year-old-nuns-battle-with-ice-shamed-catholic-jd-vance/.

53.     On November 6, 2025, members of CSPL's Women's Religious Council and Clergy Council—Fr. Juan Vargas, Sr. Kristin Peters, Gabriel Lara, and Plaintiff Okińczyc-Cruz—attempted to deliver a letter (the "November 6 Letter") during midday to the DHS/ICE Field Office located at 101 Ida B. Wells Drive. Once inside and through security, and as they were going to the elevator to the basement floor where the offices had relocated, a security guard announced that "the ICE office was closed immediately for the remainder of the day until the following day at 8:00 a.m." The Council Members were told they could not simply deliver the letter at the office. When they asked if there was a mailbox to leave it for ICE, there was none. Accordingly, the

November 6 Letter was emailed to the DHS/ICE Field Office later in the afternoon.

54.     The November 6 Letter "respectfully" requested a meeting with a "designated official" from either ICE or DHS, to discuss the process and procedures by which our small delegation of religious ministers can be granted access to the Broadview facility in order to provide pastoral care and Holy Communion to detainees who desire it." The November 6 Letter noted that they had previously submitted requests on October 28, 2025, October 30, 2025, October 31, 2025, and November 1, 2025, requesting permission to bring pastoral care and Holy Communion on the Catholic Feast of All Saints Day, November 1. As that day was no longer relevant, the Council Members stated they were "seeking a meeting at your earliest convenience, and a forward-looking arrangement for regular access for our ministers."

55.     The November 6 Letter cited the recent remarks of Pope Leo XIV, as reported in *Reuters*, addressing the treatment of detained migrants, which concluded, "I would certainly invite the authorities to allow pastoral workers to attend to the needs of those people." Yesim Dikmen, *Pope calls for 'deep reflection' in US about migrants' treatment under Trump*, REUTERS (Nov. 4, 2025); https://www.reuters.com/world/americas/pope-calls-deep-reflection-us-about-migrants-treatment-under-trump-2025-11-04/. The letter pointed out that Pope Leo XIV's call to authorities "is directly applicable to the situation at the Broadview ICE facility and underscores the moral and spiritual imperative to allow detained persons the right to receive spiritual care and Holy Communion."

56.     The November 6 Letter advised DHS/ICE that the ministers in the delegation who would provide pastoral care and Holy Communion were experienced as they had "long experience serving in jails, prisons, and other detention centers." Indeed, "in past years, ministers were granted access to the Broadview ICE facility for pastoral purposes." The letter stated that this experienced

delegation of ministers "are more than willing to comply with any security and safety protocols" that DHS/ICE requires, including, as per a report in the *Chicago Tribune*, affording "the Secretary of Homeland Security with sufficient time to avoid interference with executive authority." In closing, the November 6 Letter "respectfully" requested:

- A meeting with an ICE/DHS official who has authority to discuss and implement the minister-access process.

- Clarification of the process, criteria, documentation, and timeline by which our delegation can be approved for regular pastoral access (including but not limited to administering Holy Communion) at the Broadview ICE facility.

- Consideration of our delegation's request to schedule regular, repeating access for ministers of various faith traditions to meet detainees' spiritual needs.

57.    The November 6 Letter was signed by the CPSL Board President, Executive Director, and six priests, nine sisters, a brother, and a deacon of CPSL's Women's Religious Council and Clergy Council. As of the filing of this Complaint, Plaintiffs have not received any response to their requests, whether by letter, email, text, or telephone.

58.    On November 7, 2025, a federal representative, *i.e.*, "an anonymous voice" stuttering over a phone to a huddle of faith leaders and activists outside the Broadview ICE facility, stated that "there would be 'no more prayer' in front of or outside the Broadview ICE facility." Charles Thrush, *Feds Tell Faith Leaders 'No More Prayer' Outside Broadview Facility*, BLOCK CLUB CHICAGO (Nov. 7, 2025); https://blockclubchicago.org/2025/11/07/feds-tell-faith-leaders-no-more-prayer-outside-broadview-facility/.

59.    On November 8, 2025, the federal government sought to clarify the statements made the day earlier, which were quoted to have been: "There is no more prayer in front of [the] building or inside the building because this is the state and it's not [of a] religious background." Charles Thrush, *Feds Clarify Prayer Ban At Broadview: Restrictions Only Apply On Federal*

*Property*," BLOCK CLUB CHICAGO (Nov. 8, 2025); https://blockclubchicago.org/2025/11/08/feds-clarify-prayer-ban-at-broadview-restrictions-only-apply-on-federal-property/. Assistant Secretary for Public Affairs of Homeland Security, Tricia McLaughlin, clarified, "ICE only restricts access to federal property inside and outside the facility. Please contact the Broadview Police Department for access to property outside ICE's jurisdiction." The news report added that there had been "no religious ceremonies on federal property outside of the building since at least Sept. 23, when federal officials installed a temporary fence that restricted access to areas adjacent to the facility."

60.     The intimidation of the religious persons, Catholic, Protestant, and of other faith traditions, has denied them their religious right to practice their faith. Until the intimidation began, Catholic clergy had been "allowed" to pray and administer Holy Communion to detainees. The refusal of ICE officials to allow clergy and laypersons to bring the Most Blessed Sacrament to fellow Catholics housed in the facility is an arbitrary decision by ICE. Heretofore, ICE has allowed religious services, including the distribution of Holy Communion. A non-specific reference to safety and security is not sufficient to deny the rights of Catholic clergy and laypersons, or persons of any other denomination or religion, to practice their faith, especially as others have been allowed to do so at the ICE facility in Broadview since it became an immigration-related facility in 2006.

61.     The refusal to allow religious services that bring the Eucharist to detainees is also a denial of the Detainees' Free Exercise Clause rights. There has been no compelling explanation given for why the Detainees are not permitted to pray with other members of their faith community or receive Communion, especially at a time when they are exposed to deportation and existential threats in the places to which they are being deported. To restrict religious practice by persons detained in government facilities requires a compelling government interest and an explanation exceptionally more demanding than ICE's mere recitation of generic safety and security concerns.

Indeed, no compelling government interest has been articulated here, and what has been stated is insufficient to deny the Detainees' religious rights.

62.     The Detainees and Plaintiffs are in the same zone of interest, in which Defendants have denied their rights under the Free Exercise Clause of the First Amendment. As the First Amendment directly regulates Defendants' conduct, and the Detainees and Plaintiffs are in the same zone of conduct, and the Detainees are isolated in facilities and unable to assert their own legal claims, Plaintiffs have standing to bring suit against the Defendants for their violation of the Free Exercise Clause and RLUIPA.

## CLAIMS

### Count I: Violation of the Free Exercise Clause and
### The Religious Freedom Restoration Act of 1993

63.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     The Free Exercise Clause of the First Amendment of the Constitution prohibits the government from denying or restraining one's religious practices.

65.     The RFRA was enacted to provide very broad protection for religious liberty. Indeed, the RFRA prohibits the "Government [from] substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. §§ 2000bb–1(a).

66.     Defendants' policies and practices have unreasonably burdened the Plaintiffs' free exercise of religion in violation of the First Amendment and the broad protections under the RFRA, without any showing that those policies and practices advance a compelling government interest, or that if such a compelling interest even exists, it would be the least restrictive means available for doing so.

22

67. The RFRA permits the Defendants to burden the Plaintiffs' exercise of religion and religious rights only if the Defendants can establish that the burden on such exercise advances a compelling government interest, and even then, only if the Defendants have used the least restrictive means possible to advance that interest.

68. Exclusion of Plaintiffs in this case has furthered no compelling government interest. The long history of prayer services in Broadview, as well as in other detention centers around the country, and the similar history of such prayer services in federal and state prisons, show that no compelling purpose is served by excluding Plaintiffs in this case, including the distribution of Holy Communion.

69. The United States has a long history of accommodating such religious freedom and practice inside of prisons and jails, and there is no reason to deny them altogether at Broadview, where the vast majority of detainees have no criminal records.

70. Because of this history and lack of any compelling purpose being served by a total exclusion, Defendants have also violated their obligation to use the least restrictive means for advancing a compelling purpose. All the Plaintiffs have extensive experience with prayer services in prisons and detention centers and with the procedures that are the norm in such facilities.

71. There is a special religious need for Plaintiffs to enter Broadview because the isolation is longer, the conditions in which they are held are worse, even intolerable, and the trauma that many detainees have suffered due to separation from their families is greater.

72. Under these circumstances, it is even more unreasonable and more unjustified burden on religion under the RFRA to deny Plaintiffs the right to provide spiritual and religious consolation prisoners like the detainees, as the Catholic faith of Plaintiffs has always directed them to do, that the Pope himself has recently affirmed as part of that faith, and that the government has

23

always accommodated in the past.

73.     The least restrictive means for furthering any government interest that burdens such religious freedom justifies no restriction that is greater than the prior policy permitting entry to the Broadview facility for religious services, especially in the absence of any safety or security problem ever known to arise from ten years of such accommodation.

74.     Defendants' continuing conduct denying the Plaintiffs' rights under the First Amendment and the RFRA has and continues to cause the Plaintiffs irreparable harm.

75.     Because the violation of the Plaintiffs' rights is continuing, and none of the individual Defendants with authority has made any attempt to rescind or vacate the denial of Plaintiffs' rights to hold their religious services, Plaintiffs will continue to suffer irreparable injury from the denial to practice their faith for which they otherwise have no adequate legal remedy under the law.

76.     In the absence of an injunction, Defendants will continue to deny and restrain the Plaintiffs' free exercise of their religion in violation of the First Amendment and the RFRA.

### Count II: Violation of the Free Exercise Clause and
### The Religious Land Use and Institutionalized Persons Act

77.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiffs have standing to assert the violations of the rights of detainees under the First Amendment because they suffer the same loss of First Amendment freedom from the denial of religious practice. The detainees, as a practical matter, are not able to assert such an interest, given their confinement in what at least one other court in this district has determined to be overcrowded and intolerable conditions.

79.     The Free Exercise Clause of the First Amendment of the Constitution prohibits the

government from denying or restraining one's religious practices.

80.     The RLUIPA specifically prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. §§ 2000cc–1(a).

81.     Defendants' policies and practices have burdened the Detainee's free exercise of religion under the First Amendment and in violation of the RLUIPA.

82.     There are no compelling interests that justify the denial and restraint of the Detainee's exercise of their faith, and the refusal to allow clergy to minister to them is not the least restrictive means of furthering any compelling governmental interest.

83.     Defendants' continuing conduct in violation of the Detainee's rights under the First Amendment and the RLUIPA has and continues to cause them irreparable harm.

84.     In the absence of an injunction, Defendants will continue to deny and restrain the free exercise of religion by detainees in violation of the First Amendment and the specific rights given to them under the RLUIPA while they are institutionalized in the Broadview facility.

WHEREFORE, Plaintiffs pray this Court to:

A.  Declare that by denying Plaintiffs the right to enter the Broadview facility at reasonable times to pray and distribute Communion, the Defendants have denied the rights of Plaintiffs and detainees to practice their religion under the Free Exercise Clause and RFRA, and such loss of religious rights and freedom, even temporarily by government action, constitutes irreparable injury;

B.  Declare that under the Free Exercise Clause and the RLUPA, Plaintiffs have standing to assert the rights of detainees within Broadview to engage in prayer and receive spiritual consolation from Plaintiffs, and to receive Communion, when the

detainees themselves have been unable to communicate and assert those rights in this Court, or even have knowledge that Defendants have denied the Plaintiffs from conducting a ministry in their behalf;

C.  Declare that by denying the Plaintiffs the right to enter the Broadview facility, and allowing detainees to exercise their religious freedom by participating in the ministry of Plaintiffs, including both prayer and the reception of Holy Communion, Defendants have denied the rights of both Plaintiffs and the detainees under the Free Exercise Clause and of the detainees under the RLUPA;

D.  Enjoin defendants from denying Plaintiffs access to minister to detainees in the ICE facility at Broadview, Illinois, for religious services including praying with detainees, providing pastoral care to detainees, and ministering sacraments including the distribution of Communion to detainees who seek such religious services, and from limiting the exercise of religious practice except under reasonable rules and regulations consistent with the Plaintiffs' rights and detainees' rights as approved by this Court;

E.  Grant Plaintiffs injunctive relief and their reasonable costs and expenses incurred in this action, including counsel fees and costs;

F.  Grant such and other further relief as the Court deems just and proper.

Dated: November 19, 2025                    Respectfully submitted,

                                            /s/ Thomas H. Geoghegan
                                            Attorney for Plaintiffs

                                            DESPRES, SCHWARTZ,
                                            & GEOGHEGAN, LTD.
                                            Thomas H. Geoghegan
                                            Will W. Bloom
                                            77 West Washington Street, Suite 711

26

Chicago, Illinois 60602
Tel.: (312) 372-2511
tgeoghegan@dsgchicago.com

Patrick V. Dahlstrom, Esq.
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
pdahlstrom@pomlaw.com

**Attorneys for Plaintiffs**