IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| PABLO MORENO GONZALEZ, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 25-cv-13323 |
| v. ) | Hon. Robert W. Gettleman |
| ) | Mag. Judge Laura K. McNally |
| KRISTI NOEM, Secretary of the U.S. ) | |
| Department of Homeland Security, in her ) | |
| official capacity, *et al*. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' EMERGENCY MOTION TO COMPEL EXPEDITED
<u>PRODUCTION OF CERTAIN MATERIALS</u>**

This case is about conditions faced by detainees in the Broadview facility, including their access to counsel, whether they were coerced into volunteering to be deported, and whether they were provided, *inter alia*, adequate food, water, medical care, hygienic conditions, and sleeping conditions. The Court—after an extensive hearing—entered a TRO ordering the Government to address its failure to provide these basic necessities and protections. The Court also ordered expedited discovery, including document requests, expert discovery, and limited depositions. Defendants have failed to respond to many of Plaintiffs' discovery requests, including those seeking evidence about their TRO compliance; declared 10 days' worth of footage missing; and failed to provide Plaintiffs with all the documents necessary to take depositions or otherwise present a record to the Court for consideration of a preliminary injunction. Plaintiffs have engaged in several lengthy conferences with the Defendants about the missing evidence, and the parties have now reached an impasse.

Plaintiffs move on an emergency basis given the tight deadlines at issue here. Plaintiffs respectfully request that the Court compel Defendants to comply with Plaintiffs' expedited discovery requests by December 5 at 5:00 p.m., so Plaintiffs can receive the necessary evidence before depositions of several high-ranking witnesses begin on December 8, and so they can meaningfully present evidence in the upcoming preliminary injunction hearing.

## BACKGROUND

On October 30, 2025, Plaintiffs filed the complaint in this action, along with motions for a temporary restraining order, class certification, and expedited discovery. ECF Nos. 1, 5, 15, 17. On November 5, 2025, the Court entered a temporary restraining order after finding that Plaintiffs and members of the now-certified class, *see* ECF No. 87, have suffered and are likely to suffer irreparable harm absent emergency relief. ECF No. 49. With respect to confinement conditions,

1

the TRO ordered that each defendant, including their officers, agents, servants, employees, and attorneys, provide detainees clean bedding with sufficient space to sleep, adequate hygiene supplies, showers at least every other day, three full meals per day that meet the U.S. recommended dietary allowances, potable water with each meal and more bottled water upon request, and prescribed medication. ECF No. 45 at 2–3. The TRO also requires each holding cell to be cleaned twice per day, to be furnished with a prominent clock with an accurate time and date, and to have clean toilet facilities. *Id.* The Order also requires Defendants to ensure the class has access to counsel. Defendants must provide free telephone services for every detainee to communicate with counsel in private, all attorney-client communications must be carried out in a manner to protect the attorney-client privilege, and all detainees must be provided a list of pro bono attorneys in English and Spanish as soon as possible after arrival and interpreter services as necessary. *Id.* Finally, Defendants were ordered to not misrepresent the contents of any papers provided to detainees and to provide an accompanying Spanish translation for all papers. *Id.* at 4. The Court set a December 17 hearing for Plaintiffs' motion for preliminary injunction, with expert reports due December 3 and discovery to be completed prior to December 17. ECF Nos. 67 & 68.

To create a fuller evidentiary record for the preliminary injunction hearing, the Court also granted Plaintiffs' motion for expedited discovery. ECF No. 15 at 4–6; ECF No. 45; Hr'g Tr., *Moreno Gonzalez v. Noem*, No. 25-cv-13323 (Nov. 4, 2025) (hereafter "TRO Hr'g Tr.") at 180:6–182:4.[1] Plaintiffs' motion for expedited discovery attached their first set of discovery requests, which were crafted to ascertain the conditions at Broadview, detainees' ability to access counsel, and the documents that detainees have been made to sign while detained at Broadview. ECF No. 15-1. In granting Plaintiffs' motion, the Court did not limit the grant of expedited discovery to

---

[1] Defendants confirmed that they would preserve all relevant material and that a preservation order was thus unnecessary. *See* TRO Hr'g Tr. at 184:25–185:7.

2

specific requests for production. Rather, it acknowledged that Plaintiffs are entitled to expedited discovery, limited the scope of the discovery to that which is necessary to facilitate the preliminary injunction hearing, and encouraged the parties to work together. TRO Hr'g Tr. at 180:6–181:10.

Following the Court's order, the parties met and conferred, during which Plaintiffs clarified each request. On November 6, Plaintiffs narrowed their first set of discovery requests and issued revised requests in an effort to facilitate production and address concerns raised by the Defendants. *See* Exhibit A (Plaintiffs' Revised Expedited Discovery Requests). These requests largely sought information about conditions at Broadview in September and October, which is essential for the Court to fully ascertain what detainees may suffer when the TRO lapses. They also sought ongoing production of certain information key to evaluating the Defendants' post-TRO compliance, including regularly updated cell logs, signed voluntary departure forms, video surveillance footage, purchase and services documents, and facility population information.

Plaintiffs conferred extensively with Defendants on November 10, attempting to work collaboratively to help Defendants identify the documents Plaintiffs seek.[2] On November 16, Defendants took the position that Plaintiffs' questions during the conferral—including those asked to help facilitate production or determine whether requested documents exist—were improper and should be put into formal interrogatories. Exhibit C. On November 21, the parties conferred, this time for two hours, and again walked through each request.[3] Defendants then requested another conferral, this time led by new defense counsel who was unfamiliar with the prior conferrals. As a result, after conferring for nearly one and a half hours on November 25, Plaintiffs found themselves back at square one concerning several requests which had already been conferred about

---

[2] On November 12, Plaintiffs sent an email summarizing the conferral. Exhibit B.
[3] Plaintiffs circulated a summary of this conferral on November 24, including the items Defendants agreed to follow up on. Exhibit D.

3

extensively. At the end of the November 25 conferral, Plaintiffs requested that Defendants advise by the end of November 26 whether they were standing on certain objections to discovery requests; Defendants did not respond, so Plaintiffs advised them that they expected to move to compel. On November 29, Plaintiffs requested a meet and confer on the potential motion to compel. On December 1, Defendants responded to the November 26 email, claiming unfamiliarity with several items that had already been partially produced and/or conferred about extensively. *See* Exhibit E. On that call, the parties also discussed this motion.

On November 21, Plaintiffs also served additional discovery requests on Defendants to, *inter alia,* further determine Defendants' post-TRO compliance. *See* Exhibit F (Plaintiffs' Second and Third Sets of Expedited Discovery Requests). In some instances, Plaintiffs' supplemental discovery requests were not new requests at all, but recast versions of initial requests per Defendants' demand for formal requests.[4] Other requests in the second and third sets seek information about statements made by the Government that bear on its continued use of Broadview in the next several months (directly relevant to a preliminary injunction) and about Defendants' compliance with discovery requests (including, but not limited to, document retention efforts and the missing surveillance footage from October 20–30, 2025). Defendants have objected to responding to *any of* these supplemental requests, claiming that the Court only granted expedited discovery productions for the requests appended to Plaintiffs' opening papers. Exhibit G.

At this point, and despite Plaintiffs' repeated conferrals regarding the discovery requests, Defendants have produced only a subset of the expedited discovery requested. Their failure to produce requested materials significantly impedes Plaintiffs' ability to present evidence at the

---

[4] For instance, Plaintiffs originally requested that Defendants produce Detainee Logs containing all the information about each detainee as required by ICE Directive 11087.2. Rather than respond, Defendants requested that Plaintiffs specify the exact information Plaintiffs sought in a supplemental discovery request, which Plaintiffs did in their Second Set of Requests. Exhibit C.

4

upcoming preliminary injunction hearing. Of particular note, Defendants' document productions have largely failed to include material post-dating November 7, 2025—*i.e.,* almost the entirety of the period following issuance of the TRO on November 5. This has severely prejudiced Plaintiffs' ability to take the depositions of key defendants and individuals with knowledge of Broadview conditions, which are scheduled to take place the week of December 8.[5] And—as described in Plaintiffs' separate motion to extend the deadline for opening expert reports—it has hampered Plaintiffs' ability to prepare for the upcoming evidentiary hearing, including by limiting the ability of Plaintiffs' retained expert(s) to review a fulsome record prior to the disclosure of their expert report(s), currently due on December 3.

Plaintiffs' requests for discovery are proper. Given the short timeline, Plaintiffs request that Defendants be compelled to produce all responsive materials by December 5, 2025.

## LEGAL STANDARD

Motions to compel are proper under Federal Rule of Civil Procedure 37(a) where a party either fails to respond to a discovery request or its response is insufficient. The party objecting to the discovery request bears the burden of showing why the request is improper. *Gecko Robotics, Inc. v. Summit NDE, LLC*, 2023 WL 11645709, at *1 (N.D. Ind. Nov. 29, 2023); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) (party resisting discovery "must *show specifically* how each request is not relevant or how each question is overly broad, burdensome or oppressive" (citation modified)).

A pending preliminary injunction hearing strongly favors allowing expedited discovery.[6]

---

[5] Defendants' failure to produce adequate discovery forced Plaintiffs to re-notice numerous depositions that had initially been scheduled for the first week of December. At present, those depositions are noticed for the second week of December, contingent on receipt of adequate discovery to take them.

[6] *See Campaignzero, Inc. v. Staywoke Inc.*, 2020 WL 7123066, at *2 (N.D. Ill. Dec. 4, 2020) (recognizing limited expedited discovery required to support plaintiff's motion for preliminary injunction); *Penske Truck Leasing Co., L.P. v. Cent. States, Southeast & Southwest Areas Pension Plan*, 2022 WL 1028927, at *3

5

And where facts demonstrate a risk of spoliation or destruction of evidence by one party, expedited discovery is particularly critical. *See CGB Diversified Servs., Inc. v. Morrison*, No. 2020-cv-3043, 2020 WL 4547885, at *4 (C.D. Ill. Apr. 2, 2020) (holding that risk of spoliation "weighs heavily in favor of allowing expedited discovery to preserve evidence and to secure accurate evidence to resolve the Preliminary Injunction Motion"); *RC Trailers, Inc. v. Darkhorse Cargo, Inc.*, No. 3:19-cv-973-JD-MGG, 2019 WL 13218401, at *1–2 (N.D. Ind. Dec. 6, 2019).

## ANALYSIS

Plaintiffs' discovery requests are relevant to whether the Court should issue a preliminary injunction to effectively extend (or enhance) the protections provided by the TRO. That evidence must be collected on an expedited basis given the preliminary injunction hearing on December 17. Defendants' refusal to promptly produce responsive documents impedes Plaintiffs' ability to seek relief and will blind the Court to information relevant to the preliminary injunction motion.

***Ongoing productions reflecting post-TRO conditions.*** At the threshold, the Government's failure to comply fully with the terms of the TRO is one factor the Court can consider in determining whether a preliminary injunction is appropriate. *See Teledyne Techs. Inc. v. Shekar*, No. 15-cv-01392, 2015 WL 13728061, at *3 (N.D. Ill. Mar. 10, 2015) (granting motion for preliminary injunction and concluding "the threat of irreparable harm is significant" where defendant has failed to comply with TRO).[7] Plaintiffs propounded requests specifically seeking

---

(N.D. Ill. Apr. 6, 2022) (allowing expedited discovery to create fuller record for preliminary injunction motion); *Am. Telugu Ass'n v. Kandimalla*, 2016 WL 1639734, at *4 (N.D. Ill. Apr. 26, 2016) (granting TRO and ordering parties to engage in expedited discovery in preparation for preliminary injunction hearing); *Admiin Inc. v. Kohan*, 2023 WL 4625897, at *3, 13 (N.D. Ill. July 19, 2023) (finding expedited discovery appropriate where preliminary injunction motion pending and hearing scheduled).

[7] *See also Hanover Ins. Grp. v. Shingles Roofing Co., Inc.*, 2012 WL 2368328, at *13 (N.D. Ill. June 21, 2012) (holding that failure to comply with TRO is "immediately relevant" to irreparable harm requirement for preliminary injunction); *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, No. 1:17-cv-08381, 2018 WL 1311994, at *3 (N.D. Ill. Mar. 7, 2018) (entering preliminary injunction in part due to plaintiff's failure to comply with TRO; *Chi. Headline Club v. Noem*, 2025 WL 3240782, at *73, *93 (N.D.

information about TRO compliance (Request for Production ("RFP") No. 15; Interrogatory ("Rog.") No. 1).[8] Defendants object to those. Even for the Revised First Set of Requests, which Plaintiffs served on November 6 and which sought certain information that would bear on TRO compliance (e.g., RFP 6 (seeking documents regarding: orders for daily necessities, medical services, cleaning services, population counts, number of detainees who stay overnight)), Defendants have barely provided relevant discovery dated after November 5, the day the Court entered the TRO. For example, as of December 1, Defendants have produced no purchase orders of water since November 7, no food orders since November 8, no bedding orders since November 7, and no clothing orders since September 30. This despite the fact that Plaintiffs requested—and the Court effectively endorsed—production of materials that bear on conditions at Broadview.

Plaintiffs need evidence of whether continued relief is necessary to meet the preliminary injunction standard.[9] Defendants have proposed providing some additional evidence (of an undefined magnitude and scope) on December 2 and have proposed to provide some updated evidence every Friday starting on December 5—both of which are *after* depositions had been set to begin. This position is unacceptable. The Court should order Defendants to immediately provide discovery from November that allows Plaintiffs to prepare for the depositions and hearing this

---

Ill. Nov. 20, 2025) (granting preliminary injunction in part based on finding that plaintiffs had standing because they established credible risk of future injury based on ongoing pattern of conduct even after court entered TRO); *Yupoong Inc. v. 723 Individuals, Corps., Ltd. Liab. Cos., P'ships, & Uninc. Ass'ns*, 2019 WL 13538116, at *1–2 (N.D. Ill. Oct. 30, 2019) (extending TRO where third parties needed additional time to comply with TRO and there was a high probability of continuing harm without TRO).
[8] Plaintiffs have used sequential numbering for their RFPs and Interrogatories. RFPs 1–13 are in Plaintiffs' First Set; RFPs 14–21 and Interrogatories 1–5 are in Plaintiffs' Second Set; and RFPs 22–40 and Interrogatories 6–7 are in Plaintiffs' Third Set.
[9] *See Hanover Ins. Grp.*, 2012 WL 2368328, at *10, *13 (holding that necessity of continued relief is relevant to irreparable harm element for preliminary injunction); *Chi. Headline Club*, 2025 WL 3240782, at *73, *87–89 (applying preliminary injunction standard to grant preliminary injunction post-TRO).

month and direct Defendants to update such information twice weekly.[10]

**Conditions of Confinement: Detention Logs and Detainee Information.** Plaintiffs requested "Detention Logs" that include all information about individual detainees required by ICE Directive 11087.2.[11] Plaintiffs also sought the following information: the current location of individuals detained at Broadview, the number of persons detained at Broadview each day, the date and time each detainee arrived at Broadview, and the date and time they were processed. RFPs 4, 5 and 18. Defendants produced "BSSA Daily Cell Logs," which lacked much of the requested information that is required to be tracked by ICE's own directives including detainees' age, language spoken or lack of English proficiency, disability, other special vulnerability, pat down or strip search information, and current location and current case status, such as the final disposition and whether the person was subject to voluntary departure. After Plaintiffs repeatedly requested the missing information, Defendants stated on December 1 that the information missing from the BSSA Daily Cell Logs is "not separately tracked and to the extent available, can be obtained using a detainee's A number which we have supplied." Exhibit E. Defendants suggested that Plaintiffs track down this information using the ICE Online Detainee Locator System to search a detained individual's current location, at which point "[a] further search could then be made at that detaining facility for that individual's details." Exhibit H. Notwithstanding the ICE Online Detainee Locator's inaccuracy—indeed, an issue in this case—not all individuals who have been detained at Broadview are still in ICE custody. Some have been removed from the country and others have

---

[10] Indeed, Plaintiffs have had to re-notice certain depositions for the week before the December 17 hearing, given the absence of adequate discovery.

[11] Directive 11087.2 requires, at minimum, the following information for each detainee brought into custody: including detainee name, gender, age, A-Number, nationality, language spoken (and if a detainee is not proficient in English), known or reported disability, other special vulnerabilities, reason for placement, time in, mealtime, time out, final disposition, badge number of logging officer, cross-gender pat down search, strip search, and visual cavity search information.

been released. More important, the information Plaintiffs seek is, by Defendants' own admission, in their possession, custody, or control and therefore it is their burden to produce it. *See Fulton v. Foley,* 2018 WL 11199090 at *1 (N.D. Ill. Aug. 28, 2018).

Rolling production of the requested information is critical to ascertain the identity of class members and facilitate Plaintiffs' counsel contacting them,[12] particularly before they are transported out of the country. Plaintiffs request that the Court order daily production of detention logs, as Plaintiffs have sought from Defendants. Other information, such as detainees' age, disability, special vulnerabilities, current case status, and whether a detainee was subject to voluntary departure, is also central to Plaintiffs' claims regarding conditions of confinement and coerced deportation, as well. *See Landfair v. Sheahan*, 911 F. Supp. 323, 326 (N.D. Ill. 1995) (relying on jail logs to ascertain conditions of confinement).

***Conditions of Confinement: Video Footage.*** Plaintiffs requested video footage of the rooms in Broadview where detainees were held or processed. Defendants' responsive production is materially deficient for several reasons. First, without explanation, Defendants produced[13] footage from only five[14] of the many cameras inside the facility for September 28–October 19 and October 31 (afternoon onward)–November 7 (morning). *See* RFP 9. The footage produced does not provide a full view of the detention rooms and does not include camera feeds that cover solitary detention cells, which were the site of many egregious conditions evidenced at the TRO hearing.

---

[12] *Clay v. Dart*, 2021 WL 4264244, at *11 (N.D. Ill. Sept. 20, 2021) (granting plaintiffs' motion to compel jail spreadsheet documenting wait times for processing of health service request forms as "unquestionably relevant and necessary to ascertaining members of the class"); *Bickel v. Sheriff of Whitley Cnty.*, 2010 WL 883654, at *3 (N.D. Ind. Mar. 5, 2010) (relying on jail and county clerk arrest and detention records to identify potential class members).

[13] Defendants produced this footage in a format unplayable on any device without either the purchase of expensive new software or a time-intensive process of converting each clip into a new file format. Plaintiffs undertook the latter, which has taken days. Plaintiffs have requested a meeting with Defendants technology professionals to come up with a better solution; Defendants have not facilitated such meeting.

[14] The Parties are in discussion about whether additional camera feeds are required.

9

*See* TRO Hr'g Tr. at 87:10–88:7. Despite the initial request (RFP 9) seeking ongoing production, Defendants have produced almost no footage from post-TRO. Plaintiffs request that the Court order full production of these materials to date and rolling productions going forward.

Second, as the Court is aware, the Government claims that there is an enormous gap in available footage from October 20–October 31 (morning). Defendants have largely claimed ignorance regarding the missing evidence, suggesting Plaintiffs subpoena third-party contractors to learn about the absence of video evidence in the ICE facility, though it is a Government owned and operated system. Plaintiffs have done so. Plaintiffs have also requested information from Defendants about the circumstances of this missing footage, which bear *directly* on whether—by negligence or worse[15]—Defendants spoliated evidence. RFPs 24–39, Rogs. 6–7. *See Domanus v. Lewicki*, 742 F.3d 290, 298–300 (7th Cir. 2014) (affirming district court's finding of bad faith and imposition of sanctions where defendants destroyed ESI).[16] Defendants object to all such requests. Plaintiffs are entitled to information about the missing footage on an expedited basis. *See RC Trailers, Inc.*, 2019 WL 13218401, at *1–2; *CGB Diversified Servs.*, 2020 WL 4547885, at *4.

Finally, Defendants have refused to provide video footage shot by Government personnel of the October 3 visit to Broadview by Defendant Noem (RFP 10), citing purported irrelevance. Exhibit I (Defendants' Supplemental Response to Plaintiffs' Revised Expedited Discovery Requests) at RFP 10. Defendants cannot credibly withhold footage reflecting statements *by a named Defendant*, who oversees operations at Broadview, while she was present *at* the Broadview

---

[15] Indeed, at least one other case in this District involves events at Broadview that may well have put Defendants under an ongoing obligation to be recording and storing the footage from October 20–31. *See Chi. Headline Club v. Noem*, Case No. 25-cv-12173 (N.D. Ill.).

[16] *See also Boutilier v. Menard Inc.*, 606 F. Supp. 3d 860, 866 (C.D. Ill. 2022) (finding that defendant negligently failed to preserve evidence and the loss of such evidence was prejudicial to the plaintiff's case); *Jackson v. N'Genuity*, 2011 WL 1134302 (N.D. Ill. Mar. 28, 2011), at *2 (finding it was appropriate to draw a negative inference against defendants in connection with a pending trial and motion for preliminary injunction where defendants' non-compliance during discovery amounted to interference and spoliation).

site.[17] To suggest irrelevance because the Secretary did not physically enter a detention room is unserious; the surveillance footage Defendants have produced and public, online footage shot by reporters of the same event[18] show her within the line of sight of detainees, conversing with personnel who run the Broadview facility on a day-to-day basis, and in the very room (the processing room) that *Defendants' themselves* concluded was sufficiently relevant to the case to provide Plaintiffs with surveillance footage of (which lacks audio).

*Access to Counsel.* Plaintiffs requested records of detainee requests to communicate with counsel and records of counsel attempting to contact detainees (RFPs 2 and 3). As part of RFP 3, Plaintiffs identified certain specific email addresses historically maintained by Defendants (and of which Plaintiffs were aware at the time the requests were issued) through which attorneys have attempted to reach clients in Broadview. After the entry of the TRO and after Plaintiffs had served their RFP on November 6, Defendants created yet another email address for attorneys to use to reach their clients at Broadview—BSSA.Outreach@ice.dhs.gov. When attorneys email the original CHI-ERO-detained@ice.dhs.gov and Chicago.Outreach@ice.dhs.gov emails, they receive replies directing them to email BSSA.Outreach@ice.dhs.gov to speak with or visit clients detained at Broadview. Exhibit J. Defendants have refused to produce responsive documents from that new inbox, claiming that Plaintiffs' original request does not cover this email address and insisting that Plaintiffs propound a new discovery request to obtain the *very* information clearly

---

[17] *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 788–90 (C.D. Ill. 2007) (holding that discovery from defendant who was a high-ranking government official was relevant where he was "either the ultimate decision maker or at least personally involved in the decision" challenged in the litigation).

[18] Spencer Hakimian (@SpencerHakimian), X (Oct. 3, 2025, 12:02 PM), https://x.com/spencerhakimian/status/1974158127890411979 [https://perma.cc/4H4L-A5U4]; Benny Johnson, *I Went on an ICE Raid and Arrested Illegals in Chicago - What Happened Next is INSANE ...* (YouTube, Oct. 6, 2025), https://www.youtube.com/watch?v=PgXpkoxD-Z4 [https://perma.cc/E5W2-S5RB]. Defendants do not dispute that such footage exists—nor could they, as the surveillance footage Defendants *have* provided shows that Secretary Noem was accompanied by Government videographers on her tour of the Broadview facility.

contemplated by RFP 3. This gamesmanship is another attempt to waste time and delay production. Access to counsel at Broadview is a key issue in this litigation. The Government should provide any records it has of efforts by attorneys to reach clients detained at Broadview.

***Coerced "Voluntary" Deportation.*** Defendants have failed to comply with discovery requests related to Plaintiffs' allegation that Broadview personnel coerced detainees to sign papers agreeing to voluntarily depart the United States (RFP 7). Voluntary departure forms signed by detainees—both before and after entry of the TRO—are central to assessing Defendants' conduct with respect to their use of tactics of coercion and misrepresentation. These tactics, along with the limitations Defendants have continued to impose on detainees' access to counsel, will be important evidence at the preliminary injunction hearing. *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564–67 (9th Cir. 1990) (holding that permanent injunction was appropriate where evidence showed defendants coerced and tricked detainees into signing voluntary departure forms both before and after entry of preliminary injunction). Defendants claim that these documents are in class members' A-files, which are physical files scattered across the country and that Defendants contend cannot be easily produced. Exhibit I, at RFP 7. If true, the Defendants' outdated and byzantine recordkeeping system is not a basis for failure to produce relevant material.[19] Accordingly, as part of their supplemental discovery, Plaintiffs requested the signed voluntary departure forms for all individuals kept in the Broadview facility in November, including the A-files of these individuals if that will facilitate the production (RFP 18). This request is eminently reasonable. Each A-file is connected to a human being with constitutional rights; the Government

---

[19] *See Hirsch v. Will Cnty.*, 2024 WL 3792188, at *3 (N.D. Ill. Feb. 12, 2024) ("[A] parties' failure to maintain a proper recordkeeping system does not excuse it from producing relevant documents." (citation modified)); *Epic Fresh Produce*, 2018 WL 1311994, at *3–4 (granting preliminary injunction where defendants failed to provide complete accounting as required by TRO and court found "Defendants' own conduct in failing to maintain and/or produce adequate records has placed the parties and the Court in the unfortunate position of being unable to undertake any sort of tracing exercise with precision").

12

should know where these people are and be able to use the considerable resources of the federal government to provide copies of their A-files to Plaintiffs.[20]

Defendants claim that the production of A files is unduly burdensome, (*see* Exhibit E), yet they have not carried their burden to warrant non-compliance. *See Gecko Robotics*, 2023 WL 11645709, at *1; *Kelley*, 2012 WL 1108135, at *2. They have not presented evidence that they have tried to locate detainees' A-files or how many of the total A-files are located in Chicago versus elsewhere. In another Northern District case against DHS, the court granted a short extension where the defendants presented evidence that they had reviewed 100 of 800 A-files, that 41 were located in Chicago, and that 59 were being requested and would be transported to Chicago within a week. *See Nava v. Dep't of Homeland Sec.*, No. 18-cv-3757, 2025 WL 2976554, at *1 (N.D. Ill. Oct. 20, 2025). The court ordered that DHS produce the 41 files within a week, the 59 within 2 weeks, and ordered Defendants to provide weekly reports every week thereafter. *See id.,* at *2. Here, because Defendants have presented no specific evidence regarding why they are unable to produce the voluntary departure forms or A-files, those files should be produced. *See BankDirect*, 2017 WL 5890923, at *2. And if Defendants truly cannot comply with this (or other) discovery requests necessary for the scheduled preliminary injunction hearing, the solution is in their hands: agree to extend the TRO through the holidays so they can complete their discovery obligations.[21]

---

[20] *Cf. United States v. Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1094–96 (N.D. Cal. 2010) (ordering government to produce A-files where agency had reviewed them and they contained documents necessary to review agency determinations); *United States v. Safety Nat'l Cas. Corp.*, 782 F. Supp. 2d 420, 427 (S.D. Tex. 2011) (same).

[21] Plaintiffs intend to promptly serve a fourth set of expedited discovery requests formally requesting messages to the BSSA.Outreach email address created *after* Plaintiffs' First Set of Requests were served and the A-files Defendants claims are inseparable from the voluntary departure forms but impossible to collect. Plaintiffs believe their current discovery requests *already cover, or reasonably should cover, these materials* but, at Defendants' insistence, will formally serve requests nonetheless.

*Document retention.* Plaintiffs have also requested run-of-the-mill production of information about Defendants' document retention policies and efforts to preserve evidence for this case. RFPs 19-21, 40; Rog. 5. There is no legitimate basis to withhold this material.

*Discovery efforts.* Relatedly, and particularly in light of the discovery difficulties Plaintiffs have encountered, Plaintiffs have asked that Defendants provide customary information about how they conducted discovery to respond to Plaintiffs' requests (*i.e.*, identifying custodians, search terms, etc.). Rog. 4. Defendants have refused to provide such information, making it impossible for Plaintiffs to ascertain whether the searches conducted were reasonable. The Court should order Defendants to produce this most basic information.

*Additional information necessary for preliminary injunction hearing.* Finally, Plaintiffs have requested information about the Government's plans for Broadview currently and in the near future, which is important to the Court's assessment of the need for a preliminary injunction going forward. Surveillance footage received to date proves extreme overcrowding, unhygienic conditions, safety concerns, and other unconstitutional conditions in Broadview prior to **and after** the entry of the TRO. Yet, on the November 13 court-ordered site inspection, the facility was suddenly largely empty. Government officials have suggested that immigration enforcement will resurge in the spring.[22] Plaintiffs and the Court are entitled to understand why Defendants cleared out Broadview so quickly in advance of the November 13 site visit and how the Government intends to use the facility in the near future. If Defendants anticipate another immigration enforcement surge in the spring, as has been suggested, there is a high risk that the conditions

---

[22] *See* Jon Seidel & Tina Sfondeles, *U.S. Border Patrol Boss Greg Bovino, Fellow Agents to Soon Leave Chicago but Could Be Back Four-Fold in March*, IPM News (Nov. 12, 2025), https://ipmnewsroom.org/u-s-border-patrol-boss-greg-bovino-fellow-agents-to-soon-leave-chicago-but-could-be-back-four-fold-in-march/ [https://perma.cc@/CB3D-H77C].

14

caused by the severe overcrowding over the past months could recur.[23] Plaintiffs have propounded discovery to probe these issues, and Defendants object. *See* RFP 14 (seeking communications re: site visit preparation); Rog. 2 (similar); RFP 17 (seeking information re: facilities other than Broadview to which detainees may have been routed to present apparent compliance with TRO); RFP 16 (requesting information re: plans for Broadview given statements by government officials); Rog. 3 (similar).

*\*\*\**

Plaintiffs have two weeks until the preliminary injunction hearing to obtain a number of relevant documents and evidence. They have engaged in significant meet and confer efforts to adjust and tailor their requests in response to the Government's claims of hardship and to identify exactly what information is most essential to assess the Defendants' treatment of immigrant populations in their custody and their compliance with the TRO. Given the fast-approaching hearing, Plaintiffs' expert deadline, as well as the upcoming depositions of key defendants and individuals with knowledge of Broadview conditions, which are scheduled to take place the week of December 8, Plaintiffs respectfully request that this Court order Defendants to produce all outstanding discovery as set forth in this motion by December 5, before 5 p.m. and continually produce documents responsive to any requests that involve ongoing productions twice per week, including on December 16 (the day before the preliminary injunction hearing).

---

[23] *E.g.*, *Mays v. Dart*, 456 F. Supp. 3d 966, 1008 (N.D. Ill.) (observing that where cessation of wrongful activity occurred in response to a TRO, such cessation was not necessarily "voluntary" and that a "cognizable danger of recurrent violation" is enough to warrant converting a TRO into a preliminary injunction (citation modified)), *aff'd in part, vacated in part, rev'd in part*, 974 F.3d 810 (7th Cir. 2020).

| | |
|---|---|
| Dated: December 2, 2025 | Respectfully submitted, |

*/s/ Nathan P. Eimer*
Nathan P. Eimer
Scott C. Solberg
Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
Alec Solotorovsky
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
asolotorovsky@eimerstahl.com

*/s/ Alexa Van Brunt*
Alexa Van Brunt
Jonathan Manes
Danielle Berkowsky
Chisato Kimura
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org

*/s/Samuel Cole*
Kevin M. Fee
Michelle T. García

16

        Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 2nd day of December, 2025, a true and correct copy of **Plaintiffs' Emergency Motion to Compel Expedited Production of Certain Materials**, was served by electronic mail to all counsel who have filed appearances in the above-captioned case.

        */s/ Nathan P. Eimer*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2

Counsel for Plaintiffs and Defendants held numerous conferrals on the aforementioned discovery requests, including on November 21, 2025 at 8:30 a.m., for over one hour, on November 25, 2025 at 12:00 p.m., also for over one hour, and on December 1, 2025 at 2:10 p.m. These conferrals all took place via video conference. At the December 1, 2025 conferral, it became clear that the parties, despite good faith attempts to resolve differences, had reached an impasse.

*/s/ Nathan P. Eimer*

Nathan P. Eimer