UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 25 C 13323 ) |
| KRISTI NOEM, Secretary U.S. Department of Homeland Security, *et al.*, | ) Judge Gettleman ) Magistrate Judge McNally ) ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
EMERGENCY MOTION TO COMPEL EXPEDITED PRODUCTION OF CERTAIN
MATERIALS AND DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER**

Defendants Kristi Noem, Secretary of the U.S. Department of Homeland Security in her official capacity, Todd Lyons, Acting Director of the U.S. Immigration and Customs Enforcement in his official capacity, Marcos Charles, Acting Executive Associate Director of the U.S. Immigration and Customs Enforcement and Removal Operations in his official capacity, Samuel Olson, Interim Chicago Field Office Director U.S. Immigration and Customs Enforcement in his official capacity, Gregory Bovino, Commander-at-Large of the U.S. Customs and Border Protection in his official capacity, U.S. Immigration and Customs Enforcement, U.S. Customs and Border Protection, and the Department of Homeland Security, by their attorney, Andrew S. Boutros, United States Attorney for the Northern District of Illinois, hereby move under Federal Rule of Civil Procedure 26(c) for a protective order to protect Defendants from Plaintiffs' wide-ranging discovery requests exceeding the permissible scope of Judge Gettleman's discovery order, upon which Plaintiffs have moved to compel. Plaintiffs have failed to meet their burden under Rule 37. The Court should deny their motion to compel and grant defendants' motion for a protective order.

**Introduction**

This court should issue a protective order to enforce the scope of discovery, and its limits expressed in Judge Gettleman's order granting plaintiffs' motion for expedited discovery. Plaintiffs' requests unequivocally fall outside the proper scope and limits of the discovery order as either not necessary for the preliminary injunction hearing or unlikely to lead to the discovery of information probative to any parties' claims or defenses. Plaintiffs now offer justification for broad expedited discovery not expressed in their motion as they assume the role of compliance monitor for the temporary restraining order in this case. However, no one tasked plaintiffs with monitoring the conditions of confinement at Broadview, which, as the court is aware, are vastly changed since the TRO was entered and do not now present the issues that existed earlier. Plaintiffs' view of discovery wholly ignores the concomitant responsibility of the parties and the court to ensure that discovery is not only relevant, but also proportional. Fed. R. Civ. P. 1, 26(b)(1).

Defendants have produced more than 2,000 pages of documents contained in 375 electronic files in response to Plaintiffs' Revised Expedited Discovery Requests, with more on the way. But plaintiffs want even more. Plaintiffs have served defendants with their Second, Third, and Fourth Expedited Discovery Request. Plaintiffs also served a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Judge Gettleman granted plaintiffs' motion and allowed them to serve their Expedited Discovery Requests on defendants to obtain information necessary to prepare for the preliminary injunction hearing set for December 17, 2025. The order did not authorize plaintiffs to conduct untrammeled discovery beyond the topics identified in their motion and unnecessary for the court's adjudication of their yet-to-be filed preliminary injunction motion. Furthermore, the onerous burden of responding to plaintiffs' expansive discovery requests, significantly prejudices defendants who are equally preparing for the same preliminary injunction

hearing as the plaintiffs. Despite meet-and-confer sessions, the parties were unable to resolve their differences. Accordingly, good cause exists for the court to enter an order pursuant to Fed. R. Civ. P. 26(c): (1) to protect defendants from answering Plaintiffs' Second, Third, and Fourth Expedited Discovery Requests as unauthorized by Judge Gettleman's expedited discovery order; and (2) limit the scope of the noticed Federal Rule of Procedure 30(b)(6) deposition to the two topics sought in plaintiffs' motion for expedited discovery.

## Background

Plaintiffs' motion for expedited discovery requested the court to permit them: (1) inspect Broadview with their detention expert and document the conditions at the facility; (2) take depositions limited to three hours, of Samuel Olsen and of an individual or individuals responsible for administering Broadview and for ensuring conditions at the facility; and (3) propound "a narrow set of requests for production upon Defendants." A copy of the proposed discovery requests was attached to the motion. Dkt. 15-1. Judge Gettleman granted the motion "limited as stated on the record." Dkt. 45. A temporary restraining order was entered on November 5, 2025. Dkt. 49. A preliminary injunction hearing was originally set for November 19, 2025, but was reset to December 17, 2025. Dkt. 49, Dkt. 67.

Relevant here, plaintiffs served their expedited discovery requests on November 6, 2025. A copy is attached as Exhibit A. There, plaintiffs made more than 30 separate requests for production subsumed in 13 numbered paragraphs and at least six separate requests for depositions. *Id.* Yet, late on Friday, November 21, 2025, plaintiffs served their Second Expedited Discovery Requests and Third Expedited Discovery Requests with responses due five days later, on the Wednesday before Thanksgiving. A copy of the email regarding those requests is attached as Exhibit B. The Second Expedited Discovery Requests has eight separate requests for production

3

and more than 10 interrogatories inclusive of subparts. A copy of those requests is attached as Exhibit C. The Third Expedited Discovery Requests contain 19 additional requests for production and two interrogatories. Exhibit D. In total, Plaintiffs have served more than 50 requests for production and more than 10 interrogatories. In addition to notices for four depositions, plaintiffs have served a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) identifying 11 topics of examination, not including subparts. A copy of the Rule 30(b)(6) deposition notice is attached as Exhibit E. Several Rule 30(b)(6) deposition topics were not tailored to the court's adjudication of a motion for preliminary injunction. *Id*. One or more seek information protected by the law enforcement privilege. *Id.* The undersigned counsel for the United States sent an email on November 25, 2025, raising the issues that are the subject of this motion. A copy of the email is attached as Exhibit F. At a subsequent meet and confer, opposing counsel took the position that all their discovery requests, are authorized by Judge Gettleman's order. However, they will not object to an extension to Tuesday (December 2, 2025) for defendants' discovery responses. *Id.* On December 2, 2025, plaintiffs served their Fourth Set of Expedited Discovery Requests. A copy is attached as Exhibit H.

Plaintiffs' extensive, expedited discovery requests are not proportional to the needs of the case as it exists now. The conditions at Broadview are no longer what they were during Operation Midway Blitz. As plaintiffs in the companion case to this, *Chicago Headline Club, et al., v. Noem*, No. 25 C 12173 (N.D. Ill.), before Judge Ellis explained yesterday in dismissing their case with prejudice, with "the Defendants no longer participating in Operation Midway Blitz, or other similar conduct under any moniker or other mission title in this District, this case is no longer needed to protect Class Members' interests." *Id.* at Dkt. 295, ¶ 6. Plaintiffs in that case noted that they have "not received a single report of unconstitutional behavior that necessitated this case since

4

November 8, 2025." As an American poet once noted, you don't need a weather report to know which way the wind blows. Things have changed at Broadview drastically, and the scope and urgency of plaintiffs' multiple expedited discovery requests are no longer proportional to the needs of the case as it exists, if they ever were.

**Argument**

Federal Rule of Civil Procedure 26(b)(1) provides that discovery may be taken regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. See Rule 26(b)(1). For information to be relevant to a "claim or defense," the presence of the claim is a necessary predicate in any analysis of "relevance." "'[T]he relevance standard of Rule 26 is not without bite,' and will not allow 'explor[ation] [of] matter which does not presently appear germane on the theory that it might conceivably become so.'" *Prasad v. George Wash. Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017) (quoting *Food Lion v. United Food & Commer. Workers Int'l Union*, 103 F.3d 1007 (1997)). Even if discovery requests fall within the above scope of discovery, the court still may impose other limits because, for example, if the discovery is unreasonably cumulative, can be obtained in a more convenient way, or the discovering party has already had ample opportunity to obtain what it is seeking. *See* Rule 26(b)(2)(C). Here, Judge Gettleman in granting plaintiffs' motion for expedited discovery limited the scope of expedited discovery to materials necessary for the preliminary hearing. Rule 37 of the Federal Rules of Civil Procedure provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). The "initial responsibility of establishing relevance lies with the party seeking the information . . . ." *Prasad,*

5

323 F.R.D. at 92. "Discovery to pursue a suspicion or a hunch is unwarranted." *Id.* at 94 (denying motion to compel) (citations omitted).

The Federal Rules of Civil Procedure provide that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The moving party bears the burden of showing good cause for a protective order. *Central States, Se. & Sw. Areas Pension Fund v. Nat'l Lumber Co.*, No. 10 C 2881, 2012 WL 2863478, at *2, (N.D. Ill. July 11, 2012) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Under Rule 26(c)(1) the court may forbid the disclosure or discovery sought by a party or forbid inquiry into certain matters. Fed. R. Civ. P. 26(c)(1)(A) & (D). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Gordon v. Countryside Nursing & Rehab. Ctr., LLC*, No. 11 C 2433, 2012 WL 2905607, at *2 (N.D. Ill. July 16, 2012). Defendants have met the good cause requirement for a protective order because plaintiffs' additional requests were not authorized by Judge Gettleman, impose an undue burden on the defendants. and are grossly disproportionate to the needs of the preliminary injunction hearing.

1. **Plaintiffs' Requests Regarding Post-TRO Conditions Are Irrelevant and Impose an Undue Burden.**

Plaintiffs' requested discovery imposes an undue burden disproportional to the needs of the expedited phase of this case where discovery is limited to issues pertaining to the preliminary injunction hearing. As noted above, in response to plaintiffs' demands, defendants have already produced more than 2,000 pages of documents contained in 375 electronic files, and several hours of video footage. Far from narrowly crafting their requests to the needs of the preliminary injunction hearing, plaintiffs continue to demand that defendants continue to produce multiple times a week, records relating to Broadview on grounds they need to supervise compliance with

6

the TRO. However, the TRO did not appoint plaintiffs as monitors of the conditions at Broadview. Besides, none of the conditions described in plaintiffs' complaint was observed during the court-ordered inspection of Broadview on November 13, 2025. Furthermore, the daily logs of individuals held at Broadview during the month of November which defendants have produced consistently show a facility population in the *single* digits. There has not been a single report of conditions akin to what plaintiffs described in their complaint or plaintiffs would have brought that to the court's attention. As noted above, plaintiffs in another Broadview-related litigation have concluded that "the situation that precipitated the relief sought in this litigation has changed in a material way." *Chicago Headline Club, et al v. Noem,* No. 25 C 12173 (N.D. Ill.), Dkt. 295 at ¶ 2. As a result, the court should deny plaintiffs' attempt to compel information related to post-TRO conditions, including logs, emails, orders for daily necessities, cleaning services, and video footage from Broadview, as such information is not probative of plaintiffs' claims in this case. See RFP Nos. 6, 15; Rog No.1.

**2.     Plaintiffs Cannot Compel Defendant to Produce Information Only Third Parties Can Provide.**

As plaintiffs have been made aware during various meet and confer sessions, the video system at Broadview was managed and maintained by outside subcontractors. So, information regarding system or network logs or configurations of the video system at Broadview are maintained by and can only be produced by those subcontractors. In fact, plaintiffs have served subpoenas for documents and deposition on those subcontractors. Copies of both subpoenas are attached as Exhibit G. Thus, at minimum, plaintiffs' allegations of negligence or spoliation regarding preservation of the video evidence are misplaced. Rather, plaintiffs should obtain such responsive information—if relevant—directly from those subcontractors.

3. **Plaintiffs' Second, Third, and Fourth Expedited Discovery Requests are Beyond the Scope of Judge Gettleman's Expedited Discovery Order and Impose an Unreasonable Burden.**

The court should protect defendants from having to respond to plaintiffs' additional discovery requests because they seek information unnecessary to the forthcoming preliminary injunction proceedings. Furthermore, some requests are duplicates of requests made in previous discovery requests. Several district courts have held that expedited discovery should be targeted to matters that will be addressed in a preliminary hearing and not duplicative of investigation that have already been made. *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20 C 3375, 2020 U.S. Dist. LEXIS 122347, at *48 (N.D. Ill. July 13, 2020); *Old Republic Nat'l Title Ins. Co. v. Kensington Vanguard Nat'l Land Servs. of TX LLC*, No. 17 C 1014, 2017 WL 8677358, at *4 (N.D.Tex. July 7, 2017) ("The subject matter of expedited discovery should be narrowly tailored in scope"); *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, No. 10 C 1718, 2011 WL 130098, at *3 (S.D.Ind. Jan. 14, 2011) ("[D]eciding whether to permit expedited discovery and the scope of any expedited discovery depends on the facts and circumstances of the particular matter, and a demonstration why the requested discovery, on an expedited basis, is appropriate for the fair adjudication of issues before the court.")

Plaintiffs' additional discovery requests fall way beyond the matters appropriate for the fair adjudication of issues at the preliminary injunction hearing in this case. Examples are requests for records: (1) about any video footage from, and the video system itself at Broadview (Exhibit D); (2) regarding the scheduling and preparation for the court-ordered Rule 34 inspection of the Broadview facility on November 13, 2025 (Exhibit C, ¶ 14); (3) sufficient to show efforts to comply with the Temporary Restraining Order entered on November 5, 2025, (*id*. at ¶ 15); (4) sufficient to show Your current plans for the use of Broadview during the next six months, (*id.* at, ¶ 16); (5) Sufficient to identify any facilities that are currently being used to process individuals

8

arrested within the Northern District of Illinois for functions that, as of October 2025, were being performed at Broadview (*id.* at ¶ 17). There are also requests that seek discovery about defendants' document retention policies (*id.* at ¶¶19-20). Another seeks any litigation hold notice regarding this litigation (*id.* at ¶21; Exhibit D, ¶40). Requests on *how* defendants are responding to requests are purely "discovery on discovery," directed at the manner and efficacy of the discovery process itself, rather than trained on the needs of the preliminary injunction hearing. Discovery on discovery is generally disfavored. *LKQ Corp. v. Kia Motors Am., Inc.,* 345 F.R.D. 152, 161 (N.D. Ill. 2023). However, it may be allowed in "when one party's discovery compliance has reasonably been drawn into question, or [where] there is 'an adequate factual basis' for an inquiry." *Gross v. Chapman*, No. 19 C 2743, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020) (collecting cases). In *Gross*, the court declined to authorize discovery on discovery because plaintiffs merely speculated about the existence of more evidence not produced. *Id.* at * 4; *F.F.T. LLC v. Sexton*, No. 19 C 3027, 2020 WL 3258623, at *3 (S.D. Ind. 2020) (explaining that if defendant's searches and productions were complete, plaintiff would be entitled to discovery on discovery because of responsive documents that plaintiff identified that defendant had not produced). Here, at this early stage of litigation when the focus is on preparation for a preliminary injunction hearing, plaintiffs cannot show there is an adequate factual basis for inquiry into defendants' discovery response efforts. So, the court should decline to authorize discovery on discovery.

The court should protect defendants from having to answer plaintiffs' interrogatories for an independent reason. The interrogatories are duplicative of production requests in plaintiffs' Second Expedited Discovery Request. For instance, compare Exhibit C, requests for production No. 15, 17, and 20, to interrogatories 1, 2, and 4. At the meet and confer, undersigned defense counsel drew plaintiffs' counsel's attention to their duplicative requests. Plaintiffs' counsel

9

responded that any duplication was intentional and calculated to elicit responses from defendants. Duplicated requests for the same discovery are never appropriate in litigation and have no place in expedited discovery. *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20 C 3375, 2020 U.S. Dist. LEXIS 122347, at *48 (N.D. Ill. July 13, 2020).

Although these written requests were served after business hours on a Friday, responses were due on the Wednesday before Thanksgiving. So, plaintiffs effectively gave defendants three days during a holiday week to search and produce records for two separate but equally onerous sets of discovery requests. Exhibit C; Exhibit D. During the meet and confer, undersigned counsel for defendants asked opposing counsel to consider extending the responsive deadline for their additional requests until after the preliminary hearing. However, plaintiffs expressed what appeared to be a conditional extension to December 2, 2025. As a result, even if all plaintiffs' requests seek discovery necessary for the preliminary injunction hearing, their volume and scope make an adequate search and a timely response impossible. Defendants are also preparing for the same preliminary injunction hearing, and time is limited. For example, one of the production requests seek copies of signed voluntary departure forms for detainees at Broadview from October 1, 2025, to present. Plaintiffs' Revised Expedited Discovery Requests, No. 7, attached as Exhibit A. However, those forms are in paper files that accompany each alien as they are transferred to whichever detention center in these United States that is their destination. Hundreds of individuals who were previously housed at Broadview, voluntarily departed from the United States. It is *impossible* to request, search, and produce several hundred paper files before the December 17, 2025, preliminary injunction hearing. Defendants have produced detainee logs that show the names of those detainees that voluntarily departed the United States, and that information should be sufficient for this expedited discovery phase of this litigation.

Late on December 2, 2025, plaintiffs served defendants with their Fourth Set of Expedited Discovery Requests. A copy is attached as Exhibit H. That request contains two additional requests for production. One request seeks emails to and from attorneys and their representatives in any email under defendants' control relating to the custody of immigrants at Broadview or any other facility within the Northern District of Illinois. *Id.*, RFP 41. At the outset, it seeks information for facilities other than Broadview, information that is unnecessary for the preliminary injunction hearing. Furthermore, defendants have previously produced emails responsive to this request. The other request seeks complete Alien Files of "the individuals who signed voluntary departure documents at Broadview in November 2025 and of other individuals specifically identified in this request who are witnesses in this matter." Exhibit H, RFP 42. Plaintiffs identified 154 individuals in the request whose files defendants should search and produce within five days. *Id.* It is impossible to comply with this request. Alien Files accompany individuals in ICE custody to their respective detention facilities where their immigration proceedings take place. So, to comply with this request, defendants will have to find more than 154 A-files, around the country, copy them and send to the plaintiffs all within five days. In sum, plaintiffs' requests expand Judge Gettleman's order beyond discovery necessary for the preliminary injunction hearing and even beyond the merits phase of their case. The court should not allow the plaintiffs impose this unnecessary burden on the defendants, at least before the preliminary injunction hearing. In any event, it simply can't be done in time.

4. **Plaintiffs' Rule 30(b)(6) Deposition Topics Are Beyond the Scope of Their Motion and Are Duplicative of Other Requests.**

The topics plaintiffs identified in the Federal Rule of Civil Procedure 30(b)(6) notice served on the defendants exceed the scope of topics requested in their motion for expedited discovery. Plaintiffs requested the deposition of "(1) individual or individuals with day-to-day

11

responsibility for administering Broadview; for procuring food, water, and medical and mental health services for detainees; and for updating the ICE tracker and/or any other systems or information relating to inmate whereabouts or legal status; (2) The individual or individuals with responsibility for directing, overseeing, and/or monitoring the conduct of officials at Broadview who are responsible for processing detainees; preparing and processing immigration-related documents (including voluntary departure documents and any other documents that purport to reflect a detainee's agreement to be sent out of the United States); and for obtaining detainees' signature or agreement with respect to the above." Dkt. 15-1, at p. 13.

However, plaintiffs' Rule 30 (b)(6) deposition topics include: (1) Efforts to comply with the TRO entered in this case; (2) Efforts and plans to reduce the time detainees spend at Broadview; (3) information concerning populations numbers and trends at Broadview and other facilities; (4) Plans for the future implementation of immigration enforcement operations in the Northern District of Illinois over the next six months; (5) preparation and/or plan for the court-ordered Rule 34 inspection of the Broadview facility on November 13, 2025; and (6) Information pertaining to the documents produced by Defendants in response to Plaintiffs' Requests for Production in this litigation. Exhibit E. None of the above topics concern or relate to the "day-to-day responsibility for administering Broadview" or "responsibility for directing, overseeing, and/or monitoring the conduct of officials at Broadview who are responsible for processing detainees," the topics plaintiffs requested in their motion for expedited discovery. Furthermore, none of these topics are necessary for the adjudication of a yet to be filed motion for a preliminary injunction.

**5.     The Law Enforcement Investigatory Privilege Applies to Protect from Civil Discovery Information Responsive to Some of Plaintiffs' Requests.**

Even if necessary for the preliminary injunction hearing, the government's interest in the non-disclosure of law enforcement information outweighs plaintiffs' need in this litigation for

information about plans for immigration enforcement in this judicial district. The Court of Appeals for the D.C. Circuit coined the phrase "law enforcement evidentiary privilege" in addressing a claim of privilege based on the harm to law enforcement efforts which might arise from public disclosure of information in FBI investigatory files that was being gathered in connection with an investigation of criminal activity which "would tend to reveal law enforcement investigative techniques or sources." *Black v. Sheraton Corp.*, 564 F.2d 531, 541, 545 (D.C. Cir. 1977). This developed into the "law enforcement investigatory privilege," which the Seventh Circuit recognized in *Dellwood Farms, Inc. v. Cargill, Inc*., 128 F.3d 1122 (7th Cir. 1997).

In *Dellwood Farms*, the plaintiffs sought discovery of criminal law enforcement investigatory materials DOJ was holding for use in ongoing criminal investigations, and the Seventh Circuit explained that "there ought to be a pretty strong presumption against lifting the privilege" because it could "force the government to tip its hand to criminal suspects and defendants," and courts should not "be thrust too deeply into the criminal investigative process." *Id*. at 1125. Yet, the Seventh Circuit held that this privilege "can be overridden in appropriate cases by the need for the privileged materials" by "balancing . . . the need of the litigant who is seeking privileged investigative materials [] against the harm to the government." *Id.* at 1124-25. *Dellwood Farms* did not delineate the balancing factors to be considered in determining whether the law enforcement investigatory privilege should be lifted, instead leaving this "particularistic and judgmental task . . . to the discretion of the district judge." *Id.*

This court should find that the law enforcement investigatory privilege applies to protect from disclosure, information responsive to plaintiffs' request for the government's plans for immigration enforcement in the Northern District of Illinois. Exhibit C, at RFP 16 and 17, at interrogatory No. 3; Exhibit E, at No. 2 and 4. "The purpose of the law enforcement investigative

13

privilege is to protect law enforcement efforts from harm that might arise from public disclosure of investigatory files." *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997). "The Government . . . has a compelling interest in preserving the secrecy of law enforcement techniques." *United States v. Corces*, No. 92 C 28, 1997 WL 447979, at \*9 (M.D. Fla. July 28, 1997), *aff'd*, 152 F.3d 934 (11th Cir. 1998). Defendants recognize that as the party claiming privilege, they have the burden of establishing its applicability. *Rahman v. Chertoff*, No. 05 C 3761, 2007 U.S. Dist. LEXIS 76013, at \*16-17 (N.D. Ill. Sep. 28, 2007). So, if Plaintiffs file a motion to compel information related to plans for immigration enforcement, defendants will supply affidavits to support their assertion of this privilege. *In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988), (declaration supporting claim of privilege was not provided until after the plaintiff moved to compel); *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) (White House was not obliged to "formally invoke its [executive] privileges in advance of the motion to compel"; it was sufficient that it said, in response to a subpoena, that it "believed the withheld documents were privileged").

As stated above, the law enforcement investigatory privilege is not absolute and "can be overridden in appropriate cases by the need for the privileged materials." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). "The balancing of that need—the need of the litigant who is seeking privileged investigative materials—against the harm to the government if the privilege is lifted is a particularistic and judgmental task." *Id.* "[H]owever, . . . there ought to be a pretty strong presumption against lifting the privilege. Otherwise, the courts will be thrust too deeply into the criminal investigative process." *Id.* (citations omitted).

Here, the balance of the need of plaintiffs against the harm to the government if the privilege is not applied clearly weighs heavily in favor of the government. Plaintiffs cannot demonstrate a need for information regarding "plans for the future implementation of Operation

14

Midway Blitz or any other immigration enforcement operation in Northern District of Illinois over the next six months" that outweighs the harm to the government if the court declines to apply privilege in this case. Exhibit E, ¶ 4. The same applies to the request for video footage of the October 3, 2025, visit of DHS Secretary Kristi Noem to Broadview. The requested information is unrelated to the conditions of confinement and access to counsel that plaintiffs alleged in their complaint. It is not necessary for the preliminary injunction hearing or even the merits phase of this litigation. On the other hand, the harm to the government if the court declines to apply this privilege is significant in that it would reveal information regarding the CBP and ICE's investigations, investigative techniques, methods, procedures, protocols, plans, and policies. *Rahman v. Chertoff*, No. 05 C 3761, 2007 U.S. Dist. LEXIS 76013, at *20 (N.D. Ill. Sep. 28, 2007).

## Conclusion

For the foregoing reasons, the court should deny plaintiffs' motion to compel, grant defendants' motion and enter an order protecting defendants from answering plaintiffs' Second, Third, and Fourth Expedited Discovery Requests and limit the Rule 30(b)(6) deposition topics to those requested in plaintiffs' motion for expedited discovery.

Respectfully submitted

ANDREW S. BOUTROS
United States Attorney

By: s/ Ifeanyi C. Mogbana
   IFEANYI MOGBANA
   JANA L. BRADY
   PATRICK JOHNSON
   Assistant United States Attorneys
   327 S. Church St., Suite 3300
   Rockford, Illinois 61101
   jana.brady@usdoj.gov
   patrick.johnson@usdoj.gov
   ifeanyi.mogbana@usdoj.gov