IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.* ) <br> Plaintiffs, ) <br> v. ) <br> KRISTI NOEM, Secretary of the U.S. ) <br> Department of Homeland Security, in her ) <br> official capacity, *et al*. ) <br> Defendants. ) | Case No. 25-CV-13323 <br><br> Hon. Robert W. Gettleman <br> Mag. Judge Laura K. McNally |

**PLAINTIFFS' AMENDED MOTION TO COMPEL PRODUCTION**

This Motion to Compel relates to Plaintiffs' First, Second, and Fourth Expedited Discovery Requests. Defendants have flatly refused to produce certain highly relevant categories of documents and have delayed producing others. Plaintiffs have conferenced with Defendants on numerous occasions over many hours in an attempt to resolve these issues. Although the parties have narrowed the issues during these meetings, significant gaps in production remain. Because Defendants have failed to meet their discovery obligations, Plaintiffs bring this Motion to Compel.

Plaintiffs brought suit on behalf of a class of detainees in the Broadview ICE facility during a surge in federal immigration enforcement in Chicago. They challenged Defendants' treatment of the people in their custody, including their denial of access to counsel, the use of coercion and misrepresentation to obtain people's signatures on voluntary departures, and physical conditions in the facility, including inadequate food, water, medical care, hygienic conditions, and sleeping conditions. This case is now set for a preliminary injunction hearing in April, and Plaintiffs still lack key evidence about how these conditions arose and what is happening at Broadview now.

Plaintiffs move to compel Defendants to provide essential information about their practices of coercing detainees into signing voluntary departures without their knowing consent, the Government's plans over the next weeks and months for immigration enforcement in Chicagoland and their use of Broadview, Defendant Kristi Noem's personal knowledge of conditions at

Broadview, and informal policies and guidance about operations at the facility received by Immigration and Customs Enforcement (ICE) agents. This information is relevant to Defendants' compliance with the Temporary Restraining Order (TRO) and will inform the preliminary injunction hearing taking place in a few short months. Plaintiffs also seek a short deadline for the production of other discovery, including attorney emails from the BSSA.Outreach@ice.dhs.gov inbox—the account created by Defendants to comply with the TRO—and identifying details about members of the Plaintiff class. In support, Plaintiffs state as follows:

## BACKGROUND

On October 30, 2025, Plaintiffs filed a complaint and motions for a temporary restraining order, class certification, and expedited discovery. ECF Nos. 1, 5, 15, 17. On November 5, 2025, the Court entered a TRO after finding that Plaintiffs and members of the now-certified class, *see* ECF No. 87, have suffered and are likely to suffer irreparable harm absent emergency relief. ECF No. 49. The TRO required Defendants to provide detainees clean bedding with sufficient space to sleep, adequate hygiene supplies, showers at least every other day, a clock showing the date and time in each holding room, three full meals per day that meet the U.S. recommended dietary allowances, potable water with each meal and more bottled water upon request, and prescribed medication. ECF No. 45 at 2–3. The TRO also requires each holding cell to be cleaned twice per day and clean toilet facilities. *Id.* The Order further requires Defendants to ensure the class has access to counsel. To that end, Defendants must provide free telephone services for every detainee to communicate with counsel in private, all attorney-client communications must be carried out in a manner to protect the attorney-client privilege, and all detainees must be provided a list of pro bono attorneys in English and Spanish as soon as possible after arrival and interpreter services as necessary. *Id.* Finally, Defendants were ordered to not misrepresent the contents of papers

1

provided to detainees and to provide an accompanying Spanish translation for all papers. *Id.* at 4. The Court initially set a preliminary injunction hearing for December 17. ECF Nos. 67, 68.

To create a full evidentiary record for the preliminary injunction hearing, the Court also granted Plaintiffs' motion for expedited discovery. ECF No. 15 at 4–6; ECF No. 45; Hr'g Tr., *Moreno Gonzalez v. Noem*, No. 25-cv-13323 (Nov. 4, 2025) (hereafter "TRO Hr'g Tr.") at 180:6–182:4.[1] Plaintiffs' motion for expedited discovery attached their First Set of Discovery Requests, which were crafted to ascertain the conditions at Broadview, detainees' ability to access counsel, and the documents that detainees have been made to sign while detained at Broadview. ECF No. 15-1. Following the Court's order, the parties met and conferred, during which Plaintiffs clarified each request. On November 6, Plaintiffs issued revised, more narrow requests in an effort to facilitate production and address concerns raised by Defendants. *See* Plaintiffs' Revised Expedited Discovery Requests (ECF No. 109-1). These largely sought information about conditions at Broadview in September and October (essential to evaluating what detainees may suffer when the TRO lapses). They also sought ongoing production of certain information concerning Defendants' post-TRO compliance, including regularly updated cell logs, signed voluntary departure forms, video surveillance footage, purchase and services documents, and facility population information.

On November 21, Plaintiffs served additional discovery requests on Defendants. *See* Plaintiffs' Second and Third Sets of Expedited Discovery Requests (ECF No. 109-7). The Second Set concerns current conditions at Broadview, Defendants' compliance with the TRO, future plans for Broadview, certain raw data about people detained at the facility, documents reflecting Defendants' preparation for the discovery inspection, and certain other materials. The Third Set

---

[1] Defendants confirmed that they would preserve all relevant material and that a preservation order was thus unnecessary. *See* TRO Hr'g Tr. at 184:25–185:7.

concerns surveillance video footage from inside Broadview and is not at issue in this motion.[2]

On December 2, 2025, Plaintiffs served their Fourth Set of Requests to Produce.[3] ECF No. 133. These requests seek attorney emails to the BSSA.Outreach@ice.dhs.gov email, which are relevant to Plaintiffs' access to counsel claims. Following entry of the TRO, Defendants created the BSSA.Outreach@ice.dhs.gov email account for attorneys to use when attempting to reach their clients at Broadview. In this set, Plaintiffs also seek a sample of A-files of individuals who were detained at Broadview, focusing on individuals who took voluntary departure. These files are pertinent to Plaintiffs' coercion/misrepresentation claims and access to counsel claims.

In early December, Plaintiffs filed a motion to compel, contending that Defendants had failed to respond to many of Plaintiffs' discovery requests, including those seeking evidence about their TRO compliance. ECF No. 109. In the midst of the court hearing on that motion, Defendants agreed to extend the TRO in this matter, and Magistrate Judge McNally consequently entered and continued the motion to compel. ECF No. 116. On the parties' joint motion, the Court ordered the TRO extended until April 21, setting a preliminary injunction hearing for that date. ECF No. 120.

Magistrate Judge McNally then ordered the parties to notify the Court if they intended to update their prior briefing on Plaintiffs' motion to compel. ECF No. 126. Plaintiffs filed a notice that they sought leave to amend their motion to compel. ECF No. 128. Prior to filing the notice, on December 18, 2025, Plaintiffs conferred one last time with Defendants about the outstanding discovery. At that meet and confer it became clear that the parties were at an impasse. *See* Dec. 18, 2025 Meet and Confer Correspondence (attached as Exhibit A), at 2-3. On December 19, the Court denied Plaintiffs' prior Motion to Compel, ECF 109, and Defendants' response, ECF 115,

---

[2] The parties have been making progress working collaboratively on issues relating to video surveillance.

[3] These requests were already encompassed in requests Nos. 3 and 7 from Plaintiffs' Revised Expedited Discovery Requests but were propounded formally as a new set of requests after conferral with Defendants.

as moot, given that the parties' intended to file amended briefs. ECF 130.

At this point, Defendants are refusing outright to turn over certain key documents, including A-files, information about their future immigration enforcement plans in Chicago, video of Defendant Noem's visit to Broadview in the fall, and informal policies guiding operations at the facility. And while they have agreed in theory to produce some outstanding discovery—*e.g.*, attorney emails to an ICE email inbox—they have not provided a date for their disclosure.[4]

This case is proceeding on a tight timeline. Fact discovery on the preliminary injunction closes March 20. ECF No. 126. This Court has requested a Joint Status Report on February 9, so Plaintiffs can advise whether they will be seeking changes to the TRO or different relief with regard to the Preliminary Injunction. To answer those questions, Plaintiffs need information about current conditions at the facility and whether Defendants are complying with the TRO. It is Plaintiffs' burden to show that a preliminary injunction is warranted, and Defendants' failure to comply with basic discovery requests is impeding Plaintiffs' ability to put on their case and to protect the members of the class who they represent. Accordingly, Plaintiffs respectfully request that the Court compel Defendants to comply with Plaintiffs' discovery requests as set forth below.

**LEGAL STANDARD**

Motions to compel are proper under Federal Rule of Civil Procedure 37(a) where a party either fails to respond to a discovery request or its response is insufficient. The party objecting to the discovery request bears the burden of showing why the request is improper. *Gecko Robotics, Inc. v. Summit NDE, LLC*, 2023 WL 11645709, at *1 (N.D. Ind. Nov. 29, 2023); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) (party

---

[4] Most of the discovery requested in Plaintiffs' Second and Fourth Sets of Requests to Produce remains unfilled. Frustratingly, Plaintiffs still do not have written responses from Defendants to these RFPs, and do not know whether Defendants object to producing the underlying documents.

resisting discovery "must show specifically how each request is not relevant or how each question is overly broad, burdensome or oppressive"). A pending preliminary injunction hearing strongly favors allowing expedited discovery. *See Campaignzero, Inc. v. Staywoke Inc.*, 2020 WL 7123066, at *2 (N.D. Ill. Dec. 4, 2020) (recognizing limited expedited discovery required to support plaintiff's motion for preliminary injunction); *Admiin Inc. v. Kohan*, 2023 WL 4625897, at *3, 13 (N.D. Ill. July 19, 2023) (finding expedited discovery appropriate where preliminary injunction motion pending and hearing scheduled).

**ARGUMENT**

**I.     DEFENDANTS SHOULD BE ORDERED TO PRODUCE THE DOCUMENTS THEY ARE AFFIRMATIVELY WITHHOLDING.**

Defendants are refusing to produce four buckets of documents that are relevant to whether Defendants are complying with the existing TRO, and whether the Court should issue a preliminary injunction to effectively extend (or enhance) the protections provided by that order: A-files, future plans for Broadview, Defendant Noem's visit to the facility, and informal policies guiding operations at the facility. Each set of documents should be produced.

***A-Files Relevant to Coerced "Voluntary" Deportation.*** In their Fourth Set of Requests to Produce, Plaintiffs asked for the "Complete A-files of the individuals who signed voluntary departure documents at Broadview in November 2025 and of other individuals . . . who are witnesses in this matter." ECF No. 133, RFP No. 42. Alien Registration files ("A-files") are the official files maintained by the U.S. Citizenship and Immigration Services (USCIS) for noncitizens, containing a complete history of their interactions with U.S. immigration authorities, including applications, documents issued by ICE officials, notes written by ICE officials, documents signed or submitted by the noncitizen, and judicial records.

As Plaintiffs relayed to defense counsel during several meet and confers, these files are

5

directly relevant to their APA claim concerning the coerced signing of voluntary departures and the access to counsel claim. *See* Dec. 11, 2025 Correspondence (attached as Exhibit B). In particular, A-files will show how immigration agents at Broadview actually processed individuals who took voluntary departure. They will show the identities of many of the immigration officers who interviewed and processed the noncitizen and obtained their signature on the voluntary departure form. They will also show whether documents were provided in English, Spanish, or some other language and whether there is any notation in the file regarding the use of interpretation services. They will show which particular documents and forms were used by the immigration officer to process the noncitizen; which documents were provided to the noncitizen; and whether the noncitizen signed any documents. The A-files will show whether the immigration officer took any notes documenting information purportedly provided by the noncitizen. They will also show whether an attorney had filed an appearance on behalf of the noncitizen, or whether ICE was otherwise aware that an attorney was involved.[5] Such information (and more) contained in A-files is directly relevant to several issues in this case, including (1) whether immigration officials are obtaining voluntary departure through misrepresentation, through untranslated documents, by denying access to legal advice, or through other coercive means; and (2) whether Defendants are violating the TRO (because the TRO requires noncitizens to receive all papers in Spanish translation and to be provided a list of pro bono attorneys, both of which would likely be documented in the A-file).

Moreover, the A-files of people who took voluntary departure will help corroborate the

---

[5] The A-Files of the two lead plaintiffs, which have been disclosed to Plaintiffs' counsel, are instructive in this regard. Those files demonstrated that the A-files will in fact contain all of the categories of information described here. Given that A-files contain a diverse collection of documents, notes, evidence, and other papers that have been compiled about a noncitizen, it is entirely likely that other class members' A-files will disclose additional kinds of information that will help to prove coercion or denial of counsel access.

6

fact that particular class members did not make a knowing and voluntary decision to take voluntary departure. The A-file will show that the individual had a basis for relief (for instance, grounds for habeas or a pending asylum claim) and so would likely not have given up their rights absent coercion—or would not have done so had they been permitted to obtain legal advice. For the same reasons, the A-files will also provide proof of harm and prejudice to class members. *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564–67 (9th Cir. 1990) (holding that permanent injunction was appropriate where evidence showed defendants coerced and tricked detainees into signing voluntary departure forms both before and after entry of preliminary injunction). In short, Plaintiffs seek to obtain A-files in order to prove their claims on behalf of the class.

The parties have met and conferred extensively on these records and have reached an impasse. Defendants characterize the A-files as relevant only to adjudicating the merits of individual immigration cases and claim they are not probative of Plaintiffs' systemic claims. To the contrary, A-files are highly relevant to Plaintiffs' claim about Defendants' systemic practices regarding voluntary departure and access to counsel.

Defendants also claim overburden and point to their paper recordkeeping system, but that argument fails. Plaintiffs are seeking approximately 150 A-files, a number that is not burdensome. ICE routinely obtains, copies, and produces A-files in a matter of days, as has been documented in an ongoing class-action FOIA lawsuit. In *Nightingale v. U.S. Citizenship & Immigration Services*, a district court found that the U.S. government had violated the Freedom of Information Act by failing to respond to Plaintiffs' A-file FOIA requests within the mandated statutory time frames. *See* Judgment, *Nightingale v. USCIS*, No. 19-cv-3512 (N.D. Cal. Dec. 17, 2020) (ECF No. 90) (attached as Exhibit C). As remedy, the court enjoined Defendants from failing to adhere to statutory deadlines and ordered them to make determinations on all A-file FOIA requests in

7

USCIS's and ICE's backlogs. *Id*. The parties in that case reported that for 2.5 years, the Government typically produced more than 99% of A-files within FOIA's statutory deadline—*i.e.* within 20 business days. Joint Status Report at 3, *Nightingale v. USCIS*, No. 19-cv-3512 (N.D. Cal. Sep. 18, 2025) (ECF No. 189) (attached as Exhibit D). By September 2025, the backlog decreased from 12,741 A-file requests to 4,831 A-file requests. *Id.* at 3. If the Government can process 8,000 additional A-file requests in 3 months, it can produce 150 in 30 days. Indeed, according to the same status report, it has only taken the Government somewhere between 4 and 8.5 days, on average, to obtain, copy, and produce A-files. *Id.* at 3 n.3 (documenting average response times to FOIA requests for A-files). In another case in the Northern District of Illinois, during the Government shutdown in October 2025, DHS located 100 A-files and declared that it had or could have those paper files within a matter of weeks. *See Castanon Nava v. Dep't of Homeland Sec.*, 2025 WL 2976554, at *1-2 (N.D. Ill. Oct. 20, 2025) (ordering defendants to produce information about 1,852 arrests on a weekly rolling basis after defendants represented they located 100 A-files, found 41 paper files in Chicago and could bring the remaining 59 paper files within one to two weeks after making a request). In any event, Defendants' poor recordkeeping system does not excuse them from compliance with their discovery obligations. *See Hirsch v. Will Cnty.*, 2024 WL 3792188, at *3 (N.D. Ill. Feb. 12, 2024) ("[A] part[y]'[s] failure to maintain a proper recordkeeping system does not excuse it from producing relevant documents." (citation modified)); *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc*., 2018 WL 1311994, at *3–4 (N.D. Ill. Mar. 7, 2018) (granting preliminary injunction where defendants failed to provide complete accounting as required by TRO and court found "Defendants' own conduct in failing to maintain and/or produce adequate records has placed the parties and the Court in the unfortunate position of being unable to undertake any sort of tracing exercise with precision").

8

This is particularly true where the Government's immigration enforcement apparatus has just been infused with billions in funding.[6]

***Government Plans for Future Use of Broadview Are Relevant to Conditions.*** Plaintiffs' Second Set of Requests to Produce asks for information about the Government's "plans for the use of Broadview during the next six months . . . [including] whether immigration enforcement personnel temporarily reassigned for the winter are scheduled to return to the Chicago area in the spring." ECF No. 109-7, RFP No. 16. While Defendants have not formally responded to these requests, they have stated in conferrals that they will not produce the documents. *See* Exhibit A, at 2-3.

Defendants have suggested in a prior filing and in an argument before the Court that the requested evidence is subject to the investigative privilege. *See* Defs' Resp. to Pls' Mot. to Compel (ECF No. 115 at 13-14); Dec. 11, 2025 Hr'g Tr. (Exhibit Forthcoming).[7] But they certainly have not met their burden on that score. *See Williams v. City of Chicago*, 672 F. Supp. 3d 599, 610 (N.D. Ill. 2023) (finding that a claim of law enforcement investigatory privilege "cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis"); *see also Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997) (holding that the Government "must explain with particularity the reasons that each document or class of documents is privileged" and that "[u]nless the government through competent declarations, shows the court what law enforcement interests would be harmed, how disclosure under a protective order would cause the

---

[6] *See* Margy O'Herron, Big Budget Act Creates a Deportation Industrial Complex, Brennan Center (Aug. 13, 2025) ("The so-called One Big Beautiful Act allocates more than $170 billion over four years for border and interior enforcement, with a stated goal of deporting 1 million immigrants each year. That is more than the yearly budget for all local and state law enforcement agencies combined across the entire United States. The bill adds billions of dollars to border enforcement, but the largest percentage increase goes to finding, arresting, detaining, and deporting immigrants already living in the U.S.").

[7] The December 11th Hearing Transcript is not yet available. Plaintiffs will supplement this filing promptly upon its receipt.

harm, and how much harm there would be, the court cannot conduct a meaningful balancing analysis"). And if ever that information was subject to such a privilege, it is surely waived, as this court has recognized. *See* Dec. 11, 2025 Hr'g Tr. (Exhibit Forthcoming); *see also Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1126 (7th Cir. 1997) (holding that the law enforcement investigatory privilege can be waived through "voluntary surrender"). Defendants and their spokespeople have gone public repeatedly with pronouncements about their investigative plans, stating that they "aren't leaving Chicago" and they are "here to stay."[8] In November, Defendant Gregory Bovino promised on social media that if a federal judge in the Northern District of Illinois "releases those 650" immigrants [in the *Castanon Nava v. DHS* case], we're gonna apprehend 1,650 on the streets of Chicago."[9] Just last week, Bovino and his agents returned to Chicagoland.[10] He announced that "several hundred" agents accompanied him on his return.[11] DHS, ICE, and Customs and Border Patrol (CBP) have announced their investigative priorities on social media; they certainly cannot withhold them in discovery.

There is also no question that Defendants' plans for the use of Broadview are relevant to the Court's assessment of the need for a preliminary injunction. Surveillance footage produced in

---

[8] *See* Jon Seidel & Tina Sfondeles, *U.S. Border Patrol boss Greg Bovino, fellow agents to soon leave Chicago but could be back fourfold in March*, Chicago Sun Times (Nov. 11, 2025), https://chicago.suntimes.com/public-safety/2025/11/11/u-s-border-patrol-boss-greg-bovino-fellow-agents-expected-to-soon-leave-chicago [https://perma.cc/3DZR-VC6Q].

[9] *See* Alex V. Hernandez, Border Patrol Boss Greg Bovino Left Chicago Thursday, Reports Say, Block Club Chicago (Nov. 14, 2025), https://blockclubchicago.org/2025/11/14/border-patrol-boss-greg-bovino-left-chicago-thursday-reports-say/ [https://perma.cc/LBJ7-NS6Q].

[10] *Tess Kenny et al., Border Patrol Cmdr. Gregory Bovino and agents return to Chicago in show of force across city and suburbs*, Chicago Tribune (Dec. 16, 2025), https://www.chicagotribune.com/2025/12/16/border-patrol-activity-cicero-chicago/ [https://perma.cc/A25W-CRQ2].

[11] *See* Charles Thursh and Colin Boyle, *Bovino Leads Caravan Through Chicago Before Clashing with Evanston Mayor,* Block Club Chicago (Dec. 17, 2025), https://blockclubchicago.org/2025/12/17/bovino-leads-caravan-through-chicago-and-suburbs-clashes-with-evanston-mayor/ [https://perma.cc/3VGH-W9HY].

10

the case shows extreme overcrowding, unhygienic conditions, safety concerns, and other unconstitutional conditions in Broadview prior to and after the entry of the TRO. If Defendants anticipate another immigration enforcement surge in the spring, as they themselves have said will happen—and if Broadview remains the sole or principal hub for processing arrested noncitizens—there is a high risk that the conditions caused by the severe overcrowding over the past months could recur. *See Mays v. Dart*, 456 F. Supp. 3d 966, 1008 (N.D. Ill.) (where cessation of wrongful activity occurred in response to a TRO, such cessation was not necessarily "voluntary" and that a "cognizable danger of recurrent violation" is enough to warrant converting a TRO into a preliminary injunction (citation modified)), *aff'd in part, vacated in part, rev'd in part*, 974 F.3d 810 (7th Cir. 2020). In fact, with Defendant Bovino's arrival last week, Plaintiffs' counsel observed a significant increase in the number of people detained at Broadview during their legal visit on December 17, 2025 (about 75 people).

***Defendant Noem's Visit is Relevant to Conditions and Her Liability.*** Defendants are still refusing to provide video footage taken by Government personnel during Defendant Noem's October 3, 2025, visit to Broadview, *see* ECF No. 109-2, RFP 10, citing purported irrelevance. *See* Defs' Suppl. Resp. to Pls' Revised Expedited Discovery Requests (attached as Exhibit E), RFP Resp. 10. Videos posted online show that DHS camera crews were following Defendant Noem as she spoke with ICE officials inside the Broadview facility and was led by those officials on a tour through the facility onto the roof and into the parking areas. They show Defendant Noem speaking with Defendant Bovino and several other officials throughout her tour of Broadview. They also

show her and an entourage of DHS officials and cameramen touring a warehouse as a potential site for a large new detention facility.[12]

Defendants cannot credibly withhold footage reflecting statements by Secretary Noem, a named Defendant, who oversees operations at Broadview, while she was present at the Broadview site and otherwise discussing detention and enforcement operations in Chicago. *See Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 788–90 (C.D. Ill. 2007) (holding that discovery from defendant who was a high-ranking government official was relevant where he was "either the ultimate decision maker or at least personally involved in the decision" challenged in the litigation). The footage could well provide clear evidence that Noem received personal knowledge of constitutional violations in the facility that her agency runs. *Cf. Hardeman v. Curran*, 933 F.3s 816, 827 (7th Cir. 2019) (Sykes, J., concurring) (internal citations omitted) (holding that Plaintiffs must prove that Defendants "acted purposefully, knowingly, or recklessly with respect to the consequences of [their] actions" to show objectively unreasonable conditions of confinement that violate the Due Process Clause). Defendant Noem's statements to Defendant Bovino and other officials while at Broadview and other places in Chicago may also be direct evidence corroborating the unconstitutional policies and practices that are the subject of this lawsuit.

To suggest such evidence is irrelevant because Defendant Noem may not have personally entered a detention room is dubious. *See* Exhibit E, RFP Resp. 10. The surveillance footage Defendants have produced and online footage of the same event[13] show her within the line of sight

---

[12] *See* Benny Johnson, *I Went on an ICE Raid and Arrested Illegals in Chicago | What Happened Next is INSANE…*, Youtube.com, https://www.youtube.com/watch?v=PgXpkoxD-Z4 [https://perma.cc/4S6A-B3BX].

[13] Spencer Hakimian (@SpencerHakimian), X (Oct. 3, 2025, 12:02 PM), https://x.com/spencerhakimian/status/1974158127890411979 [https://perma.cc/4H4L-A5U4]; Benny Johnson, *I Went on an ICE Raid and Arrested Illegals in Chicago - What Happened Next is INSANE ...*

of detainees and conversing with personnel who run the Broadview facility on a day-to-day basis. Much of this footage is taken in the processing room, surveillance footage of which has been produced by Defendants in this case because it is clearly relevant to conditions.

*Informal Policies Provide Clear Evidence of How Defendants are Operating the Facility.*
Defendants are maintaining their objection to producing informal policies and guidance governing attorney access, conditions, and voluntary departures. *See* Exhibit E, RFP Resp. 1. Defendants initially denied that any such policies or guidance exist. However, after a deposition revealed that guidance is sent to employees via email, *see* Theodore Dep. Tr. at 119:7-14 (attached as Exhibit F), Defendants claimed it would be unduly burdensome to search emails of employees to find this guidance and that Plaintiffs could ask witnesses about it in depositions. *See* Exhibit E, RFP Resp. 1. Defendants have not provided any evidence that such a search would be unduly burdensome. If Defendants truly do not maintain these records outside of emails to individual employees, then it is their own recordkeeping causing the alleged burden. These are insufficient grounds to withhold discovery. *See Hirsch*, 2024 WL 3792188, at *3.

There is no basis for Defendants to refuse to search the emails of their agents for information related to how they are operating a facility subject to a TRO. The Government's informal policies, directives, and guidance are central to Plaintiffs' access to counsel, conditions of confinement, and coerced and involuntary signature claims. The Government's policies in effect before and after the entry of the TRO will be critical at the preliminary injunction hearing. *See Estate of Belbachir ex rel Belbachir v. United States*, 2010 WL 3239444, at *1, *4–5 (N.D. Ill.

---

(YouTube, Oct. 6, 2025), https://www.youtube.com/watch?v=PgXpkoxD-Z4 [https://perma.cc/E5W2-S5RB]. Defendants do not dispute that such footage exists—nor could they, as the surveillance footage Defendants *have* provided shows that Secretary Noem was accompanied by Government videographers on her tour of the Broadview facility.

13

Aug. 13, 2010) (granting motion to compel policy documents reflecting Government's policies and practices related to immigration detainees' conditions of confinement).

> II. **Defendants Should Be Given a Short Deadline to Turn Over Documents They Do Not Object to Producing.**

Defendants have not yet produced formal written responses and objections to RFP Sets Two through Four, but Plaintiffs have learned during meet-and-confers that Defendants do intend to produce documents in response to some requests. However, Defendants have not committed to any deadline to produce these documents, as well as some documents responsive to Plaintiffs' First Set of Requests, even though these requests have now been pending for more than a month. The records that Plaintiffs understand Defendants have agreed to produce but have yet to disclose are:

- Emails announcing hold room waiver and voluntary departure incentive, referenced by SDDO Theodore in his deposition (ECF No. 109-2, RFP No. 1);
- Emails regarding guidance about notices to appear that SDDO Theodore received (*Id.*);
- Phone records, including for phones in the hold rooms and landline calls (*Id.*, RFP No. 2);
- Emails from attorneys to BSSA.Outreach@ice.dhs.gov (*Id.*, RFP 3; *see also* ECF No. 133, RFP 41);
- Updated non-food purchase orders & receipts (e.g., medical, cleaning, personal hygiene products, water, bedding) (ECF No. 109-2, RFP No. 6);
- Food purchase orders & receipts from 11/8-12/8 (*Id.*);
- Agreements with food vendors & maintenance service/janitorial vendor (*Id.*);
- Updated medical & incident logs (*Id.*);
- Signed voluntary departure forms (Plaintiffs have only received 36) (*Id.*, RFP 7);
- Addendum to the voluntary departure form referenced by Theodore (*Id.*);
- Rosters showing all staff who worked at Broadview in the relevant period (*Id.*, RFP 13).

On December 18, 2025, Plaintiffs proposed a January 2, 2026 production deadline. Plaintiffs also proposed production every two weeks for certain ongoing documents, such as cleaning logs, medical and incident logs, purchase invoices/receipts, intake logs, visit logs, attorney call logs, and transfer logs. Defendants stated that they "cannot commit to" that deadline,

14

but did not propose any alternative. *See* Exhibit A, at 1. Plaintiffs ask this Court to order Defendants to produce records immediately and to set additional deadlines for supplemental productions.[14]

\*\*\*

This case is proceeding quickly and in a rapidly changing environment, as evidenced by the recent return of Defendant Bovino and his agents to Chicago. To create a robust record of Defendants' compliance with the TRO and to adequately protect the class, Plaintiffs respectfully request that this Court grant Plaintiffs' motion and order Defendants to produce all outstanding discovery by early January.

Dated: December 22, 2025

Respectfully submitted,

*/s/ Alexa Van Brunt*
Alexa Van Brunt
Jonathan Manes
Danielle Berkowsky
Chisato Kimura
**MACARTHUR JUSTICE CENTER**

---

[14] Plaintiffs do not know whether Defendants intend to produce documents responsive to a number of requests in RFP Set Two, including:
- Records regarding Defendants' preparation for the inspection of the facility (ECF No. 109-2, RFP No. 14);
- Records regarding Defendants' efforts to comply with the TRO (*Id.*, RFP No. 15);
- Records regarding facilities other than Broadview where arrestees in the Chicago are being processed (*Id.*, RFP No. 17);
- Records that contain certain additional details about people detained at Broadview that are not captured in daily logs or other spreadsheets produced to date (*Id.*, RFP No. 18); or
- Records regarding Defendants' document retention and litigation holds (*Id.*, RFP Nos. 19-21).

Plaintiffs will await Defendants' formal discovery responses, which they have stated will be served by December 31, in order to learn whether Defendants object to disclosure of some or all of these materials. If Defendants do object, Plaintiffs will endeavor to confer with Defendants and file a motion to compel, as necessary, as quickly as possible. At the same time, Plaintiffs may also move to compel responses to their interrogatories, which Defendants will answer on December 31. Defendants have indicated they will object to all of the interrogatories and refuse to respond to any of them.

160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org

Nathan P. Eimer
Scott C. Solberg
Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
Alec Solotorovsky
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
asolotorovsky@eimerstahl.com

Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org

16

mgarcia@aclu-il.org<br>
rglenberg@aclu-il.org<br>
scole@aclu-il.org<br>
jstark@aclu-il.org<br>
khickey@aclu-il.org

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

Counsel for Plaintiffs and Defendants held numerous conferrals on the aforementioned discovery requests, as set forth herein. These conferrals all took place via video conference. As of December 19, 2025, it became clear that the parties, despite good faith attempts to resolve differences, had reached an impasse.

*/s/ Alexa Van Brunt*

17