IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PABLO MORENO GONZALEZ, *et al.* | ) | |
|     Plaintiffs, | ) | |
|   v. | ) | |
| KRISTI NOEM, Secretary of the U.S. | ) | Case No. 25-CV-13323 |
| Department of Homeland Security, in her | ) | |
| official capacity, *et al*. | ) | Hon. Robert W. Gettleman |
|     Defendants. | ) | Mag. Judge Laura K. McNally |
| | ) | |

## PLAINTIFFS' SECOND MOTION TO COMPEL

This Second Motion to Compel relates to Plaintiffs' Second and Third Set of Expedited Discovery Requests ("Second Set" and "Third Set"). After weeks of delay, Defendants have not made reasonable efforts to comply with discovery and have largely refused to search for records responsive to these requests, particularly electronic records (ESI). They are also maintaining inappropriate blanket privilege objections and refusing to respond to most of Plaintiffs' interrogatories. Accordingly, this Court should compel Defendants to immediately search and produce the materials requested in the Second and Third Sets, and to respond substantively to Plaintiffs' interrogatories.

### BACKGROUND

Plaintiffs served the Second and Third Sets on Defendants on November 21, 2025. *See* ECF No. 109-7. The Second Set concerns Defendants' compliance with the TRO, Defendants' preparation for the Rule 34 inspection, future plans for Broadview, data about people detained in this District, document retention, and other information. The Third Set concerns the missing surveillance footage from October 20 to October 31, 2025.

1

The parties had several conferrals concerning these requests.[1] In a status hearing on December 19, Defendants requested until December 31 to provide written responses. The Court granted Defendants' extension and suggested that Plaintiffs hold off on moving to compel a response until Defendants served their responses.[2] The Court indicated that Plaintiffs could move to compel if Defendants' responses were objectionable and the parties were unable to resolve their differences. *See* ECF No. 138. On December 31, Defendants served their responses. *See* Defs.' Resp. to Plfs.' 2nd Set of Requests (Exhibit A); Defs.' Resp. to Plfs.' 3rd Set of Requests (Exhibit B). Defendants objected to every request for production and did not produce any additional materials. Ex. A at 2-6; Ex. B at 2-7. They also refused to answer all interrogatories. Ex. A at 6-8; Ex. B at 8.

On Monday, January 5, 2026, the parties conferred for over 1.5 hours regarding Defendants' responses. Defendants confirmed that they did not search for records responsive to requests in the Second and Third Sets. Nor did they create privilege logs or specifically identify any documents about which they asserted various privileges. Plaintiffs asked Defendants to reconsider their objections. Defense counsel agreed to follow-up on certain issues and update Plaintiffs by Wednesday. *See* Jan. 2026 Correspondence (Exhibit C) at 4. On Wednesday evening, defense counsel said he hoped to have answers by Thursday. *Id.* at 3. On Thursday, Plaintiffs advised that if Defendants

---

[1] For more background on Plaintiffs' requests for expedited discovery, see Plaintiffs' Amended Motion to Compel Production (ECF No. 134) at 1-4.

[2] On December 22, Plaintiffs filed an amended motion to compel on their first set of requests. ECF No. 134. That motion seeks relief with respect to one request from the Second Set, RFP 16, concerning the Government's plans for the future use of Broadview. *Id.* at 9-11. Plaintiffs briefed the issue because the parties had already reached impasse.

2

do not reply, they will assume the parties were at an impasse. *Id.* at 1. Defendants did not reply. At 10:30 p.m. on Saturday, January 10, Defendants served amended responses to the Second Set (Exhibit D). The amended responses did not change much; Defendants removed some unfounded assertions of privilege (**RFPs 14, 15, 16, 21**), agreed to produce a limited set of records (though did not provide a date by which they would do so) (**RFP 16**), and partially answered one interrogatory (**ROG 3**).

Accordingly, Plaintiffs request that the Court compel Defendants to immediately search their records and produce documents and interrogatory responses to the Second and Third Sets.

## LEGAL STANDARD

Motions to compel are proper under Federal Rule of Civil Procedure 37(a) where a party either fails to respond to a discovery request or its response is insufficient. The party objecting to the discovery request bears the burden of showing why the request is improper. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017). A pending preliminary injunction hearing strongly favors expedited discovery. *See Campaignzero, Inc. v. Staywoke Inc.*, 2020 WL 7123066, at *2 (N.D. Ill. Dec. 4, 2020). And where facts demonstrate a risk of spoliation or destruction of evidence by one party, expedited discovery is particularly critical. *See CGB Diversified Servs., Inc. v. Morrison*, 2020 WL 4547885, at *4 (C.D. Ill. Apr. 2, 2020).

## ARGUMENT

Plaintiffs' discovery requests are relevant to whether the Court should issue a preliminary injunction to extend or modify the protections in the TRO. This evidence

must be collected on an expedited basis because fact discovery ends March 20, and the preliminary injunction hearing is on April 17. Defendants' delay tactics have impeded Plaintiffs' ability to conduct discovery as the requested materials are necessary to identify deponents and take depositions and are pertinent to expert discovery.

***Defendants must be compelled to search for all relevant records, including ESI, relating to TRO compliance.*** Plaintiffs requested discovery about Defendants' efforts to comply with the TRO. ECF No. 109-7 at 7 (**RFP 15**); *id.* at 8 (**ROG 1**). Failure to comply with the TRO is a factor the Court can consider in determining whether a preliminary injunction is appropriate. *See Teledyne Techs. Inc. v. Shekar*, 2015 WL 13728061, at *3 (N.D. Ill. Mar. 10, 2015) (granting preliminary injunction and concluding "the threat of irreparable harm is significant" where defendant failed to comply with TRO).[3] This information—including communications among involved parties—is vital for Plaintiffs to demonstrate Defendants' unwillingness and inability to operate Broadview constitutionally without court intervention. Defendants repeatedly argue that they are compliant with the TRO; Defendants themselves have directly put their compliance at issue. *See, e.g.*, Ex. A at 7 ("defendants are following the TRO"); ECF No. 119 at 6-7

---

[3] *See also Hanover Ins. Grp. v. Shingles Roofing Co., Inc.*, 2012 WL 2368328, at *13 (N.D. Ill. June 21, 2012) (failure to comply with TRO is "immediately relevant" to irreparable harm requirement for preliminary injunction); *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, No. 1:17-cv-08381, 2018 WL 1311994, at *3 (N.D. Ill. Mar. 7, 2018) (entering preliminary injunction in part due to plaintiff's failure to comply with TRO); *Chi. Headline Club v. Noem*, 2025 WL 3240782, at *73, *93 (N.D. Ill. Nov. 20, 2025) (granting preliminary injunction in part based on finding that plaintiffs established credible risk of future injury based on ongoing pattern of conduct after court entered TRO); *Yupoong Inc. v. 723 Individuals, Corps., Ltd. Liab. Cos., P'ships, & Uninc. Ass'ns*, 2019 WL 13538116, at *1–2 (N.D. Ill. Oct. 30, 2019) (extending TRO where third parties needed additional time to comply with TRO and there was a high probability of continuing harm without TRO).

("Broadview is fully complying with the terms of the TRO"); ECF No. 145 at 1 ("The conditions of confinement at Broadview … are vastly changed since the TRO was entered and do not now present the issues that existed earlier."). Plaintiffs are entitled to challenge those assertions.

Defendants initially lodged several objections in response to this request. Ex. A at 3, 6. In their amended response to RFP 15, served yesterday, Defendants retracted these objections. Ex. D at 3. They only cite to materials produced in response to Plaintiffs' first set of requests. *Id.* Plaintiffs do not believe this is anywhere near the full set of responsive records. During conferral, defense counsel could not confirm whether Defendants had searched for any records responsive to this request and, in particular, it appears Defendants did not search for any of the requested communications, including ESI. This is improper. Defendants have an obligation to undertake a good faith search for responsive information. *See LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 160 (N.D. Ill. 2023) ("Rule 26(g) requires counsel and the client to make a reasonable inquiry in responding to discovery.…[C]ounsel must be diligent, make a careful inquiry, and act in good faith.") (citation modified).

Defendants should be required to immediately search and produce responsive records—including responsive ESI—and to respond to the interrogatory.

***Evidence concerning Defendants' preparation for the Rule 34 inspection and other facilities for processing in the Northern District is relevant to their ability to maintain constitutional conditions.*** Plaintiffs requested information about Defendants' preparation for the November 13 Broadview inspection and about facilities where

5

individuals are processed in lieu of Broadview. ECF No. 109-7 at 6 (**RFPs 14, 17**); *id.* at 9 (**ROG 2**). Defendants have produced no documents in response, claiming the requests are overly broad and discovery would not lead to probative evidence. *See* Ex. D at 3-4. Defendants also refuse to answer the corresponding interrogatory, arguing it seeks irrelevant information and is unduly burdensome. *Id.* at 6.

Defendants' objections are unwarranted. This discovery is relevant and proportionate as Plaintiffs need evidence of whether continued relief is necessary in order to meet the preliminary injunction standard. For months, including after entry of the TRO, Defendants crammed people into overcrowded, unhygienic rooms, often for days at a time. Yet at the time of the inspection, the facility had been emptied out and no one present had stayed overnight. Plaintiffs are entitled to explore the extent to which changes were only made as a result of court intervention, thus supporting the need for further Court involvement. *See Mays v. Dart*, 456 F. Supp. 3d 966, 1008 (N.D. Ill.) (observing that where cessation of wrongful activity occurred in response to a TRO, such cessation was not necessarily "voluntary" and that a "cognizable danger of recurrent violation" is enough to warrant converting a TRO into a preliminary injunction (citation modified)), *aff'd in part, vacated in part, rev'd in part*, 974 F.3d 810 (7th Cir. 2020).

This discovery will provide essential information about whether the overcrowding and other unconstitutional conditions on display last fall are likely to recur during an enforcement surge in the spring. Evidence regarding Defendants' preparations for the inspection will help Plaintiffs rebut any argument that Defendants lack the ability or resources to come into or remain in compliance in the future. Information about other

6

locations where detainees are processed is relevant to challenging arguments that the unconstitutional conditions at Broadview are necessary to enforce immigration laws in Illinois. *See, e.g.*, ECF No. 38 at 3, 23. Communications will provide evidence of Defendants' willingness and ability to operate the facility constitutionally.

Defendants argue that this requested discovery is not proportionate because time has passed since the inspection and Plaintiffs now visit weekly. This argument fails. The requests were served on November 21, just over a week after the inspection. Defendants' delay in responding does not justify withholding discovery. Nor do Plaintiffs' visits—for which Broadview staff are given advanced notice—render the inspection irrelevant. For one, Plaintiffs' expert and the Court attended the inspection; they do not attend legal visits. Further, unlike the inspection, Plaintiffs' counsel do not inspect holding cells, tour the entire facility, take measurements, or take photographs to be used as evidence; they simply visit clients. Plaintiffs are entitled to information about the state of the facility when they are not present to bear witness. Defendants should be required to immediately search their records, produce responsive records, prepare a privilege log as necessary, and make good faith efforts to respond to the interrogatory.

***Data on detainee arrests and detentions is relevant to Plaintiffs' conditions and coercion claims.*** Plaintiffs requested data about individuals arrested and detained in the Northern District of Illinois, including their location, the times and dates of their arrests and transfers, their case status, and whether they were subject to voluntary departure. ECF No. 109-7 at 6-7 (**RFP 18**). This request refers to two spreadsheets, a link to which Plaintiffs have provided Defendants. *See id.* n.2. The burden of production is minimal;

7

ICE has already created and produced them (albeit with redactions), *see infra*. Defendants argue that they are providing enough information through the production of Daily Cell Logs. However, as raised previously with Defendants and this Court, certain requested data (including age, location, and case status) is not tracked in the daily logs, and the logs are often missing the data that is supposed to be tracked. Also, the spreadsheets present a more comprehensive picture of class members' paths through detention, from arrest until removal or release, including the dates, times, and lengths of various stays. This information is directly relevant to detainees' experiences at Broadview, the ICE detainee locator, and the coerced signing of voluntary departures.

There is no question the spreadsheets are in Defendants' possession; in November, the Government produced redacted versions of the spreadsheets with data through mid-October to another party in response to a FOIA request.[4] At the conferral, defense counsel stated he had not looked at the spreadsheets and agreed to look at the request again in light of the data missing from the daily logs and respond by Wednesday. *See* Ex. C at 4. He has not responded. Plaintiff asks the Court to compel unredacted spreadsheets.

***Defendants have an obligation to substantively respond to interrogatories.*** Defendants have responded to only one of the seven interrogatories (**ROG 3**), objecting to the remainder primarily on grounds of relevance and burden.[5] Ex. D at 5-8 (**ROGs 1-**

---

[4] *Immigration and Customs Enforcement*, Deportation Data Project, https://deportation data.org/data/processed/ice.html [https://perma.cc/6JYK-HCLF].
[5] The relevance of ROGs 1-2 (*supra*) and 4-7 (*infra*) are incorporated into other sections of this motion. The relevance of ROG 3 is the same as is asserted in Plaintiffs' amended motion to compel concerning "Government Plans for Future Use of Broadview." ECF No. 134 at 9-11.

5); Ex. B at 8 (**ROGs 6-7**).[6] These objections are insufficient justifications for refusing to respond. *See Schaap v. Exec. Indus., Inc.*, 130 F.R.D. 384, 386 (N.D. Ill. 1990) ("Despite [a party's] objections, a request for discovery must be complied with unless it is clear that there is no possibility that the information sought may be relevant …"); *Woods v. Von Maur, Inc.*, 2010 WL 3420187, at *2 (N.D. Ill. Aug. 27, 2010) ("[T]he mere fact that an objecting party 'will be required to expend a considerable amount of time, effort, or expense in answering the interrogatories is not a sufficient reason to preclude discovery'").

Despite initially objecting to ROG 3, Ex. A at 7, which requests information about the decision-making process, the identities of decisionmakers, and plans for Broadview and other facilities in the Northern District, Defendants have now partially responded. Ex. D at 7. As explained in Plaintiffs' amended motion to compel, ECF No. 134 at 10-11, this information is highly relevant; it undermines Defendants' arguments that "this case is moot" and that expectations of an enforcement surge in the spring are "entirely conjecture." ECF No. 119 at 6-7. Defendants' revised response to ROG 3, however, is wholly deficient. They fail to identify *by name* any decisionmakers, do not explain the currents plans for the use of Broadview over the next six months, do not address personnel assignments for the spring, provide no information on other facilities in the Northern District, and fail to respond to the most basic question of whether they intend

---

[6] Defendants also asserted unexplained attorney-client and work product privileges in response to ROGs 6 and 7 (Ex. B at 8), which are improper for the reasons discussed *infra*. *See Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012).

9

to adhere to the directives of the November 5 TRO entered by the Court in this case. Ex. D at 7. Defendants appear to still be resting their failure to respond on the law enforcement investigative privilege. Ex. D at 7 ("[D]isclosure of ongoing or future investigations or enforcement techniques could risk compromising law enforcement efforts"). As discussed more thoroughly in Plaintiffs' amended motion to compel, ECF No. 134 at 9-10, Defendants have not met their burden to withhold disclosure on investigative privilege grounds. And Defendants have waived any privilege that might attach by discussing their plans in the press. *Id.*[7]

***Discovery about document retention is proper.*** Plaintiffs requested discovery on Defendants' retention policies and litigation hold notices. ECF No. 109-7 at 8 (**RFPs 19-21**); *id.* at 10 (**ROG 5**); *id.* at 19-20 (**RFPs 29, 40**). Defendants objected and refused to search or produce responsive documents; they argued that this discovery is irrelevant because there is no evidence that they failed to meet their discovery obligations. Ex D at 4-5; Ex. B at 4-5, 7. This is plainly false. Defendants either lost or failed to record video for ten critical days in October, *see infra*—the litigation holds are especially relevant.[8] *See, e.g., Carlock ex rel. Andreatta-Carlock v. Williamson*, 2011 WL 308608, at *4 (C.D. Ill. Jan. 27, 2011) (when a party "present[s] some threshold showing of spoliation," documents related to

---

[7] *See, e.g.*, Defendant Bovino (@CMDROpAtLargeCA), X (Dec. 30, 2025, at 11:01 CT), https://x.com/CMDROpAtLargeCA/status/2006048110221328469 [https://perma.cc/UVG4-JWEU] ("We're gonna be [in Chicago] for years.").

[8] As another example, Defendants have failed to identify Broadview staff outside of a roster from one unspecified two-week period. *See* ECF No. 134 at 14. Defendants explained that there are no other records of staff who worked at Broadview because they save over the spreadsheet every two weeks and do not maintain back-ups. However, they have not produced any subsequent staff rosters since that single production, making it likely that Defendants are failing to preserve requested evidence during the pendency of this litigation.

litigation holds are "not privileged, and []discoverable as to issues of spoilation").

Defendants assert improper blanket claims of attorney-client and work product privilege without searching for or identifying allegedly privileged documents. Ex. B at 4-5, 7 (**RFPs 29, 40**). Defendants cannot invoke privilege as a blanket objection. *See Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012) ("[T]he claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable") (quoting *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)). They must first undertake a good faith search, *see* Fed. R. Civ. P. 26(g), they then must explain the basis for each allegedly privileged item. *See* Fed. R. Civ. P. 26(b)(5); Procedures of J. McNally: Privilege Logs ("[I]f a party withholds otherwise discoverable information on the ground of privilege, the withholding party must provide a log of the documents withheld on the ground of privilege. … This obligation pertains to materials withheld on the basis of any privilege, not only the attorney-client privilege.").

Defendants should be compelled to comply with these requests and to provide a detailed privilege log for all withheld materials.

***Relatedly, information about Defendants' discovery efforts is relevant.*** Plaintiffs have requested information about how Defendants have conducted discovery in response to Plaintiffs' requests. ECF No. 109-7 at 10 (**ROG 4**). Defendants refuse and again claim that there is no evidence they failed to meet their discovery obligations. Not so. For example, on November 6, Plaintiffs requested certain records about voluntary departures, including policies and guidance. *See* ECF No. 109-2 at 7, 10 (RFPs 1(d), 7). Defendants insisted no such records existed and that there was no way to track voluntary

11

departures. However, Ryan Theodore's deposition revealed the existence of many responsive records—which Plaintiff finally received last Monday—including processes for implementing voluntary departure policies and documents for facilities to track voluntary departures. It is clear from this production that many more undisclosed responsive materials exist. Such conduct, in conjunction with Defendants' admission that they did not conduct searches in response to the Second and Third Sets, casts serious doubt as to whether Defendants are acting in good faith and complying with their discovery obligations. *See LKQ Corp.*, 345 F.R.D. at 160-61 (finding that Fed. R. Civ. P. 26(g) authorizes discovery on discovery if a reasonable effort has not been made to provide responsive information). Defendants should be ordered to comply.

***Requests concerning video footage and the Broadview video system are relevant to Plaintiffs' conditions and coercion claims.*** There is an enormous gap in footage from October 20 to 31 (in the morning), when Plaintiffs were at Broadview and unconstitutional conditions were at their apex. The circumstances under which this footage was lost or not recorded remain unclear, and Plaintiffs are investigating the possibility of spoliation warranting an adverse inference against Defendants regarding conditions at Broadview during this time. Without court intervention, these very conditions may return in the spring. *See, e.g.*, ECF No. 134 at 11 (describing Broadview conditions after Defendant Bovino's December 16 visit to Chicago). At Defendants' suggestion, Plaintiffs subpoenaed two contractors who were involved in operating and maintaining the video system. They are cooperating but do not have all the relevant information that Plaintiffs requested. Much is in the Government's hands, including the

server (the "Old Server") that purportedly crashed on or about October 20, documents and communications regarding problems with the system, and the identities of people with access to the system. This discovery bears directly on whether—by negligence or worse[9]—Defendants spoliated evidence. ECF No. 109-7 at 18-20 (**RFPs 24-39, ROGs 6-7**); *see Domanus v. Lewicki*, 742 F.3d 290, 298–300 (7th Cir. 2014) (affirming district court's finding of bad faith and imposition of sanctions where defendants destroyed ESI).[10]

Defendants objected to all such requests and deferred to one of their contractors, Five by Five Management, LLC, a one-person firm whose involvement is limited. Defendants even objected to requests for evidence in their own possession, including retention policies and legal hold notices (**RFPs 29, 40**, *see supra*) and the identities of parties who had access to or knowledge of the system or the missing footage (**RFPs 37; ROGs 6-7**). Ex. B at 4-8 (also, **RFPs 28, 30, 31, 32, 34, 35, 36**). For most requests, Defendants gave a stock response that the information, if it exists, is on the Old Server. *Id.* at 2-7. This is unreasonable as for many of those requests (*e.g.*, **RFPs 28, 30, 31, 32, 34, 35, 36, 37**), the information sought (*e.g.*, maintenance logs, people with access, etc.) would either not realistically be stored on the Old Server or exists elsewhere in Defendants' records.[11]

---

[9] Indeed, at least one other case in this District involves events at Broadview that may well have put Defendants under an ongoing obligation to be recording and storing the footage from October 20 to 31. *See Chi. Headline Club v. Noem*, Case No. 25-cv-12173 (N.D. Ill.).

[10] *See also Boutilier v. Menard Inc.*, 606 F. Supp. 3d 860, 866 (C.D. Ill. 2022) (defendant negligently failed to preserve evidence and the loss of such evidence was prejudicial to the plaintiff's case); *Jackson v. N'Genuity*, 2011 WL 1134302 at *2 (N.D. Ill. Mar. 28, 2011) (finding it appropriate to draw a negative inference in connection with a pending trial and motion for preliminary injunction where defendants' non-compliance during discovery amounted to interference and spoliation).

[11] The parties conferred with Five by Five regarding the possibility of Five by Five transferring all data from the Old Server into a different storage medium for review, but these discussions appear

Defense counsel agreed to ask if Defendants would reconsider responding to requests for evidence in their possession. The next day, Defendants suggested staying the response until after Five by Five's deposition. Ex. C at 3. Plaintiffs reject this proposal. To obtain the full scope of discovery to which Plaintiffs are entitled, Defendants must respond to Plaintiffs' requests without delay. *See RC Trailers, Inc. v. Darkhorse Cargo, Inc.*, 2019 WL 13218401, at *1–2 (N.D. Ind. Dec. 6, 2019); *CGB Diversified Servs.*, 2020 WL 4547885, at *4.

\*\*\*

It has been a struggle to convince the Government to undertake its most basic discovery responsibilities, including a standard search for responsive documents. Plaintiffs have no trust that they are receiving all the evidence in Defendants' possession or control that is relevant, unprivileged, and responsive to their requests. Plaintiffs request that the Court order Defendants to conduct a diligent search of their electronic and paper records for responsive documents, create a privilege log asserting any well-founded privileges with specificity, and respond substantively to outstanding requests. If an ESI order would facilitate this process, Plaintiffs will put one together in short order.

WHEREFORE, Plaintiffs respectfully request that this Court order Defendants to immediately respond to Plaintiffs' Second and Third Sets of requests.

---

unlikely to resolve the dispute. On December 17, the parties agreed that Five by Five would prepare a written plan for the parties to review. The plan was not circulated until January 8, it was short on technical detail, and it requested a substantial monetary payment for the project *plus* indemnification from all parties. These are non-starters. The Old Server is Government property and Defendants are responsible for producing the discoverable data that exists on it. Defendants cannot punt to their contractor and require Plaintiffs to make a deal with Five by Five in order to obtain information that Defendants own and control. Thus, even as to responsive information that may actually be stored on the Old Server, Plaintiffs are nowhere near getting access.

Dated: January 11, 2026

Respectfully submitted,

*/s/ Danielle Berkowsky*
Alexa Van Brunt
Jonathan Manes
Danielle Berkowsky
Chisato Kimura
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org

Nathan P. Eimer
Scott C. Solberg
Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
Alec Solotorovsky
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
asolotorovsky@eimerstahl.com

Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**

150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

Counsel for Plaintiffs and Defendants held numerous conferrals on the aforementioned discovery requests, as set forth herein and in Plaintiffs' Amended Motion to Compel Production (ECF No. 134). As of this filing, despite good faith attempts to resolve differences, the parties have reached an impasse.

*/s/ Danielle Berkowsky*