UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.*, | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 25 C 13323<br>) |
| KRISTI NOEM, Secretary U.S. Department of Homeland Security, *et al.*, | ) Judge Gettleman<br>) Magistrate Judge McNally<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SECOND MOTION TO COMPEL**

**Introduction**

Defendants state for their response in opposition that: (1) they have agreed to produce—and are gathering and reviewing—records relating to TRO compliance and litigation hold notices; (2) the remaining records addressed in plaintiffs' motion are not probative of issues to be decided at the preliminary injunction hearing. The court should rein in plaintiffs' attempt to seek discovery beyond what is necessary for the court's adjudication of their yet-to-be filed preliminary injunction motion. Discovery on preparation for the court-ordered inspection of Broadview, arrests and detentions by ICE in Northern District of Illinois, document retention policies, failure of the video system at Broadview to record footage, and efforts to respond to discovery are inappropriate. The requests plaintiffs seek to enforce in their motion are highly objectionable. Defendants asserted relevance objections, yet plaintiffs did not ask the court to rule on the propriety of those objections. Defendants therefore request in this response that the court do so. The marginal relevance of the records plaintiffs seek outweighs the ordinary presumption in favor of broad disclosure. Therefore, plaintiffs have failed to meet their burden under Rule 37 and the court should deny their second motion to compel.

**Background**

Plaintiffs filed this class action seeking to enjoin alleged unconstitutional conditions of confinement, including a right to associate with counsel, and an alleged practice of coercing detainees into signing voluntary departure forms at the U.S. Immigration and Customs Enforcement processing facility located in Broadview, Illinois. A temporary restraining order was entered on November 5, 2025. Dkt. 49. A preliminary injunction hearing was originally set for November 19, 2025, but was reset to December 17, 2025. Dkt. 49, Dkt. 67. And it is currently set for April 21-22, 2026. Dkt. 120.

Relevant here, the parties had several conferrals regarding plaintiffs' Second and Third Set of Expedited Discovery requests. At each session, plaintiffs remained intransigent that records relating to defendants' preparation for the Rule 34 inspection, plans for Broadview, data about individuals arrested and detained in this district, document retention and other information are probative of their claims. Yet, defendants consistently pressed, without success, the marginal relevance of the information in those records relative to issues the court will decide at the preliminary injunction hearing. Although defendants initially asserted certain privileges in their written responses to the Second Set, they were later withdrawn and revised responses committing to produce responsive records were served on the plaintiffs. Yet, plaintiffs move to compel production of documents defendants have already agreed to. The Broadview video surveillance footage for October 20 to October 31, 2025, is not *missing*. Rather, due to a technical issue, the Video System *failed to record* video or audio footage during that period. Contractors manage the system for the defendants. An employee of the contractor with personal knowledge of events explained during a meeting with counsel of record how he discovered that the System did not record footage from October 20 to October 31, 2025. That employee will be deposed in this case

on January 29, 2026. His explanation of events eviscerates any vestigial relevance of plaintiffs' Third Set of discovery requests which assumes that spoliation occurred in this case. The scope of plaintiffs' Second and Third Set of discovery requests are not proportional to the needs of the case as it exists, if they ever were.

## Argument

A party is only entitled to discovery that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "In other words, relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26. An assessment of proportionality is essential." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. Mar. 15, 2019). Proportionality is determined by several factors, including "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Further, courts must limit "the frequency or extent of discovery otherwise allowed by these rules" if "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

**1.    Plaintiffs Are Not Entitled to Discovery That Is Not Probative of Issues to Be Discussed at the Preliminary Injunction Hearing.**

The scope of discovery at this stage of litigation should be limited to information probative of issues this court will consider at the preliminary injunction hearing. The purpose of discovery in the context of a preliminary injunction proceedings is for further development of the record before the hearing. *Amos v. Taylor*, No. 20 C 7, 2020 WL 5809972, at *4 (N.D. Miss. Aug. 26, 2020) (quoting *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1057 (D. Minn. 2019)). So, discovery should "better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Better Path*

3

*Coalition Planning Group v. City of Harrisburg*, No. 22 C 623, 2025 U.S. Dist. LEXIS 156081, at *16 (M.D. Pa. Aug. 13, 2025). It follows then that discovery is "relevant" for this purpose when it would impact the relevant "preliminary injunction determination." *Dimension Data North America, Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 532 (E.D.N.C. 2005); *Franco-Gonzalez v. Napolitano*, No. 10 C 2211, 2010 WL 11479349, at *3 (C.D. Cal. Nov. 24, 2010) (limiting requests "solely [to] those issues relevant to the Court's consideration of the Motion for a Preliminary Injunction.").

  a. **Preparation for Rule 34 Inspection and Other Processing Facilities in This District**

Information related to Rule 34 inspection preparations and other processing facilities in the Northern District of Illinois is not necessary for the preliminary injunction hearing. Plaintiffs argue they are entitled to explore the extent to which changes at Broadview were only made due to court intervention, thus supporting the need for further court involvement. Dkt. 146, at p. 6. But this argument is unavailing because as of November 13, 2025, the date of inspection, defendants had already begun to make changes required by the TRO issued on November 5, 2025. Plaintiffs have requested discovery regarding TRO compliance which defendants have produced. Plaintiffs also claim this discovery will provide essential information about whether the conditions on display are likely to recur. *Id.* But that argument is undeveloped. Plaintiffs then argue that evidence regarding preparations for the inspection will help rebut arguments that defendants lack the ability or resources to come into or remain in compliance in the future. *Id.* However, plaintiffs presume an argument defendant have not and do not intend to advance. Furthermore, defendants' compliance with the TRO and apparent ability to present the conditions observed during the inspection nullifies plaintiffs' argument. Plaintiffs conclude that information about other processing locations is relevant to challenging arguments that unconditional conditions at

4

Broadview are necessary to enforce immigration laws in Illinois. Dkt. 146, pp. 6-7. Again, this argument is too whimsical to be taken seriously because it is clearly not probative of plaintiffs' conditions of confinement and access to counsel claims. In sum, plaintiffs wish to engage in a fishing expedition and conjures a need to refute arguments defendants have not made. Evidence of preparations for court ordered inspection and other processing facilities in Northern Illinois is not probative of past or current conditions at Broadview and is beyond the scope of discovery in the case.

        b.        **Data on Detainee Arrests and Detentions in Northern Illinois**

Plaintiffs' claims are directed at the conditions at Broadview, and thus information regarding events or conditions that occurred elsewhere is not probative plaintiffs' claims. As a result, information regarding arrests and detentions in Northern Illinois goes to no issue in this case. Yet, plaintiffs argue the information they seek presents a more comprehensive picture of class members' "paths through detention." Dkt. 146, at p. 8. But plaintiffs have not alleged a claim about the "paths through detention" of class members. Rather, plaintiffs' complaint focused on the conditions at Broadview and whichever paths of detention that brought class members to Broadview are immaterial. Plaintiffs suggest that the information is 'directly relevant to [class members'] experiences at Broadview, the ICE detainee locator, and the coerced signing of voluntary departures." *Id.* However, saying information is relevant does not make it so. Plaintiffs do not explain how data about all the arrests and detentions in Northern Illinois will advance the issues at the preliminary injunction hearing. They cannot because the information does not.

Plaintiffs then pivot to an argument that the information is in defendants' possession and the burden of production is minimal. *Id.* But if information is not relevant, the ease of production is immaterial because a party is not entitled to discovery because the burden of production is slight.

5

Rather, a party is entitled to discovery that is relevant to the claims or defenses in litigation. If a party fails to demonstrate the evidence it seeks to compel is relevant, the ease or burden of production does not arise. *Better Path Coalition Planning Group v. City of Harrisburg*, No. 22 C 623, 2025 U.S. Dist. LEXIS 156081, at *10-11 (M.D. Pa. Aug. 13, 2025) (party moving to compel discovery bears the initial burden of proving the relevance of the information sought). Plaintiffs have not demonstrated this information regarding arrests and detention in Northern Illinois is relevant to the preliminary injunction hearing, because it is not. In fact, it is not relevant to the merits because it does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1). *In re Urethane Antitrust Litigation*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

        c.        **Obligation to Substantively Respond to Interrogatories**

Defendants should not be compelled to answer plaintiffs' interrogatories that are overly expansive and require significant effort to produce detailed responses. That is, interrogatories that seek detailed "narrative" responses. Courts have refused to compel responses to interrogatories seeking "narrative" responses. *See, e.g., Williams v. Sprint/United Management Co.,* 235 F.R.D. 494 (D. Kan. 2006); *Hilt v. SFC*, Inc., 170 F.R.D. 182, 186-87 (D. Kan. 1997). Other courts have considered the extent of the response required by an interrogatory to determine whether to compel a respondent to answer. *See, e.g.*, *Grynberg v. Total S.A.,* No. 03 C 1280, 2006 WL 1186836 at *6 (D. Colo. 2006) (citing characterized overly expansive interrogatories as "blockbuster" and finding them improper); *United States v. The Louisiana Clinic,* No. 99 C 1767, 2003 WL 21283944 at *6 (E.D. La. 2003) (rejecting a request to compel a response to an interrogatory seeking an explanation of why and how each produced document related to each claim, stating that "relators should not have to try their case in the context of a response to interrogatories.").

6

Here, plaintiffs' interrogatories are expansive and require significant effort and several lines of text to answer. Those interrogatories ask defendants to describe the decision-making process, identify the decisionmakers and explain the plans for the use of Broadview over the next six months (Dkt. 146, at 10). Defendants answered that immigration enforcement will continue, and that Broadview will continue to be used as a processing center. Defendants can also state that the field office director for the Chicago Office makes operational decisions regarding how Broadview is used. So, to require more detailed, written answers to those questions will impose an unnecessary burden. *Meltzer/Austin Rest. Corp. v. Benihana Nat. Corp.*, No. 11 C 542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (declining to require a party "to provide an exhaustive list of every individual and the substance of those communications [which] could amount to several pages of text.").

Admittedly, the fact that information could also be sought by way of a deposition is not grounds for refusing to answer an interrogatory. However, that rule applies so long as an answer to the interrogatory can be made without imposing an undue burden on the responsive party. *Brassell v. Turner*, No. 05 C 476, 2006 U.S. Dist. LEXIS 49810, at *4-6 (S.D. Miss. June 28, 2006) citing Fed. R. Civ. P. 26(d) (discovery may occur in any sequence). Here, plaintiffs' interrogatories impose an undue burden on the defendants, as explained above, and the court should not compel defendants to provide answers that will amount to several pages of text. *White Cap., LP v. McSpadden*, No. 23 C 2001, 2024 U.S. Dist. LEXIS 108589, at *10 (N.D. Tex. Jan. 31, 2024) (declining to compel answers to interrogatories that "essentially request a narrative form of information that is more appropriate for depositions"). Relatedly, defendants' objections to interrogatories seeking information about personnel assignments for the spring, and other facilities

7

in the Northern District (Dkt. 146, at 10) should be sustained because that information is not probative of plaintiffs' claims.

### d. Retention Policies

Retention policies do not contain substantive information related to the claims and defenses in this litigation, so plaintiffs' request is beyond the scope of discovery. Courts regularly frown on inquiries into retention policies. *In re Jemsek Clinic, P.A.*, Nos. 06 BK 31766, 06 BK 31986, 2013 WL 3994666, at *7 (Bankr. W.D.N.C. Aug. 2, 2013) (denying motion to compel production of plaintiffs' document-retention policies because they were not relevant to any claims or defenses and rejecting request where defendants' admitted "purpose of these inquiries [was] to attempt to develop the spoliation issue"); *Cunningham v. Standard Fire Ins. Co.*, No. 07 C 2538, 2008 WL 2668301, at *5 (D. Colo. July 1, 2018) (granting defendants' motion for protective order because document-retention practices were irrelevant to the claims); *India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 193 (E.D. Wis. 2006) (denying plaintiff's motion to compel production of defendant's document-retention policy because it was not relevant to a claim or defense). Burden aside, this clearly extends beyond the claims and defenses of any litigation.

It appears plaintiffs target defendants' retention policies as a potential roadmap to *discovery on discovery*. To conjure relevance, plaintiffs argued that "defendants either lost or failed to record video for ten critical days in October" and then supported that assertion with a citation that suggests they have made a threshold showing that defendants likely committed spoliation of evidence. Dkt. 146, at pp. 10-11. The court should not be swayed. There is no spoliation, and plaintiffs know it. As explained more fully below in Section 1(f), technical issues caused the video system at Broadview to stop recording footage, and the issue was discovered by an employee of defendants' contractor, ten days later. This court should join other courts that have consistently held that

8

document-retention policies are not discoverable. For example, in *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 16 C 2734, 2017 WL 4399198, at *8 (N.D. Fla. Sept 29, 2017), the court held that the defendants' document retention policies were not relevant and rejected plaintiffs' request that defendants produce their retention policies so that plaintiffs could seek gaps in the defendants' document production. Also, in *Fish v. Air & Liquid Sys. Corp.*, No. 16 C 496, 2017 WL 697663, at *15 (D. Md. Feb. 21, 2017), the court highlighted that "discovery on discovery" is not an appropriate topic for discovery and numerous courts have disallowed such discovery." This court should reject plaintiffs' attempt to shift focus from the issues to be adjudicated at the preliminary injunction hearing to spurious spoliation claims.

      e.      **Defendants' Discovery Efforts**

Plaintiffs' request for defendants to spell out in detail its efforts to retain, locate, and produce documents is inappropriate and amounts to "discovery on discovery" or "meta-discovery," which courts generally disfavor. *See, e.g.*, *Jensen v. BMW of N.A., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Discovery into another party's discovery process is disfavored.") (citation and quotation omitted); *Freedman v. Weatherford Int'l Ltd.*, No. 12 C 2121, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (explaining that "[i]n certain circumstances where a party makes some showing that a producing party's production has been incomplete, a court may order discover designed to test the sufficiency of that party's discovery efforts in order to capture additional relevant material. However, requests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time consuming discovery process *ad infinitum*.") (citation omitted).

There is no benefit to requiring a detailed description of the defendants' discovery efforts at a time when document production is still ongoing, and the focus is on preparation for a

9

preliminary injunction hearing. *Safety Socket LLC v. Relli Technology, Inc.*, No. 18 C 6670, 2021 U.S. Dist. LEXIS 275001, at *22-23 (N.D. Ill. Feb. 23, 2021). Defendants have produced thousands of pages of documents to the plaintiffs, with many more to come. Therefore, it is not productive to invest the limited time available for searching and producing records responsive to plaintiffs' discovery requests on producing discovery about discovery. Furthermore, defendants recognize their ongoing obligation under Fed. R. Civ. P. 26(e) to supplement their disclosures throughout this litigation. And they take that obligation seriously. Defendants should not be compelled to produce 'discovery about discovery' during the fact discovery period when the focus is on preparation for a preliminary injunction hearing. At this early stage of litigation when the focus is on preparation for a preliminary injunction hearing, plaintiffs cannot show there is an adequate factual basis for inquiry into defendants' discovery response efforts. Mere speculation that there are more records is inadequate. So, the court should decline to authorize discovery on discovery.

      f.      **Video Footage and the Broadview Video System**

As plaintiffs are aware, their allegations of negligence or spoliation of the video footage at Broadview are unfounded. So, their request for records about the system is not probative of their claims. Counsel for plaintiffs have been made aware during various conferrals that an outside contractor manages and maintains, the video system at Broadview. So, information regarding system or network logs or configurations of the video system at Broadview—to the extent they are relevant—are maintained by and can only be produced by those subcontractors. Plaintiffs argue they need this information to investigate why there is a gap in footage from October 20th to the 31st (in the morning) and that the possibility of spoliation warrants an adverse inference. Dkt. 146, at p. 12. That argument fails because during one of the numerous conferrals in this case, an

employee of defendants' contractor explained the gap in footage: the video system did not record any footage from October 20th to 31st (in the morning) due to equipment malfunction or failure. So, plaintiffs' suggestion that information about the video system is necessary because the "circumstances under which this footage was lost or not recorded remain unclear" is simpy false. Dkt. 146, at p. 12. Furthermore, the deposition of that employee is scheduled for January 29, 2026. At that deposition, plaintiffs can inquire about "documents and communications regarding problems with the system, and the identities of people with access to the system." *Id.* It is beyond the scope of discovery for plaintiffs to assume the role of 'quality service inspectors' for the video system at Broadview. Defendants should not be compelled to produce information calculated to show whether the failure to record was due to poor maintenance practices. It is not probative of plaintiffs' claims.

**2.     It Is Unnecessary to Compel Production of Records Defendants Agreed to Produce.**

As plaintiffs admit in their motion, defendants have already produced some records relating to TRO compliance. Dkt. 146, p. 5. However, "plaintiffs do not believe this is anywhere near the full set of responsive records." *Id.* But they don't advance any factual basis for this belief. In any event, defendants continue to gather and review documents and communications, including ESI, relating to TRO compliance. After review, responsive documents will be produced to the plaintiffs and if any privileged documents are identified, defendants will submit a privilege log. So, court intervention is unnecessary. Similarly, defendants intend to produce the litigation hold disseminated to custodians requesting preservation of all information or evidence related to this matter. Again, court intervention is unnecessary because defendants do not need to be compelled to provide this information.

**Conclusion**

For the foregoing reasons, the court should deny plaintiffs' second motion to compel.

    Respectfully submitted

    ANDREW S. BOUTROS
    United States Attorney

    By: s/ Ifeanyi C. Mogbana
       IFEANYI MOGBANA
       JANA L. BRADY
       PATRICK JOHNSON
       Assistant United States Attorneys
       327 S. Church St., Suite 3300
       Rockford, Illinois 61101
       jana.brady@usdoj.gov
       patrick.johnson@usdoj.gov
       ifeanyi.mogbana@usdoj.gov