IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.* ) | |
| Plaintiffs, ) | |
| ) | Case No. 25-cv-13323 |
| v. ) | Hon. Robert W. Gettleman |
| ) | Mag. Judge Laura K. McNally |
| KRISTI NOEM, Secretary of the U.S. ) | |
| Department of Homeland Security, in her ) | |
| official capacity, *et al*. ) | |
| Defendants. ) | |

## PLAINTIFFS' THIRD MOTION TO COMPEL

Defendants in the above-captioned matter have a discovery obligation to produce video footage from ten camera feeds in the Broadview detention facility from September 28, 2025 to the present.[1] Plaintiffs have gone above and beyond their obligations under federal law to streamline rolling production of such footage, purchasing expensive hard drives and agreeing to transport and pick up those drives from Broadview during weekly attorney visits. Defendants agreed to this arrangement. Yet, Defendants have fallen unacceptably short of their production obligations.[2] Defendants have provided *no* footage from five of the ten camera feeds, *i.e.*, the feeds that Plaintiffs, rather than Defendants, selected after having an opportunity to view all available camera angles at the facility. Defendants have also failed to provide footage for a near-two-month span for the

---

[1] This motion presumes the Court's familiarity with the docket and substance of this litigation.
[2] Plaintiffs previously advised the Court that the parties were "making progress working collaboratively on issues relating to video surveillance." ECF No. 134 at 3 n.2. While that was true, and while Defendants' counsel has been responsive to the concerns Plaintiffs outline in the instant motion, Defendants' (and their contractors') failures and excuses regarding making meaningful video productions are no longer tenable.

remaining five camera feeds. What's more, Defendants have purportedly lost multiple hard drives provided by Plaintiffs' counsel. Defendants' dawdling and irresponsible stewardship of the hard drives threaten to prejudice Plaintiffs' ability to review the footage, prepare for the fast-approaching April 21, 2026 hearing, and present their case.

There is no excuse for Defendants' discovery failures. Plaintiffs respectfully request that the Court order Defendants to deliver each day a hard drive to Plaintiffs' counsel containing footage Plaintiffs are owed and to complete production of all outstanding footage by February 16, 2026; to deliver new footage from all ten camera feeds on a weekly basis thereafter; to source and pay for hard drives going forward; and to reimburse Plaintiffs' counsel for the lost equipment.

## BACKGROUND

Based on Requests for Production propounded to Defendants and subsequent agreements reached between the parties as this litigation has unfolded, Defendants are obligated to produce video surveillance footage from ten camera feeds within the Broadview facility for September 28, 2025 to present.[3] To date, Plaintiffs have received footage from only five camera feeds, covering

---

[3] *See* Ex. 1, Plaintiffs' Revised Expedited Discovery Requests, RFP No. 9 (seeking footage for specific dates in September, October, and November); Ex. 2 at 2 (Nov. 17, 2025 email) (identifying five camera feeds to be produced); Ex. 3, Hearing Tr. (Nov. 20, 2025) at 38:15–39:9 (discussion of five camera feeds); Ex. 4, Plaintiffs' Third Set of Expedited Discovery Requests, RFP No. 23 (referencing five original camera feeds); ECF No. 66, Joint Written Status Report on Discovery at 6-7 (memorializing parties' agreement to produce footage for the entirety of September 28 through October 19 and October 31 through November 7); ECF No. 92, Joint Written Status Report on Discovery at 7 (same and reporting Plaintiffs' request for weekly rolling productions); ECF No. 93, Docket Entry (court acknowledging receipt of ECF No. 92 and ordering Defendants "to produce their responsive materials forthwith" subject to the "terms already agreed to by the parties"); Ex. 4, Plaintiffs' Third Set of Expedited Discovery Requests, RFP No. 22 (expanding RFP No. 9 for footage to full period from September 28 – November 7 for camera feeds to be agreed upon by the parties); *Id.*, RFP No. 23 (requesting footage for October 20 through 31 for the same); Ex. 5 at 3-5 (Dec. 16-18, 2025 emails) (parties' agreement for inclusion of production of footage from five additional camera feeds); Ex. 6 at 2 (Jan. 22, 2026 email) (acknowledging need for Defendants to produce November and December footage).

September 28, 2025 through November 7, 2025 (except for October 19-31, 2025) and January 4 through 31, 2026. Those particular feeds were selected by *Defendants* after Plaintiffs made the general request for footage from detention cells and the detainee processing area. Notably, Defendants excluded video from isolation cells despite those cells being a key part of Plaintiffs' complaint. The produced feeds show egregious conditions but were insufficient to provide Plaintiffs the discovery necessary to fully investigate their claims. To that end, in late November, at Plaintiffs' request, Defendants provided one-minute clips of all available camera feeds, after which Plaintiffs identified five additional feeds for production (including the isolation cells). No footage from the latter set of feeds has been produced to date.

In late 2025, counsel for the parties agreed to a system for production of video footage, whereby Plaintiffs' counsel would deliver empty hard drives during their weekly visits to Broadview and pick up hard drives full of footage at the same visits. Ex. 5 at 2. Plaintiffs complied with that agreement. On January 8, 2026, Plaintiffs delivered three 8-terabyte solid state drives and one 18-terabyte hard drive. On January 16, Plaintiffs delivered two more 18-terabyte hard drives. That is a total of 78 terabytes of capacity provided by Plaintiffs, at their expense, to facilitate *the United States Government's* discovery obligations. On January 16, Plaintiffs received only the previous week's footage—and only from Defendants' five handpicked camera angles. The entirety of the footage received on January 16 was on one of the 8-terabyte drives and contained only 150 *giga*bytes of data—*i.e.*, less than 2% of the storage space available on that drive.[4] On January 20,

---

[4] Defendants have suggested in a meet and confer that this agreed exchange system did not contemplate providing *any* footage from September through December, but only required production of footage from the preceding week. This makes no sense, as there was no other agreed means to obtain the months' worth of footage Plaintiffs are owed. If Defendants truly believed Plaintiffs delivered terabytes' worth of storage space with the expectation of receiving only gigabytes' worth of footage for weeks in January, Defendants should have explained what other means—and what schedule—they intended to use to produce the remaining footage.

Plaintiffs' counsel relayed to Defendants' counsel that the January 16 production was disappointing, explained the scope of video production Defendants owe, and relayed that Broadview had sufficient hard drive space provided by Plaintiffs to produce such footage. Ex. 6 at 3-4 (Jan. 20, 2026 at 8:46 p.m. email).

On January 28, Defendants' counsel relayed that Broadview personnel had advised that they were out of storage space on drives provided by Plaintiffs, reporting that all hard drives provided by Plaintiffs had been returned to them. Ex. 7 at 13 (Jan. 28, 2026 at 1:45 p.m. email). This was the first indication that some or all of 70 terabytes' worth of hard drives[5] were unaccounted for. Plaintiffs' counsel promptly corrected the record, explaining that Defendants had significant Plaintiff-provided storage devices, and asked that, to address the slow pace of production, the Government begin delivering footage to Plaintiffs daily rather than rely on Plaintiffs to facilitate the production at weekly visits to Broadview. *Id*. at 12-13 (Jan. 28, 2026 at 2:36 p.m. email). In the days since, the Government has admitted that it cannot find three of the five hard drives that should be in its possession. *See id*. at 6-7 (Jan. 30, 2026 at 10:33 a.m. email).

On January 30, 2026, counsel met and conferred about this issue. Plaintiffs requested the Government find the missing drives and start copying the footage onto the drives they could still locate as soon as possible. To expedite production and reduce prejudice, Plaintiffs re-asked that the Government begin regular delivery of the drives to Plaintiffs' counsel. Defendants' counsel acknowledged that the current system was not working and that he would confer with his client. Plaintiffs' counsel advised that failure to make progress on these issues would warrant seeking Court assistance. On February 3, counsel for Defendants indicated there was no update on finding

---

[5] Plaintiffs have not brought the drives returned to them back to Broadview. The facility has plenty of storage and, to date, has proven itself an untrustworthy steward of Plaintiffs' counsel's property.

the missing drives and provided no schedule for receipt of footage on the remaining drives. Ex. 7 at 6-7 (Feb. 3, 2026 at 10:57 a.m. and 5:20 p.m. emails). On February 4, counsel for Plaintiffs advised that they would seek Court intervention. *Id*. at 3-4 (Feb. 4, 2026 at 10:24 a.m. email).

Later on February 4, Defendants' counsel advised that a hard drive was ready for Plaintiffs to pick up (ignoring the request that the Government begin delivering the drives) that contained footage for three additional weeks in January. *Id*. at 3 (Feb. 4, 2026 at 3:00 p.m. email). There was no word on the September – December footage still owed and no word on the missing drives. Plaintiffs' counsel advised that they would still seek court intervention. On February 5, counsel for Plaintiffs picked up one 8-terabyte drive, which included footage for three weeks (550 gigabytes) in January, but again contained only the original five camera feeds.

As reflected in the chart below, for five of the camera feeds, Plaintiffs are currently waiting on video footage for the *entirety* of September 28 to the present. For the original five camera feeds, Plaintiffs are waiting for footage from early November to January 3.[6]

| Camera Feed | Footage Received<br>(Dates of footage; Date received)[7] | Footage Outstanding[8] |
|---|---|---|
| Men's Detention Cell No. 1 (angle 1) (Camera 18) | 9/28/2025 – 11/7/2025* (Rec'd 11/20/2025; corrected portions rec'd 11/26/2025);<br><br>1/4/2026 – 1/10/2026 (Rec'd 1/16/2026) | 11/7/2025 – 1/3/2026 |
| Women's Detention Cell No. 1 (angle 1) (Camera 21) | 9/28/2025 – 11/7/2025* (Rec'd 11/20/2025);<br><br>1/4/2026 – 1/10/2026 (Rec'd 1/16/2026) | 11/7/2025 – 1/3/2026 |

---

[6] All feeds are to be produced to present, but Plaintiffs understand that footage from the week starting February 1, 2026 would not have been produced yet under the parties' original agreement.
[7] Dates notated with an asterisk indicate that footage from the final date in the range does not cover the full 24 hours; such dates are reflected in the righthand column, as well, to indicate that the missing portion of that date is still outstanding.
[8] Footage from October 19 – October 31 remains outstanding for all cameras, but is subject to the ongoing investigation and discovery regarding why such footage allegedly does not exist. That gap is not reflected in this column, but Plaintiffs do not concede such footage is no longer at issue.

| Men's Detention Cell No. 3 (angle 1) (Camera 33 | 9/28/2025 – 11/8/2025* (Rec'd 11/20/2025); <br><br> 1/4/2026 – 1/10/2026 (Rec'd 1/16/2026 | 11/8/2025 – 1/3/2026 |
|---|---|---|
| Men's Detention Cell No. 2 (angle 3) (Camera 46) | 9/28/2025 – 11/8/2025* (Rec'd 11/20/2025); <br><br> 1/4/2026 – 1/10/2026 (Rec'd 1/16/2026) | 11/8/2025 – 1/3/2026 |
| Processing Room (angle 2) (Camera 62) | 9/28/2025 – 10/18/2025* (Rec'd 11/20/2025); <br> 11/1/2025 – 11/6/2025* (Rec'd 11/20/2025); <br><br> 1/4/2026 – 1/10/2026 (Rec'd 1/16/2026) | 10/18/2025 <br><br> 11/6/2025 – 1/3/2026 |
| Isolation Cell 1 | None | 9/28/2025 – present |
| Isolation Cell 2 | None | 9/28/2025 – present |
| Processing Desk | None | 9/28/2025 – present |
| Men's Detention Cell No. 3 (angle 2) | None | 9/28/2025 – present |
| Men's Detention Cell No. 1 (angle 2) | None | 9/28/2025 – present |

Based on the Government's past productions, Plaintiffs estimate that the missing footage is less than twenty terabytes of data. Plaintiffs have delivered more than enough storage capacity for the Government to promptly provide this footage—even taking into account the three lost drives.

## LEGAL STANDARD

Motions to compel are proper under Federal Rule of Civil Procedure 37(a) where a party either fails to respond to a discovery request or its response is insufficient. And when "the other side does not get all the evidence to which it is entitled, then a remedy must follow to prevent … unfair[] harm[] [to] the opponent." *Colyer v. City of Chicago*, 2016 WL 25710, at *13 (N.D. Ill. Jan. 4, 2016); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 363–64 (N.D. Ill. 2005) (finding defendants' method of document production inadequate under Rule 34).

## ARGUMENT

Court intervention is necessary at this point. Excluding the missing ten days of footage from the purported server crash—which is still under investigation—Plaintiffs are waiting on months of footage. Every day that passes without this evidence compounds the prejudice to

6

Plaintiffs' ability to prepare for the upcoming hearing. Defendants' foot dragging and poor organizational practices—and their instinct to rely on Plaintiffs to take the laboring oar for the purchase, delivery, pickup, and return of storage devices to facilitate *Defendants'* discovery obligations—cannot be permitted to interfere with Plaintiffs' ability to present their case.

The total lack of production of footage from the five additional feeds warrants particular attention. Unlike the original five camera feeds offered by the Government, the additional angles were selected by Plaintiffs—after entry of the TRO—to support further investigation of their claims. Two of them focus on isolation rooms, where Plaintiffs have alleged—but to date have been denied any ability to prove—that Defendants have held multiple detainees for at least a day, despite the rooms being designed to hold one person. Compl. ¶ 73. Such cells are also where ICE holds detainees with acute medical or mental health conditions, including those who have suffered medical emergencies while in detention, and where it holds detainees who have been subjected to use of force by ICE officers while inside the facility. Another missing camera angle focuses on the processing area where detainees are forced or misled into signing "voluntary" departure (and other) forms without the benefit of proper translation services or counsel—and where they are denied the ability to make phone calls to counsel (or anyone else) until *after* they have been forced to waive their due process rights.[9] *Id.* at Count 3. The remaining two feeds show angles of large detention rooms that capture the full scope of unsanitary conditions in those rooms (*id.* ¶¶ 84–88), which were difficult to view from the camera angles of those rooms selected by Defendants.

Defendants do not dispute that they owe Plaintiffs this footage. Indeed, Defense counsel confirmed on February 5 that the Government is "working" to produce footage from all ten camera

---

[9] The angle of the processing area originally provided was from the vantage point of officers; the angle requested by Plaintiffs has a clearer view of detainees as they first arrive in the area.

feeds "for November to present." Ex. 7 at 2 (Feb. 5, 2026 at 12:38 p.m. email). But such assurance is cold comfort as it provides no estimate for the timing of such production, nor does it make reference to the outstanding footage from September and October—the time period when conditions were so horrendous that they warranted a TRO. Both the state of affairs pre-TRO, which could snap back if an injunction is not issued, and Defendants' compliance with the TRO are relevant to whether a preliminary injunction should issue. *See, e.g.*, *Mays v. Dart*, 456 F. Supp. 3d 966, 1008 (N.D. Ill.) (recognizing that cessation of activity in response to a TRO is not necessarily "voluntary" and that a "cognizable danger of recurrent violation" can warrant converting a TRO into a preliminary injunction (citation modified)), *aff'd in part, vacated in part, rev'd in part*, 974 F.3d 810 (7th Cir. 2020); *Teledyne Techs. Inc. v. Shekar*, 2015 WL 13728061, at *3 (N.D. Ill. Mar. 10, 2015) (granting preliminary injunction and concluding "the threat of irreparable harm is significant" where defendant failed to comply with TRO); ECF No. 146 at 4 n.3 (collecting cases). Plaintiffs need time to review the footage and prepare their arguments in favor of a preliminary injunction; Defendants' indefensible pace of production deprives Plaintiffs of their ability to do so.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court order Defendants to deliver a hard drive to Plaintiffs' counsel daily until Defendants are up to date with their production obligations, with all outstanding footage due February 16, 2026; to continue the delivery of new footage on a weekly basis thereafter; to source and pay for any storage devices necessary to facilitate the Court's order; and to reimburse Plaintiffs for Plaintiffs' lost equipment.[10]

---

[10] Plaintiffs reserve the right to seek an award of expenses and attorneys' fees with respect to this motion to compel as well as their prior two motions to compel granted by the Court.

| | |
|---|---|
| Dated: February 6, 2026 | Respectfully submitted, |
| | |
| | */s/ Nathan P. Eimer* |
| | Nathan P. Eimer |
| | Scott C. Solberg |
| | Michael L. McCluggage |
| | James B. Speta |
| | Lisa S. Meyer |
| | Brent R. Austin |
| | Alec Solotorovsky |
| | **EIMER STAHL LLP** |
| | 224 S. Michigan Avenue, Suite 1100 |
| | Chicago, Illinois 60604 |
| | Phone: 312-660-7600 |
| | neimer@eimerstahl.com |
| | ssolberg@eimerstahl.com |
| | mmccluggage@eimerstahl.com |
| | jspeta@eimerstahl.com |
| | lmeyer@eimerstahl.com |
| | baustin@eimerstahl.com |
| | asolotorovsky@eimerstahl.com |
| | |
| | */s/ Alexa Van Brunt* |
| | Alexa Van Brunt |
| | Jonathan Manes |
| | Danielle Berkowsky |
| | Chisato Kimura (license pending) |
| | **MACARTHUR JUSTICE CENTER** |
| | 160 E. Grand Avenue, 6th floor |
| | Chicago, Illinois 60611 |
| | Phone: 312-503-1336 |
| | alexa.vanbrunt@macarthurjustice.org |
| | jonathan.manes@macarthurjustice.org |
| | danielle.berkowsky@macarthurjustice.org |
| | chisato.kimura@macarthurjustice.org |

/s/ Kevin M. Fee
Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2**

Counsel for Plaintiffs and Defendants have held numerous conferrals, including by video conference, regarding production of video footage over the past several months. On January 30, 2026, counsel met by video conference to discuss the pace of video production and issues regarding the hard drives, as described in the motion. The parties exchanged follow-up email correspondence regarding these issues on February 3, 4, and 5, 2026. As of February 4, 2026, Plaintiffs determined that, given Defendants' inability to provide information sufficient to resolve Plaintiffs' concerns about discovery, the parties had reached an impasse that requires Court intervention.

*/s/ Nathan P. Eimer*