UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 25 C 13323 |
| | ) Judge Gettleman |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, *et al.*, | ) Magistrate Judge McNally |
| Defendants. | ) |

**JOINT STATUS REPORT**

The parties, by their undersigned attorneys, hereby submit the following joint status report pursuant to the Court's directive on December 11, 2025, and Order (ECF No. 120) to update the Court of the status of discovery and the relief Plaintiffs will be seeking in the forthcoming motion for a preliminary injunction.

1. **Discovery**

Plaintiffs sought leave to conduct expedited discovery focusing on the upcoming preliminary injunction hearing and plaintiffs' motion was granted. ECF No. 45. Accordingly, Magistrate Judge McNally set a discovery schedule. ECF No. 126. The upcoming deadlines related to the preliminary injunction hearing are as follows:

| | |
|---|---|
| Rule 26(a)(2)(C) summaries | February 13, 2026 |
| Close of fact discovery | March 20, 2026 |
| Affirmative 26(a)(2)(B) disclosures | March 25, 2026 |
| Rebuttal 26(a)(2)(B) disclosures | April 6, 2026 |
| Close of expert discovery | April 13, 2026 |

1

| | |
|---|---|
| Joint status report with witness list, summary of witness testimony, exhibit list, objections to exhibits, and copies of exhibits to the Court | April 1, 2026 |
| Motion for preliminary injunction | April 7, 2026 |

In accordance with this schedule, the parties have each served and responded to written discovery. However, there are on-going disputes, as described in the parties' position statements below.

The parties agreed to 10 three-hour depositions each. If the deposition of a fact witness is requested and that witness is designated as the person with the most knowledge about all of the topics identified on Plaintiffs' Rule 30(b)(6) notice, or if multiple individuals are identified in response to Plaintiffs' Rule 30(b)(6) notice, the parties will meet and confer about the length of depositions. The parties have scheduled nearly all fact witness depositions and served the witnesses. There are currently depositions scheduled for the next four weeks, with a few more still to be scheduled.[1] Plaintiffs also served their 30(b)(6) notice. Defendants are still working on identifying the deponent(s).

*Plaintiffs' Position*

Plaintiffs have been preparing for the preliminary injunction hearing by issuing written discovery, interviewing Class Members and attorney witnesses, taking declarations from those parties, and conducting weekly visits to meet with Class Members at Broadview. However, their preparation has been hampered by Defendants' persistent failure to produce key documentation, including relating to their compliance with the TRO and their future plans for use of the Broadview facility. This discovery is of particular significance given Defendants' promises to return to Chicago in the spring with exponentially increased staffing.

---

[1] Plaintiffs took one deposition of SDDO Ryan Theodore on December 2, 2025, before the TRO was extended. Plaintiffs also deposed a third-party contractor on January 29, 2026, regarding the missing Broadview surveillance footage.

On December 22, 2025, Plaintiffs filed an Amended Motion to Compel production in response to their first through fourth sets of requests for expedited discovery.[2] ECF No. 143. On January 12, 2026, Magistrate Judge McNally granted Plaintiffs' motion to compel A Files (RFP 42); the Government's plans for future use of the Broadview facility (RFP 16); video footage of Defendant Noem's visit to Broadview (RFP 10); and records of informal policies and guidance governing attorney access, conditions, and voluntary departures (RFP 1). Most of these records are due February 16, 2026. Judge McNally also required Defendants to provide the Court with the full unredacted audio of Defendant Noem's visit to Broadview along with an unredacted transcript for in-camera review. *Id.* On February 9, 2026, Defendants produced video footage of Defendant Noem's visit without any audio. Defendants stated there is no audio, despite visible professional microphones and cell phones with audio capabilities in the footage.

Plaintiffs filed their Second Motion to Compel on January 11, 2026, after Defendants, following weeks of delay, refused to search for or produce documents responsive to Plaintiffs' second and third set of expedited discovery requests, and refused to answer most of Plaintiffs' interrogatories. ECF No. 146. On January 23, 2026, Judge McNally granted Plaintiffs' motion to compel information regarding facilities for processing detainees arrested in the NDIL (RFPs 14, 17); data on detainee arrests and detentions (RFP 18); document retention policies (RFPs 29, 40); and video-related records (RFPs 24-39). ECF No. 151. She also required Defendants to provide substantive answers to Plaintiffs' interrogatories (ROGs 2-7). *Id.* The Court instructed Defendants to produce records and responses by February 16, 2026. *Id.* The motion as related to TRO compliance (RFP 15; ROG 1) was denied as moot because Defendants agreed to produce this

---

[2] Plaintiffs served their revised expedited discovery requests (ECF No. 109-1) on November 6, 2025, their second and third sets of expedited discovery requests (ECF No. 109-7) on November 21, 2025, and their fourth set of expedited discovery requests (ECF No. 133) on December 2, 2025.

information. *Id.* However, as of this filing, Defendants have not done so. Plaintiffs have initiated another meet and confer process relating to those outstanding documents.

Plaintiffs filed their Third Motion to Compel on February 6, 2026, regarding video surveillance footage from inside the Broadview facility. The parties had agreed that Defendants will provide surveillance footage from ten specified surveillance cameras. However, Defendants have failed to produce any footage at all from five of those cameras and have failed to produce two months' worth of footage from the other five. As a result, there are large gaps of time for which Plaintiffs do not have any footage and there is a total absence of footage covering certain areas of the facility. In addition, Plaintiffs provided Defendants with five large hard drives to facilitate Defendants' production, yet Defendants inexplicably lost three of them. Given the many hours of surveillance footage at issue, Defendants' delay threatens to prejudice Plaintiffs' ability to review and use the footage at the upcoming preliminary injunction hearing. In their pending motion to compel, Plaintiffs have asked the Court to order Defendants to produce video on a daily basis until the backlog has been remedied (with all footage due by February 16, 2026), and then to deliver video on a weekly basis thereafter.

Defendants have obstructed the discovery process and failed to undertake their most basic discovery responsibilities. As a result of these delays, Plaintiffs have been hindered in their ability to prepare for depositions and expert discovery. Plaintiffs are still missing significant relevant information, particularly related to Class Members' lack of access to counsel, access to adequate medical care, and the coerced waivers of their rights (i.e., voluntary departures). If Defendants comply with the aforementioned court orders, Plaintiffs and their experts will have a significant amount of discovery to review—including months' worth of long overdue video footage and nearly 150 A files—in very short order.

*Defendants' Position*

Defendants have produced more than 2,000 pages of documents and videos contained in more than 400 electronic files in response to plaintiffs' discovery requests and remain on course to make more productions. A number of plaintiffs' untrammeled discovery requests drew relevancy objections that required several sessions of unsuccessful attorney conferral and finally court intervention to resolve. Plaintiffs have not filed a motion for preliminary injunction, and with the fact discovery period divided between preliminary injunction discovery and merits discovery, defendants have faced an uphill battle pushing back at plaintiffs' attempt to expand the scope of evidence appropriate for the preliminary injunction discovery period. For example, plaintiffs have served six separate written discovery requests containing more than 80 requests for production, inclusive of subparts. And a recent theme of those requests has been allegations of use of force, an issue that was not raised in plaintiffs' complaint and/or articulated as within the scope of discovery in their motion for expedited discovery. Considering defendants are also preparing for the same preliminary injunction hearing, plaintiffs' disregard for the preliminary injunction/merits fact discovery divide has caused avoidable burden on the defendants. Defendants' discovery production thus far, and commitment to do more, vigorously disputes plaintiffs' allegation that defendants have obstructed the discovery process. Defendants continue to work towards meeting the court-ordered February 16, 2026, deadline.

2. **Preliminary Injunction Hearing**

*Plaintiffs' Position*

At the status hearing on December 12, 2025, the Court requested that Plaintiffs advise it as to modifications they will seek to make to the TRO (ECF No. 49) and other relief they expect to raise in their motion for preliminary injunction. In light of the disputes detailed above and the

5

substantial outstanding discovery, Plaintiffs are still evaluating the scope of their forthcoming motion. That said, based on information gathered thus far, Plaintiffs generally anticipate seeking additional relief on the following issues:

Language access: Plaintiffs intend to seek additional relief regarding the provision of translated documents and interpretation services, including for illiterate and Deaf/hard of hearing detainees. *See* ECF No. 49 ¶¶ 14-15. Defendants continue to fail to provide adequate translation and interpretation services to Class Members during intake and processing and especially while asking them to sign important immigration documents, including voluntary departure forms. Defendants provide non-English-speaking Class Members documents written in English and neither translate them nor accurately explain their contents in a language they understand. Defendants' officers do not use appropriate interpretation services to communicate with Class Members, despite the fact that they have access to a 24-hour language line.[3]

As a result, Class Members have reported that they do not understand documents they are provided and instructed to sign. Some Class Members do not understand why they are being detained at all. And some Class Members are unable to communicate medical needs to officers. Plaintiffs are continuing to investigate these issues and have pending requests for production on these matters.[4]

Coerced signatures and waivers of rights: Plaintiffs intend to seek additional relief regarding Defendants' methods of obtaining signatures that result in the waiver of Class Members'

---

[3] *See* U.S. Immigration and Customs Enforcement, "ERO Language Access Information," available at https://www.ice.gov/detain/language-access# ("[T]hrough contracts with language services vendors, ICE ERO uses professional oral interpretation and written translation services that cover more than 100 languages, including rare and Indigenous languages. ICE ERO has access to an ICE-wide 24 hours a day, seven days a week language services contract for interpretation (oral) and translation (written).").

[4] Plaintiffs currently have a pending request for production for records related to language access at Broadview, including policies and guidance, documents related to interpretation services and vendors, and records tracking the use of interpretation or translation services.

rights. *See id.* ¶¶ 14-15. In particular, Plaintiffs remain concerned that many of the "voluntary departures" are not in fact knowing and voluntary, especially given the serious language access issues reported by Class Members both before and after entry of the TRO. Plaintiffs have also gathered evidence that some Class Members are pressured or tricked to sign or fingerprint documents they do not understand. Some Class Members have reported that officers provided them false information about their ability to return to the United States lawfully if they sign a voluntary departure. Plaintiffs have also gathered evidence suggesting that Defendants have instructed officers to tell detainees they will receive a stipend for signing a voluntary departure, regardless of whether the detainee is in fact eligible for the stipend. Furthermore, some Class Members report spending weeks or months in detention despite officers telling them that if they sign, they will immediately be sent to their country of origin. Plaintiffs are continuing to investigate these issues.

<u>Lack of access to attorneys</u>: Plaintiffs intend to seek additional relief to ensure Class Members are provided with confidential and private access to attorneys, especially prior to signing documents and making important decisions. *See id.* ¶¶ 10-12. Plaintiffs have gathered evidence that officers continue to deny or ignore Class Members' requests to call attorneys and that attorneys are experiencing difficulties accessing their clients at Broadview. While Defendants set up an unmonitored, private phone to contact attorneys, Class Members are rarely, if ever, given access to this phone, especially not before processing. Class Members are still generally only permitted to make phone calls in the processing area *after* they are processed, in front of officers (with the officers listening in), or using the pay phones in the holding cells, which often do not work. For instance, one Class Member asked to speak to a lawyer before getting fingerprinted or signing any documents, and in response, officers verbally threatened him, used force to take his fingerprints, subjected him to excessive force, and put him in isolation. Plaintiffs have requested phone records

7

to investigate the extent to which Class Members are able to contact counsel from inside Broadview; these are some of the records that remain outstanding from Defendants.

<u>Lack of medical care and access to medication</u>: Plaintiffs intend to seek additional relief to ensure that Class Members have access to necessary medical attention and medication. *See id.* ¶ 9. There do not appear to be any medical staff at Broadview, there is no medical treatment room at Broadview, and Defendants fail to conduct adequate screenings of Class Members to identify chronic or emergent medical and mental health concerns when they arrive at Broadview. Additionally, Class Members are frequently unable to access their prescription medication, including for serious and/or chronic conditions such as diabetes, or to prevent medical emergencies such as seizures, heart attacks, or strokes. Class Members have reported that officers ignore or deny their requests to obtain prescription medications. The negative consequences of these denials are compounded beyond their detention at Broadview as Class Members are shipped to detention facilities around the country. Plaintiffs continue to investigate these issues and have requested updated records of medical emergencies at Broadview, which also remain outstanding.

<u>Officer abuse</u>: There have been multiple incidents of force used against Class Members since the entry of the TRO. Plaintiffs are aware of incidents on December 17, 2025, and January 28, 2026, as they happened to occur on days that class counsel visited Broadview to speak with Class Members. Plaintiffs do not yet know how widespread the issue may be, particularly given the large amount of outstanding surveillance footage.[5] These incidents of excessive force raise grave concerns about the safety of Class Members in Defendants' custody and may require Plaintiffs to seek additional relief beyond the TRO. Plaintiffs will also likely seek to include

---

[5] Plaintiffs have also specifically requested production of surveillance footage of these two incidents.

8

additional relief prohibiting retaliation by the Government against Class Members and witnesses in this matter. Plaintiffs' investigation continues.

Food, water, and hygiene: Class Members have reported not receiving food that meets their religious requirements (e.g., Halal) or medical needs (e.g., diabetic). Furthermore, Class Members have reported—and class counsel have observed—that it is very difficult to get the officers' attention from inside the hold rooms. As a result, Class Members' requests for basic needs such as water and hygiene products are often ignored. Plaintiffs have requested updated food contracts and purchase orders to track these issues more closely; those records are also outstanding from Defendants. Plaintiffs may seek minor modifications to these TRO requirements to ensure Class Members are actually receiving their basic necessities. *See id.* ¶¶ 4, 7, 8.

\* \* \*

While additional monitoring and enforcement mechanisms may be required to ensure Defendants' compliance, Plaintiffs do not anticipate significant modifications to the following TRO requirements:

Sleeping conditions and showers (*id.* ¶¶ 1, 5): In recent months, Class Members have been infrequently staying overnight at Broadview, so sleeping conditions and access to showers are less of a concern currently than they were last year. That said, these issues will immediately resurface in the event of surges in immigration enforcement. Defendants have purchased some mats and bedding, but Plaintiffs have concerns about the cleanliness of the mats and bedding, particularly given the lack of laundry services at the facility. Plaintiffs' outstanding requests for information on future plans for the use of Broadview, updated purchase orders, and video surveillance will provide more information on Defendants' compliance and their ability to maintain constitutional conditions. Plaintiffs will likely not seek to modify these TRO requirements.

9

<u>Clean hold rooms and toilets</u> (*id.* ¶¶ 2, 6): Plaintiffs will likely not seek to modify these TRO requirements, as Class Members still report unsanitary conditions. Plaintiffs have requested updated sanitation records to track these issues more closely. The outstanding video footage will also provide more information on Defendants' compliance.

<u>Clock with date and time</u> (*id.* ¶¶ 3): From their investigation, Plaintiffs believe there are no clocks in the isolation cells, so Plaintiffs will likely not seek to modify this requirement.

*Defendants' Position*

Defendants dispute plaintiffs' allegations of wrongdoing and oppose their request for injunctive relief. A joint status report is simply not the place to litigate these issues.

**3. Motion to Dismiss & Amending Complaint**

At the January 11, 2026 status hearing, the Court asked Plaintiffs if they plan to amend their Complaint in response to Defendants' Motion to Dismiss, Strike, or For a More Definite Statement (ECF No. 142) or to oppose the motion. Plaintiffs intend to oppose Defendants' motion, including to the extent it seeks to strike or dismiss Plaintiffs' Complaint based on its length.

Respectfully, neither the level of detail in the Complaint nor the alleged changes in the Government's use of the Broadview facility since the filing of the Complaint necessitates that Plaintiffs amend their Complaint. As will be fully set out in the Plaintiffs' response to Defendants' motion to dismiss, the allegations in the Complaint are directly relevant to Plaintiffs' claims, and Defendants have failed to meet their burden to demonstrate that the allegations have "no possible relation to the controversy." *Wilkins v. City of Chicago*, 736 F. Supp. 3d 616, 626 (N.D. Ill. 2024) (denying motion to strike allegations in class action complaint because "the movant bears the burden to that the challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial" (citing *Vakharia v. Little Co. of Mary*

10

*Hosp. & Health Care Centers*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998)). Moreover, answering the Complaint places no undue burden on Defendants, who can simply answer, consistent with Federal Rule of Civil Procedure 8(b)(5), that they do not have sufficient knowledge to respond, which serves as a denial.

Likewise, any changes in the Government's use of Broadview were the direct result of this Court's TRO and neither alter Plaintiffs' claims nor warrant amending the Complaint. *See United States v. Raymond*, 228 F.3d 804, 814 (7th Cir. 2000) (cessation of wrongful conduct does "not lead inevitably to the conclusion that an injunction is unnecessary"). This is particularly true here, as Defendants have publicly promised that they intend to return in force to the Chicago area.

**4. Settlement**

*Plaintiffs' Position*

Plaintiffs are willing to engage in efforts to resolve parts or all of the pending preliminary injunction through a negotiated settlement. Plaintiffs have reached out to Defendants' counsel about the possibility of such resolution.

*Defendants' Position*

Defense counsel has not received a specific settlement demand, so it is difficult to know whether an amicable resolution is possible.

The parties will report to the Court on the status of negotiations.

Dated: February 9, 2026

Respectfully submitted,

*Counsel for Plaintiffs*

/s/ Danielle Berkowsky
Alexa Van Brunt                                    /s/ Nathan P. Eimer
Jonathan Manes                                     Nathan P. Eimer
Danielle Berkowsky                                 Scott C. Solberg

11

Chisato Kimura
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org


*/s/ Kevin M. Fee*
Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
Alec Solotorovsky
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
asolotorovsky@eimerstahl.com


*Counsel for Defendants*

ANDREW S. BOUTROS
United States Attorney

By: */s/* Jana L. Brady
JANA L. BRADY
PATRICK JOHNSON
IFEANYI MOGBANA
Assistant United States Attorneys
327 S. Church St., Suite 3300
Rockford, Illinois 61101
jana.brady@usdoj.gov
patrick.johnson@usdoj.gov
ifeanyi.mogbana@usdoj.gov