IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| PABLO MORENO GONZALEZ, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KRISTI NOEM, Secretary of the U.S. ) <br> Department of Homeland Security, in her ) <br> official capacity, *et al*. ) <br> ) <br> Defendants. ) | Case No. 25-cv-13323 <br> Hon. Robert W. Gettleman <br> Mag. Judge Laura K. McNally |

**PLAINTIFFS' MOTION FOR ENTRY OF ORDER GOVERNING
PROTOCOL FOR DISCOVERY OF DOCUMENTS AND
<u>ELECTRONICALLY STORED INFORMATION</u>**

Defendants continue to impede discovery in this case. After weeks of negotiating an ESI Order—as this Court encouraged the parties to do—and coming to near agreement, Defendants proposed belated, poison pill revisions, and when asked to reconsider and agree to the terms about which they had previously expressed no concern, they walked away, insisting that the only acceptable ESI Order is this Court's model order. The result is yet more delay. Prior to Defendants' unilateral abandonment of the parties' attempt to finalize the ESI terms, the only remaining disputes about the ESI Order's language were unreasonable requested deletions by Defendants that would allow them (1) to destroy and/or not produce plainly relevant materials and (2) to turn over a privilege log during or *after* the preliminary injunction hearing. Accordingly, Plaintiffs respectfully request that the Court enter the proposed ESI Order (attached hereto as Exhibit 1) that was virtually agreed to by the parties before Defendants reversed course.

**Background**

On January 12, counsel for Plaintiffs advised this Court that they would meet and confer with Defendants regarding an ESI Order, and this Court recommended to "get that rolling as soon as you can." Ex. 2, Hearing Tr. (Jan. 12, 2026) at 45:3-13. Using this Court's model ESI Order[1] as a base, Plaintiffs made material additions to the model order after consulting e-discovery professionals and other ESI Orders entered in this District, with the goal of ensuring that all potentially relevant material would be subject to preservation and production. On January 21, 2026, Plaintiffs' sent their proposed ESI Order to Defendants, requesting feedback and offering to set up a phone call to discuss its contents. Ex. 3 at 2 (Jan. 21, 2026 at 11:11 a.m. email); Ex. 3a (Pls' Proposed ESI Order). Counsel for Defendants responded that they would "take a look." Ex. 3 at 2 (Jan. 21, 2026 at 11:15 a.m. email). Plaintiffs' counsel prodded Defendants on January 27 and January 28, reminding them about the draft Order and again offering to meet and confer to talk through the terms. Ex. 4 at 3 (Jan. 27, 2026 at 4:32 p.m. email); *Id*. at 2 (Jan. 28, 2026 at 2:38 p.m. email). On February 3, Defendants' counsel relayed that his client had just three requested changes to the proposed order. Ex. 5 at 10-11 (Feb. 3, 2026 at 5:20 p.m. email). On February 4, Plaintiffs' counsel agreed to fully address two of the Government's requests and offered a counterproposal for the third. *Id*. at 6 (Feb. 4, 2026 at 4:08 p.m. email). In particular, the Government had requested that the ESI Order provide parties with 14 days, rather than 2 days, to prepare privilege logs after productions. Plaintiffs agreed, subject to a provision that all privilege logs should be served by 7 days before the exhibit disclosure deadline for the preliminary injunction hearing. *Id*. Plaintiffs

---

[1] Model Stipulated Order for Discovery of Electronically Stored Information for Standard Litigation, Northern District of Illinois, Magistrate Judge Laura K. McNally, available at https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/McNally/Model%20ESI%20Order.pdf.

provided a redlined version of the updated ESI Order and stated that, if Defendants signed off, Plaintiffs would work on filing the agreed Order with the Court. *Id*.; Ex. 5a (Redline sent on Feb. 4 illustrating proposed changes discussed in Feb. 3 and Feb. 4 emails). Later that day, Defendants altered one of their initial requests, which had been mis-relayed initially due to a scrivener's error. Ex. 5 at 5 (Feb. 4, 2026 at 4:18 p.m. email). On February 5, Plaintiffs agreed to the *revised* request, as well, and sent an updated final redline for approval. Ex. 5 at 5 (Feb. 5, 2026 at 4:07 p.m. email); Ex. 5b (Updated redline illustrating agreed changes).

On February 9, Defendants' counsel stated that he was "still waiting for the client's sign-off on the final version of the ESI order" Plaintiffs had sent. Ex. 5 at 4 (Feb. 9, 2026 at 9:38 a.m. email). Later that day, Defendants' counsel sent a further revised draft of the ESI Order with several additional—and problematic—proposed revisions. *Id*. at 3-4 (Feb. 9, 2026 at 12:37 p.m. email); Ex. 5c (Redline sent on Feb. 9 illustrating further revisions from Defendant). In particular, Defendants (1) requested material narrowing of the Definitions of materials that must be preserved and produced and (2) sought to eliminate any deadline for privilege logs, potentially setting privilege logs for productions made close in time to the upcoming hearing to be due *after* the hearing concludes. Plaintiffs' counsel promptly responded, explaining "[i]t is ... inappropriate for [Defendants] to propose a new round of changes to the ESI Order after already relaying their proposed adjustments on February 3 that were presented as the only issues requiring resolution before agreement." Ex. 5 at 2-3 (Feb. 9, 2026 at 3:17 p.m. email). Plaintiffs' counsel also explained why the new proposals from Defendants were unacceptable on the merits. On February 11, Defendants expressed that they were no longer willing to discuss the proposed ESI Order that the parties had spent weeks negotiating and that Defendants had all but agreed to save for last minute requested changes. Defendants now take the position that only the model order is acceptable. Ex.

3

6 at 2 (Feb. 11, 2026 at 1:53 p.m. email). Counsel for the parties met and conferred by video on February 11, at which time Defendants confirmed that the parties were at an impasse.

## Legal Standard

ESI protocols ensure compliance with Rule 26(g)'s requirement of complete and correct disclosure of discoverable information. *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 492 (N.D. Ill. 2018). Courts enter ESI Orders to facilitate the production of ESI and ensure ESI is preserved. *See, e.g.*, *In re Local TV Advertising Antitrust Litig.*, 2025 WL 681193, at *9 (N.D. Ill. Feb. 21, 2025) (noting entry of ESI Order); *Green v. Meeks*, No. 20-cv-00463-SPM, 2021 WL 3631264, at *1 (S.D. Ill. July 14, 2021) (same).

## Argument

The parties are at an impasse on only two narrow issues: the Definitions and the privilege log deadline.[2]

***Definitions.*** Defendants' changes to the proposed ESI Order's Definitions section are unacceptable. Defendants' proposed revisions are reflected below:

---

[2] Plaintiffs understand that the parties are in agreement as to the remainder of the proposed ESI Order.

**Definitions.**

1. "Bates Number" means a unique number affixed to each page of a document produced in the above-captioned action.

2. "Custodian" means the person who has custody and control of a Document, as defined herein.

3. "Database system" means any system that is accessible consisting of a group of integrated files, which is stored in one location or distributed across multiple locations in a network, and made available to several users, and consisting of a tabulation of corresponding information which can be searched, organized, classified, and accessed in multiple ways. "Database System" includes both corporate systems as well as personal computers and personal electronic devices where ESI, as defined herein, could be stored.

4. "Document(s)" means any writing or recording as broadly defined in Federal Rule of Civil Procedure 34(a)(1) and includes without limitation: (a) all writings of whatever type, nature, or description, whether typed, ~~handwritten~~, printed, computer-readable, or otherwise, including, without limitation, correspondence, memoranda, ~~notes~~, ~~worksheets~~, work papers, ~~diaries~~, letters, telegrams, telefaxes and facsimiles, contracts, bids, quotations, and proposals, ~~checks~~, statements, invoices, receipts, returns, notations of any sort of conversations, telephone calls, meetings or other communications, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise (including all other forms of drafts, alterations, modifications, changes, or amendments); and (b) tape or other sound or video recordings, computer tapes, discs, photographs, charts, ~~presentations~~, and other electronic or mechanical recordings, however produced or reproduced. A draft is a separate Document from the final text and each non-identical copy is a separate Document.

5. "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to e-mail, word processing files (e.g., Microsoft Word), ~~computer presentations (e.g., PowerPoint)~~, and spreadsheets (e.g., Excel).

6. "Electronically Stored Information" ("ESI") means information that is stored in an electronic medium (including storage in a Database System as defined herein) and includes Electronic Documents and Metadata as defined herein. ~~This includes, but is not limited to, data generated or maintained outside the United States; electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, and Android devices); voicemail, including Telephone or VOIP voice messages; text messages and instant messages; social media files; and collaboration files (e.g., Slack and Teams).~~

*See* Ex. 5c (Redline sent on Feb. 9 illustrating further revisions from Defendant), at 1-2. Defendants' proposed constrictions of the definition of "Document" threaten to exclude relevant, important materials for Plaintiffs to prove their case. In particular, Defendants seek to eliminate their retention and production obligations for all notes, worksheets, diaries, checks, presentations, and handwritten documents of any type (including, presumably, those scanned in to electronic media)—all of which are typically discoverable materials. *See* Fed. R. Civ. P. 34(a)(1)(A)

(requiring production of designated documents or ESI "stored in any medium"). "Notes" is a general term that could be interpreted by Defendants to include any number of relevant documents (typed or handwritten) about conditions and practices at Broadview. Deleting "worksheets" could reach intake forms or other government forms used at Broadview that bear on the claims in this case; deleting "diaries" could immunize the Government from producing individuals' calendars or other records of events taking place on site; excluding "presentations"—an extremely common mechanism for relaying information in any organization—could deprive Plaintiffs of, among other things, policies and training materials (*see* Pls.' RFP Nos. 1, 19, 44, 48, 53), which are possibly, if not *likely*, relayed in PowerPoint presentations; refusing to produce "checks" could deprive Plaintiffs of discovery relevant to Defendants' relationships with its video contractors and its compliance with the TRO's directives to supply certain materials to detainees. And excluding all handwritten documents would leave a significant gap in discovery. For example, attorney call logs and visitor logs (RFP No. 2) are handwritten, and A Files and T Files (RFP Nos. 5, 12, 42) contain important handwritten material. Plaintiffs have no way of knowing whether decision-makers at Broadview typically handwrite other notes or other materials, as well. That some of the categories of materials Defendants seek to strike from the definition of Documents would initially be created in paper, rather than electronic, form is no answer. Paper files may well have been scanned and/or saved electronically, and indeed may have been discarded afterward. Each of these categories of materials should be included in the ESI Order so that the Government is under a court order to preserve and produce relevant materials.

  Defendants also wish to revise the definition of "Electronic Document" to exclude all computer presentations (expressly including PowerPoints), which, are unquestionably ESI and, again, may store policy directives or other relevant information. Further, Defendants propose

6

striking an illustrative list of types of ESI from the definition, suggesting they have no obligation to store and produce electronic data sent from mobile devices, voicemail, text messages and instant messages, social media files, and collaboration files. Clearly material on mobile phones is relevant to this case and should be preserved and produced.

***Privilege Logs.***  Defendants have proposed to strike a line requiring production of privilege logs for documents produced within 21 days of the upcoming hearing with sufficient time for the opposing party to review and, potentially object, to the withholding of material based on privilege. The parties—especially the Government—are required to provide rolling productions with continual updating. If Defendants withhold documents until the eve of the hearing and do not have to produce a privilege log for fourteen days thereafter, Plaintiffs will be prejudiced. Plaintiffs offered a reasonable compromise that gives the parties more time to prepare privilege logs, but it is not appropriate to ignore the realities of the calendar and thus expose Plaintiffs to the foreseeable risk of a privilege log that comes too late to be subject to objection and court resolution.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the attached proposed ESI Order (Exhibit 1). This proposed order addresses the issues Defendants first raised in response to Plaintiffs' draft. Plaintiffs further request all parties be required to produce privilege logs with reasonable time to review prior to the April hearing.

Dated: February 12, 2026　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Nathan P. Eimer*

　　　　　　　　　　　　　　　　　　　　　　Nathan P. Eimer
　　　　　　　　　　　　　　　　　　　　　　Scott C. Solberg
　　　　　　　　　　　　　　　　　　　　　　Michael L. McCluggage
　　　　　　　　　　　　　　　　　　　　　　James B. Speta
　　　　　　　　　　　　　　　　　　　　　　Lisa S. Meyer

Brent R. Austin
Alec Solotorovsky
Gregory M. Schweizer
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
asolotorovsky@eimerstahl.com
gschweizer@eimerstahl.com


*/s/ Alexa Van Brunt*

Alexa Van Brunt
Jonathan Manes
Danielle Berkowsky
Chisato Kimura (license pending)
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org


*/s/ Kevin M. Fee*

Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark
Kathleen Hickey

8

**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2

Counsel for both parties repeatedly conferred over email regarding the proposed ESI Order starting on January 21, 2026. On February 11, 2026, counsel met by video conference to discuss Defendants' objections to the proposed ESI Order. At that videoconference the parties reached an impasse that requires Court intervention.

*/s/ Nathan P. Eimer*
