# Exhibit 1

**(Proposed ESI Order transmitted to Defendants on Feb. 5, 2026, with redlines accepted)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| PABLO MORENO GONZALEZ, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KRISTI NOEM, Secretary of the U.S. ) <br> Department of Homeland Security, in her ) <br> official capacity, *et al*. ) <br> ) <br> Defendants. ) | Case No. 25-cv-13323 <br> Hon. Robert W. Gettleman <br> Mag. Judge Laura K. McNally |

**[PROPOSED] JOINT STIPULATED ORDER GOVERNING PROTOCOL FOR DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

This Joint Stipulated Order Governing Protocol for Discovery of Documents and Electronically Stored Information (the "Stipulation" or "Protocol") will govern the discovery, collection, and production of documents, including electronically stored information ("ESI") in response to discovery requests ("Discoverable Information") in the above-captioned action. This Stipulation also will govern the inadvertent disclosure of privileged information under Federal Rule of Evidence 502.

**Definitions.**

1. "Bates Number" means a unique number affixed to each page of a document produced in the above-captioned action.

2. "Custodian" means the person who has custody and control of a Document, as defined herein.

3. "Database system" means any system that is accessible consisting of a group of integrated files, which is stored in one location or distributed across multiple locations in a network, and made available to several users, and consisting of a tabulation of corresponding information which can be searched, organized, classified, and accessed in multiple ways. "Database System" includes both corporate systems as well as personal computers and personal electronic devices where ESI, as defined herein, could be stored.

4. "Document(s)" means any writing or recording as broadly defined in Federal Rule of Civil Procedure 34(a)(1) and includes without limitation: (a) all writings of whatever type, nature, or description, whether typed, handwritten, printed, computer-readable, or otherwise, including, without limitation, correspondence, memoranda, notes, worksheets, work papers, diaries, letters, telegrams, telefaxes and facsimiles, contracts, bids,

1

quotations, and proposals, checks, statements, invoices, receipts, returns, notations of any sort of conversations, telephone calls, meetings or other communications, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise (including all other forms of drafts, alterations, modifications, changes, or amendments); and (b) tape or other sound or video recordings, computer tapes, discs, photographs, charts, presentations, and other electronic or mechanical recordings, however produced or reproduced. A draft is a separate Document from the final text and each non-identical copy is a separate Document.

5. "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to e-mail, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint), and spreadsheets (e.g., Excel).

6. "Electronically Stored Information" ("ESI") means information that is stored in an electronic medium (including storage in a Database System as defined herein) and includes Electronic Documents and Metadata as defined herein. This includes, but is not limited to, data generated or maintained outside the United States; electronic data (*e.g.*, call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (*e.g.*, iPhone, iPad, and Android devices); voicemail, including Telephone or VOIP voice messages; text messages and instant messages; social media files; and collaboration files (*e.g.*, Slack and Teams).

7. "Hard-Copy Document" means Documents existing in paper or other tangible form at the time of collection.

8. "Metadata" means corresponding data about an Electronic Document that resides in the unviewed area of an Electronic Document and is not seen when such a Document is printed.

9. "Native Format" means the format in which an Electronic Document was created and used (also referred to in terms of "Native Production").

10. "Producing Party" means any Party that produces Documents under this Stipulation.

11. "Receiving Party" means any Party that requests or receives Documents under this Stipulation.

12. "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

1. **PURPOSE**

This Stipulation will govern the discovery, collection, and production of documents, including ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Illinois and any other applicable orders and rules. The Parties enter this Protocol without waiving any objections that they may raise in response to discovery requests.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **ESI LIAISON**

The parties have identified liaisons to each other (in-house or retained) who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

4. **PRESERVATION**

All parties and counsel are responsible for taking reasonable steps to preserve unique ESI that is within their respective possession, custody, or control, and that is discoverable under Federal Rule of Civil Procedure 26(b)(1). All Parties' preservation efforts shall be sufficient to preserve any metadata that the parties agree to produce.

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a. Within 7 days of this Order being entered, the parties will exchange lists of the types of ESI they believe should be preserved and the names of the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The list is not attached to this Stipulation but shall be retained by the parties separately. The parties shall add or remove custodians as reasonably necessary. Any ESI agreed to be produced as part of meet and confer conversations, court orders, and existing discovery requests that are inadvertently omitted from the ESI list described in this paragraph shall also be preserved.

b. To the extent a Party takes the position that any of the following data sources are not reasonably accessible because of undue burden or cost pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), that Party will meet and confer with the other Party and if the Parties cannot reach agreement after a good faith effort to resolve the dispute, the Parties may make an application to the Court in accordance with the Court's Rules to seek a ruling. Regardless of the outcome of such meet and confer and/or court resolution, ESI from these sources will be preserved even if not searched, reviewed, or produced. For the avoidance of doubt, any data agreed to be produced prior to the execution date of this Agreement, or ordered by the Court regarding the same, is exempt from this paragraph.

   1) Data stored in a backup system for the purpose of system recovery or information recovery if it is substantially duplicative of data that is more accessible elsewhere, including but not limited to: disaster recovery backup

      tapes and media; continuity of operations systems; ad data or system mirrors or shadows.

2) Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business.

3) Data stored in Random Access Memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

4) Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

5) Data stored on printers, photocopiers, scanners, and fax machines.

6) Data stored as server, system, or network logs that are primarily used for maintenance, network analysis, or debugging purposes.

Notwithstanding this general agreement, a Party may request that the other party attempt to retrieve a particular Electronic Document(s) that otherwise falls within one of the categories (d)(1) through (d)(6) above. If the Parties are unable to reach agreement with respect to such dispute, a Party may make an application to the Court in accordance with the Court's Rules to seek a ruling.

5. **COLLECTION**

      The Parties agree that they will collect ESI in a manner that enables them to satisfy the production requirements. The Parties agree that:

a. The Parties must ensure that the collection protocol preserves any metadata the Parties agree to produce and familial relationships that the Parties must maintain for embedded files or emails with attachments.
b. All data must be processed using a single time zone. To the extent reasonably practicable, the Parties agree to produce their ESI standardized to Central Standard Time (UTC-6:00) Central Time (US & Canada).
c. A Party will apprise the other Party about the method(s) they use to collect data. To the extent that a Party disputes the methods used by another Party, the Parties will meet and confer, and if the Parties cannot reach agreement after a good faith effort to resolve the dispute, the Parties may make an application to the Court in accordance with the Courts Rules to seek a ruling as to the method of collection.

6. **SEARCH**

      The Parties agree that in responding to an initial Federal Rule of Civil Procedure 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production and filter out ESI that is not subject to discovery. The Parties agree that:

a. The Parties will exchange keyword search terms, Boolean connectors, and/or concept search criteria if that method is used.

b. Notwithstanding the foregoing, if either Party determines there are Database Systems or other non-custodial sources of Documents that contain responsive information to which search terms cannot be applied, the Parties will confer to determine an appropriate search protocol for those Database Systems or locations.

c. The scope of the Parties' ESI search and collection as set forth herein in no way diminishes the Parties' obligation under the Federal Rules of Civil Procedure to search for and produce non-privileged, responsive Documents in their custody and control, unless otherwise agreed upon by the Parties or ordered by the Court.

d. Use of the search methodology described in the Stipulation does not relieve a Party of its obligations to conduct a reasonable search and produce all non-privileged discoverable Documents of which it is aware, whether or not those Documents are in the custody of an agreed custodian or are returned by agreed search filters.

**7. PRODUCTION FORMATS**

All hard copy Documents and ESI shall be produced in accordance with the specifications attached hereto as Exhibit A unless the parties agree otherwise, in writing, either generally or as to any specific production.

**8. PRIVILEGE LOG**

Within fourteen days after each Document production, the Producing Party must serve a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5) and the individual procedures of Judge McNally (or any other judge assigned to oversee discovery in this case) identifying responsive Documents withheld or redacted from the production based on attorney-client privilege, attorney work product, and/or other applicable privilege. The privilege log shall, in general, identify for each withheld or redacted Document based on privilege: (1) the Bates or Privilege ID number; (2) the name and capacity of each individual from whom or to whom a document and any attachments were sent (including the author and all cc or bcc recipients and, if relevant to the claimed privilege, which persons are lawyers/doctors/clergy members/spouses, etc.); (3) the date of the document and any attachments; (4) the type of document (e.g. memo, email, chart, etc.); (5) the nature of the privilege asserted; and (6) a description of the subject matter of the information contained in the document in sufficient detail to determine the applicability of the privilege. If, because of the nature of the privileged information or to preserve the asserted privilege, a Party is unable to provide a privilege log that includes all of these details for certain withheld or redacted Document(s), the Party must nevertheless produce a privilege log for such Document(s) that satisfies the requirements of Rule 26(b)(5) and the Court's individual procedures. If a Party challenges an entry on a privilege log or believes that an entry requires additional information, the Parties shall confer and try to reach a mutually agreeable solution. If they cannot agree after good faith attempt to resolve the dispute, the matter may be brought to the Court by Any Party.

5

If any Documents are produced 21 days or less from the deadline for exhibit disclosures, any associated privilege log will be served no later than 7 days before such deadline.

**9. DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work-product- protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceedings:

a. The production of privileged or work-product protected Documents, ESI, or information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding where the conditions of Rule 502(b) are satisfied. This Stipulation shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502 and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S.C. § 1738. In the event of any subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

b. Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of Documents, ESI, or information for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

c. The reasonableness requirement of Rule 502(b) is "presumed satisfied."

d. If a Party or third party determines that it inadvertently or mistakenly produced information subject to a claim of immunity or privilege, it must provide the Receiving Party with written notice identifying the information or material and the basis for the immunity or privilege. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. Moreover, any notes or summaries referring or relating to any such inadvertently or mistakenly produced information subject to claim of immunity or privilege shall be destroyed, except to the extent they are contained in work product created by counsel for the Receiving Party prior to the written request for return or destruction in which case such privileged or protected information shall not be used or disclosed. The Producing Party must preserve the information at issue until the claim is resolved.

**10. DISPUTE RESOLUTION**

If the Parties are unable to reach agreement following reasonable efforts to meet and confer, or if a Party fails to meet and confer promptly or in good faith, a Party may file a motion to resolve any disputes that arise under this Protocol, including disputes regarding custodians, non-custodial sources, collection, and search methods.

6

**11. MODIFICATION**

  The Parties may agree to modify or waive the terms of this Stipulation in writing signed by counsel for the Parties. Such modification or waiver by the Parties shall be effective without the need for a motion to modify this Stipulation. If either Party asserts that a modification or waiver of any term of this Stipulation is needed and the Parties cannot reach an agreement on such modification or waiver, either Party may file a motion seeking a modification of this Stipulation. The Court shall have the power to enter an Order modifying or waiving any portion of this Stipulation.

SO STIPULATED, through Counsel of Record.


/s _____

  Counsel for Plaintiffs


/s_____

  Counsel for Defendants


ENTERED: [date]

_____

Magistrate Judge Laura K. McNally

# EXHIBIT A

# PRODUCTION FORMAT SPECIFICATIONS

**PRODUCTION FORMATS**

1. **TIFF/ Native File Format Production.** The parties agree to produce documents as Group IV, 300 DPI, single page TIFF images with document-level extracted text files or OCR text files (for redacted records) and a standard delimited .DAT file containing document-level text files and the agreed upon metadata fields. The parties agree not to degrade the searchability of documents as part of the document production process.

    a. ESI will be processed and produced so as to preserve the date/time showing in the document as it was "last saved" or "last modified" in the ordinary course of the Producing Party's business, not the date of collection or processing.

    b. If a color document is produced in black-and-white image format, the Receiving Party may request the Producing Party re-produce the document with its color pages in single page, 300 DPI JPEG color image format, along with an appropriate image overlay load file. The Parties agree that they shall not unreasonably withhold production of any document in JPEG format where color is needed for interpretation of that document, to the extent the source document is reasonably accessible. Additionally, the Parties agree to produce, in the first instance, the original color images of all advertisements to the extent that the source document is reasonably accessible.

    c. ESI that is difficult or impracticable to render in TIFF, such as video or audio files, may be produced in its native form with a placeholder TIFF image stating "Document Produced Natively."

    d. ESI maintained in spreadsheets or other tabular data formats (e.g., Lotus; Microsoft Excel; Comma-Separated Values) need only to be produced in native format, with a placeholder TIFF image bearing the beginning Bates Number and stating "Document Produced Natively." Native files should be produced within incrementally named "NATIVE" directories, separate from image directories.

    e. ESI maintained in presentation formats (*e.g.,* Microsoft PowerPoint) shall be produced in image format and in its native form.

    f. A Producing Party retains the option to produce ESI in alternative formats, which may include native format or a combination of native and alternate formats if it would be burdensome to produce a particular file in TIFF, subject to the agreement of the Requesting Party.

    g. The parties reserve the right to request native files for any produced document.

2. **Document Text.** For documents that were originally created and stored as electronic files and which do not have redactions, where reasonably available, the Producing Party will produce the extracted full text (not OCR) from the body of each document in individual document-level TXT files. OCR text will be provided for documents without available extracted text (*e.g.,* non-searchable PDFs). Image cross-reference files will also be produced whether the text is extracted or OCR. For documents that were originally stored as electronic files and which have redactions, the OCR text from the redacted image(s) associated with each document will be produced, in individual document-level TXT files. "TEXT" folder directories will group document text files separately from image directories. The file name of each document-level TXT file should match the beginning Bates number of the document's produced image or placeholder image (*e.g.*, "BATES0000001.TXT").

3. **Database Production.** Discoverable Information that is stored in a database (*e.g.,* structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business (*e.g.,* Microsoft Excel spreadsheet). Upon review of the report(s), the Requesting Party may, on a showing of particularized need, request from the Producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable. In the event of such a request, the Producing Party will determine the most reasonable means to provide the relevant and proportional information requested.

4. **Numbering/Endorsement.** All produced Discoverable Information will have a unique Control Identification Number or bates number assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique identifier. For Discoverable Information produced in TIFF/JPEG image format and any produced TIFF image placeholders, each TIFF/JPEG image will have a legible, unique page identifier electronically endorsed onto the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should use a consistent format for the Bates Numbers it uses across its productions. Separate folders will not be created for each document.

    a. In the case of materials designated under any Confidentiality Order governing the production of confidential materials in this Action, documents and ESI should be marked in accordance with the Confidentiality Order.
    b. The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

5. **Scanned Documents & Hard Copies.** The Parties agree that paper documents that contain Discoverable Information may be scanned and produced in an imaged format as set forth in number 1. In order to promote efficiency and reduce costs, the Parties further agree that the default production method for hard copy materials in this Action is scanning and production of electronic copies of hard copy records. The Parties shall meet and confer

9

should circumstances arise that reasonably constitute good cause to deviate from this default method.

   a. When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.,* the Parties shall attempt to logically unitize scanned hard copy documents.)
   b. All pages now stapled or fastened together shall be scanned with all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive.
   c. The Producing Party agrees to produce every copy of a document on which there appears to be a notation or marking of any sort not appearing on any other copy or any copy containing different attachments from any other copy.

6. **Native Files.** The Parties agree that any Discoverable Information may be produced in the imaged format set forth in number 1. Subsequent to the production of image formats, however, the Requesting Party may within a reasonable time and upon a showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

   a. The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format. The Requesting Party shall also provide the reasons for the request.
   b. The Producing Party shall either produce the native files, or object to the demand for any particular file as unreasonable as follows:

      1) The Producing Party will respond in writing within ten (10) calendar days, setting forth its objection(s) to the production of the requested native format files.
      2) If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed by the parties.
      3) The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court.

7. **Password-Protected or Encrypted Files.** To the extent practical, the Producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching, and shall produce passwords for any password-protected natives files produced to the extent the passwords are reasonably available. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain inaccessible even though such reasonable efforts have been made, the Producing Party shall let the Receiving Party know the total number of such documents and shall meet and confer with the Receiving Party in an effort to resolve the issue.

8. **Production Media.** The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including: CD-ROM; DVD; or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

9. **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business shall be preserved. For example, each responsive e-mail shall be produced with all attachments regardless of whether each attachment independently contains any of the searched terms. Attachments shall be processed in order behind the email. If a responsive document is part of a family that contains both discoverable and wholly privileged documents, the entire family shall be produced with all parent-child relationships preserved, substituting placeholder TIFF images stating "Withheld as Privileged" for the privileged documents and withholding any metadata or searchable text necessary to protect privileged information.

10. **Hidden Text.** ESI items shall be processed, to the extent practicable, in a matter that preserves hidden columns or rows, hidden text, or worksheets, speaker notes, tracked changes and comments. Produced document images shall display speaker notes, tracked changes and comments unless legibility would be impaired, in which case the document shall be produced natively.

11. **Dynamic Fields and Auto-Updating Content.** Documents containing dynamic, calculated, or auto-updating fields (including but not limited to date fields, time fields, file path fields, document properties, cross-references, tables of contents, formulas, and hyperlinks) shall be processed and produced in a manner that reflects the content of such fields as stored in the document in the ordinary course of business at the time the document was last saved, and not as automatically updated during collection, processing, or production. To the extent dynamic fields cannot be reliably frozen or rendered in a static image without updating, the Producing Party may produce such documents in native format. Nothing in this Paragraph requires a Producing Party to recalculate, refresh, or otherwise alter dynamic fields beyond ordinary processing steps.

12. **Compressed Files.** Compression file types (i.e., .CAB, .GZ., .TAR, .z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

13. **Notes and Attachments.** If any original document has notes or attachments affixed thereto, the Parties will produce copies of those documents with the accompanying notes and attachments.

14. **Metadata.** The Parties agree to undertake reasonable and best efforts to produce a load file containing at least each of the metadata fields set forth below:

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Text | Starting Bates# | Starting Bates# | Starting Bates# |
| ProdEnd | Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Text | Starting bates# of document family | Starting bates # of document family | Starting bates #of document family |
| ProdEndAttach | Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian or Source | Text | Name of person and/or source the document was collected from | Name of person and/or source the document was collected from | Name of person or shared email account the document was collected from |
| All Custodians | Text | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein | Name of persons from whom de-duplicated document was collected and de-duplicated pursuant to terms herein |
| From | Text | | | Sender of message |
| To | Text- Separate entries with";" | | | Recipients of message |
| CC | Text- Separate entries with";" | | | Copied recipients |
| BCC | Text- Separate entries with";" | | | Blind copied recipients |
| Subject | Text | | | Subject of message |
| Date/Time Sent | Date (mm/dd/yyyy hh:mm:ss) | | | Date and Time message sent |

12

| | | | | |
|---|---|---|---|---|
| Date/Time Received | Date (mm/dd/yyyy hh:mm:ss) | | | Date and Time message received |
| Email Conversation ID or Thread Index | Text | | | Email Conversation ID or Thread Index |
| File Name | Text | | Name of original file including extension | Name of original file including extension |
| File Type | Text | | Name of Native Application | Name of Native Application |
| File Extension | Text | | Extension of original file | Extension of original file |
| File Creation Date and Time | Date/Time (mm/dd/yyyy hh:mm:ss) | | Date and time file was created | |
| File Modification Date and Time | Date/Time (mm/dd/yyyy hh:mm:ss) | | Last modified date and time | |
| Sort Date/Time | Date/Time (mm/dd/yyyy hh:mm:ss) | | For email attachments, date and time parent email sent. For eDocs, last modified date and time. | Date and Time message sent |
| Title | Text | | Title from document metadata | |
| Author | Text | | Document author from metadata | |
| File Size | Integer | Scanned file size in bytes | Original file size in bytes | Original file size in bytes |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Redacted | Text | Indicates if produced with redaction | Indicates if produced with redaction | Indicates if produced with redaction |
| Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |

13

| Original Path or File Path | Text | | Original location of the file within the collection source's directory or folder structure. | Original location of the file within the collection source's directory or folder structure. |
|---|---|---|---|---|
| Time Zone | Text | | Time zone of date/time metadata | Time zone of date/time metadata |
| NativeLink | Text | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |

a. The Parties acknowledge that different types of ESI contain different metadata fields and that the metadata fields identified herein may not be exhaustive in all circumstances. To the extent this Protocol does not expressly identify metadata fields that, for a particular type of ESI, reflect the author of the document, the participants in any communication reflected therein, the source from which the document was collected, the date of the document or communication reflected therein, or other metadata reasonably necessary to understand or interpret the document or record, the Producing Party shall nonetheless include such metadata with its production unless doing so would be unduly burdensome. Upon reasonable request, a Producing Party shall confer in good faith regarding what additional metadata fields are reasonably available for particular types of ESI and whether such fields can be produced. Nothing in this Protocol precludes a Party from requesting or producing additional metadata fields, including as a supplement to a prior production volume.

b. No Party has an obligation to create or manually code metadata fields that are not able to be automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document except for: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; Redacted; and Custodian. Custodians should be identified using the convention "Last Name, First Name."

c. The Parties may rely on the metadata automatically generated by the processing of the ESI, and no Party has an independent obligation to review the metadata of individual files prior to production to ensure the metadata's accuracy. Nothing in this Paragraph

14

exempts a Producing Party from investigating or disclosing information about a document's metadata in response to an appropriate request.

15. **Load Files.** Productions shall include, in addition to separate directories which respectively contain single page TIFF/JPEG files, document-level text files, and native files: (a) a data load file (.DAT), and (b) an image load file (.OPT), which can be loaded into industry standard "e-discovery" document review and production software.

    a. Data Load File. The data load file shall be produced in an ASCII delimited text file in Concordance (.DAT) format. The .DAT file shall use the Concordance default delimiters, with standard ASCII character 20 (¶) as the field delimiter and ASCII character 254 (þ) as the text qualifier. A header row identifying each metadata field shall be included. Text fields shall be properly enclosed by text qualifiers. All metadata values shall be encoded in UTF-8 and shall not be truncated except as required by limitations of the source data. Each produced document shall be represented by a single row in the .DAT file.
    b. Image Load File. The image load file shall contain the standard comma-delimited fields used by the Opticon (.opt) image load file format, *i.e.*: Page Bates number, Volume Identifier, Image File Path, "Y" if the image is the first page of the document, Folder Break, Box Break, Page Count. There shall be one row in the image load file per image.