UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO MORENO GONZALEZ, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KRISTI NOEM, Secretary, U.S. ) <br> Department of Homeland Security, *et al.*, ) <br> ) <br> Defendants. ) | No. 25 C 13323 <br><br> Judge Gettleman <br> Magistrate Judge McNally |

## PLAINTIFFS' MOTION TO COMPEL DOCUMENTS IMPROPERLY WITHHELD AS PRIVILEGED

Plaintiffs bring this motion to compel documents improperly withheld by Defendants as privileged. Defendants have withheld, in full or in part, 652 emails and attachments under four privileges: deliberative process, law enforcement, attorney-client, and attorney work product. Defendants have failed to justify their invocations of privilege over the majority of these documents. Plaintiffs ask the Court to order Defendants to produce these improperly withheld materials and to conduct an *in camera* review as necessary to determine the application of the privileges. In resolving this dispute, Plaintiffs also hope to obtain guidance over the proper scope of these privileges—particularly the law enforcement and deliberative process privileges—in order to get ahead of these disputes which Plaintiffs expect will arise in upcoming depositions of ICE officials and other discovery to be produced by Defendants.

### BACKGROUND

Plaintiffs served their first set of requests for expedited discovery on November 6, 2025, ECF No. 109-2, and their second set of requests on November 21, ECF No. 109-7. On

1

December 2, after reaching an impasse on several issues, Plaintiffs filed a motion to compel. ECF No. 109. In their response, Defendants asserted the law enforcement investigatory privilege (LEP) in order to withhold information about the Government's future plans in this district. ECF No. 115 at 12-15. Plaintiffs challenged this assertion of privilege in an amended motion to compel on December 22. ECF No. 134 at 9-11.

On December 31, Defendants served written responses to Plaintiffs' second set of requests, wherein they asserted the LEP and deliberative process privilege (DPP), as well as the attorney-client and work product privileges. ECF No. 146-2 at 3-5, 7. They did not produce a privilege log. The parties conferred on January 5, 2026, after which Defendants amended their responses to remove the LEP and DPP. *See* ECF No. 146-5. On January 11, Plaintiffs again moved to compel, challenging Defendants' blanket assertions of privilege. ECF No. 146 at 2, 9-11.

On January 12, this Court ordered the parties to confer by February 2 if Defendants intended to rely on any privilege other than attorney-client. ECF No. 147. On February 9, a week after the deadline, Defendants advised that they would be asserting the LEP and DPP in their forthcoming privilege log. Ex. 1, Feb. 2026 Emails, at 6-7. Plaintiffs requested a conferral and additional details on the documents for which they would be asserting privileges. *Id.* at 6. Defendants did not respond. On February 13, Defendants provided a privilege log covering 652 documents. On February 18, Plaintiffs reasserted their request to confer and described with more specificity their objections to the asserted privileges. *Id.* at 5. Plaintiffs followed up on February 24, indicating their intent to file a motion to compel. *Id.* at 3-4. The parties conferred on February 25 and confirmed an impasse.

**LEGAL STANDARD**

Motions to compel are proper under Rule 37(a) to challenge claims of privilege invoked to withhold discovery. *See* Fed. R. Civ. P. 37(a), 26(b)(1)(A). A party may withhold otherwise discoverable information by expressly making a claim of privilege and describing the nature of the documents in a manner that enables other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). In this Court, a party asserting privilege must provide a detailed privilege log. *See* Indiv. Procedures of Hon. Laura K. McNally, *Privilege Logs*. If asserting attorney-client privilege, the log must identify which persons are lawyers. *Id.* Federal common law governs these claims of privilege, Fed. R. Evid. 501, and Defendants have the burden to justify their asserted privileges. *See Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2021 WL 83505, at *2 (N.D. Ill. Jan. 11, 2021). Privileges are to be "construed narrowly because they operate to impede the search for truth." *Belcastro*, 2021 WL 83505, at *2; *Williams v. City of Chicago*, 672 F. Supp. 3d 599, 607 (N.D. Ill. 2023).

**ARGUMENT**

**I.  Defendants Have Improperly Withheld ESI Discovery Under the Deliberative Process Privilege**

The Government has asserted the DPP to fully or partially redact 114[1] emails and attachments. The DPP is a qualified privilege that protects "advisory opinions, recommendations and deliberations" that are part of an agency's decision-making process. *E.E.O.C. v. G-K-G Inc.*, 131 F.R.D. 553, 556 (N.D. Ill. 1990). The purpose of the DPP is to protect "frank discussion of legal and policy matters" among agency officials.

---

[1] This number is based on the "Privilege Designation" column. A handful of emails have different included privileges in this column than what is described in the "Privilege *Description*" column.

*United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). It "extends only to communications which are [1] predecisional, that is, generated before the adoption of agency policy, and [2] deliberative, that is, reflecting the give-and-take of the consultative process." *United States v. Bd. of Educ. of City of Chicago*, 610 F. Supp. 695, 698 (N.D. Ill. 1985). It only protects "expressions of opinion, recommendations, or consultations." *G-K-G Inc.*, 131 F.R.D. at 556.

The DPP is limited. First, it does not cover factual material. *Id.* Any factual information in a document must be disclosed unless it is "inextricably intertwined" with covered deliberations. *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 187 (N.D. Ill. 2019) (citing *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004)); *see also K.L., L.F. & R.B. v. Edgar*, 964 F.Supp. 1206, 1210-11 (N.D. Ill. 1997) (requiring disclosure of "purely factual or objective information, such as past budget information, staff, patient, or layoff counts, or other historical or statistical information"). Second, communications made subsequent to an agency decision are not covered. *Farley*, 11 F.3d at 1389. Final recommendations are generally post-decisional, as they come after the decision-making process, so they are also not protected. *See Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990 (N.D. Ill. 2006). Third, the DPP does not cover drafts or plans "that the agency adopts as its position on an issue." *K.L., L.F. & R.B.*, 964 F. Supp. at 1208. Finally, the DPP can be waived where the Government has made an authorized disclosure to a non-federal party which is "not necessary to effect the purpose of the document." *U.S. E.E.O.C. v. Cont'l Airlines, Inc.*, 395 F. Supp. 2d 738, 743 (N.D. Ill. 2005) (citation omitted).

This privilege is not absolute; it can be overcome "where there is a sufficient

4

showing of a particularized need to outweigh the reasons for confidentiality." *Farley*, 11 F.3d at 1389. Courts apply a two-part test to evaluate the DPP. First, Defendants must make an initial showing that the privilege should apply by meeting three requirements:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Rodriguez*, 329 F.R.D. at 186 (internal quotation omitted). Once the Government has met its burden, the Court conducts a balancing test to determine if the litigants' need for the discovery outweighs the Government's interest in secrecy. *See id.* The Court may conduct an *in camera* review to make this determination. *See Bd. of Educ. of City of Chicago*, 610 F. Supp. at 699. The Court generally considers factors such as:

> (1) the relevance of the [information] to the litigation; (2) the availability of other evidence that would serve the same purpose as the [deposition] sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which [the communications] sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

*DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2021 WL 3109662, at *4 (N.D. Ill. July 22, 2021). Where Government deliberations are at issue, the balance often weighs in favor of disclosure. If the case involves "the government's intent . . . it makes no sense to permit the government to use the privilege as a shield." *See In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir.), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998). "Some courts have held that the privilege does not apply at all when the claim in the case goes to the government's subjective intent or the deliberations

5

themselves constitute part of the alleged wrongdoing." *Anderson v. Cornejo*, No. 97 C 7556, 2001 WL 826878, at *2 (N.D. Ill. July 20, 2001) (collecting cases).

Defendants' DPP assertions fail for multiple reasons. *First*, Defendants have not met their threshold burden. The department head has not made a formal claim of privilege, and no responsible official has provided an affidavit with precise and certain reasons for preserving confidentiality. *See Evans v. City of Chicago*, 231 F.R.D. 302, 318 (N.D. Ill. 2005) (affidavit requirement "[can]not be satisfied when a litigation attorney for the government asserts the privilege"). A privilege log alone is not sufficient. *Id.*

*Second*, Defendants fail to establish why the privilege applies. The majority of documents are simply described as "operational" and/or "related to litigation." *See* Ex. 2, Defs'. Priv. Log; Ex. 3, DPP Summary, Rows 1-106, 112-114. Defendants do not describe how the emails are part of any decision or decision-making process. Such vague and boilerplate descriptions are insufficient.[2] *See Scott v. City of Peoria*, 280 F.R.D. 419, 428 (C.D. Ill. 2011) (failed to meet burden where "[privilege] log is entirely lacking in precise and certain reasons that the privilege should apply to each document") (citation omitted).

Defendants' description of the withheld material as "operational" suggests that it is actually *factual* information about how Broadview operates—and thus directly responsive to Plaintiffs' discovery requests. *See* Ex. 3, Rows 1-3, 5, 7-106. Discussions about operations are not deliberative unless they express opinions that occurred prior to and in connection with a particular decision-making process. *See id.*, Rows 7-106;

---

[2] Defendants' claim of privilege fails to meet the requirements of Rule 26(b)(5)(a), as well as this Court's procedures. *See* Indiv. Procedures of Hon. Laura K. McNally, *Privilege Logs*.

6

*Rodriguez*, 329 F.R.D. at 187 (no DPP where "emails are devoid of any recommendations, suggestions, or opinions . . . [and] convey merely factual information that are devoid of any subjective commentary"). Nor does Defendants' assertion that some emails relate to this litigation automatically cloak them in privilege either. *See* Ex. 3, Rows 1-106, 113-114; *Bobkoski v. Bd. of Educ. of Cary Consol. Sch. Dist. 26*, 141 F.R.D. 88, 93 (N.D. Ill. 1992) (declining to hold that the DPP "protects all litigation related discussions in every case").

The limited information available strongly indicates that the Government is improperly redacting factual (or otherwise non-deliberative) information under the guise of privilege. *See, e.g.*, Ex. 2, Row 487, REV0000045736 ("RFI for Meals for Broadview"); Row 364, REV0000041561 ("Broadview Food Vendor, Janitor and Property Manager Contracts"); Row 90, REV0000014229 ("Hospital Watch 10/7/2025"); Row 303, REV0000028305_0001 ("Incoming Calls.docx").[3] There are eight documents with descriptions that gesture more directly at the DPP standards but do not provide a sufficient basis for the privilege to apply. *See* Ex. 3, Rows 107-114. Five are described as, "opinions, recommendations or advice about agency decisions," but there is no indication as to what actual decisions or processes were at play. *Id.*, Rows 107-111; *see Anderson*, 2001 WL 826878, at *3 (documents not privileged where they are not "part of any [] deliberative process"). One email is described as "discussion n[sic] on how to approach current litigation," *id.*, Row 112, and two emails are described as "operational

---

[3] The Government has also likely waived the privilege as to documents that have been produced elsewhere, *see, e.g.*, Ex. 2, Row 376, REV0000041964_0001 ("12-15-2025 BSSA Employee Roster .xlsx") (same name as file produced in discovery), or with regard to communications that are redacted in some emails but not in others.

questions posed internally re litigation," *id.*, Rows, 113-114. Discussions about litigation are not categorically privileged, *see supra*, and there is no way for Plaintiffs to tell whether these emails consist of an exchange of opinions.

Even if the Government could invoke the DPP over some emails, Plaintiffs' particularized need for disclosure outweighs the Government's interest in secrecy. These documents are indisputably relevant, as they reflect Defendants' response to the litigation and the TRO. *See* Ex. 3. These matters—and, in particular, Defendants' internal views and deliberations on them—are directly at issue. At the preliminary injunction hearing, Plaintiffs will argue that the changes happened only *because of* the TRO and that a preliminary injunction is necessary to protect Class Members' constitutional rights. Defendants will retort, as they have repeatedly argued, that "things have changed at Broadview drastically" and that there is no need for a TRO. *See, e.g.* ECF No. 115, at 4-5. In other words, Defendants' intent and the reasons why Defendants have taken various actions are directly in dispute. *See Bd. of Educ. of City of Chicago*, 610 F.Supp. at 700 ("[T]he decisionmaking process is not 'swept up into' the case, it is the case."). Plaintiffs need to see the communications around recent changes in order to contest Defendants' argument that further relief is superfluous. These emails contain unique insight into the actions, decisions, and capabilities of Defendants at Broadview; Plaintiffs cannot obtain this information elsewhere. The Court should order the DPP-withheld materials disclosed.

## II. Defendants Have Improperly Withheld ESI Discovery Under the Law Enforcement Investigatory Privilege

The Government has asserted the LEP to fully or partially redact 298 documents,

but the LEP does not have any application to this case. The purpose of the LEP is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *Hernandez v. Longini*, No. 96 C 6203, 1997 WL 754041, at *3 (N.D. Ill. Nov. 13, 1997). It is a qualified and narrow privilege, not a blanket shield for law enforcement operations or plans, and it does not protect detention operations from scrutiny. *See Williams*, 672 F. Supp. 3d at 610; *accord Dellwood Farms, Inc. v. Cargill*, 128 F.3d 1122 (7th Cir. 1997).

The LEP can only be invoked if a responsible official makes "a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Pontarelli Limousine, Inc. v. City of Chicago*, 652 F.Supp. 1428, 1431 (N.D. Ill. 1987). The Government must identify specific investigatory interests that would be harmed from disclosure on a document-by-document basis. *See Williams*, 672 F. Supp. 3d at 610.

The LEP is not absolute; it can be overcome where the need for the information outweighs the harm of disclosure. *See Dellwood Farms, Inc.*, 128 F.3d at 1122. To make this assessment, the Court balances the Plaintiffs' needs for disclosure with the Government's interest in protecting the investigative files. *See Santiago v. City of Chicago*, No. 09 C 3137, 2010 WL 1257780, at *2 (N.D. Ill. Mar. 26, 2010) (listing factors courts consider in this determination). It can also be waived through voluntary waiver or selective disclosure.

*See Dellwood Farms, Inc.*, 128 F.3d. The Government can forfeit the LEP if it "engaged in conduct that would give it an unearned advantage over an opponent were it allowed to keep the [records] secret from him." *Id.*

Defendants' assertion of the LEP fails at every step. *First*, Defendants have failed to sufficiently assert this privilege. There is no affidavit or other indication that the responsible official considered each document. Defendants only provided a privilege log. *See* Ex. 2. Moreover, the Government has not specified the information it seeks to protect, why it falls under the LEP, how it is connected to an investigation, the harm from disclosure, and why this harm cannot be addressed through the confidentiality order in this case. Defendants' privilege log is insufficient to establish this threshold burden.

*Second*, Defendants cannot show that the LEP covers the withheld materials. At its heart, the LEP applies to law enforcement investigations and inquiries. Defendants do not contend that the emails concern novel investigative techniques, confidential informants, or other information that disclosure of which could compromise a particular current or future investigation. *See Rodriguez*, 329 F.R.D. at 190 (denying LEP where emails "do not appear to reveal any confidential investigatory techniques or to discuss any on-going criminal investigation"). For the vast majority, Defendants state only that the documents contain "operational" information and/or are "related to litigation." *See* Ex. 4, LEP Summary, Rows 5-7, 9-298. But general emails about operating Broadview, responding to the TRO, or otherwise running detention operations, are not privileged investigative files. Defendants' reliance on the LEP is misplaced.

There are only two emails where Defendants have offered more specific privilege

10

descriptions, but these serve only to demonstrate how the Government misapplies the LEP. Defendants withhold a document with dimensions of the rooms at Broadview. This is not investigative material, and the Government's wildly unsupported claim that "violent protestors" could use this information "to target specific rooms" does not justify the LEP. Ex. 2, Row 2, REV0000008444_0001 ("BSSA Room Areas (Square Feet) Post 2011 Renovation.xlsx"); Ex. 4, Rows 3-4. Thousands of people have gone through Broadview, Plaintiffs' counsel has taken photos and measurements, and the Government has publicly disclosed schematics.[4] This is not closely held information, and any concerns about "sensitive" information are explicitly addressed in the confidentiality order. ECF No. 101 at 1-2; *cf. Surratt v. Walker*, No. 08-1228, 2010 WL 2670895 (C.D. Ill. July 2, 2010) (applying LEP to prison investigative files). Defendants also redact sentences from ICE's detention policies describing pat downs. *See* Ex. 2, Row 23, REV0000008938_0002 ("PBNDS 2011 Hold Room Standards.pdf"). These "investigative techniques" are neither linked to an investigation nor novel, and the manual they come from is publicly available without redaction.[5] These examples demonstrate Defendants' fundamental misunderstanding of the LEP and cast serious doubt on the legitimacy of their privilege assertions for the other 296 documents.

*Third*, even if the LEP applied, the Government has selectively waived it in order

---

[4] *Broadview Security System Upgrades; ICE Facility, Broadview, IL County of Cook*, SAM.gov, https://sam.gov/opp/0706a40dae3eb0487114e59a381385d3/view [https://perma.cc/B347-UKA7].

[5] ICE, 2011 Operations Manual ICE Performance-Based National Detention Standards 101-102, https://www.ice.gov/detain/detention-management/2011 [https://perma.cc/CR7B-D682].

11

to suppress unfavorable facts while making them available elsewhere.[6] For example, Defendants fully redacted "11087.2 - Operating a Holding Room Facilies.pdf" despite it being publicly available and on the docket. *See* Ex. 2, Row 137, REV0000021673_0001; ECF No. 2-2. Defendants also, without explanation, withheld what appear to be medical incident reports[7] despite producing these same documents about other incidents. The Government's use of selective waiver casts suspicion over the messages they are strategically withholding and the legitimacy of the redactions on the documents that Plaintiffs are unable to identify.

*Finally*, Plaintiffs' particularized need for this discovery overcomes the Government's unspecified interest in non-disclosure. As discussed *supra*, the Government's communications as it detained people during a period of enhanced immigration enforcement and after the TRO are directly at issue in this case. Defendants' willingness and ability to operate the facility constitutionally will be a significant dispute at the upcoming hearing. And from the information available, it appears that Defendants are withholding evidence concerning issues at the heart of this case. *See, e.g.*, Ex. 2, Row 118, REV0000015376 ("FW: Moreno Gonzalez v Noem et al - Video Preservation Plan"); Row 236, REV0000025249 (". . . additional building purchase"); Row 136, REV0000021673

---

[6] The Government has done this before, asserting the LEP in response to written discovery about future operational plans while named Defendants boasted about those plans on social media. *See* ECF No. 146-2 at 5, 8.

[7] Ex. 2, Row 135, REV0000021591_0001 ("2026SIR0005124 BSSA Hospital Admission.pdf"); Row 154, REV0000023188_0001 ("2026SIR0003314 BSSA.pdf"); Row 115, REV0000023188_0002 ("2026SIR0004438 BSSA.pdf"); Row 156, REV0000023188_0003 ("2026SIR0004608 BSSA.pdf"); Row 178, REV0000024538_0001 ("SEN Report 2026SIR0000362"); Row 179, REV0000024538_0002 ("SEN Report 2026SIR0002422").

("RE: Request for Quote Additional Nurse supporting Broadview Transportation Hub"); Row 93, REV0000014229_0002 ("2 from BSSA admitted to LoyolaMacNeal hospitals"). Meanwhile, the Government does not suggest there is any investigation animating the assertion of the LEP, tipping the scales heavily in favor of disclosure. *See Santiago*, 2010 WL 1257780, at *2. Any sensitive records can be designated confidential or attorneys-eyes only. The Court should order the LEP-withheld documents disclosed.

### III. Defendants Have Improperly Withheld ESI Discovery Under the Attorney-Client Privilege & Work Product Doctrine

The attorney-client privilege protects confidential communications made by a client to their attorney for the purpose of obtaining legal advice. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The party asserting the privilege has the burden of establishing it on an item-by-item basis. *Evans*, 231 F.R.D. at 311. In the Seventh Circuit, the privilege applies:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Naik v. Boehringer-Ingelheim Pharms., Inc.*, No. 07C3500, 2008 WL 4866015, at *1 (N.D. Ill. June 19, 2008) (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). The privilege attaches only when "the 'primary' or 'predominant purpose' of the communication is to render or solicit legal advice." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 893 (N.D. Ill. 2018) (citations omitted).

Legal advice does not include "advice on political, strategic or policy issues," *see*

13

*Evans*, 231 F.R.D. at 312, nor communications that "consist[] largely of business or technical information or advice." *Baxter Travenol Lab'ys, Inc. v. Abbott Lab'ys*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987). Simply including a lawyer on a communication does not render it privileged. *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 R.F.D. 232, 237 (N.D. Ill. 2014) (citations omitted); *see also Towne Place Condo. Ass'n*, 284 F. Supp. 3d at 895. Voluntary disclosure to third parties, as well as production of similar communications in discovery, waives the privilege, unless the disclosure was made "for the purpose of assisting the attorney in rendering legal advice." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 419 (N.D. Ill. 2006); *Evans*, 231 F.R.D. at 311.

Here, there are three categories of emails that appear improperly redacted.[8] *First*, there are 36 emails or attachments with no attorney on the message. *See* Ex. 5, ACP Summary, Rows 1-37.[9] Here, Defendants redacted internal discussions among ICE ERO staff or other law enforcement agents. Some are also redacted as attorney work product, but that protection likewise cannot be invoked by non-attorneys. *See* Fed. R. Civ. P. 26(b)(3); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d at 618.

*Second*, there are 25 emails where either the offered basis for the privilege is so threadbare that it is impossible to conclude if the privilege applies or where the visible

---

[8] Defendants failed to identify which parties to communications were attorneys, contrary to this Court's rules. *See* Individual Procedures of Hon. Laura McNally, *Privilege Logs*. Plaintiffs have been forced to glean who is an attorney from signature blocks and independent research.

[9] Plaintiffs have added a column to the attached exhibit explaining succinctly why they believe the privilege does not apply to each document.

14

context clearly shows that the privilege does not apply at all. *See* Ex. 5, Rows 1-2, 38-60. Many are attachments to emails between attorneys and clients, but the file names suggest that they are things like contracts, photographs, policy documents, flyers, and other non-privileged materials. *See id.*, Rows 1-2, 38, 40, 42-60. In two, communications with attorneys appear to consist not of legal advice but technical facts or other information about Broadview. *See id.* Rows 39, 41. While there were many more emails where it was unclear whether they constituted legal advice, Plaintiffs have erred on the side of limiting their challenges to preserve the Court's focus on documents that appear most relevant (and least likely to be privileged). Plaintiffs, however, ask the Court to order Defendants to provide adequate privilege logs in the future that properly describe the nature of the legal advice sought or provided, so that Plaintiffs need not engage in such guesswork.

*Third*, Defendants redacted 13 emails that include third parties, including the Government's video contractors—who Defendants have previously asserted they do not control and who are represented by separate counsel, Ex. 5, Rows 61-65—and individuals from the U.S. Marshals Service and Greene County Jail, which housed the named Plaintiffs briefly at the case's outset, *id.*, Rows 3-7, 16-17, 66. These officials do not appear to have been obtaining legal advice or assisting in rendering legal advice.

WHEREFORE, Plaintiffs respectfully request that this Court order disclosure of these improperly withheld documents and conduct an *in camera* review as necessary.

Dated: February 26, 2026                 Respectfully submitted,

                                            */s/ Danielle Berkowsky*
                                            Alexa Van Brunt
                                            Jonathan Manes

Danielle Berkowsky
Chisato Kimura
**MACARTHUR JUSTICE CENTER**
160 E. Grand Avenue, 6th floor
Chicago, Illinois 60611
Phone: 312-503-1336
alexa.vanbrunt@macarthurjustice.org
jonathan.manes@macarthurjustice.org
danielle.berkowsky@macarthurjustice.org
chisato.kimura@macarthurjustice.org

Nathan P. Eimer
Scott C. Solberg
Michael L. McCluggage
James B. Speta
Lisa S. Meyer
Brent R. Austin
Alec Solotorovsky
Gregory M. Schweizer
**EIMER STAHL LLP**
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Phone: 312-660-7600
neimer@eimerstahl.com
ssolberg@eimerstahl.com
mmccluggage@eimerstahl.com
jspeta@eimerstahl.com
lmeyer@eimerstahl.com
baustin@eimerstahl.com
asolotorovsky@eimerstahl.com
gschweizer@eimerstahl.com

Kevin M. Fee
Michelle T. García
Rebecca K. Glenberg
Samuel Cole
Jennifer Stark

Kathleen Hickey
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, Illinois 60601
Phone: (312) 201-9740
kfee@aclu-il.org
mgarcia@aclu-il.org
rglenberg@aclu-il.org
scole@aclu-il.org
jstark@aclu-il.org
khickey@aclu-il.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37.2

Plaintiffs certify that they conferred with Defendants via videoconference about the relief requested in this motion as laid out above. The parties were unable to come to an agreement.

*/s/ Danielle Berkowsky*

17